Esther Tendo Atam

13621 Arcturus Ave.

Gardena, CA 90249

Natashchan1@yahoo.com

Plaintiff in Pro Per



FILED

CLERK, U.S. DISTRICT COURT

05/26/26

CENTRAL DISTRICT OF CALIFORNIA

BY _____ AF _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESTHER TENDO ATAM, <br> *Plaintiff* <br><br> vs. <br><br> KAISER FOUNDATION HEALTH PLAN, INC., et al., <br> Defendants. | **Case No.: 2:24-cv-05862-KK-AGR** <br><br> **PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

**PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     STANDARD OF REVIEW....................................................................................2

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

III.    VALIDITY OF THE BRN SECTION 820 ORDER .................................................5

IV.     PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS #12..................................5

V.      MELBY'S RESPONSIVE DECLARATION .............................................................6

VI.     DEFECT IN DELEGATED AUTHORITY (ULTRA VIRES)....................................7

    The "For" vs. "Designee" Distinction .............................................................7

    Clerical vs. Discretionary Functions..............................................................7

VII.    FAILURE TO EXERCISE DISCRETION...............................................................8

VIII.   FAILURE OF DUE PROCESS AND PROBABLE CAUSE.........................................9

IX.     PROCEDURAL INVALIDATION (VOID AB INITIO) .........................................10

X.      ESTOPPEL AND AGENCY CONTRADICTIONS...................................................11

XI.     EVIDENTIARY AND CREDIBILITY IMPLICATIONS ..........................................12

    Impeaching the Board's Actions....................................................................12

    Fruit of the Poisonous Tree...........................................................................12

XII.    SEPARATE PETITION REGARDING THE TAKING OF THE RN LICENSE.........13

XIII.   PROCEDURAL STANDING OF THE NOTICE OF DEFENSE................................14

    Premature but Effective Notice of Defense ...................................................14

    Estoppel of Non-Compliance Charges...........................................................14

XIV.    CIVIL RIGHTS VIOLATION (42 U.S.C. § 1983) .........................................15

XV.     VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)................16

XVI.    VIOLATION OF SUBSTANTIVE DUE PROCESS (FOURTEENTH AMENDMENT)...........17

XVII.   LOSS OF QUALIFIED / ABSOLUTE IMMUNITY ...............................................18

XVIII.        COLLUSION WITH ILLEGAL PREFILING ORDERS.........................................................18

XIX.        CRIMINAL CONSPIRACY (18 U.S.C. § 241), 42 U.S.C. § 1985, AND 42 U.S.C. § 1983.......19

Meeting of the Minds..............................................................................................22

Suspicious Timing ................................................................................................23

Shared Motives and Strategic Gain...........................................................................24

Discriminatory intent may be established through: ........................................................25

Doe Defendants Remained Active Parties ...................................................................27

Procedurally Improper Entry of Judgment..................................................................27

Denial of a Fair Hearing / Extrinsic Fraud.................................................................27

Prejudice Resulting from Loss of Doe Allegations (Privity Concerns) ...................................28

XXI.        OVERT ACT ...............................................................................................29

XXII.        INJURY AND DEPRIVATION.........................................................................34

XXIII.        CONCLUSION .........................................................................................37

**CASES**

Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970);...................................................................22

American Federation of Labor v. Unemployment Ins. Appeals Bd., 13 Cal.4th 1017, 1023 (1996 ............................11

Barry v. Barchi, 443 U.S. 55, 64 (1979 ...................................................................................10

Barry v. Barchi, 443 U.S. 55, 64 (1979).....................................................................................3

Butz v. Economou, 438 U.S. 478, 512-17 (1978...........................................................................15

Butz v. Economou, 438 U.S. 478, 512-17 (1978)............................................................................20

California Assn. of Psychology Providers v. Rank, 51 Cal.3d 1, 11 (1990 ..................................................7

California Assn. of Psychology Providers v. Rank, 51 Cal.3d 1, 11 (1990).................................................7

California Business and Professions Code § 820 .................................................................5, 6, 7, 10

City of Arlington v. FCC, 569 U.S. 290, 297 (2013....................................................................4

City of Arlington v. FCC, 569 U.S. 290, 297 (2013); ................................................................10

County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998);.............................................................19

County of San Diego v. State of California, 15 Cal.4th 68, 109 (1997 .....................................................11

Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010). ........................................................22

Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986);........................................................................5

Eldridge v. Block, 832 F.2d 1132, 1135-36 (9th Cir. 1987). ...................................................................4

Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003). .................................4

employment-related decision-making. See *Martinez v. Combs* (2010) 49 Cal.4th 35, 64; *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124-125 ..................................................................33

Ex parte Young, 209 U.S. 123, 159-60 (1908) ............................................................................4, 15, 20

Foman v. Davis, 371 U.S. 178, 181-82 (1962). ......................................................................................5

Greene v. McElroy, 360 U.S. 474, 492 (1959 ...............................................................................3, 7, 10

Hafer v. Melo, 502 U.S. 21, 30-31 (1991)...........................................................................................15

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); ...............................................................................20

Humphries v. County of Los Angeles, 554 F.3d 1170, 1185-86 (9th Cir. 2009),...................................18

In re Marriage of Lippel (1990) 51 Cal.3d 1160 .......................................................................30, 31, 38

*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1169 .......................................................................30

Jackson v. County of Los Angeles, 60 Cal.App.4th 171, 183 (1997)....................................................13

Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623-24 (9th Cir. 1988)...............................4

*Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471 ...................................................................................35

L.W. v. Grubbs, 92 F.3d 894, 900 (9th Cir. 1996). ...............................................................................19

*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737....................................................34

Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-91 (1949....................................4, 7

Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988). .......................................................................17

Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982 .................................................................19

Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982). ..................................................................3

Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc);.......................................................4

Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); ...................................................................4

*Martinez v. Combs* (2010) 49 Cal.4th 35, 64;...................................................................................33

Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976).............................................................................3

Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976);.........................................................................7, 10

Mathews v. Eldridge, 424 U.S. 319, 333 (1976......................................................................................18

Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990 ........................................3

Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990)...................................36

Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990);..................................10

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); ...............................................18

New Hampshire v. Maine, 532 U.S. 742, 749-50 (2001); ........................................................................13

*Olivera v. Grace* (1942) 19 Cal.2d 570, 575 ....................................................................................30

Paul v. Davis, 424 U.S. 693, 701-10 (1976);.........................................................................................18

*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 ...............................................................................36

*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982...........................................................................36

Rusheen v. Cohen, 37 Cal.4th 1048, 1056-57 (2006)..............................................................................21

Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008). ........................................................................19

Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 871-72 (1989). ......................................................21

Stanson v. Mott, 17 Cal.3d 206, 210 (1976.........................................................................................10

Stanson v. Mott, 17 Cal.3d 206, 210 (1976). .......................................................................................4

States v. Raddatz, 447 U.S. 667, 673-76 (1980).....................................................................................3

Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)..................................................................................20

United States v. Giordano, 416 U.S. 505, 512-14 (1974).......................................................................8, 9

United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1990). .............................................................31

v. Barchi, 443 U.S. 55, 64 (1979).....................................................................................................16

*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124 ..............................................................33

Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266-68 (1977 ..............................28

*Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1148; ........................................30

*Vu v. Prudential Property & Casualty Insurance Company* (2001) 26 Cal.4th 1142, 1149.................................35

West v. Atkins, 487 U.S. 42, 48 (1988 ...............................................................................................17

**STATUTES & RULES**

28 U.S.C. § 636(b)(1)(C)..................................................................................................................3

42 U.S.C. § 1983 ...........................................................................................................................2

42 U.S.C. § 1985 ................................................................................................................2, 21

42 U.S.C. §§ 1983 and 1985 ................................................................................................passim

Cal. Code Civ. Proc. § 437c(a); ..........................................................................................30

Cal. Code Civ. Proc. § 474 .................................................................................................30

California Business and Professions Code § 821. .................................................................5

California Business and Professions Code §§ 820-821 ..........................................................10

California Code of Civil Procedure § 1094.5 ........................................................................11

**California Code of Civil Procedure § 391(b)** .......................................................................30

California Code of Civil Procedure § 437c ...........................................................................31

California Code of Civil Procedure section 391 et seq., ........................................................27

California Government Code § 820.2 ...................................................................................14

California Government Code §§ 11500 et seq. ......................................................................18

Fed. R. Civ. P. 72(b)(3) .....................................................................................................3

**RULES**

Federal Rule of Civil Procedure 15(a)(2) .............................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ....................................................................................................18

**TO THE HONORABLE DISTRICT JUDGE:**

**INTRODUCTION**

1.     Plaintiff Esther Tendo Atam respectfully submits these Objections to the Magistrate Judge's Report and Recommendation issued on May 19, 2026. Plaintiff objects to the recommendation dismissing the BRN Defendants and related constitutional claims without leave to amend because the Report and Recommendation fails to meaningfully address one of the most significant jurisdictional and constitutional defects raised during briefing and oral argument: the validity of the Section 820 Order that formed the foundation of the disciplinary proceedings resulting in revocation of Plaintiff's RN license.

2.     The Magistrate Judge's Report and Recommendation makes no meaningful reference to the validity of the signature appearing on the California Board of Registered Nursing ("BRN") Section 820 Order, despite the fact that this issue became a central subject of oral argument during Plaintiff's Motion for Summary Judgment proceedings held on December 2, 2025.

3.     During those proceedings, Defendant Loretta Melby submitted a declaration in response to Plaintiff's Statement of Undisputed Facts that directly brought into question the validity and authorization of the signature appearing on the Section 820 Order. In light of the significance of the issue, the parties were specifically ordered by the Court to submit supplemental briefing regarding the validity of the signature and authorization underlying the Section 820 examination order.

4.     Plaintiff timely complied with the Court's directive and submitted responsive briefing within the Court's deadline, as reflected in Docket No. 194. Plaintiff respectfully submits that the supplemental briefing and Defendant Melby's declaration are materially relevant to Plaintiff's constitutional and civil rights claims because they directly concern whether the Section 820 Order — the foundational administrative act underlying the disciplinary proceedings against Plaintiff — was lawfully authorized in the first instance.

5.     Specifically, Melby's declaration regarding the execution and authorization of the Section 820 Order directly implicates Plaintiff's allegations concerning violations under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, including claims involving unlawful deprivation of protected property interests, procedural due process violations, abuse of administrative authority, and coordinated retaliatory

1

conduct carried out under color of law. Plaintiff further submits that the legality of the initiating order is inseparable from the subsequent Accusation, disciplinary proceedings, RN license revocation, and reporting to the National Practitioner Data Bank ("NPDB").

6.    Plaintiff will therefore again address the validity of the Section 820 Order and the significance of Defendant Melby's declaration throughout these Objections to the Magistrate Judge's Report and Recommendation.

7.    For these reasons, Plaintiff respectfully objects to Magistrate Judge Alicia Rosenberg's recommendation dismissing the BRN Defendants without leave to amend. Plaintiff respectfully submits that the newly clarified evidence concerning the authorization and execution of the Section 820 Order materially alters the constitutional analysis and warrants further amendment and litigation on the merits.

8.    Plaintiff further objects because the Kaiser Defendants have consistently maintained in state court that Plaintiff was not an employee of "Kaiser," while simultaneously continuing to rely upon that position during ongoing litigation involving prefiling restrictions and related proceedings. Plaintiff alleges that these positions form part of the factual basis underlying Plaintiff's claims pursuant to 42 U.S.C. §§ 1983 and 1985, particularly where multiple Kaiser-affiliated entities allegedly exercised employment-related authority over Plaintiff while later denying the existence of any employment relationship.

9.    For all of these reasons, Plaintiff respectfully submits that it is in the interest of justice to permit a Second Amended Complaint without dismissing Defendants at this stage of the proceedings. Plaintiff further respectfully submits that substantial constitutional, procedural, and equitable issues remain unresolved and should be adjudicated on a complete factual record rather than terminated at the pleading stage.

10.    Plaintiff does, however, support the Court's recommendation concerning Defendant Gillian Friedman to the extent the Court dismisses Defendant Friedman without prejudice only.

**STANDARD OF REVIEW**

11.    Under 28 U.S.C. § 636(b)(1)(C), a district court must conduct a de novo determination of those portions of a Magistrate Judge's Report and Recommendation to which specific objections are made. The District Court may "accept, reject, or modify, in whole or in part" the findings and recommendations issued by the Magistrate Judge. Fed. R. Civ. P. 72(b)(3). De novo review requires

the District Court to independently consider the record and arrive at its own conclusions regarding disputed constitutional, factual, and legal issues. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980).

12.    Such review is particularly critical where the Report and Recommendation concerns alleged deprivation of constitutional rights, protected property interests, abuse of administrative authority, and procedural due process violations under the Fourteenth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976) (recognizing that due process requires balancing the private interests affected, the risk of erroneous deprivation, and the governmental interests involved).

13.    Here, Plaintiff specifically objects because the Report and Recommendation fails to meaningfully address substantial jurisdictional and constitutional issues surrounding the validity and authorization of the BRN Section 820 Order, which formed the foundational basis for the disciplinary proceedings resulting in revocation of Plaintiff's RN license and subsequent reporting to the National Practitioner Data Bank ("NPDB").

14.    It is well established that a professional license constitutes a protected property interest under the Fourteenth Amendment, and therefore cannot be suspended or revoked without constitutionally adequate procedures and lawful governmental authority. See Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990); Greene v. McElroy, 360 U.S. 474, 492 (1959); Barry v. Barchi, 443 U.S. 55, 64 (1979). Moreover, procedural due process requires not only notice and opportunity to be heard, but lawful exercise of authority by the administrative body itself. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982).

15.    Federal courts further recognize that governmental action taken without lawful authorization, or in excess of delegated authority, may constitute ultra vires conduct subject to constitutional challenge under 42 U.S.C. § 1983. See Ex parte Young, 209 U.S. 123, 159-60 (1908); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-91 (1949). Administrative agencies possess only those powers granted by statute, and actions exceeding those powers are void. See City of Arlington v. FCC, 569 U.S. 290, 297 (2013); Stanson v. Mott, 17 Cal.3d 206, 210 (1976).

16.    Furthermore, dismissal without leave to amend is improper where amendment could cure deficiencies or where newly clarified facts materially alter the constitutional analysis. Federal Rule of Civil Procedure 15(a)(2) provides that

3

leave to amend should be "freely give[n] when justice so requires." The Ninth Circuit has repeatedly emphasized that this policy is to be applied with "extreme liberality," particularly where the plaintiff proceeds pro se and constitutional claims are involved. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051-52 (9th Cir. 2003).

17. The Ninth Circuit has further held that dismissal without leave to amend is inappropriate unless it is absolutely clear that the complaint's deficiencies cannot be cured by amendment. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995); Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623-24 (9th Cir. 1988). This principle applies with particular force in civil rights litigation brought pursuant to 42 U.S.C. §§ 1983 and 1985. See Eldridge v. Block, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

18. Plaintiff respectfully submits that the developments concerning:

(i) Defendant Melby's declaration disclaiming personal authorization of the Section 820 Order;

(ii) the supplemental briefing ordered by the Court regarding the validity of the signature on the Section 820 Order;

(iii) clarification concerning the limited scope of KFH's July 14, 2022 summary judgment ruling;

(iv) the subsequent expansion of that ruling to non-adjudicated Kaiser entities;
and

(v) the continuing impact of vexatious litigant restrictions and NPDB reporting,

19. collectively constitute substantial factual and procedural developments warranting further amendment and adjudication on the merits.

20. Additionally, federal courts maintain a strong policy favoring resolution of cases on the merits rather than dismissal at the pleading stage. See Eitel v. McCool, 782 F.2d 1470, 1472 (9th Cir. 1986); Foman v. Davis, 371 U.S. 178, 181-82 (1962). Plaintiff respectfully submits that these principles weigh heavily against dismissal without leave to amend where unresolved constitutional, procedural, and equitable concerns remain before the Court.

4

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### VALIDITY OF THE BRN SECTION 820 ORDER

**21.    THE NAMED PETITION**

22.    In official disciplinary proceedings initiated by the California Board of Registered Nursing ("BRN"), Defendant Loretta Melby is identified in her official capacity as Executive Officer and "Petitioner" on behalf of the Board. The Section 820 Petition and Order at issue in this matter expressly identifies Defendant Melby as the issuing authority acting on behalf of the BRN. (See Melby's Petition and Order for Section 820 Examination, **Exhibit 1, Pg)**.

23.    Under California Business and Professions Code § 820, the authority to compel a professional licensee to undergo a psychiatric or medical examination constitutes a significant discretionary enforcement power involving the exercise of quasi-judicial administrative authority. Such authority directly implicates a protected property interest because failure to comply with the order may ultimately result in suspension or revocation of a professional license pursuant to California Business and Professions Code § 821.

24.    Because a Section 820 Order carries substantial constitutional and professional consequences, the order must be lawfully authorized and issued in compliance with applicable statutory and constitutional safeguards. Administrative agencies possess only those powers granted by statute, and actions exceeding lawful authority are void. See City of Arlington v. FCC, 569 U.S. 290, 297 (2013); Stanson v. Mott, 17 Cal.3d 206, 210 (1976).

### PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS #12

25.    On July 13, 2022, Defendant Loretta Melby, Executive Officer of the California Board of Registered Nursing, initiated petition under California Business and Professions Code § 820 alleging that Plaintiff was mentally unfit to practice nursing. Plaintiff alleges that the Section 820 Petition was defective and unlawful from its inception because it relied upon knowingly false allegations and materially unsupported assertions concerning Plaintiff's mental fitness. (See BRN Defendants' Statement of Genuine Dispute to Material Facts, **Exhibit 2, Pg**).

26.    Plaintiff further alleges that the Section 820 proceedings were initiated

5

without proper administrative review and without lawful exercise of discretionary authority by the official identified as petitioner. Plaintiff respectfully submits that the validity and authorization of the Section 820 Order became a material constitutional issue during proceedings concerning Plaintiff's Motion for Summary Judgment and was sufficiently significant that the Court ordered supplemental briefing regarding the validity of the signature and authorization underlying the order.

27.    The issue is not merely procedural. The Section 820 Order became the foundational administrative act underlying the subsequent Accusation, disciplinary proceedings, default determination, revocation of Plaintiff's RN license, and reporting to the National Practitioner Data Bank ("NPDB"). Plaintiff respectfully submits that where the initiating administrative order is itself constitutionally defective, all subsequent proceedings flowing from that order are materially called into question.

### MELBY'S RESPONSIVE DECLARATION

28.    In response to Plaintiff's Statement of Undisputed Facts, Defendant Loretta Melby submitted a declaration stating that she did not personally review, author, approve, or directly issue the Section 820 Order executed in her name. Instead, Defendant Melby asserted that the conduct was carried out by her designee and BRN Chief Enforcement Officer Shannon Johnson. (See Melby Declaration Regarding Validity of Signature on Section 820 Examination, **Exhibit 3, Pg.**).

29.    This declaration materially alters the constitutional and jurisdictional analysis underlying Plaintiff's claims because the face of the Section 820 Order represented that Defendant Melby herself exercised the authority necessary to initiate the proceedings. Plaintiff respectfully submits that the declaration now directly contradicts the representation conveyed by the order itself.

30.    The significance of this admission cannot be understated. A Section 820 Order is not a routine ministerial act. It is a discretionary quasi-judicial enforcement mechanism capable of initiating proceedings leading to deprivation of a protected professional license. Due process therefore requires lawful exercise of administrative authority by an authorized decision maker. See Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976); Greene v. McElroy, 360 U.S. 474, 492 (1959).

31.    Plaintiff respectfully submits that Defendant Melby's declaration raises substantial questions regarding whether any authorized official lawfully exercised the discretion required before compelling Plaintiff to submit to psychiatric examination under threat of professional discipline.

6

## DEFECT IN DELEGATED AUTHORITY (ULTRA VIRES)

32.    Administrative agencies may act only within authority expressly granted by statute. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689-91 (1949). Under California law, actions taken beyond delegated authority constitute ultra vires conduct and are void. See California Assn. of Psychology Providers v. Rank, 51 Cal.3d 1, 11 (1990).

33.    Here, the record reflects a material contradiction between:

(i)    the face of the Section 820 Order; and

(ii)    Defendant Melby's subsequent declaration disclaiming personal review or authorization.

34.    If California Business and Professions Code § 820 vests discretionary authority in the Executive Officer acting on behalf of the BRN, any subordinate exercising that authority must possess clear and lawful delegation consistent with statutory and constitutional requirements.

### The "For" vs. "Designee" Distinction

35.    The distinction between signing "for" an executive officer and acting as an authorized "designee" is constitutionally significant.

36.    When Shannon Johnson signed "for" Defendant Melby, the order communicated that Defendant Melby herself reviewed, approved, and authorized the decision, while Johnson merely executed the physical signature on her behalf. Such wording conveys ministerial execution of a discretionary decision already made by the authorized official.

37.    By contrast, signing explicitly as an authorized "designee" would indicate that the delegated official independently exercised the authority to review evidence, evaluate probable cause, and issue the order pursuant to lawful delegation.

### Clerical vs. Discretionary Functions

38.    This distinction is critical because discretionary authority involving deprivation of protected property interests cannot be exercised through clerical substitution or unauthorized rubber-stamping. See United States v. Giordano, 416 U.S. 505, 512-14 (1974) (where statute vests authority in designated officials,

7

unauthorized delegation invalidates resulting action).

39.    A Section 820 Order involves discretionary judgment concerning whether sufficient grounds exist to compel psychiatric examination under threat of disciplinary enforcement. Such authority cannot lawfully be exercised where the identified decisionmaker never reviewed the evidence and never approved the order issued in her name.

40.    Plaintiff respectfully submits that Defendant Melby's declaration demonstrates:

(i)    Defendant Melby did not personally exercise the discretionary authority reflected on the face of the order;

(ii)    the order failed to accurately identify the true decisionmaker; and

(iii)    the BRN failed to comply with the procedural safeguards necessary before initiating disciplinary proceedings affecting Plaintiff's professional license and constitutional rights.

41.    Accordingly, Plaintiff respectfully submits that the Section 820 Order was issued without lawful administrative authority, rendering the order ultra vires, constitutionally defective, and void ab initio.

## FAILURE TO EXERCISE DISCRETION

42.    Defendant Loretta Melby's declaration confirms that she never personally reviewed, authored, approved, or issued the Section 820 Order executed in her name. Plaintiff respectfully submits that this admission renders the order constitutionally hollow because the discretionary judgment represented on the face of the order was never actually exercised by the official identified as the issuing authority.

43.    Under established principles of administrative law, an official cannot merely rubber-stamp a discretionary enforcement action or remain entirely ignorant of an order issued under their authority, particularly where the order directly interferes with a protected professional license and initiates proceedings capable of ending a professional career. Administrative discretion must be meaningfully exercised by the authorized decision maker. See United States v. Giordano, 416 U.S. 505, 512-14 (1974) (where statute vests authority in designated officials, unauthorized delegation invalidates resulting governmental action).

44.    Here, the Section 820 Order was signed "For" Defendant Melby, thereby representing that Melby herself reviewed and approved the evidentiary basis underlying the order while another individual merely executed the physical signature. However, Melby later declared that she never reviewed or approved the order at all. Plaintiff respectfully submits that this contradiction establishes that neither Melby nor Shannon Johnson lawfully exercised the discretionary authority required before issuing the order.

45.    If Melby did not personally review the evidentiary package and Johnson merely signed "For" Melby rather than independently exercising delegated authority as an identified designee, then no authorized official actually exercised the quasi-judicial discretion required under California Business and Professions Code § 820. The resulting action therefore becomes arbitrary, capricious, procedurally defective, and violative of Plaintiff's due process rights under the Fourteenth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 332-35 (1976); Greene v. McElroy, 360 U.S. 474, 492 (1959).

46.    Moreover, administrative agencies possess only those powers granted by statute, and actions exceeding delegated authority are ultra vires and void. See City of Arlington v. FCC, 569 U.S. 290, 297 (2013); Stanson v. Mott, 17 Cal.3d 206, 210 (1976). Plaintiff respectfully submits that the BRN's failure to ensure lawful exercise of discretionary authority materially undermines the validity of the entire disciplinary framework initiated against Plaintiff.

## FAILURE OF DUE PROCESS AND PROBABLE CAUSE

47.    Defendant Melby's declaration further confirms that Melby — the designated Executive Officer acting on behalf of the BRN — never personally reviewed the evidentiary materials or independently evaluated whether probable cause existed to conclude that Plaintiff was mentally unfit to practice nursing.

48.    This omission is constitutionally significant because a Section 820 Order is not a ministerial administrative formality. It is a discretionary, quasi-judicial enforcement mechanism that directly alters a licensee's rights and compels psychiatric or medical examination under threat of disciplinary action, suspension, or revocation pursuant to California Business and Professions Code §§ 820-821.

49.    The Fourteenth Amendment requires constitutionally adequate procedures before the State may deprive an individual of a protected property interest. A professional nursing license constitutes such a protected property interest. See Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990); Barry v. Barchi, 443 U.S. 55, 64 (1979)

50.    Because the Section 820 Order directly initiated proceedings threatening Plaintiff's professional livelihood, the actual decision maker authorizing the order was constitutionally required to:

(i)    review the evidentiary materials;

(ii)    independently evaluate probable cause; and

(iii)    lawfully exercise discretionary judgment before issuing the order.

51.    Plaintiff respectfully submits that Melby's declaration demonstrates that no such constitutionally required review occurred. Accordingly, the order was issued without lawful administrative review, without adequate determination of probable cause, and without proper procedural safeguards required by the Due Process Clause.

52.    The Report and Recommendation improperly assumes the validity of the Section 820 proceedings while failing to address whether the initiating order itself was constitutionally defective. Plaintiff respectfully submits that the State cannot constitutionally deprive an individual of a professional license through proceedings initiated by an order issued without lawful authorization or meaningful administrative review.

### PROCEDURAL INVALIDATION (VOID AB INITIO)

53.    Plaintiff respectfully submits that substantial grounds exist to invalidate the Section 820 Order pursuant to California Code of Civil Procedure § 1094.5 because the order lacked lawful administrative foundation from inception.

54.    Under California law, actions taken by an administrative agency without lawful authority are void ab initio — void from the beginning. See American Federation of Labor v. Unemployment Ins. Appeals Bd., 13 Cal.4th 1017, 1023 (1996). Administrative agencies possess only those powers expressly granted by statute, and acts exceeding delegated authority are invalid and unenforceable. See County of San Diego v. State of California, 15 Cal.4th 68, 109 (1997).

55.    Here, Defendant Melby's own declaration serves as direct evidentiary confirmation that:

(i)    she did not personally authorize the Section 820 Order;

(ii)    she did not review the underlying evidentiary materials;

10

and

**(iii)**    the BRN failed to follow the procedural chain of authority represented on the face of the order.

56.    Plaintiff respectfully submits that Melby's declaration therefore constitutes the "smoking gun" admission demonstrating that the agency failed to comply with its own internal procedures, statutory mandates, and constitutional obligations before initiating disciplinary proceedings against Plaintiff.

57.    Because the Accusation, allegations of noncompliance, default proceedings, RN license revocation, and NPDB reporting all flowed directly from the allegedly defective Section 820 Order, Plaintiff respectfully submits that the constitutional and procedural validity of all subsequent proceedings is materially compromised.

58.    The Report and Recommendation improperly bypasses this threshold issue by focusing solely upon Plaintiff's alleged noncompliance while failing to determine whether the initiating administrative order itself was lawfully authorized.

### ESTOPPEL AND AGENCY CONTRADICTIONS

59.    The BRN cannot easily correct this constitutional defect retroactively because Defendant Melby's declaration directly contradicts the face of the Section 820 Order itself.

60.    The order was signed "For" Defendant Melby, thereby communicating to Plaintiff, the Court, and the public that Melby personally reviewed and approved the order while another individual merely executed the physical signature. However, Melby later declared that Shannon Johnson acted as her designee and that Melby herself never reviewed or authorized the order.

61.    Plaintiff respectfully submits that these two positions are materially irreconcilable.

62.    If Shannon Johnson independently exercised delegated authority, the order should have identified Johnson as acting in the capacity of an authorized designee rather than signing "For" Melby. By contrast, signing "For" an executive official communicates that the named official personally exercised the underlying discretionary judgment.

63.    Under principles of judicial estoppel and equitable estoppel, parties and agencies may not advance inconsistent factual positions where doing so would

11

undermine judicial integrity or prejudice another party. *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001); *Jackson v. County of Los Angeles*, 60 Cal.App.4th 171, 183 (1997).

64.    Plaintiff respectfully submits that the contradiction between the face of the order and Melby's subsequent declaration materially undermines the procedural integrity and credibility of the BRN disciplinary proceedings.

## EVIDENTIARY AND CREDIBILITY IMPLICATIONS

### Impeaching the Board's Actions

65.    Defendant Melby's declaration is highly exculpatory to Plaintiff because it directly impeaches the BRN's own disciplinary paperwork and representations concerning the validity of the Section 820 proceedings.

66.    By admitting that she never personally reviewed, authorized, or issued the Section 820 Order executed in her name, the BRN's highest executive officer has effectively contradicted the agency's own representation regarding the identity of the actual decision maker and the procedural validity of the initiating disciplinary order.

67.    Plaintiff respectfully submits that this contradiction materially undermines the credibility and constitutional reliability of the disciplinary proceedings because the BRN represented throughout the proceedings that the Section 820 Order was lawfully authorized pursuant to proper administrative review.

68.    The declaration therefore materially strengthens Plaintiff's allegations that the proceedings were initiated without lawful authority and without constitutionally adequate safeguards.

### Fruit of the Poisonous Tree

69.    Plaintiff further respectfully submits that if the Section 820 Order was invalidly executed or issued without lawful authorization, then all proceedings and evidence flowing from that order are constitutionally tainted.

70.    Although the "fruit of the poisonous tree" doctrine traditionally arises in criminal contexts, courts recognize that governmental action flowing from constitutionally defective procedures may be invalidated where due process and fundamental fairness are implicated. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).

71. Here, the allegedly defective Section 820 Order served as the foundational administrative act underlying:

(i)     the Accusation;

(ii)    allegations of noncompliance;

(iii)   default proceedings;

(iv)   revocation of Plaintiff's RN license; and

(v)    reporting to the National Practitioner Data Bank.

72. Plaintiff respectfully submits that the BRN cannot constitutionally rely upon an unlawfully authorized administrative order to justify permanent destruction of Plaintiff's professional license, reputation, and livelihood.

### SEPARATE PETITION REGARDING THE TAKING OF THE RN LICENSE

73. Plaintiff further notes that Defendant Melby separately filed a restraining order petition against Plaintiff in which Melby allegedly stated that she took away Plaintiff's RN license "as part of her job." (See Melby Petition for ROS Against Plaintiff, **Exhibit 4, Pg)**. Plaintiff respectfully submits that this statement triggers two distinct legal frameworks concerning sovereign immunity and constitutional limitations upon official conduct.

### a)   Official Capacity and Sovereign Immunity

74. As Executive Officer of the BRN, Defendant Melby generally enjoys discretionary immunity under California Government Code § 820.2 for discretionary acts performed within the lawful scope of official duties. Similarly, certain quasi-judicial administrative actions may receive qualified or quasi-judicial immunity under federal law. See Butz v. Economou, 438 U.S. 478, 512-17 (1978).

### b)   Exception to Immunity

75. However, immunity doctrines do not protect officials acting outside lawful authority or violating clearly established constitutional rights. See Ex parte Young, 209 U.S. 123, 159-60 (1908); Hafer v. Melo, 502 U.S. 21, 30-31 (1991).

76. If Plaintiff's RN license was revoked through reliance upon a rob-signed, unauthorized, or constitutionally defective Section 820 Order that Melby

13

admits she never personally reviewed or authorized, Plaintiff respectfully submits that the resulting conduct falls outside protected discretionary immunity because:

    **(i)**    the order allegedly lacked lawful administrative authorization;

    **(ii)**    the proceedings were initiated without proper exercise of discretionary judgment; and

    **(iii)**    Plaintiff's protected property interests were deprived without constitutionally adequate procedures.

77. Plaintiff therefore respectfully submits that the alleged "taking" of Plaintiff's RN license constitutes unlawful ultra vires conduct and a due process violation rather than protected discretionary governmental action.

## PROCEDURAL STANDING OF THE NOTICE OF DEFENSE

### Premature but Effective Notice of Defense

78. Under California Government Code § 11506, a Notice of Defense ordinarily serves as the responsive pleading to a formal administrative Accusation. Plaintiff acknowledges that the Notice of Defense may have preceded formal service of the Accusation and therefore may have been procedurally premature in sequence.

79. However, Plaintiff respectfully submits that the filing nevertheless constituted a formal written administrative objection sufficient to place the BRN on notice that Plaintiff disputed the validity of the Section 820 proceedings and intended to challenge the accusations.

80. **The Board's acknowledgment of Plaintiff's Notice of Defense, combined with the subsequent issuance of the Accusation, demonstrates that the BRN had actual notice that Plaintiff objected to the validity of the proceedings and challenged the underlying Section 820 Order.**

81. Due process focuses upon meaningful notice and opportunity to be heard rather than rigid procedural technicalities alone. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

### Estoppel of Non-Compliance Charges

82. Plaintiff further respectfully submits that the BRN is estopped from pursuing disciplinary charges for alleged "failure to comply" with the Section 820

14

Order where the validity and authorization of the order itself are materially disputed.

83.    A licensee cannot constitutionally be disciplined for refusing to comply with a fraudulent, unauthorized, or void administrative directive. Administrative enforcement proceedings premised upon an unlawfully authorized order violate fundamental principles of due process and lawful administrative authority.

84.    Accordingly, Plaintiff respectfully submits that the BRN lacked lawful basis to pursue disciplinary charges based upon alleged noncompliance where the underlying Section 820 Order itself remains materially challenged as constitutionally defective, ultra vires, and void ab initio.

### CIVIL RIGHTS VIOLATION (42 U.S.C. § 1983)

85.    A professional nursing license constitutes a protected property interest under the Fourteenth Amendment to the United States Constitution. See Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990); Barry v. Barchi, 443 U.S. 55, 64 (1979). Accordingly, the government may not deprive an individual of such a license without constitutionally adequate procedures, lawful authority, and meaningful due process protections.

86.    Plaintiff respectfully submits that forcing a licensed professional into a compelled psychiatric or medical evaluation through use of a forged, unauthorized, rob-signed, or jurisdictionally defective Section 820 Order — and subsequently revoking that individual's professional license based upon alleged noncompliance with that order — constitutes a severe deprivation of civil rights under color of state law actionable pursuant to 42 U.S.C. § 1983.

87.    The record establishes that Defendant Melby later admitted she never personally reviewed, authorized, or approved the Section 820 Order executed in her name. Plaintiff respectfully submits that the BRN nevertheless advanced disciplinary proceedings, accusations, and revocation proceedings despite possessing actual knowledge that the initiating administrative order was constitutionally and procedurally defective.

88.    The deprivation suffered by Plaintiff extends far beyond ordinary administrative discipline. Plaintiff's RN license revocation was publicly posted through the BRN website and California Breeze system, permanently damaging Plaintiff's professional reputation, employability, and ability to secure comparable employment in the nursing profession. Plaintiff further alleges that the resulting NPDB reporting created continuing nationwide professional barriers and reputational harm.

89. Plaintiff respectfully submits that Defendants' conduct supports additional tort-based injuries including:

(i) intentional interference with prospective economic advantage;

(ii) intentional infliction of emotional distress;

(iii) reputational injury and defamation;

(iv) loss of earning capacity; and

(v) continuing professional and economic harm.

90. The Ninth Circuit recognizes that state actors acting under color of law may be held liable under § 1983 where they deprive an individual of constitutionally protected property or liberty interests through unlawful governmental conduct. See West v. Atkins, 487 U.S. 42, 48 (1988); Leer v. Murphy, 844 F.2d 628, 632-33 (9th Cir. 1988).

**VIOLATION OF PROCEDURAL DUE PROCESS (FOURTEENTH AMENDMENT)**

91. Under the California Administrative Procedure Act ("APA"), including California Government Code §§ 11500 et seq., a state administrative agency must follow constitutionally adequate and statutorily defined procedures before depriving an individual of a professional license or livelihood.

92. The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. A professional license is a recognized protected property interest, and a professional's reputation connected to continued employment and licensure constitutes a protected liberty interest under the "stigma-plus" doctrine. See Paul v. Davis, 424 U.S. 693, 701-10 (1976); Humphries v. County of Los Angeles, 554 F.3d 1170, 1185-86 (9th Cir. 2009), rev'd on other grounds, 562 U.S. 29 (2010).

93. Procedural due process requires:

(i) lawful governmental authority;

(ii) notice reasonably calculated to apprise affected parties;

(iii) meaningful opportunity to be heard; and

16

(iv)    fundamentally fair procedures before deprivation of protected interests. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); Mathews v. Eldridge, 424 U.S. 319, 333 (1976).

94.    Plaintiff respectfully submits that BRN Defendants bypassed these constitutional safeguards by advancing disciplinary proceedings to formal accusation and ultimate license revocation based upon a Section 820 Order that was allegedly void, unauthorized, and jurisdictionally defective from inception.

95.    Defendant Melby's declaration establishes that Melby never personally reviewed or authorized the order issued in her name. Plaintiff respectfully submits that proceeding with disciplinary enforcement despite knowledge of such defects constitutes a direct violation of procedural due process because the State relied upon an allegedly unlawful administrative act to deprive Plaintiff of a protected professional license.

96.    The right to meaningful hearing and fair administrative procedures cannot coexist with disciplinary proceedings built upon a void foundational order. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982) (procedural due process protects against arbitrary governmental deprivation of protected interests).

**VIOLATION OF SUBSTANTIVE DUE PROCESS (FOURTEENTH AMENDMENT)**

97.    Substantive due process protects citizens against arbitrary, irrational, capricious, and conscience-shocking governmental conduct. See County of Sacramento v. Lewis, 523 U.S. 833, 846-47 (1998); Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008).

98.    Plaintiff respectfully submits that allowing disciplinary proceedings to advance toward the ultimate professional penalty — revocation of Plaintiff's RN license and irreversible NPDB reporting — despite actual knowledge that the foundational Section 820 Order was allegedly invalid or unlawfully authorized constitutes arbitrary governmental overreach and abuse of official power.

99.    The resulting harm was catastrophic and permanent. Plaintiff alleges destruction of Plaintiff's professional career, continuing barriers to employment, reputational devastation, financial hardship, emotional distress, and loss of future earning capacity.

100.    Government officials act with deliberate indifference to constitutional rights when they knowingly permit constitutionally defective proceedings to

17

continue despite awareness of substantial procedural irregularities. See *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996).

101. Plaintiff respectfully submits that weaponizing administrative enforcement machinery to impose the ultimate professional sanction through reliance upon an allegedly void order fits squarely within the category of arbitrary and conscience-shocking governmental conduct prohibited by substantive due process principles.

## LOSS OF QUALIFIED / ABSOLUTE IMMUNITY

102. Board officials generally enjoy qualified immunity for discretionary administrative functions and quasi-judicial immunity for certain adjudicative functions performed within lawful authority. See *Butz v. Economou*, 438 U.S. 478, 512-17 (1978).

103. However, qualified immunity does not protect officials who violate clearly established constitutional rights or act outside lawful jurisdiction. See *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991).

104. Plaintiff respectfully submits that immunity protections become unavailable where officials proceed with disciplinary actions despite actual knowledge that the foundational administrative order was void, unauthorized, or unlawfully executed.

105. If the Section 820 Order was issued without lawful authorization, and Defendants nevertheless proceeded toward accusation, revocation, and NPDB reporting despite awareness of those defects, Plaintiff respectfully submits that such conduct exceeded protected discretionary authority and violated clearly established constitutional rights concerning due process and protected property interests.

106. Government officials are not entitled to immunity for ultra vires conduct or actions taken in clear absence of jurisdiction. See *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

## COLLUSION WITH ILLEGAL PREFILING ORDERS

107. Plaintiff further respectfully submits that BRN Defendants' alleged disregard of Plaintiff's cease-and-desist communications regarding the validity of the Section 820 Order, combined with their alleged participation in proceedings supporting Kaiser-related prefiling restrictions, demonstrates institutional bad faith and deliberate indifference to Plaintiff's constitutional rights.

18

**108.** Plaintiff alleges that despite being placed on notice concerning substantial defects in the Section 820 Order, BRN Defendants continued to advance disciplinary proceedings and allegedly supported procedural barriers limiting Plaintiff's ability to litigate related employment and constitutional claims.

**109.** Plaintiff respectfully submits that such conduct transforms what Defendants may characterize as mere administrative error into willful misconduct and abuse of process.

**110.** California law recognizes malicious prosecution where proceedings are initiated without probable cause and pursued with malice. See Sheldon Appel Co. v. Albert & Oliker, 47 Cal.3d 863, 871-72 (1989). Abuse of process similarly arises where legal or administrative procedures are used for improper collateral purposes rather than legitimate governmental objectives. See Rusheen v. Cohen, 37 Cal.4th 1048, 1056-57 (2006).

**111.** Plaintiff respectfully submits that using an allegedly defective Section 820 Order as leverage to support disciplinary action, reputational destruction, and procedural barriers to litigation plausibly supports claims involving abuse of process, malicious prosecution, and intentional infliction of emotional distress.

### CRIMINAL CONSPIRACY (18 U.S.C. § 241), 42 U.S.C. § 1985, AND 42 U.S.C. § 1983

**112.** Plaintiff respectfully submits that the cumulative procedural record plausibly supports allegations of coordinated conduct among multiple actors sufficient to establish the elements of conspiracy under 42 U.S.C. §§ 1983 and 1985.

**113.** The essential elements include:

**(i)** agreement or meeting of the minds;

**(ii)** interference with protected constitutional rights;

**(iii)** discriminatory or retaliatory intent;

**(iv)** overt acts in furtherance of the conspiracy; and

**(v)** resulting injury or deprivation.

**114.** A conspiracy under § 1983 or § 1985 need not be proven through direct evidence of an express written agreement. Circumstantial evidence, coordinated

19

conduct, suspicious timing, and parallel actions may establish a tacit agreement among participants. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970); Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010).

115. Plaintiff respectfully submits that the alleged overlap between:

(i)     the issuance of the allegedly defective Section 820 Order;

(ii)     the simultaneous denial of Plaintiff's employment relationship by Kaiser entities;

(iii)     expansion of KFH's judgment to non-adjudicated entities;

(iv)     pursuit of vexatious litigant restrictions;

(v)     revocation of Plaintiff's RN license; and

(vi)     resulting NPDB reporting,

116. collectively support a plausible inference of coordinated conduct designed to deprive Plaintiff of constitutional rights, professional livelihood, access to the courts, and meaningful ability to obtain redress.

## I.     AGREEMENT AND TARGETED RIGHT

117. Plaintiff respectfully submits that the cumulative conduct alleged throughout these proceedings demonstrates a coordinated effort to interfere with and deprive Plaintiff of rights secured by the United States Constitution and federal law, including:

(i)     the right to procedural due process under the Fourteenth Amendment;

(ii)     the right to equal protection;

(iii)     the right of access to the courts;

(iv)     the right to pursue lawful employment and maintain a protected professional license; and

(v)     the right to seek redress for unlawful employment discrimination and retaliation under federal and California law.

118. The objective of the alleged coordinated conduct was not merely to defend

(i) creating a false and professionally devastating mental health narrative;

(ii) against litigation, but to systematically prevent Plaintiff from meaningfully exercising constitutional and statutory rights by:weaponizing BRN disciplinary machinery through an allegedly unauthorized Section 820 Order;

(iii) eliminating Plaintiff's ability to pursue employment-related claims against Kaiser-affiliated entities;

(iv) imposing procedural barriers through prefiling restrictions; and

(v) permanently damaging Plaintiff's professional reputation, employability, and credibility through RN license revocation and NPDB reporting.

119. Plaintiff respectfully submits that the alleged plan has already been executed substantially as alleged through a sequence of interconnected procedural events that collectively deprived Plaintiff of meaningful access to the courts and destroyed Plaintiff's professional livelihood.

120. Plaintiff has alleged throughout these proceedings that the BRN lacked lawful probable cause to issue the Section 820 Order. Plaintiff further alleges that Defendants utilized the allegedly unauthorized order to construct and perpetuate a false mental health narrative designed to discredit Plaintiff professionally and legally, knowing that a BRN-issued mental health determination would carry extraordinary weight and would be difficult for Plaintiff to meaningfully challenge once disciplinary proceedings commenced.

121. Plaintiff respectfully submits that the practical effect of the alleged conduct was to:

(i) undermine Plaintiff's credibility in ongoing litigation;

(ii) impair Plaintiff's ability to pursue employment claims;

(iii) portray Plaintiff as mentally unstable or vexatious;

(iv) justify restrictive prefiling orders;

(v) and create permanent reputational and career-ending consequences

21

through RN license revocation and NPDB reporting.

122. The alleged coordinated actions include, but are not limited to:

(i) Gary Carlin allegedly misrepresenting SCPMG and KFHP as Doe defendants despite the existence of a retainer agreement and communications reflecting involvement of multiple Kaiser entities;

(ii) KFH allegedly misrepresenting the FEHA employment relationship while obtaining summary judgment limited only to KFH;

(iii) Kaiser Defendants later entering and enforcing judgment as though all Kaiser entities and Doe defendants had been adjudicated, despite SCPMG and KFHP never obtaining summary judgment on the merits;

(iv) KFH allegedly pursuing vexatious litigant and prefiling restrictions after Plaintiff attempted to pursue separate litigation involving SCPMG;

(v) BRN Defendants allegedly issuing and enforcing an unauthorized Section 820 Order while simultaneously advancing disciplinary proceedings leading to revocation of Plaintiff's RN license and reporting to the NPDB;

(vi) SCPMG allegedly obtaining or benefiting from prefiling restrictions after Plaintiff attempted to include BRN-related allegations in separate litigation;

(vii) and Defendants allegedly maintaining a continuing false narrative over several years while portraying Plaintiff's reactions to the resulting harm as justification for further adverse actions.

123. Plaintiff respectfully submits that these actions did not occur in isolation. Rather, the alleged conduct occurred in rapid succession and often simultaneously without clear legitimate justification, supporting a plausible inference of coordinated action and shared objectives among the participants.

124. The Ninth Circuit recognizes that conspiracy claims under 42 U.S.C. §§ 1983 and 1985 may be established through circumstantial evidence, coordinated conduct, suspicious timing, and tacit understanding among participants. Direct written agreements are not required. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970); Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010).

**Meeting of the Minds**

125. Plaintiff respectfully submits that the record plausibly supports the

existence of a tacit agreement or "meeting of the minds" among participants.

126. For example:

(i)     Gary Carlin allegedly filed litigation naming only KFH while listing SCPMG and KFHP as Doe defendants despite retainer agreement and documentary evidence allegedly reflecting broader Kaiser involvement;

(ii)     KFH later entered judgment purporting to apply globally to Doe defendants even though the motion for summary judgment was limited solely to KFH and no separate adjudication or stipulation dismissed SCPMG or KFHP.

127. Plaintiff respectfully submits that these procedural maneuvers collectively benefited non-adjudicated Kaiser entities while simultaneously depriving Plaintiff of meaningful opportunity to litigate claims concerning the actual employment relationship.

### Suspicious Timing

128. Plaintiff further respectfully submits that the timing of events supports a plausible inference of coordinated conduct.

129. Specifically:

(i)     on July 14, 2022, KFH obtained summary judgment based upon alleged absence of an FEHA employment relationship; and

(ii)     on the same date, the BRN issued the challenged Section 820 Order based upon reports allegedly submitted by Plaintiff's manager associated with SCPMG.

130. Plaintiff respectfully submits that the simultaneous advancement of:

(i)     employment-related defenses denying Plaintiff's employment status; and

(ii)     disciplinary proceedings questioning Plaintiff's mental fitness,

(iii)     supports a reasonable inference that the actions were strategically interconnected rather than coincidental.

23

**Shared Motives and Strategic Gain**

131. Plaintiff further alleges that Defendants shared a common strategic interest in preventing Plaintiff from pursuing further litigation and accountability concerning the underlying employment-related conduct.

132. Plaintiff alleges that:

(i)    Gary Carlin later submitted declarations supporting KFH's position;

(ii)    KFH and related entities allegedly pursued unlawful prefiling restrictions;

(iii)    SCPMG and KFHP allegedly obtained practical immunity from litigation without adjudication on the merits;

(iv)    and BRN disciplinary proceedings allegedly reinforced narratives undermining Plaintiff's credibility and professional standing.

133. Plaintiff respectfully submits that Defendants stood to gain strategically from the resulting harm because:

(i)    Plaintiff's credibility was undermined;

(ii)    Plaintiff's employment claims were weakened;

(iii)    Plaintiff faced increased procedural barriers to litigation;

(iv)    Plaintiff's professional license was revoked; and

(v)    Plaintiff suffered permanent reputational and economic damage.

134. A conspiracy agreement under §§ 1983 and 1985 need not be formal, written, or expressly stated. A tacit understanding or implied combination to act in concert is legally sufficient where coordinated conduct and circumstantial evidence plausibly demonstrate shared objectives and joint participation in the deprivation of constitutional rights. See United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989); Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1301-02 (9th Cir. 1999)

135. The entities commonly referred to as "Kaiser" consist of **separate and distinct legal entities**, including Defendant Kaiser Foundation Hospitals ("KFH"),

24

Kaiser Foundation Health Plan, Inc. ("KFHP"), and Southern California Permanente Medical Group ("SCPMG"). (**Exhibit A, Kaiser's disclosure**).

**136.** A summary judgment ruling issued on July 14, 2022 was limited solely to KFH;

**137.** SCPMG and KFHP were not adjudicated parties to the motion;

**138. A judgment entered on  September 21, 2022, was expanded and enforced globally against non-moving entities listed as Doe defendants**;

**139.** Prefiling orders issued on December 22, 2022, were predicated upon that expanded interpretation; and

**140.** continued enforcement of those orders would perpetuate substantial injustice and ongoing financial harm to Plaintiff.

**141.** Based upon that interpretation, the Court imposed a $10,000 security requirement pursuant to California's vexatious litigant statutes under California Code of Civil Procedure section 391 et seq., expressly relying upon the premise that the employment issues had already been conclusively determined in favor of "***Kaiser***."

**142.** However, **SCPMG** and **KFHP** were never parties to KFH's motion for summary judgment, were never adjudicated on the merits, and never obtained lawful judgment concerning Plaintiff's employment relationship. Nevertheless, those entities received the benefit of a judgment they never obtained, and Plaintiff was effectively barred from litigating the same conduct that contributed to the revocation of Plaintiff's RN license and destruction of Plaintiff's livelihood.

**Discriminatory intent may be established through:**

**(i)** adverse actions explicitly based upon a protected characteristic;

**(ii)** statistical or empirical evidence demonstrating a discriminatory pattern;
and

**(iii)** unexplained departures from normal procedures, administrative rules, or substantive decision-making protocols. See Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 266-68 (1977).

**143.** Plaintiff respectfully submits that Defendants' conduct demonstrates

25

disproportionate and targeted actions centered around Plaintiff's alleged mental health, including:

    **(i)**    SCPMG's termination of Plaintiff based upon perceived mental health concerns;

    **(ii)**    KFH communications to Gary Carlin regarding Plaintiff's mental health;
and

    **(iii)**    Defendant Melby's allegedly invalid Section 820 Order based upon reports submitted by Plaintiff's manager, an SCPMG employee.

**144.** Plaintiff further alleges disproportionate procedural impact where Defendant Carlin intentionally sued only KFH while listing SCPMG and KFHP as Doe defendants, thereby allowing related Kaiser entities to later benefit from judgment protections without adjudication on the merits. Plaintiff respectfully submits that these coordinated actions support a plausible inference of discriminatory and retaliatory intent.

**145.** The relevant facts are straightforward and undisputed in the record:

**146.** On or about April 21, 2022, Defendant Kaiser Foundation Hospitals ("KFH") filed a motion for summary judgment asserting that it was not Plaintiff's employer and therefore could not be held liable under FEHA. The motion was limited in scope and was brought solely by KFH. It did not purport to resolve claims against any other Kaiser-affiliated entity, nor did it address the role of KFHP, SCPMG, or Doe defendants.(**Exhibit B**).

**147.** On April 29, 2026, with a court reporter present, the Court confirmed on the record that **only KFH received summary judgment on July 14, 2022**. This is critical. It establishes that the ruling was limited in scope. (**Exhibit C**)

**148.** At the **July 14, 2022** hearing, the Court stated on the record that "Kaiser is out," reflecting dismissal as to the moving party. (**Exhibit D**).

**149.** On **September 21, 2022**, KFH entered judgment in its favor, asserting that it had obtained judgment in its entirety and that Doe defendants were dismissed. (**Exhibit E**).

150. However, Doe defendants were **not adjudicated** in the July 14, 2022 ruling, and the corresponding minute order reflects that the matter was **continued to September 29, 2022**, confirming that issues remained pending. (**Exhibit F**).

151. In its **October 18, 2022** opposition, KFH represented that it had obtained summary judgment **on behalf of all Kaiser entities**, and asserted that no other Kaiser entity should be subject to further litigation costs. (**Exhibit G**).

152. KFH has since consistently maintained that the July 14, 2022 summary judgment **disposed of the entire action**, notwithstanding that the ruling was limited to KFH. (**Exhibit H**).

153. A material change arises from the *identification of doe defendants* and a state court clarification confirming that **only Kaiser Foundation Hospitals ("KFH") was granted summary judgment on July 14, 2022**, and that no other defendants—including Doe defendants—were adjudicated.

154. This clarification is critical for the following reasons:

### Doe Defendants Remained Active Parties

155. Because the ruling was limited to KFH, Doe defendants were not adjudicated and remained active parties. Under California law, summary judgment applies only to the **moving party and issues presented**. Cal. Code Civ. Proc. § 437c(a); see also *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1169 (judgment exceeding scope of issues violates due process).

### Procedurally Improper Entry of Judgment

156. Dismissal of Doe defendants requires a formal request, amendment, or court order initiated by the plaintiff. See Cal. Code Civ. Proc. § 474. A defendant who has obtained summary judgment lacks authority to unilaterally dismiss other parties absent stipulation or adjudication. Accordingly, the judgment entered on September 21, 2022 exceeded the lawful scope of the ruling.

### Denial of a Fair Hearing / Extrinsic Fraud

157. Extrinsic fraud arises where a party is deprived of the opportunity to fully present her case. See *Vu v. Prudential Property & Casualty Ins. Co.* (2001) 26 Cal.4th 1142, 1148; *Olivera v. Grace* (1942) 19 Cal.2d 570, 575.

27

158.   Here, KFH's act of entering judgment purporting to include Doe defendants—without notice, motion, or adjudication—resulted in dismissal of those defendants without a hearing, thereby preventing full litigation of Plaintiff's claims.

### Prejudice Resulting from Loss of Doe Allegations (Privity Concerns)

159.   Doe defendants serve as placeholders for unknown parties whose identities may be discovered during litigation. See Cal. Code Civ. Proc. § 474. Their improper dismissal prevented Plaintiff from naming any Kaiser entity, thereby expanding the preclusive effect of the judgment beyond its lawful scope and implicating principles of privity and claim preclusion.

### Improper Bar to Subsequent Claims

160.   The expanded interpretation of the judgment barred Plaintiff from pursuing claims against other Kaiser entities arising from same injury, even though the statute of limitations had not expired. Plaintiff's termination occurred on **March 18, 2021**, and judgment was entered on **September 21, 2022**. (**Exhibit I**)

161.   The prefiling orders entered on December 22, 2022 were predicated on a finding that Defendant "**Kaiser" was not Plaintiff's employer, thereby rendering Plaintiff's claims without merit and supporting a finding under California Code of Civil Procedure § 391(b) that Plaintiff was relitigating matters already decided.** (**Exhibit J**)

162.   The Court's **February 27, 2026** minute order similarly states that judgment in favor of "Kaiser" was fatal to Plaintiff's employment claims under the California Fair Employment and Housing Act, thereby adopting a global interpretation of a ruling that was limited in scope. (**Exhibit K)**

163.   Under California Code of Civil Procedure § 437c, summary judgment is limited to the moving party and the issues presented. A judgment that exceeds that scope raises due process concerns. See In re Marriage of Lippel (1990) 51 Cal.3d 1160.

164.   The discrepancy between:

(i)   The courts prior determination that plaintiff was not an employee of "Kaiser" as a matter of law;

(ii)   KFH's assertion that judgment applies to all Kaiser entities; and

    **(iii)**    The Court's later adoption of that broader interpretation;

    **(iv)**    Identification of doe defendants;

    **(v)**    The Court's oral confirmation that only KFH received summary judgment;

**165.** constitutes a **material change in the factual and procedural foundation** of the prefiling orders.

**OVERT ACT**

**166.** Plaintiff respectfully submits that Defendants committed multiple overt acts in furtherance of the alleged agreement to deprive Plaintiff of constitutional rights, professional livelihood, and meaningful access to the courts.

**167.** An overt act is a physical manifestation or affirmative action taken by a member of a conspiracy that advances or helps carry out the unlawful objective. See United States v. Skillman, 922 F.2d 1370, 1375 (9th Cir. 1990). The overt act itself need not be unlawful in isolation; rather, it must further the objectives of the alleged conspiracy.

**168.** Here, Plaintiff respectfully submits that BRN Defendants' continued advancement of disciplinary proceedings despite actual knowledge concerning the alleged invalidity and unauthorized nature of the Section 820 Order constitutes a direct overt act in furtherance of the conspiracy.

**169.** Plaintiff alleges that Defendants possessed actual knowledge that:

    **(i)**    Defendant Melby never personally reviewed or authorized the Section 820 Order issued in her name;
(ii) the order allegedly lacked lawful administrative foundation;

    **(ii)**    And substantial jurisdictional and constitutional defects existed concerning the disciplinary proceedings.

**170.** Despite such knowledge, Defendants allegedly:

    **(i)**    proceeded with the Accusation;

    **(ii)**    pursued allegations of noncompliance;

    **(iii)**    advanced revocation proceedings against Plaintiff's RN license;

    **(iv)**    reported Plaintiff to the National Practitioner Data Bank ("NPDB"); and

**(v)** continued supporting procedural barriers impairing Plaintiff's ability to seek judicial relief.

**171.** Plaintiff respectfully submits that these actions constitute overt acts because they materially advanced the alleged objective of:

**(i)** creating a false mental health narrative;

**(ii)** discrediting Plaintiff professionally and legally;

**(iii)** undermining Plaintiff's employment-related claims;

**(iv)** restricting Plaintiff's access to the courts; and

**(v)** inflicting permanent reputational and economic harm.

**172.** The overt acts alleged here therefore demonstrate both the existence of coordinated conduct and the intentional execution of actions designed to further the alleged conspiracy under 42 U.S.C. §§ 1983 and 1985

**173.** Plaintiff is informed and believes, and thereon alleges, that over a period exceeding four years, Defendants consistently maintained contradictory, misleading, and irreconcilable positions regarding the existence of an employment relationship with Plaintiff, while simultaneously attempting to use those inconsistent positions to shield multiple Kaiser-affiliated entities from liability.

**174.** Throughout these proceedings, Defendants repeatedly argued that Plaintiff was not employed by "Kaiser," and therefore could not establish the foundational employment relationship necessary to proceed under the California Fair Employment and Housing Act ("FEHA").

**175.** At the same time, however, Defendants exercised authority, control, and decision-making power that are legally reserved to an employer, including authority concerning:

**(i)** medical leave determinations;

**(ii)** employment-related restrictions;

**(iii)** Fitness-for-Duty ("FFD") directives;

**(iv)** evaluation of Plaintiff's ability to work;

(v)    employment compliance procedures; and

(vi)    actions affecting Plaintiff's continued professional standing and RN licensure.

176.   Records submitted in this matter demonstrate that Plaintiff's medical leave issues were handled under "Kaiser Permanente," and that Plaintiff was subjected to a Fitness-for-Duty process. (**Exhibit L**.)

177.   Such actions are not incidental administrative functions. They are core employment functions reflecting supervision, direction, control, and authority over an employee. Plaintiff respectfully submits that Defendants cannot simultaneously deny the existence of an employment relationship while exercising the very authority and control that California law recognizes as indicate of employment.

178.   California courts recognize that the existence of an employment relationship depends upon the totality of circumstances, including the right to control work performance, authority over employment conditions, and participation in employment-related decision-making. See *Martinez v. Combs* (2010) 49 Cal.4th 35, 64; *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124-125.

179.   In *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124, the Court explained that the "right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed," is among the most significant factors in determining employer status. Likewise, California law recognizes joint-employer and integrated-enterprise theories where affiliated entities collectively exercise control over employment conditions and workplace decisions. See *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737.

180.   Plaintiff's separate action involving SCPMG was predicated upon precisely those theories, including allegations that SCPMG and related Kaiser entities exercised joint authority concerning Plaintiff's employment, workplace restrictions, and professional status. Instead of permitting those issues to be adjudicated on their merits, Defendants relied upon KFH's narrowly tailored summary judgment ruling and later transformed that limited ruling into a global adjudication benefiting all Kaiser entities.

181.   Plaintiff respectfully submits that this strategy created a fundamentally unfair procedural framework whereby:

(i)    KFH denied employer status;

31

(ii)    SCPMG and KFHP avoided adjudication entirely;

(iii)   judgment was nevertheless expanded to protect all entities;

(iv)    Plaintiff's related SCPMG claims were effectively foreclosed; and

(v)     Plaintiff was subsequently labeled a vexatious litigant based upon claims that were never fully adjudicated.

182.    The resulting prejudice was devastating.

183.    Plaintiff lost the ability to pursue claims concerning the same underlying employment conduct that contributed to the revocation of Plaintiff's RN license, destruction of Plaintiff's professional career, loss of income, inability to secure comparable employment, and continuing financial hardship.

184.    Plaintiff respectfully submits that these harms were not caused merely by adverse rulings, but by the improper expansion and enforcement of a judgment beyond the parties and issues actually adjudicated by the Court.

185.    California law recognizes that extrinsic fraud exists where a party has been deprived of the opportunity to fully present her case or obtain a fair adversarial hearing. In *Olivera v. Grace* (1942) 19 Cal.2d 570, 575, the California Supreme Court held:
"Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense."

186.    Similarly, in *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471, the California Supreme Court recognized that equitable relief may be granted where a party has been deprived of a fair opportunity to present claims due to fraud, concealment, or unfair conduct. In *Vu v. Prudential Property & Casualty Insurance Company* (2001) 26 Cal.4th 1142, 1149, the California Supreme Court further confirmed that equitable relief is appropriate where a party has been denied a fair adversarial proceeding through fraud or procedural unfairness.

187.    Plaintiff respectfully submits that Defendants' conduct falls squarely within these principles because Defendants:

(i)     denied the existence of an employment relationship;

(ii)    simultaneously exercised employer authority;

(iii)    secured judgment solely for KFH;

(iv)    later asserted that judgment applied globally to all Kaiser entities;

(v)    used that expanded interpretation to invoke claim preclusion and vexatious litigant restrictions; and

(vi)    prevented Plaintiff from obtaining adjudication against SCPMG and KFHP on the merits.

188.    The procedural irregularities became even more significant once the Court imposed a $10,000 security requirement pursuant to California Code of Civil Procedure section 391 et seq., based upon the conclusion that Plaintiff had "no probability" of prevailing because "Kaiser" had already defeated the employment allegations.

189.    However, the entities whose conduct formed the basis of Plaintiff's joint-employer allegations—SCPMG and KFHP—had never actually obtained summary judgment and had never litigated those issues on the merits. Plaintiff respectfully submits that the later enforcement of prefiling orders therefore rested upon a materially inaccurate procedural foundation.

190.    The Court's April 29, 2026 clarification confirming that only KFH obtained summary judgment materially undermines the premise upon which the later prefiling restrictions were imposed.

191.    The clarification establishes that:

(i)    SCPMG and KFHP were never adjudicated parties to the motion;

(ii)    Doe defendants were never properly resolved through summary judgment;

(iii)    the judgment was later interpreted beyond its lawful scope; and

(iv)    Plaintiff was deprived of any meaningful opportunity to litigate claims against the entities allegedly responsible for the underlying employment conduct.

192.    California courts possess broad inherent equitable authority to vacate judgments and orders where enforcement would perpetuate injustice. See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981-982. In *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981, the California Supreme Court held that equitable relief is

33

appropriate where "extrinsic factors have unfairly cost a party a hearing on the merits."

193. Plaintiff respectfully submits that the circumstances presented here involve precisely such extrinsic factors because Plaintiff was effectively deprived of any meaningful adjudication regarding SCPMG and KFHP, while those entities nevertheless received the practical benefit of complete immunity arising from a judgment they never actually obtained.

## II. INJURY AND DEPRIVATION

194. Plaintiff respectfully submits that, as a direct result of Defendants' coordinated conduct and unconstitutional actions, Plaintiff suffered substantial injury to property, professional livelihood, reputation, and constitutionally protected rights secured under the United States Constitution and federal law.

195. The Fourteenth Amendment protects individuals from deprivation of liberty or property without due process of law. A professional nursing license constitutes a protected property interest, and Plaintiff respectfully submits that Defendants unlawfully deprived Plaintiff of that interest through reliance upon an allegedly unauthorized and constitutionally defective Section 820 Order. See Mishler v. Nevada State Bd. of Medical Examiners, 896 F.2d 408, 409-10 (9th Cir. 1990).

196. Plaintiff further alleges deprivation of the constitutional right of access to the courts through the use of prefiling restrictions, coordinated litigation conduct, and disciplinary proceedings allegedly designed to undermine Plaintiff's credibility and ability to pursue legal redress. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

### The NPDB Factor

197. Plaintiff respectfully submits that reporting Plaintiff to the National Practitioner Data Bank ("NPDB") constitutes one of the most severe and irreversible injuries resulting from Defendants' conduct.

198. The NPDB is routinely queried by hospitals, healthcare systems, staffing agencies, insurance networks, and state licensing boards. An adverse NPDB report can permanently impair a healthcare professional's ability to obtain employment, maintain privileges, secure contracts, or continue practicing within the medical profession.

34

**199.** Plaintiff alleges that BRN Defendants knowingly submitted false, misleading, or constitutionally tainted information to the NPDB despite possessing actual knowledge concerning the alleged invalidity of the Section 820 Order and resulting disciplinary proceedings. Plaintiff respectfully submits that the resulting NPDB report caused continuing reputational destruction and permanent damage to Plaintiff's professional career.

**200.** Accordingly, Plaintiff respectfully requests equitable relief, including an order compelling the California Board of Registered Nursing to remove, withdraw, or correct the adverse NPDB report associated with Plaintiff.

### Economic and Reputational Harm

**201.** As a direct and proximate result of Defendants' conduct, Plaintiff alleges substantial damages including:

**(i)**     lost wages and back pay;

**(ii)**    loss of future earning capacity;

**(iii)**   destruction of professional opportunities;

**(iv)**    reputational harm and defamation;

**(v)**     emotional distress and mental anguish;

**(vi)**    professional stigma;

**(vii)**   and continuing financial hardship.

**202.** Plaintiff further respectfully submits that Defendants' conduct was very intentional and was carried out with malice, oppression, fraud, deliberate indifference, and reckless disregard for Plaintiff's constitutional rights and professional livelihood.

**203.** Plaintiff additionally seeks recovery of equitable relief, compensatory damages, consequential damages, attorney's fees, litigation costs, and any additional legal or equitable remedies authorized pursuant to 42 U.S.C. §§ 1983 and 1988 and applicable state law.

**204.** The record now establishes that only KFH moved for and obtained summary judgment. Nevertheless, subsequent proceedings repeatedly treated the

35

judgment as though all Kaiser-affiliated entities had prevailed on the merits concerning Plaintiff's employment relationship.

205. That expanded interpretation became the foundation for the Court's determination that Plaintiff had "no probability" of prevailing under California Code of Civil Procedure section 391.1.

206. As a direct consequence, Plaintiff was ordered to furnish a $10,000 security undertaking and was effectively prevented from pursuing claims against SCPMG arising from the same underlying employment conduct. Plaintiff respectfully submits that the resulting prejudice was extraordinary because SCPMG and KFHP received the practical benefit of complete litigation immunity without ever obtaining adjudication on the merits. California law does not permit nonmoving parties to obtain judgment through implication, procedural expansion, or collateral interpretation.

207. In *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166-1167, the California Supreme Court held that a judgment exceeding the issues properly before the Court violates due process because parties are entitled to notice and an opportunity to be heard before adjudication occurs. Similarly, in *People v. $6,500 United States Currency* (1989) 210 Cal.App.3d 1548, 1553, the court held that relief granted beyond the scope of noticed issues constitutes a denial of procedural due process.

208. Plaintiff respectfully submits that due process concerns are particularly acute here because the judgment was later used not only to terminate claims, but also to impose future filing restrictions that substantially impaired Plaintiff's access to the courts. The California vexatious litigant statutes under California Code of Civil Procedure section 391 et seq. are intended to prevent abuse of the judicial process, not to shield non-adjudicated parties from legitimate litigation arising from unresolved claims.

209. Here, the Court's April 29, 2026 clarification confirming that only KFH obtained summary judgment materially alters the foundation upon which the prefiling orders were entered.

210. That clarification establishes that:

(i) SCPMG and KFHP were never adjudicated through KFH's motion;

(ii) Doe defendants were not properly resolved through summary judgment;

36

**(iii)**    the judgment was later interpreted globally beyond its actual scope; and

**(iv)**    Plaintiff's inability to pursue SCPMG claims stemmed from an expanded interpretation of the judgment rather than actual adjudication on the merits.

**211.**    Plaintiff respectfully submits that the continuing impact of those rulings has been devastating. Plaintiff lost the ability to litigate claims arising from the same employment conduct that contributed to the revocation of Plaintiff's RN license, destruction of Plaintiff's professional reputation, and continuing economic hardship.

**212.**    The financial harm remains ongoing and severe, including loss of earning capacity, inability to practice within Plaintiff's profession, emotional distress, reputational damage, and continuing barriers to obtaining meaningful employment. California courts possess broad equitable authority to vacate orders where necessary to prevent a miscarriage of justice.

**213.**    In *Olivera v. Grace* (1942) 19 Cal.2d 570, 576, the California Supreme Court held that courts retain inherent equitable power to grant relief where enforcement of a judgment would be unjust or unconscionable. Likewise, in *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982, the Court recognized that equitable relief is appropriate where extrinsic circumstances unfairly deprive a litigant of a hearing on the merits. Plaintiff respectfully submits that this matter presents precisely such circumstances because Plaintiff never received meaningful adjudication concerning SCPMG and KFHP, yet those entities nevertheless obtained the practical protection of a judgment they never lawfully secured.

**CONCLUSION**

**214.**    For the foregoing reasons, Plaintiff respectfully objects to the Magistrate Judge's Report and Recommendation and respectfully requests that the District Court decline to adopt the portions recommending dismissal of the BRN Defendants and related constitutional claims without leave to amend.

**215.**    Plaintiff respectfully submits that the Report and Recommendation failed to meaningfully address the supplemental briefing and evidentiary issues concerning the validity and authorization of the Section 820 Order, despite the issue becoming central during oral arguments on Plaintiff's Motion for Summary Judgment and subsequent court-ordered briefing. Plaintiff further submits that the validity of the signature and authorization underlying the Section 820 Order is directly relevant to Plaintiff's conspiracy claims, due process claims, and allegations concerning unlawful coordinated conduct by Defendants.

**216.** Plaintiff respectfully submits that Defendant Melby's declaration disclaiming personal review or authorization of the Section 820 Order materially alters the constitutional and procedural analysis concerning the disciplinary proceedings, RN license revocation, and resulting NPDB reporting. Because these issues remain unresolved and directly impact Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985, dismissal without leave to amend would be premature and contrary to the interests of justice.

**217.** Accordingly, Plaintiff respectfully requests that the Court permit Plaintiff leave to file a Second Amended Complaint so that both the BRN Defendants, Kaiser Defendants and Gary Carlin may fully address the newly presented evidence and issues concerning:

**(i)** the validity of the Section 820 Order;

**(ii)** the alleged procedural defects surrounding the disciplinary proceedings;

**(iii)** the scope of the Kaiser judgment; and

**(iv)** the coordinated actions alleged throughout the complaint.

**218.** Plaintiff further respectfully requests that the Court dismiss Defendant Gillian Friedman from this lawsuit without prejudice.

**219.** Plaintiff respectfully submits that substantial constitutional, procedural, and equitable concerns remain unresolved and should be adjudicated on a complete factual record rather than terminated at the pleading stage.

**DATED:** May 25, 2026

Respectfully submitted,

Esther Tendo Atam

Plaintiff in Pro Per

13621 Arcturus Ave.

38

Gardena, CA 90249

Natashchan1@yahoo.com

# EXHIBITS

# EXHIBIT 1

ROB BONTA
Attorney General of California
KIM KASRELIOVICH
Supervising Deputy Attorney General
THOMAS L. RINALDI
Supervising Deputy Attorney General
State Bar No. 206911
300 So. Spring Street, Suite 1702
Los Angeles, CA 90013
 Telephone: (213) 269-6310
 Facsimile: (916) 731-2126
*Attorneys for Petitioner*

**BEFORE THE**
**BOARD OF REGISTERED NURSING**
**DEPARTMENT OF CONSUMER AFFAIRS**
**STATE OF CALIFORNIA**

| | |
|---|---|
| In the Matter of the Petition and Order Compelling Mental and/or Physical Examination of:<br><br>**ESTHER TENAO ATAM**<br>13621 Arcturus Ave<br>Gardena, CA 90249<br><br>Registered Nurse License No. 761179<br><br>                      Respondent. | Case No. 4002021005658<br><br>**PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION**<br><br>[Bus. & Prof. Code § 820] |

Petitioner alleges:

## PARTIES

1.     Loretta Melby, R.N., M.S.N. (Petitioner) brings this Petition and Order Compelling Mental and/or Physical Examination solely in her official capacity as the Executive Officer of the Board of Registered Nursing ("Board"), Department of Consumer Affairs.

2.     On or about October 8, 2009, the Board of Registered Nursing issued Registered Nurse License Number 761179 to Esther Tenao Atam (Respondent).  The Registered Nurse License was in full force and effect at all times relevant to the charges brought in this Petition and will expire on September 30, 2023, unless renewed.

///

1

Petition and Order Compelling Mental and/or Physical Examination

**JURISDICTION**

3.     This Petition and Order Compelling Mental and/or Physical Examination is brought before the Board, Department of Consumer Affairs under the authority of the following laws.  All section references are to the Business and Professions Code ("Code") unless otherwise indicated.

4.     Section 820 of the Code states:

Whenever it appears that any person holding a license, certificate or permit under this division or under any initiative act referred to in this division may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency.  The report of the examiners shall be made available to the licentiate and may be received as direct evidence in proceedings conducted pursuant to Section 822.

5.     Section 821 of the Code provides that the licentiate's failure to comply with an order issued under section 820 shall constitute grounds for the suspension or revocation of the licentiate's certificate of license.

6.     Section 822 of the Code states:

If a licensing agency determines that its licentiate's ability to practice his or her profession safely is impaired because the licentiate is mentally ill, or physically ill affecting competency, the licensing agency may take action by any one of the following methods:

(a) Revoking the licentiate's certificate or license.

(b) Suspending the licentiate's right to practice.

(c) Placing the licentiate on probation.

(d) Taking such other action in relation to the licentiate as the licensing agency in its discretion deems proper.

The licensing section shall not reinstate a revoked or suspended certificate or license until it has received competent evidence of the absence or control of the condition which caused its action and until it is satisfied that with due regard for the public health and safety the person's right to practice his or her profession may be safely reinstated.

7.     Section 2764 of the Code provides, in pertinent part, that the expiration of a license shall not deprive the Board of jurisdiction to proceed with a disciplinary proceeding against the licensee or to render a decision imposing discipline on the license.

///

2

Petition and Order Compelling Mental and/or Physical Examination

## CAUSE FOR MENTAL AND/OR PHYSICAL EXAMINATION
### (Possible Mental and/or Physical Illness Impairing Safe Practice)

8.    Respondent's ability to safely practice as a registered nurse may be impaired due to mental and/or physical illness. The circumstances are as follows:

9.    Respondent worked as a per diem nurse at Kaiser Permanente West Los Angeles Emergency Department from January 2020 to October 2020. On or about August 28, 2020, several staff members reported to the manager that Respondent was possibly having a mental breakdown. The manager subsequently met with Respondent, during which she displayed concerning behavior, which included bizarre ideas about voodoo and vampires. This prompted the manager to release Respondent from her licensed duties and request that she submit to a Fitness for Duty exam before she could return to work. Respondent was asked several times to submit to the exam, but she failed to comply and was therefore placed on administrative leave. As a result of her failure to comply, Respondent was subject to termination but before that could occur, she submitted her resignation.

10.    After Respondent separated from Kaiser, she began sending disturbing and threatening emails to various staff members. The emails referenced her being in a crisis, being psychotic, needing therapy, and having extreme rage. Respondent also threatened revenge against her former manager and was asked several times to cease from further communication with Kaiser staff.

11.    Based on the foregoing, Respondent is subject to an order of the Board requiring that Respondent be mentally and physically examined under Code section 820 in that it appears that Respondent may be unable to safely practice as a registered nurse because Respondent's ability to practice is impaired due to mental illness and/or physical illness affecting competency.

### ORDER

In consideration of the foregoing information, it appears that Respondent may be mentally and/or physically ill to the extent that Respondent's competency to practice safely as a registered nurse is impaired.

IT IS THEREFORE ORDERED, under Business and Professions Code section 820:

3

Petition and Order Compelling Mental and/or Physical Examination

1.    That Respondent Esther Tenao Atam shall submit to a mental and/or physical examination conducted by a physician specializing in psychiatry or a psychologist selected by the Board, or its designee, to determine whether Respondent is mentally and/or physically ill to such an extent as to affect her ability to practice as a registered nurse safely;

2.    That the examination(s) of Respondent shall be conducted at a time that is mutually convenient to Respondent and the examiner selected by the Board, but in no case later than thirty (30) days after the service of this Order;

3.    That the examination(s) shall continue from day to day until completed, and shall include any and all examinations and tests ordered and/or conducted by the examining psychiatrist or psychologist as considered necessary in their professional judgment. The results of said examination(s) shall be reported by the examiner(s) in a detailed written report, setting forth their findings and conclusions, whereupon such reports shall be delivered to the Executive Officer of the Board, with a copy of said report(s) to be provided to Respondent; and

4.    That the failure of Respondent to comply with this Order by either refusing or failing to submit to the examinations, or by refusing or failing to cooperate with the examiners, shall constitute grounds for disciplinary action against her Registered Nurse License, pursuant to Business and Professions Code section 821.

**IT IS SO ORDERED THIS** ___13th___ **day of** ___July___ **, 2022.**

for LORETTA MELBY, R.N., M.S.N.
Executive Officer
Board of Registered Nursing
Department of Consumer Affairs
State of California
*Petitioner*

LA2022601601
65259714.docx

4

Petition and Order Compelling Mental and/or Physical Examination

## DECLARATION OF SERVICE BY CERTIFIED MAIL AND FIRST CLASS MAIL
(Separate Mailings)

Case Name:    **In the Matter of the Petition for 820 Examination of: Esther Tenao Atam**

Case No.:    **4002021005658**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On July 14, 2022, I served the attached **COVER LETTER; PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION** by placing a true copy thereof enclosed in a sealed envelope as certified mail with return receipt requested, and another true copy of the **COVER LETTER; PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION** was enclosed in a second sealed envelope as first class mail in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA  90013-1230, addressed as follows:

Esther Tenao Atam
13621 Arcturus Ave
Gardena, CA 90249
*Respondent*

**Certified Article Number**

9414 7266 9904 2178 2445 26

**SENDER'S RECORD**

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 14, 2022, at Los Angeles, California.

_____
Declarant

_____
Signature

LA2022601601
65271776.docx

# EXHIBIT 2

.

ROB BONTA
Attorney General of California
JAMIL R. GHANNAM
Acting Supervising Deputy Attorney General
State Bar No. 300730
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7674
 Fax: (916) 322-8288
 E-mail: Jamil.Ghannam@doj.ca.gov
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT

| | |
|---|---|
| **ESTHER TENDO ATAM,** | Case No. 2:24-cv-05862-KK-AGR |
| Plaintiff, | **STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT BY DEFENDANTS STATE OF CALIFORNIA, BY AND THROUGH THE BOARD OF REGISTERED NURSING, LORETTA MELBY, AND GILLIAN FRIEDMAN** |
| v. | |
| **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, GILLIAN FRIEDMAN, LORETTA MELBY, THE BOARD OF REGISTERED NURSING AND GARY CARLIN,** | Date: December 2, 2025<br>Time: 9:30 a.m.<br>Courtroom: 550, 5th Floor<br>Judge: The Honorable Alicia G. Rosenberg<br>Trial Date: TBD<br>Action Filed: 7/10/2024 |
| Defendants. | |

1

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56-2, Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman (BRN Defendants) submit the following Statement of Genuine Disputes of Material Fact:

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 1. On March 19, 2021, Carlin accepted representation under a written retainer agreement that specifically identified Southern California Permanente Medical Group (SCPMG) aka Kaiser, as Plaintiff's employer and the correct party to sue. (See Exhibit 1 – Carlin's Email vs Retainer Agreement, [Page [26], ¶ [28]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 2. On November 10, 2021, Carlin proceeded to draft and file Plaintiff's original complaint naming Kaiser Foundation Hospitals, her in after referred to as "KAISER," as the employer-defendant. This fundamental action meant that the lawsuit was initiated against the wrong Kaiser entity. (See Exhibit 2 – Lawsuit Filed by Carlin, [Page [34, ¶ [2]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 3. On November 21, 2024, Kaiser Foundation Hospitals ("KFH") communicated with Attorney Gary Carlin by email, expressly disclaiming any employment relationship with Plaintiff. In that correspondence, KFH stated that Plaintiff had been employed by Southern California | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

2

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Permanente Medical Group ("SCPMG"), not KFH, and further asserted that Plaintiff "suffered from mental illness," had "refused to undergo a fitness-for-duty examination," and had a "resigned before termination." The email also conveyed that pursuing litigation on Plaintiff's behalf would be futile because she allegedly "mentally ill" and lacked credibility. (See Exhibit 3 – KFH Email Communication to Gary Carlin, dated November 21, 2021, prior to filing of KFH's Answer, [Page [60], ¶ [1-2]). | |
| 4. On December 15, 2021, Attorney Gary Carlin caused the summons and complaint to be served upon Sarah Poetter and Kaiser Foundation Hospitals ("KFH") at the Kaiser West Los Angeles Medical Center, which was Plaintiff's worksite but not the proper corporate address or registered agent for service of process. Despite this evident defect in service, Attorney Carlin took no corrective or remedial action and proceeded as though service had been properly effected at the location. (See Exhibit 4 – Proof of Service for Complaint and Summons, Case No. 22STCV41538, [Page [63], ¶ [5]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

3

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 5. On December 22, 2021, Kaiser Foundation Hospitals ("KFH") filed its Answer to the Complaint, formally identifying itself as the sole responding defendant in the action. By doing so, KFH effectively confirmed that it—not Southern California Permanente Medical Group ("SCPMG")—was proceeding as the named party in the litigation. (See Exhibit 5 – Answer to Complaint Filed by KFH, Case No. 22STCV41538, [Page [67], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 6. Carlin's misrepresentation and failure to correct the fraud contributed to the court's ruling that "KAISER" had established by competent evidence that plaintiff was not an her employee and therefore could not pursue claims against any Kaiser entity. (See Exhibit 6 – Court order on summary judgment 22STCV41538, [Page [79], ¶ [5]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 7. Carlin refused to produce the original retainer agreement, which plaintiff had personally written by hand, identifying SCPMG (Southern California Permanente Medical Group) as the KAISER entity I intended to sue. (See Exhibit 7 – Carlins | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

4

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Email communications regarding retainer, [Page [81], ¶ [1]). | |
| 8. | |
| 9. Investigator Sam Orifice, acting on behalf of the California Department of Consumer Affairs ("DCA") and the Board of the Registered Nursing ("BRN"), refused to provide Plaintiff with a copy of the investigative report as required under California Business and Professions Code § 800(c)(1). This refusal denied Plaintiff access to materials that were statutorily mandated to be disclosed to the licensee under investigation. (See Exhibit 8 – Correspondence from DCA/BRN Investigator Sam Orifice, November 3, 2021, [Page [84], ¶ [1]). | Disputed and Plaintiff's evidence is objected to.<br><br>Sam Orefice sent Plaintiff a correspondence on October 29, 2021, that contained a summary of the complaint filed against her.<br><br>*Supporting Evidence:* Defs. Exh. C – Orefice Letter, October 29, 2021<br><br>Cal. Bus. & Prof. Code, § 800(c)(1), specifically provides that the BRN can protect the identities of sources of information regarding licensee complaints by providing a summary of the substance of the complaint; which this exhibit demonstrates was done.<br><br>Plaintiff's Exhibit 8 violates the rule of completeness and is purposefully misleading. Fed. R. Evid., 106, 403. Plaintiff's e-mail exhibit references a summary and attachment provided to Plaintiff in an e-mail dated October 29, 2021. However, Plaintiff does not attach or submit what was provided to her. |
| 10. In February 2022, prior to the entry of summary judgment in favor of Kaiser Foundation Hospitals ("KFH"), Sarah Poetter submitted a declaration acknowledging that Plaintiff had filed a lawsuit against both herself and Southern California Permanente Medical Group ("SCPMG"). In that declaration, Poetter repeated that central allegation later echoed in the | Disputed in part.<br><br>It is not disputed that the KFH submitted a declaration in a legal proceeding. However, it is disputed that it "echoed the Melby petition." Melby did not participate in the drafting any of the documents concerning Plaintiff's license.<br><br>*Supporting Evidence:* Defs. Exh. D, Melby Decl., ¶¶ 2-8.<br><br>Plaintiff's characterization of the written document is argumentative and lacks foundation and is not based on |

5

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Melby petition—that Plaintiff suffered from mental illness and refused to undergo a fitness-for-duty ("FFD") examination—an assertion that was objectively false and unsupported by any credible evidence. (See Exhibit 9 – Declaration of Sarah Poetter, filed February 24, 2022, mirroring Melby's petition, [Page [88], ¶ [3]). | personal knowledge. Fed. R. Evid., 602. It is not proof of personal participation by Melby. |
| 11. On July 14, 2022, Attorney General office issued an *Order* purporting to compel a mental and/or physical examination under Section 820 of the California Business and Professions Code. (See Exhibit 10 – AG. Order for Section 820 Exam, [Page [91], ¶ [2]). | Undisputed. |
| 12. On July 13, 2022, Defendant Loretta Melby, Chief Executive Officer of the California Board of Registered Nursing (BRN), filed a petition under California Business & Professions Code § 820, falsely alleging that Plaintiff was mentally unfit to practice nursing. Plaintiff alleges that this petition was fraudulent from its inception, as it was based entirely on knowingly false claims. (See Exhibit 11 – Melby's Petition for Section 820 Exam, [Page [94], ¶ [1]). | Disputed in part. It is not disputed that the BRN filed a petition under Cal. Bus. & Prof. Code, § 820 to determine Plaintiff's fitness to practice nursing. What Plaintiff "alleges" is not fact. Plaintiff's characterization of the written document is argumentative and not dispositive as to its meaning or contents, and is not proof of personal participation by Melby. *Supporting Evidence:* Defs. Exh. D, Melby Decl., ¶¶ 2-8. There is nothing in the document itself that indicates Melby had any personal participation in its drafting or approval, as it was executed by Shannon Johnson. Plaintiff's argument is not reflective of |

6

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| | the documents contents or inferences to be drawn therefrom. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). |
| 13. On July 27, 2022, Deputy Attorney General Rinaldi Thomas, acting on behalf of the California Attorney General's Office, sent an email to Plaintiff threatening revocation of her Registered Nurse (RN) license if she failed to comply with the directives issued under the purported Section 820 order. The communication conveyed an explicit warning that noncompliance would result in disciplinary action, including potential license revocation. (See Exhibit 12 - Email from Deputy Attorney General Rinaldi Thomas, dated July 27, 2022, [Page [100], ¶ [1]). | Disputed in part.<br><br>It is not disputed that Plaintiff was sent a letter on July 27, 2022. However, Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 14. On September 14, 2021, after Carlin had already substituted out of my case, he filed a Case Management Statement (CMS) listing Kaiser Foundation Hospitals (KFH) as the defendant. (See Exhibit 13 - CMS Filed by Carlin 09/14/2022. [Page [103], ¶ [date]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 15. On September 19, 2022, Kaiser Foundation Hospitals entered summary judgment in favor of (Kaiser) in case 2STCV41538. | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| (See Exhibit 14 - Entry of summary judgement, 22STCV41538, [Page [111], ¶ [2]). | |
| 16. Qn September 22, 20212, despite having firsthand knowledge that I was an employee of SCPMG, *a Kaiser entity,* Carlin did not assert this fact in his declaration and instead confirmed that summary judgment was granted to defendant "KAISER". By knowingly targeting the wrong entity, Carlin undermined the factual basis of the lawsuit at its inception and gave KFH a powerful procedural defense that it exploited throughout subsequent litigation. (See Exhibit 15 - Carlin's declaration September 22, 2022, [Page [118], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 17. Attorney Gary Carlin, after withdrawing as Plaintiff's counsel, publicly disparaged his former client without factual or legal Justification, characterizing Plaintiff lawsuit as *"goofy and vexatious"* and urging the court to impose monetary and procedural sanctions against her. Such conduct was undertaken in Carlin's Rule 21 Motion for Sanctions and constituted an | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

8

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| improper and prejudicial attack on a former client. (See Exhibit 16 - Carlin's Rule 11 Motion for Sanctions Against Plaintiff, [Page [127], ¶ [2]). | |
| 18. On October 18, 2022, KFH filed an opposition to my Motion for Leave to File a First Amended Complaint (FAC), stating that summary judgment was already entered in favor of KFH, and therefore, the Kaiser entities should no longer be forced to incur litigation fees. (See Exhibit 17 – KFH Opposition, 22STCV41538, [Page [136], ¶ [3]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 19. KFH submitted a Separate Statement in Case No. 22STCV41538, asserting that Southern California Permanente Medical Group ("SCPMG") was the only Kaiser entity that employed plaintiff. (See Exhibit 18 – KFH Separate Statement, Case No. 22STCV41538, [Page [142], ¶ [2]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 20. On December 5, 2022, I filed a new lawsuit against SCPMG case No. 22STCV37929, representing myself in propria persona. The case was assigned to Judge Elaine Lu in Dept 26. (See Exhibit 19 - New Litigation Filed | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

9

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Against SCPMG, 22STCV37929, [Page [146], ¶ [1]). | |
| 21. On December 15, 2022, the California Attorney General's Office issued a letter directing Plaintiff to surrender her Registered Nurse (RN) license, purportedly based on alleged noncompliance with prior administrative orders. Plaintiff contends that this directive was issued on a false pretext, as it relied on fabricated findings and ignored timely defenses already submitted in response to the underlying accusations. (See Exhibit 20 - Attorney General's Office Concession Letter, dated December 15, 2022, [Page [149], ¶ [1]). | Disputed in part.<br><br>It is not disputed that Plaintiff was sent a letter on December 15, 2022. However, Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita*, 475 U.S. at 587. |
| 22. On December 9, 2022, KFH moved the court for an order to designate plaintiff a vexatious litigant. (See Exhibit 21 - KFH Vexatious Litigant Motion and Court Order, 22STCV41538, [Page [151], ¶ [8]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 23. On December 22, 2022, KFH obtained profiling orders against Plaintiff in case No. 2STCV41538, prohibiting plaintiff from filing any new litigation in the courts of | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| California without prior approval from the presiding judge. (See Exhibit 22 – Profiling Orders obtained by KFH, 22STCV41538, [Page [154], ¶ [1]). | |
| 24. On February 16, 2023, in their Ex Parte application, SCPMG argued that: "Plaintiff was deemed a vexatious litigant in KFH case (22STCV 41538), and is therefore considered a vexatious litigant in the instant matter." (See Exhibit 23 - SCPMG's Argument from Ex Parte Application, 22STCV37929 [Page [163], ¶ [3]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 25. On February 16, 2023, Judge Elaine Lu expressly questioned the validity of SCPMG's reliance on Judge Kleifield's prior order and application of CCP 391.3(b) since plaintiff was not subject to prefiling orders when she initiated the lawsuit in propria persona against SCPMG in case no. 22STCV372929. Defendants were directed to address whether an independent finding was required, underscoring the procedural deficiency. (See Exhibit 24 – Court's Minute Order, 22STCV37929, February 16, | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

11

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 2023, [Page [172], ¶ [3]). | |
| 26. On March 10, 2023, SCPMG's filed a reply in support of it motion for dismissal of Plaintiffs independent complaint under CCP § 391.3(b) or, in the alternative, an order requiring security under § 391.3(a) arguing that plaintiff is a vexatious litigant under Code of Civil Procedure section 391, subdivision (b)(4). In doing so. SCPMG improperly relied on Judge Kleifield's vexatious litigant designation from the *KFH* case without obtaining an independent judicial finding in the *SCPMG* matter as mandated by statute. (See Exhibit 25 - SCPMG's Reply to Opposition, Case No. 22STCV37929. [Page [176], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 27. On March 17, 2023, Judge Small vacated all pending hearings in the SCPMG matter, including an Order to Show Cause (OSC) set for April 10, 2023. At that moment, he designated KFH - a defendant that had unequivocally disclaimed ever employing Plaintiff - as the "lead" case. (See Exhibit 26 - Judge Small's Minute Order, Case No. 22STCV37929, [Page [182], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| **Moving Party's Undisputed Material Fact and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 28. On March 17, 2023, Kaiser's post-termination production of irrelevant records from KFH rather than SCPMG obstructed discovery and demonstrated a continued effort to conceal the truth. (See Exhibit 27 - Kaiser's Employment Records, [Page [186], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 29. On September 11, 2023, Judge Small ordered Plaintiff to post a $10,000 security bond under §391.3(a), expressly relying on Judge Kleifield's prior vexatious finding- imported from the KFH case. No noticed motion was filed by SCPMG under §391.1, no evidentiary hearing was held under §391.2, and no express findings were made by the Court as required. (See Exhibit 28 - Court's Minute Order, 22STCV37929, 09/11/2023, [Page [207], ¶ [11]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 30. On August 9, 2023, the Court conducted a hearing on Plaintiff's motion for reconsideration of the vexatious litigant designation entered in the Kaiser Foundation Hospitals ("KFH") case on December 22, 2022. During that hearing, Plaintiff presented evidence before Judge Small demonstrating that Plaintiff's former counsel, Gary Carlin, and | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |

13

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Kaiser Foundation Hospital/Kaiser Foundation Health Plan ("KFH/KFHP") had colluded through email correspondence to deliberately exclude Southern California Permanente Medical Group ("SCPMG") from the initial complaint filed on November 10, 2021. (See Exhibit 29 - Court's Minute Order, 22STCV37929, 08/09/2023, [Page [210], ¶ [4]). | |
| 31. Judge Small subsequently denied Plaintiff's motion for reconsideration and filed a verified statement declining to recuse himself, notwithstanding the clear appearance of bias arising from his prior rulings and involvement in related proceedings. (See Exhibit 30 - Judge Small's Order Striking Statement of Disqualification and verified Answer, 04/26/2023, [Page [217], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 32. Plaintiff was denied her statutory right to contest the vexatious litigant designation in the KFH matter, because the designation was already *smuggled* into SCPMG. And once inside SCPMG, it became the foundation for prefiling Orders entered on July 7, 2025 (See | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Exhibit 31 - Court's Minute Order, 22STCV37929, 12/09/2022, [Page [219], ¶ [81]. | |
| 33. Accordingly, the prefiling orders issued on July 7, 2025, and entered by Southern California Permanente Medical Group ("SCPMG") without compliance with the procedural and evidentiary requirements of the California Code of Civil Procedure, rest upon false factual premises and thereby perpetuate a continuing fraud upon the court. (See Exhibit 32 - Profiling Orders Entered by SCPMG, dated July 7, 2025, [Page [223], ¶ [3]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 34. These facts establish that SCPMG advanced fabricated allegations to the BRN, maintained irreconcilably contradictory litigation positions in court, and misused the vexatious litigant statutes in a concerted effort to deprive Plaintiff of meaningful access to the courts. (See Exhibit 33 - SCPMG's opposition to vacate prefiling orders, 22STCV37929, 10/09/2025 [Page [229], ¶ [3]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 35. The Board of Registered Nursing ("BRN") defendants filed documents in state court | Disputed in part. It is not disputed that BRN filed documents in court opposing Plaintiff's attempts to make the BRN a defendant |

15

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| supporting the fraudulent vexatious litigant bond and accused Plaintiff of attempting to circumvent those unlawful orders in their opposition to Plaintiffs inclusion of the BRN as co-defendants in the action against Southern California Permanente Medical Group ("SCPMG"). (See Exhibit 34 – BRN Defendants' Filing in Support of Invalid Vexatious Litigant Bond, April 24, 2024, [Page [241], ¶ [3]). | in her state court case *after* Plaintiff's case had been dismissed and *after* she had been declared a vexatious litigant.<br><br>However, Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 36. The Board of Registered Nursing ("BRN") defendants recycled fraudulent administrative findings into Plaintiff's civil litigation. By doing so, the BRN defendants knowingly participated in a concerted scheme to obstruct justice, in violation of 18 U.S.C. § 371, by transforming fabricated and unverified administrative evidence into the foundation for the revocation of Plaintiff's nursing license. (See Exhibit 35 – BRN Defendants' Filing in State Court, March 2, 2023, [Page [252], ¶ [1]). | Disputed and Plaintiff's evidence is objected to.<br><br>It is not disputed that BRN filed documents in court opposing Plaintiff's motion for monetary sanctions against the BRN in her state court case *after* Plaintiff's case had been dismissed and *after* she had been declared a vexatious litigant.<br><br>Plaintiff presents no evidence of a "concerted scheme" and her assertion lacks foundation or any personal knowledge. Fed. R. Evid., 602.<br><br>*Supporting Evidence:* Defs. Exh. D, Melby Decl., ¶¶ 2-8.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 37. SCPMG Explicitly adopted the BRN's arguments and administrative findings- and aligned itself with the agency actions that led to the revocation | Disputed and Plaintiff's evidence is objected to.<br><br>It is not disputed that documents were filed in Plaintiff's state court case. |

16

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| of the Plaintiffs RN license. (See Exhibit 36 - SCPMG support of BRN defendants opposition to Amend complaint, 08/25/2023, [Page [259], ¶ [1]). | Plaintiff presents no evidence of a any party "aligning" themselves and her assertion lacks foundation or any personal knowledge. Fed. R. Evid. 602. *Supporting Evidence:* Defs. Exh. D, Melby Decl., ¶¶ 2-8. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 38. The Board of Registered Nursing ("BRN") defendants filed documents in federal court revealing that their purported information source regarding Plaintiff's ability to practice as a Registered Nurse originated from Plaintiff's own healthcare providers. This disclosure confirms that the BRN defendants relied on confidential provider communications to justify their adverse actions against Plaintiff. (See Exhibit 37 - BRN Defendants' Federal Court Filing, 10/16/2024, [Page [264], ¶ [1]). | Disputed and Plaintiff's evidence is objected to. Legal arguments made in law and motion proceedings is not evidence. The matter cited to in BRN Defendants' legal argument was to materials that were submitted by Plaintiff at Dkt. No. 58, p. 12. Plaintiff's vague and specious assertions lack foundation or any personal knowledge. Fed. R. Evid., 602. *Supporting Evidence:* Defs. Exh. D, Melby Decl., ¶¶ 2-8. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 39. On December 13, 2023, the Court enforced the $10,000 security requirement in Southern California Permanente Medical Group ("SCPMG") case No. 22STCV37929 and subsequently dismissed Plaintiff's case with prejudice, citing Plaintiff's alleged failure to post the | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| required security deposit. The dismissal was entered notwithstanding Plaintiff's prior objections to the unlawfully imposed vexatious litigant designation and bond order. (See Exhibit 38 - Court's Minute Order Dismissing Case, 22STCV37929, [Page [273], ¶ [2]). | |
| 40. On July 26, 2022, Plaintiff filed a formal written objection challenging the Section 820 Order as void, unlawful, and issued without jurisdiction. The objection asserted that the order failed to meet the statutory requirement of "good cause", was predicated upon fabricated allegations, and violated Plaintiff's constitutional due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 7 of the California Constitution. (See Exhibit 39 - Attorney General's Email Confirmation of Receipt, dated July 27, 2022, [Page [275], ¶ [1]). | Undisputed.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 41. On August 8, 2022, Plaintiff filed a formal Notice of Defense in response to the unlawful Section 820 proceedings, preserving her statutory and constitutional | Disputed and Plaintiff's evidence is objected to.<br><br>Plaintiff never filed a notice of defense, and no administrative proceedings were initiated against her as of August 8, 2022. The Accusation was not filed |

18

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| objections. (See Exhibit 40 - Plaintiff's Notice of Defense dated August 8, 2022, [Page [278], ¶ [2]). | against her until November 2022. *Supporting Evidence:* See Defs. Add'l UMF 1-7. Plaintiff's exhibit demonstrates it is not a notice of defense or could be construed as such, as the first sentence states it "serves as notice of license surrender[.]" Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 42. On August 9, 2022, a psychiatrist appointed bv the BRN contacted Plaintiff in a harassing and unprofessional manner, appearing confused about the date and month of the purported examination. Plaintiff promptly reported the psychiatrist's misconduct to the BRN, but no corrective action was taken. Instead, the Board persisted in advancing the void proceedings, disregarding Plaintiffs rights and the lack of any legitimate medical basis. (See Exhibit 41- BRN's Psychiatrist's Confusion, [Page [280], ¶ [1]). | Disputed in part. It is not disputed that Plaintiff was contacted by a psychiatrist to get her to cooperate with undergoing an examination. However, Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita*, 475 U.S. at 587. |
| 43. On November 16, 2022, Plaintiff received an Accusation, Statement to Respondent, Notice of Defense, and Discovery Requests, all relying on the unlawful Section 820 order as their foundation. Plaintiff maintains these documents were | Disputed. Plaintiff was served by mail at her address of record with the Accusation and other materials concerning the proceeding against her license, and Plaintiff then never responded. *Supporting Evidence:* See Defs. Add'l UMF 1-7. |

19

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| improperly served and procedurally defective because they stemmed from a petition lacking jurisdiction and good cause. (See Exhibit 42 - BRN Accusation Issued, 11/14/2022, [Page [284], ¶ [1]). | |
| 44. Thereafter, on December 12, 2022, Plaintiff issued a Cease and Desist Letter to the responsible agencies, reiterating the illegality and lack of jurisdiction underlying the administrative process. (See Exhibit 43 - Proof of Service, Cease and Desist Letter, dated December 14. 2022, [Page [288], ¶ [1]). | Disputed in part.<br><br>It is not disputed that Plaintiff sent what she calls a cease and desist letter. However, this was not a valid response to the Accusation. Plaintiff was served by mail at her address of record with the Accusation and other materials concerning the proceeding against her license, and Plaintiff then never responded.<br><br>*Supporting Evidence:* See Defs. Add'l UMF 1-7. |
| 45. On December 15, 2022, the California Attorney General's Office formally conceded in writing that Plaintiff had timely filed her defense contesting the Accusation issued on November 16, 2022. This written concession was made prior to the entry of the default order revoking Plaintiffs Registered Nurse (RN) license on January 6, 2023, thereby confirming that the default decision was procedurally improper and entered in error. (See Exhibit 44 - Attorney General's Office Concession Letter, December 15, 2022, [Page | Disputed and plaintiff's evidence objected to.<br><br>Plaintiff never filed a notice of defense. Plaintiff was served by mail at her address of record with the Accusation and other materials concerning the proceeding against her license, and Plaintiff then never responded.<br><br>*Supporting Evidence:* See Defs. Add'l UMF 1-7.<br><br>The stipulation sent to Plaintiff was never executed by her, meaning none of the recitals were ever endorsed. (See e.g., *Kum v. Walcott*, No. 12-CV-4608 RRM RER, 2012 WL 4772072, at *1 (E.D.N.Y. Oct. 5, 2012) (unsigned stipulation not binding or evidence.)<br><br>Plaintiff's characterization of the written document is argumentative and |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| [292], ¶ [1]). | not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita*, 475 U.S. at 587. |
| 46. On January 6, 2023, despite Plaintiffs timely and duly filed responsive pleadings, the Board of Registered Nursing ("BRN") obtained a default decision falsely asserting that Plaintiff had failed to respond within fifteen (15) days of the Accusation issued on November 16, 2022, and had therefore waived her right to an administrative hearing. This misrepresentation served as the stated basis for the default revocation of Plaintiff's Registered Nurse (RN) license. (See Exhibit 45 - BRN Default Decision and Order, dated January 6, 2023, [Page [298], ¶ [6]). | Disputed. Plaintiff never filed a notice of defense. Plaintiff was served by mail at her address of record with the Accusation and other materials concerning the proceeding against her license, and Plaintiff then never responded. *Supporting Evidence:* See Defs. Add'l UMF 1-7. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita*, 475 U.S. at 587. |
| 47. On February 3. 2023, the Board of Registered Nursing ("BRN") issued a formal Order of Revocation permanently revoking Plaintiff's Registered Nurse (RN) license. This action was predicated on a default decision entered in violation of due process, as Plaintiff had already filed a timely defense contesting the underlying accusation. (See Exhibit 46 - BRN Order of Revocation, dated February 3, 2023, [Page [301], ¶ [1]). | Disputed. Plaintiff never filed a notice of defense. Plaintiff was served by mail at her address of record with the Accusation and other materials concerning the proceeding against her license, and Plaintiff then never responded. *Supporting Evidence:* See Defs. Add'l UMF 1-7. Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita*, 475 U.S. at 587. |

| **Moving Party's Undisputed Material Fact and Supporting Evidence:** | **Opposing Party's Response and Supporting Evidence:** |
|---|---|
| 48. Following revocation, BRN reported Plaintiffs case to the National Practitioner Data Bank (NPDB) and the California Department of Health Care Services (DHCS). These reports, made under BRN's authority, spread defamatory claims nationwide. Plaintiff has since been unable to find work as a nurse anywhere in the country, even outside California. This permanent reputational damage was foreseeable and deliberate. (See Exhibit 47 - RN License Revocation & National Practitioners Data Bank Entry, 02/03/2023, [Page [303], ¶ [1]). | This cannot raise triable dispute because Plaintiff's defamation claims were dismissed without leave to amend. (See Dkt Nos. 125, 137.) |
| 49. On October 16, 2024, the Board of Registered Nursing ("BRN") defendants disclosed in open court that they were in possession of information obtained from Plaintiff's healthcare provider concerning Plaintiffs ability to practice nursing. This revelation confirmed that the BRN had relied on confidential provider communications as an information source in the underlying administrative and judicial proceedings. (See Exhibit 37 - BRN Defendants' Disclosure in Court, [Page [264], ¶ [1]). | Disputed and Plaintiff's evidence is objected to.<br><br>Legal arguments made in law and motion proceedings is not evidence. The matter cited to in BRN Defendants' legal argument was to materials that were submitted by Plaintiff at Dkt. No. 58, p. 12.<br><br>Plaintiff's vague and specious assertions lack foundation or any personal knowledge. Fed. R. Evid. 602.<br><br>*Supporting Evidence:* See Defs. Exh. D, Melby Decl., ¶¶ 2-8.<br><br>Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |

22

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| 50. On February 10, 2021, Plaintiff's healthcare provider prepared clinical notes evaluating Plaintiff's ability to safely practice as a Registered Nurse, documenting that Plaintiff was fit for duty and exhibited no impairment or limitation affecting professional competency. (See Exhibit 49 - Provider's Clinical Notes Regarding Plaintiff's Ability to Practice, dated February 10, 2021, [Page [308], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 51. Comparable employment records from the relevant period further corroborate Plaintiff's ability to competently practice as a Registered Nurse, demonstrating consistent job performance and the absence of any functional or cognitive limitations affecting her capacity to perform professional duties. (See Exhibit 50 - Comparable Employment Records Supporting Plaintiff's Ability to Practice, [Date], [Page [313-318]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 52. February 19, 2021 complaint of retaliation against Kaiser in which plaintiff explicitly reported that Sarah Poetter was fabricating allegations to retaliate against her protected activity. By ignoring Plaintiff's side of the record while | Disputed in part.<br><br>It is not disputed that Plaintiff submitted the attached complaint form. However, the document itself says nothing about BRN's response to it or the subsequent investigation, if any. It is disputed by Plaintiff's Exhibit 52 which acknowledged receipt of her complaint. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| amplifying Sarah Poetter's false reports, BRN abandoned its regulatory duty of neutrality and instead acted *as* a coconspirator. (See Exhibit 51 – BRN complaint filed before termination [Page [321], ¶ [2]). | Plaintiff's vague and specious assertions regarding abandonment of regulatory duty lack foundation or any personal knowledge, and is not evidence of conspiracy. Fed. R. Evid. 602. *Supporting Evidence:* See Defs. Exh. D, Melby Decl., ¶¶ 2-8. <br><br> Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 53. On February 26, 2021, the Board of Registered Nursing ("BRN") formally acknowledged receipt of Plaintiff's complaint filed against Sarah Poetter, Clinical Nurse Director at Kaiser West Los Angeles Medical Center. The acknowledgment confirmed that the BRN had accepted jurisdiction to review Plaintiff's allegations of workplace retaliation and misconduct. (See Exhibit 52 – BRN Acknowledgment of Complaint Against Sarah Poetter, dated February 26, 2021, [Page [324], ¶ [1]). | Undisputed. <br><br> Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |
| 54. On May 3, 2021, plaintiff received a letter from the Department of Consumer Affairs (DCA) and BRN alleging that it had received information suggesting my ability to practice was impaired due to alleged substance abuse or mental illness | Undisputed. <br><br> Plaintiff's characterization of the written document is argumentative and not reflective of the letter's contents or inferences to be drawn therefrom. *Matsushita,* 475 U.S. at 587. |

24

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| *affecting competency.* (See Exhibit 53 - DCA/BRN Letter Alleging Impairment, 05/03/2021 [Page [326], ¶ [1]). | |
| 55. On October 29, 2021, the Board of Registered Nursing ("BRN") issued a follow-up letter to Plaintiff referencing an employer-initiated complaint, identified as Complaint No. 4002021005658. The correspondence indicated that the BRN had opened an investigation based on information purportedly received from Sarah Poetter, Clinical Nurse Director at Kaiser West Los Angeles Medical Center. (See Exhibit 54 - BRN Letter Regarding Employer Complaint No. 4002021005658, dated October 29 2021, [Page [328], ¶ [1]). | Disputed and Plaintiff's evidence is objected to.<br><br>Sam Orefice sent Plaintiff a correspondence on October 29, 2021, that contained a summary of the complaint filed against her.<br><br>*Supporting Evidence:* Defs. Exh. C – Orefice Letter, October 29, 2021<br><br>Cal. Bus. & Prof. Code, § 800(c)(1), specifically provides that the BRN can protect the identities of sources of information regarding licensee complaints by providing a summary of the substance of the complaint; which this exhibit references was done.<br><br>Plaintiff's Exhibit 54 violates the rule of completeness and is purposefully misleading. Fed. R. Evid., 106, 403. Plaintiff's e-mail exhibit references a summary and attachment provided to Plaintiff in an e-mail dated October 29, 2021. However, Plaintiff does not attach or submit what was provided to her. |
| 56. Kaiser Foundation Hospitals ("KFH") formally disclaimed any employment relationship with Plaintiff, asserting that Plaintiff was not, and had never been, employed by KFH. This position was later reflected in the court's order issued on July 14, 2022, confirming that *Kaiser* was not Plaintiffs employer and thereby | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

25

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| not a proper defendant in the underlying action. (See Exhibit 14 - Court Order and KFH Employment Disclaimer, dated July 14, 2022, [Page [111], ¶ [2]). | |
| 57. In response to Plaintiff's formal request for employment records, *Kaiser* produced documentation pertaining to Kaiser Foundation Hospitals ('"KFH"), despite Plaintiff's records request expressly identifying Southern California Permanente Medical Group ("SCPMG") as the employing entity. This production error further demonstrated Defendants' ongoing misrepresentation of Plaintiffs actual employer. (See Exhibit 27 – Kaiser Production of Incorrect Employment Records, [Page [186], ¶ [1-6]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 58. Despite Plaintiff's written clarification requesting the correct employment records from Southern California Permanente Medical Group ("SCPMG"), the request was denied. The stated reason for the denial was that the request had to be submitted through Plaintiff's attorney, even though Plaintiff was self-represented (in propria persona) at the time. This refusal | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| further obstructed Plaintiffs access to relevant employment evidence. (See Exhibit 57 - Kaiser Correspondence Denying Records Request, [Page [330], ¶ [1]). | |
| 59. A licensed clinical psychologist's progress note documented Plaintiff's emotional distress resulting from workplace trauma experienced at the Kaiser West Los Angeles Emergency Department, where Plaintiff was employed as a Registered Nurse during the relevant period. The psychologist's records reflected no functional or cognitive limitations affecting Plaintiffs ability to perform her duties. Instead, the treatment focused on preventing re-exposure to the triggering work environment, which had been caused by retaliation following Plaintiff's report of workplace bullying by a male co-worker and subsequent retaliatory conduct by management. (See Exhibit 58 - Licensed Clinical Psychologist's Progress Note, [Page [333-335], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 60. Kaiser HR Disability Case Manager Wilbert Jones was placed on notice of Plaintiff's workplace harassment complaint | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| and the disclosure by Plaintiff's healthcare provider of psychological distress directly related to workplace trauma. In response, Jones contacted Plaintiff's provider seeking clarification regarding the provider's accommodation request to avoid reassignment to the same or similar work environment where the harassment and bullying had occurred. His correspondence included the following written inquiries: What is meant by a 'similar or same' work environment that she needs to avoid? What circumstances or situations do you expect would trigger her 'trauma'? Based on the above clarifications, what do you recommend, if any, that would enable the patient to safely perform her duties in the Kaiser West Los Angeles Emergency Department? (See Exhibit 71 - Correspondence from HR Disability Case Manager Wilbert Jones to Plaintiff's Provider, [Page [372], ¶ [3]). | |
| 61.    Sarah Poetter, Emergency Department (ED) Manager at Kaiser West Los Angeles Medical Center, issued Plaintiff a verbal directive to leave the workplace, alleging that Plaintiff was mentally unstable and unfit | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

28

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| to function as an Emergency Room Nurse. (See Exhibit 60 - Email by Sarah Poetter, dated September 8, 2020, [Page [339], ¶ [1]). | |
| 62. September 4, 2020 - Plaintiff's psychiatric clearance note was submitted to Sarah Poetter and HR Consultant Kendra Keyes, confirming Plaintiff's fitness for duty and the absence of any mental health impairment that would preclude safe nursing practice. (See Exhibit 61- Psychiatric Clearance Note, dated September 4, 2020, [Page [343], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 63. September 4, 2020 - On the same day, HR Consultant Kendra Keyes responded, stating that no mental health or psychological evaluation had been requested by the employer on August 28, 2020, contradicting the prior directive issued by Poetter. (See Exhibit 62 - HR Response from Kendra Keyes, dated September 4, 2020, [Page [345], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 64. In a subsequent correspondence with Human Resources, HR Consultant Brice Sikuade reaffirmed that no medical or psychiatric clearance note had ever been requested during the | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

29

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| initial incident period of August through September 2020. This statement further confirmed that Plaintiff's removal from the workplace was not supported by any documented or authorized fitness-for-duty evaluation request. (See Exhibit 63 - Correspondence from HR Consultant Brice Sikuade, Page [348], ¶ [1]). | |
| 65. On September 8, 2020, an Equal Employment Opportunity (EEO) investigator sent an email response acknowledging receipt of Plaintiff's complaint against Sarah Poetter and Cheryl Suma, alleging harassment, discrimination, and wrongful verbal suspension arising from the incident of August 28, 2020. The correspondence confirmed that an internal EEO inquiry had been initiated regarding Plaintiff's allegations. (See Exhibit 64 – EEO Investigator Email Response to Complaint Against Sarah Poetter and Cheryl Suma, dated September 8, 2020, [Page [350], ¶ [1]). | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 66. On November 5. 2020, Plaintiff remained on verbal suspension without any clear directive or timeline for returning to work, which had prompted Plaintiff to | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| send a letter dated October 1, 2020, to Brooke Ball, Chief Executive Officer of Kaiser West Los Angeles Medical Center. In her November 5, 2020 response, Ball-who served as the direct supervisor of Sarah Poetter-acknowledged receipt of Plaintiffs correspondence, which had requested executive intervention to address the ongoing workplace retaliation and harassment issues. (See Exhibit 65 - Correspondence Between Plaintiff and CEO Brooke Ball, dated October 1 and November 5, 2020, [Page [353], ¶ [1]). | |
| 67. On November 6, 2020, Brooke Ball, Chief Executive Officer of Kaiser West Los Angeles, was present at an HR meeting during which Kaiser Management ordered Plaintiff a partial paycheck intended to cover shift cancellations from August 28, 2020, through November 6, 2020. The meeting, however, did not address the verbal suspension issued on August 28, 2020. Instead, Plaintiff was formally placed on suspension for a purported Level II medication error, and a follow-up HR meeting was scheduled for November 10, 2020. (See Exhibit 66 – HR | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Meeting Documentation and Correspondence, dated November 6, 2020.) | |
| 68. November 6, 2020 – Plaintiff received a payroll deposit while under a purported formal suspension, evidencing an extended suspension period, delayed HR meetings, and partial back pay rather than reinstatement or resolution of the underlying employment dispute. (See Exhibit 67 – Payroll Deposit Record During Suspension, dated November 6, 2020 [page 358, ¶ 1.]) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 69. Plaintiff submitted a formal Demand Letter and an EEOC complaint, setting forth a written objection to the retaliatory suspensions and escalating threats of disciplinary action by Kaiser management. The Letter detailed Plaintiff's prior reports of harassment, discrimination, and retaliation, and asserted that the employer's actions constituted unlawful reprisal for protected activity under applicable state and federal employment laws. (See Exhibit 68 – EEOC Correspondence, dated February 5, 2020 [Page 262, ¶ 2.]) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 70. On November 23, 2020, in | Undisputed, but not relevant to Plaintiff's claims or allegations as to |

32

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| response to Plaintiff's written protest regarding continued harassment and retaliatory threats, Sarah Poetter – Emergency Department Manager at Kaiser West Los Angeles Medical Center – requested an official medical clearance note as a condition for Plaintiff's return to work. This demand, issued after Plaintiff's complaints of mistreatment, demonstrated a pattern of escalating retaliation and the creation of an abusive, hostile work environment. (See Exhibit 69 – Request for Official Clearance Note from Sarah Poetter, dated November 23, 2020 [Page 365, ¶ 4.]) | BRN Defendants. |
| 71. In December 2020, Sarah Poetter, Emergency Department Manager at Kaiser West Los Angeles Medical Center, sent email correspondence to Plaintiff regarding the required medical clearance note required for Plaintiff's return to work. The communication reinforced the employer's demand for a psychiatric or medical clearance as a condition of reinstatement, further evidencing the continuation of retaliatory and discriminatory practices following Plaintiff's prior harassment complaints. (See Exhibit 70 – Email | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

33

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| Communication from Sarah Poetter to Plaintiff Regarding Clearance Note, dated December 4, 2020 [Page 368, ¶ 1.]) | |
| 72. On December 29, 2020, Plaintiff's healthcare provider submitted a Health Clearance Note and Accommodation Request to Sarah Poetter, Emergency Department Manager at Kaiser West Los Angeles Medical Center, and Wilbert Jones, HR Disability Case Manager at Kaiser West Los Angeles medical Center. The documentation confirmed Plaintiff's medical clearance to return to work requested a reasonable accommodation to avoid reassignment to the same environment where the prior harassment and retaliation had occurred. (See Exhibit 71 – Provider Health Clearance Note and Accommodation Request, December 29, 2020 [Page 372, ¶ 4.]) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 73. On January 29, 2021, Kaiser issued a written response to Plaintiff's provider's disclose and accommodation request denying medical leave even though no request for medical leave had been made. The provider's request sought only a reasonable accommodation to avoid | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| reassignment to the same hostile work environment in the Kaiser West Los Angeles Emergency Department, where Plaintiff had been repeatedly subjected to harassment and retaliation by Sarah Poetter and Kaiser HR personnel following her complaint of workplace bullying and discrimination. (See Exhibit 72 – Kaiser Response to Accommodation Request, dated January 29, 2021 [Page 377, ¶ 1.]) | |
| 74. On March 10, 2021, in response to the Provider's clarification, specifically clarifying that Plaintiff has no functional limitation – and the reason for the accommodation request was to avoid continued harassment – Kaiser obtained a referral for a Fitness for Duty (FFD) Examination to specifically assess Plaintiff's functional limitation that prevented her from returning to work – at Kaiser West LA Emergency Room. (See Exhibit 73 – Kaiser's FFD Order, 3/10/2021 [Page 381, ¶ 1].) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 75. The Fitness-for-Duty ("FFD") examination imposed by Kaiser in direct response to Plaintiff's harassment complaint served to further traumatize Plaintiff and constituted an escalation of the very retaliatory conduct she had | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

35

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| reported. The employer's FFD Authorization for Release of Medical Information compounded this harm by requiring Plaintiff to sign an authorization permitting oral communications between Kaiser and the forensic psychiatrist, Dr. Phani Tumu, regarding the purported findings of the evaluation. This demand represented a direct intrusion on Plaintiff's privacy and posed a threat to her mental and emotional well-being. (See Exhibit 74 – Kaiser FFD Authorization for Medical Release, [Page 384, ¶ 3].) | |
| 76. On March 11, 2021, Doug Pruss, Human Resources Director at Kaiser West Los Angeles Medical Center, confirmed via email that failure to undergo the mandated mental evaluation would be treated as a voluntary resignation from Plaintiff's employment with Kaiser. This communication effectively placed Plaintiff under coercive pressure to comply with the Fitness-For-Duty ("FFD") evaluation, under threat of constructive termination. (See Exhibit 75 – Email from HR Director Doug Pruss, dated March 11, 2021 [Page 386, ¶ 1].) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 77. On March 12, 2021, Kaiser issued Plaintiff's final pay stub while she | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| remained on leave pending completion of the Fitness-for-Duty ("FFD") evaluation and execution of the associated authorization for release of health information. Issuing a final paycheck under these circumstances – while Plaintiff was still employed and awaiting the outcome of an FFD assessment – constituted a premature or de facto determination of employment. (See Exhibit 76 – Final Pay Stub and Related Documentation, dated March 12, 2021 [Page 390].) | |
| 78. On March 17, 2021, Plaintiff emailed HR Director Doug Pruss and Kaiser management requesting written confirmation that Dr. Phani Tumu – the physician designated to conduct the Fitness-for-Duty evaluation – was an independent psychiatrist unaffiliated with Kaiser/SCPMG. In the same communication, Plaintiff asked to amend the authorization for release of health information by striking provision permitting oral communications between Kaiser and Dr. Tumu. (See Exhibit 77 – Email from Plaintiff to Pruss and Management, dated March 17, 2021 [Page 393, ¶ 1.]) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |
| 79. On the same day, March 17, 2021, Plaintiff submitted a written notice | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| to HR Director Douglass Pruss, formally releasing her union representatives from further representation, citing "failure to represent" as the reason for the withdrawal. The filing reflected Plaintiff's loss of confidence in the union's ability to advocate on her behalf during the ongoing dispute concerning workplace retaliation and the Fitness-for-Duty ("FFD") process. (See Exhibit 78 – Plaintiff's Notice of Release of Union Representation, Dated March 17, 2021 [Page 395, ¶ 1.]) | |
| 80. On March 17, 2021, HR Director Doug Pruss confirmed via email that the Southern California Permanente Medical Group ("SCPMG") physician referral for Fitness-for-Duty ("FFD") evaluation was based on the following: (1) Plaintiff's prior emails disclosing trauma directly resulting from workplace harassment; and (2) HR Disability Manager Wilbert Jones's interpretation of Plaintiff provider's accommodation request, in which he concluded that the provider could not certify Plaintiff's return to the same traumatic work environment Pruss further reiterated that completion of FFD assessment was mandatory condition for continued | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

| Moving Party's Undisputed Material Fact and Supporting Evidence: | Opposing Party's Response and Supporting Evidence: |
|---|---|
| employment and instructed Plaintiff to sign the authorization for release of health information by 5:00 p.m. on March 19, 2021. (See Exhibit 79 – Email Correspondence from HR Director Doug Pruss, dated March 17, 2021. [Page 398, ¶ 2.]) | |
| 81. On March 18, 2021, no response was provided to Plaintiff's request to amend the authorization for release of medical information by striking out consent for oral communication. Instead of addressing this pending request, Kaiser proceeded to terminate Plaintiff's employment, a decision made in coordination with Brooke Ball, Chief Executive Officer at Kaiser West Los Angeles Medical Center. (See Exhibit 80 – Termination Documentation and Related Correspondence, dated March 18, 2021, [Page 402, ¶ 1.]) | Undisputed, but not relevant to Plaintiff's claims or allegations as to BRN Defendants. |

Dated: November 6, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

**/s/ Jamil R. Ghannam**
JAMIL R. GHANNAM
Acting Supervising Deputy Attorney General
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

LA2024304086/95665422.docx

39

# CERTIFICATE OF SERVICE

Case Name: **Atam v. Kaiser Foundation Health Plan, Inc., et al**     No.    **2:24-cv-05862-KK-AGR**

I hereby certify that on <u>November 6, 2025,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT BY DEFENDANTS STATE OF CALIFORNIA, BY AND THROUGH THE BOARD OF REGISTERED NURSING, LORETTA MELBY, AND GILLIAN FRIEDMAN**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>November 6, 2025,</u> I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Esther Tendo Atam
13621 Arcturus Avenue
Gardena, CA 90249
***In Pro Per***

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 6, 2025</u>, at Fresno, California.

| C. Vue | */s/ C. Vue* |
|:---:|:---:|
| Declarant | Signature |

LA2024304086
95666488.docx

# EXHIBIT 3

.

ROB BONTA
Attorney General of California
JAMIL R. GHANNAM
Acting Supervising Deputy Attorney General
State Bar No. 300730
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7674
  Fax: (916) 322-8288
  E-mail: Jamil.Ghannam@doj.ca.gov
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT

| | |
|---|---|
| **ESTHER TENDO ATAM,** | Case No. 2:24-cv-05862-KK-AGR |
| Plaintiff, | **DECLARATION OF LORETTA MELBY** |
| **v.** | Fed. R. Civ. P. 56 |
| **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, GILLIAN FRIEDMAN, LORETTA MELBY, THE BOARD OF REGISTERED NURSING AND GARY CARLIN,** | Date:         December 2, 2025<br>Time:         10:00 a.m.<br>Courtroom:   550, 5th Floor<br>Judge:        The Honorable Alicia G. Rosenberg<br>Trial Date:   TBD<br>Action Filed: 7/10/2024 |
| Defendants. | |

I, Loretta Melby, declare as follows:

1.     I am currently employed by defendant State of California, by and through the Board of Registered Nursing, (BRN) and have been since 2014. Since 2020, I have served as the Executive Officer of the BRN. The BRN is an independent agency within the State of California, under the Department of Consumer Affairs.

1

The BRN is the agency vested with the regulation of the practice of registered nursing in the state of California. (Cal. Bus. & Prof. Code, §§ 2701, 2708.1.) Specifically, the BRN is the entity vested with statutory authority to license, regulate, and discipline licensees in the profession of registered nursing within the state of California. As the Executive Officer of the BRN, my duties generally include, but are not limited to: As the Executive Officer of the BRN, my duties generally include, but are not limited to: under the general direction and leadership of the 9-member Board and its Administrative Committee, the Executive Officer (EO) of the Board of Registered Nursing functions as Chief EO who has overall responsibility for the management of the Board's resources and staff. The EO is also responsible for overseeing all aspects of the Boards regulatory requirements in the State of California which includes enforcement of general and advanced nursing practice standards, enforcement of professional conduct, maintenance of a recovery program for impaired nurses, and the requirement of mandatory continuing education and current practices for licensure renewal. As an expert in public policy, the EO is further responsible for interpreting and executing the intent of all Board policies to the public and to other governmental agencies. I have personal knowledge of the facts and opinions made within this declaration, and if called as a witness, I would and could testify competently thereto.

2. I have reviewed and am aware of Plaintiff Esther Atam's allegations against me in this proceeding, specifically, that she alleges I or others at the BRN conspired with unidentified individuals at Kaiser to revoke her nursing license.

3. I did not personally participate in the review of any nursing complaint sent to the BRN concerning Plaintiff's license to practice nursing. I also did not conduct, lead, or participate in the investigation into any complaint sent to the BRN concerning Plaintiff's license to practice nursing.

4. Review of complaints, investigations, and enforcement actions, if any, taken in response to complaints submitted to the BRN are performed by the BRN's

2

Enforcement Division, whose staff is supervised by, respectively, the Chief of Enforcement and Supervising Special Investigator. The BRN employs trained investigators to conduct investigations on behalf of the BRN. The BRN's Chief of Enforcement at the time concerning Plaintiff's license from 2021 to 2023, was Shannon Johnson. The Chief of Enforcement makes the determination concerning complaint and investigative assignments to BRN staff.

5. From 2021 to 2023, I did not have any written or verbal communications with any individuals from Plaintiff's workplace, Kaiser West Los Angeles Medical Center, or the Southern California Permanente Medical Group, regarding the Plaintiff, her work performance, or her capacity to perform the professional functions of a licensed nurse, or otherwise.

6. I did not author, review, or directly approve the Cal. Bus. & Prof. Code, § 820 order compelling an examination to determine fitness to practice regarding Plaintiff, in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson.

7. I did not author, review, or approve the Accusation regarding Plaintiff in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson.

8. I did not author, review, or determine the Default Decision and Order regarding Plaintiff in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson. My name appears in the top right corner bearing the seal of the BRN in order to certify the Default Decision and Order as a verified document of a public agency because such information regarding licenses are generally required to be made publicly available. (Cal. Bus. & Prof. Code, § 27.)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 5, 2025, at San Diego, California.

3

_Loretta Melby_
Executive Officer
Board of Registered Nursing

LA2024304086
95659792.docx

# CERTIFICATE OF SERVICE

Case Name:  **Atam v. Kaiser Foundation**     No.  **2:24-cv-05862-KK-AGR**
            **Health Plan, Inc., et al**

I hereby certify that on <u>November 6, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

### DECLARATION OF DEPUTY ATTORNEY GENERAL JAMIL R. GHANNAM IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

I further certify that some of the participants in the case are not registered CM/ECF users. On <u>November 6, 2025</u>, I have caused to be mailed in the Office of the Attorney General's internal mail system, the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Esther Tendo Atam
13621 Arcturus Avenue
Gardena, CA  90249
**In Pro Per**

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 6, 2025</u>, at Fresno, California.

|                     |                     |
|:-------------------:|:-------------------:|
| C. Vue              | */s/ C. Vue*        |
| Declarant           | Signature           |

LA2024304086
95666488.docx

# EXHIBIT 4

.

**CH-100**

## Request for Civil Harassment Restraining Orders

Read *Can a Civil Harassment Restraining Order Help Me? (form CH-100-INFO)* before completing this form. Also fill out *Confidential CLETS Information (form CLETS-001)* with as much information as you know.

Clerk stamps date here when form is filed.

F I L E D
Clerk of the Superior Court

FEB 07 2023

By: V. Lozano, CLERK
EAST COUNTY DIVISION

### ① Person Seeking Protection

a. Your Full Name: Loretta Melby                    Age: 45

Your Lawyer *(if you have one for this case)*
Name: _____  State Bar No.: _____
Firm Name: _____

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or email.)*

Address: 1108 La Mesa Ave

City: Spring Valley    State: CA    Zip: 91977

Telephone: 614 322 4515    Fax: _____

Email Address: ~~lorettamelby@aol.com~~ Loretta_melby@dca.ca.gov

Fill in court name and street address:

**Superior Court of California, County of San Diego**
- ☐ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
- ☑ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
- ☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
- ☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

Court fills in case number when form is filed.

**Case Number:**
37-2023-00005213-CU-HR-EC

### ② Person From Whom Protection Is Sought

Full Name: Esther Tenho Atam    Age: 34

Address *(if known)*: 13621 Arcturus Ave

City: Gardena    State: CA    Zip: 90249

### ③ Additional Protected Persons

a. Are you asking for protection for any other family or household members?  ☑ Yes  ☐ No  *If yes, list them:*

| Full Name | Gender | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Kevin Gillette | M | 47 | ☑ Yes ☐ No | husband |
| Kristen Bass | F | 29 | ☑ Yes ☐ No | daughter |
| Jon Owen | M | 35 | ☑ Yes ☐ No | friend |
| | | | ☐ Yes ☐ No | |

☐ *Check here if there are more persons. Attach a sheet of paper and write "Attachment 3a—Additional Protected Persons" for a title. You may use form MC-025, Attachment.*

b. Why do these people need protection? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 3b—Why Others Need Protection" for a title.*

She has threatened "you take from me. I take from you." She knows my home address & I live with these people.

**This is not a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. January 1, 2023, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Civil Harassment Restraining Orders**
(Civil Harassment Prevention)

CH-100, Page 1 of 6
→

Case Number:

37-2023-00005213-CU-HR-EC

**(4) Relationship of Parties**

How do you know the person in **(2)**? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 4—Relationship of Parties" for a title.*

She is a licensee. I took her license away as part of my job at the CA Board of Registered Nursing.

**(5) Venue**

Why are you filing in this county? *(Check all that apply):*

a. ☐ The person in **(2)** lives in this county.

b. ☒ I was harassed by the person in **(2)** in this county.

c. ☒ Other *(specify):* I live in this county

**(6) Other Court Cases**

a. Have you or any of the persons named in **(3)** been involved in another court case with the person in **(2)**?

☒ Yes   ☐ No   *(If yes, check each kind of case and indicate where and when each was filed.)*

| | | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|---|
| (1) | ☐ | Civil Harassment | | | |
| (2) | ☐ | Domestic Violence | | | |
| (3) | ☐ | Divorce, Nullity, Legal Separation | | | |
| (4) | ☐ | Paternity, Parentage, Child Custody | | | |
| (5) | ☐ | Elder or Dependent Adult Abuse | | | |
| (6) | ☐ | Eviction | | | |
| (7) | ☐ | Guardianship | | | |
| (8) | ☐ | Workplace Violence | | | |
| (9) | ☐ | Small Claims | | | |
| (10) | ☐ | Criminal | | | |
| (11) | ☒ | Other *(specify):* RN License # 761179 revocation | Sacramento, CA | 2022 | 4000201a5658 |

b. Are there now any protective or restraining orders in effect relating to you or any of the persons in **(3)** and the person in **(2)**? ☒ No   ☐ Yes   *(If yes, attach a copy if you have one.)*

**(7) Description of Harassment**

Harassment means violence or threats of violence against you, or a course of conduct that seriously alarmed, annoyed, or harassed you and caused you substantial emotional distress. A course of conduct is more than one act.

a. Tell the court about the last time the person in **(2)** harassed you.

(1) When did it happen? *(provide date or estimated date):* first email received 7/21/2022 continued to escalate through today.

(2) Who else was there? multiple other recipients in the many emails.

**This is not a Court Order.**

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

→

Case Number:
37-2023-00005213-CU-HR-EC

**(7)** a. **(3)** How did the person in ② harass you? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(3)—Describe Harassment" for a title.*

threats are varied  states  I will send exact note (uR seven days straight  and if anyone still thinks this is just random runn,  guun we shall find out!

States  r will come after me,  she will not rest  etc.

**(4)** Did the person in ② use or threaten to use a gun or any other weapon?

☒ Yes  ☐ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(4)—Use of Weapons" for a title.*

mentioned stabbing in emails

**(5)** Were you harmed or injured because of the harassment?

☐ Yes  ☒ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(5)—Harm or Injury" for a title.*

**(6)** Did the police come?  ☐ Yes  ☒ No

Michael Pamuno Investigator #358 Special operations unit DyLE investigator(s) have gone to her residence to ask her to stp.

If yes, did they give you or the person in ②  an Emergency Protective Order?  ☐ Yes  ☒ No

CVP threat assessment unit is involved Investigate Jeff Legal # 20726 Dignatary Protection Section - south

If yes, the order protects *(check all that apply):*

☐ Me  ☐ The person in ②  ☐ The persons in ③.

Chris Drown  Deputy Rancho San Diego  Stancu filed incident report

*(Attach a copy of the order if you have one.)*

b. Has the person in ② harassed you at other times?

☒ Yes  ☐ No  *(If yes, describe prior incidents and provide dates of harassment below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7b—Previous Harassment" for a title.*

ongoing  escalating again after revocation of RV license 2/3/2013

This is not a Court Order.

Case Number:

37-2023-00006213-CU-HR-EC

**Check the orders you want.** ☑

**(8)** ☒ **Personal Conduct Orders**

I ask the court to order the person in **(2) not** to do any of the following things to me or to any person to be protected listed in **(3)**:

a. ☐ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

b. ☒ Contact the person, either directly or indirectly, in **any** way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by email, by text message, by fax, or by other electronic means.

c. ☒ Other *(specify):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 8c—Other Personal Conduct Orders," for a title.*

Work place - including home office
California Board of Registered Nursing   1747 N. Market blvd suite 150   Sacramento CA 95834

*The person in* **(2)** *will be ordered not to take any action to get the addresses or locations of any protected person unless the court finds good cause not to make the order.*

**(9)** ☒ **Stay-Away Orders**

a. I ask the court to order the person in **(2)** to stay at least **100** yards away from *(check all that apply):*

(1) ☒ Me.
(2) ☒ The other persons listed in **(3)**.
(3) ☒ My home.
(4) ☒ My job or workplace.
(5) ☐ My school.
(6) ☐ My children's school.
(7) ☐ My children's place of child care.

(8) ☒ My vehicle.
(9) ☐ Other *(specify):*

b. If the court orders the person in **(2)** to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job?   ☒ Yes ☐ No *(If no, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 9b—Stay-Away Orders," for a title.*

**(10)** **Firearms (Guns), Firearm Parts, and Ammunition**

Does the person in **(2)** own or possess any firearms (guns), firearm parts, or ammunition? This includes firearm receivers and frames, and any item that may be used as or easily turned into a receiver or frame (see Penal Code section 16531).   ☐ Yes ☐ No ☒ I don't know

*If the judge grants a protective order, the person in* **(2)** *will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive firearms (guns), firearm parts, and ammunition while the protective order is in effect. The person in* **(2)** *will also be ordered to turn in to law enforcement, or sell to or store with a licensed gun dealer, any firearms (guns) and firearm parts within their immediate possession or control.*

**This is not a Court Order.**

<table>
<tr><td>Case Number:<br>37-2023-00005213-CU-HR-EC</td></tr>
</table>

**(11)** ☒ **Temporary Restraining Order**

I request that a Temporary Restraining Order (TRO) be issued against the person in ② to last until the hearing. I am presenting form CH-110, *Temporary Restraining Order,* for the court's signature together with this *Request.*

Has the person in ② been told that you were going to go to court to seek a TRO against him or her?
☒ Yes ☐ No *(If you answered no, explain why below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 11—Temporary Restraining Order" for a title.*

due to emails rec.

**(12)** ☒ **Request to Give Less Than Five Days' Notice of Hearing**

*You must have your papers personally served on the person in ② at least five days before the hearing, unless the court orders a shorter time for service. (Form CH-200-INFO explains* What Is "Proof of Personal Service"? *Form CH-200,* Proof of Personal Service, *may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why below:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 12—Request to Give Less Than Five Days' Notice" for a title.*

Seven day cool down in emails rec. starting 2/2 for revocation of license 2/3/2023

**(13)** ☒ **No Fee for Filing or Service**

a. ☒ There should be no filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence.

b. ☒ The sheriff or marshal should serve (notify) the person in ② about the orders for free because my request for orders is based on unlawful violence, a credible threat of violence, or stalking.

c. ☐ There should be no filing fee and the sheriff or marshal should serve the person in ② for free because I am entitled to a fee waiver. *(You must complete and file form FW-001,* Application for Waiver of Court Fees and Costs *.)*

**(14)** ☐ **Lawyer's Fees and Costs**

I ask the court to order payment of my ☐ lawyer's fees ☐ Court costs.

The amounts requested are:

| Item | Amount | Item | Amount |
|------|--------|------|--------|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or form MC-025 and write "Attachment 14—Lawyer's Fees and Costs" for a title.*

**This is not a Court Order.**

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

→

Case Number:
37-2023-00005213-CU-HR-EC

**(15)** ☐ **Possession and Protection of Animals**

I ask the court to order the following:

a. ☐ That I be given the sole possession, care, and control of the animals listed below, which I own, possess, lease, keep, or hold, or which reside in my household.
*(Identify animals by, e.g., type, breed, name, color, sex.)*

_____

_____

I request sole possession of the animals because *(specify good cause for granting order)*:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 15a—Possession of Animals" for a title.*

_____

_____

_____

b. ☐ That the person in **(2)** must stay at least_____ yards away from, and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of, the animals listed above.

**(16)** ☐ **Additional Orders Requested**

I ask the court to make the following additional orders *(specify)*:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 16—Additional Orders Requested," for a title.*

_____

_____

_____

**(17)** Number of pages attached to this form, if any: _____

Date: 2|6|2023

_____
Lawyer's name (if any)

▶ _____
Lawyer's signature

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: 2|6|2023

Loretta Melby
_____
Type or print your name

▶ Loretta Melby
_____
Sign your name

<span style="background-color:#444;color:#fff">This is not a Court Order.</span>

<Shannon.Johnson@dca.ca.gov>
**Subject:** RE: ESTHER ATAM

Thanks Lori. That's a bizarre email to receive. Do you know anything more about what prompted her to send this email? The tone is, obviously, threatening; so in addition to notifying the DAG, you may want to see if there is any protocol to, e.g., inform DOI, or take other measures to assure your safety.

I'm familiar with some of the interactions she's had with the board. I know that we initiated a BPC 820 evaluation against her, and she protested that. Stemming from that, she subpoenaed DOI, to which DOI's attorney objected, and subpoenaed OAG, to which OAG objected.

In the recent filing that you attached from her civil case against Kaiser, she mentions that she surrendered her license on August 8, 2022. The Accusation against her was filed November 14, 2022. I know the DAG offered her the option in July to surrender her license under BPC 2751 in lieu of being subjected to the mental examination. Her DCA license _profile_ shows her license as current. So I'm confused... did she actually surrender her license? Did she not take the option of surrendering under the alternative proceeding under section 2751? Or did she, and we decided to pursue a hearing anyways? I'm just trying to understand her current status.

Also, do you know who Gillane Friedman is?

Let me know if you have any specific questions or concerns for me.

Thanks,

**Reza Pejuhesh**
(Pronouns he/him)
Attorney III
Legal Affairs Division, Department of Consumer Affairs
1625 N. Market Blvd., Suite S-3D9, Sacramento, CA 95834
Direct: (916) 574-8135
Main Office: (916) 574-822D
Reza.Pejuhesh@dca.ca.gov
*(During this declaration of emergency, I am working remotely, and can be reached during normal business hours between 8 a.m. – 5 p.m.)*

37-2023-00005213-CU-HR-EC

CONFIDENTIALITY NOTICE:
INFORMATION IN THIS MESSAGE, INCLUDING ANY ATTACHMENTS, IS INTENDED ONLY FOR USE BY THE RECIPIENT(S) NAMEO ABOVE. This message may be an attorney-client communication, and as such is privileged and confidential. If you are not an intended recipient of this message, or an agent responsible for delivering it to an intended recipient, you are hereby notified that you have received this message in error, and that any review, dissemination, distribution, or copying of this message is strictly prohibited. Staff are not authorized to forward this message to

# EXHIBIT 5

.

ROB BONTA
Attorney General of California
JAMIL R. GHANNAM
Supervising Deputy Attorney General
State Bar No. 300730
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone: (916) 210-7674
  Fax: (916) 322-8288
  E-mail: Jamil.Ghannam@doj.ca.gov
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT

| | |
|---|---|
| **ESTHER TENDO ATAM,** | Case No. 2:24-cv-05862-KK-AGR |
| Plaintiff, | **SUR-REPLY IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| v. | Fed. R. Civ. P. 56 |
| **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, GILLIAN FRIEDMAN, LORETTA MELBY, THE BOARD OF REGISTERED NURSING AND GARY CARLIN,** | Date: December 2, 2025<br>Time: 10:00 a.m.<br>Courtroom: 550, 5th Floor<br>Judge: The Honorable Alicia G. Rosenberg<br>Trial Date: TBD<br>Action Filed: 7/10/2024 |
| Defendants. | |

**INTRODUCTION**

At the hearing on the motion for summary judgment on December 2, 2025, the Court requested Defendants State of California, by and through the Board of Registered Nursing (BRN), Loretta Melby and Gillian Friedman (BRN Defendants) to provide additional briefing regarding the limited issue of whether Cal. Bus. & Prof. Code, § 820 orders and licensing accusations can be issued by persons

1

delegated to perform such tasks within the BRN, or whether those tasks must be performed by the executive officer of the BRN.

Review of pertinent legal authorities provides that these matters can be validly performed by others within the licensing agency. It is the licensing agencies which have the statutory authority to utilize the investigatory tool provided by Cal. Bus. & Prof. Code, § 820, and there is nothing in the statute's text that limits its use to only certain officers of any agency. California regulations further provide that the BRN's executive officer can delegate their authority to issue licensing accusations to his or her designee. The § 820 order and Accusation in this case are each a valid exercise of the BRN's statutory and regulatory authority.

As set forth in the BRN's motion to dismiss (Dkt. No. 156) and opposition to Plaintiff's motion for summary judgment (Dkt. No. 173), Plaintiff's motion for summary judgment should be denied and the BRN's motion to dismiss granted without leave to amend.

## ARGUMENT

### I. THE BRN HAS THE AUTHORITY TO ISSUE CAL. BUS. & PROF. CODE, § 820 ORDERS, AND THE BRN'S EXECUTIVE OFFICER CAN DELEGATE THEIR POWER TO ISSUE ACCUSATIONS

Cal. Bus. & Prof. Code, § 820 provides that those orders are issued by the licensing agencies, and the statute's text does not place a limitation upon which officer within the agency can issue it. "Whenever it appears that any person holding a license, certificate or permit under this division or under any initiative act referred to in this division may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, *the licensing agency* may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency." Cal. Bus. & Prof. Code, § 820 (emphasis added).

Nothing in the text of Business and Professions Code section 820 limits who within the licensing agency can authorize the issuance of any such order. "Section

2

820 applies to all healing arts practitioners licensed or certificated by the state[.]" *Alexander D. v. State Bd. of Dental Examiners*, 231 Cal. App. 3d 92, 95 (Ct. App. 1991). Cal. Bus. & Prof. Code, § 820 examinations are an investigatory tool, where the licensee faces no potential discipline until formal adjudicatory proceedings are commenced. (*Id*. at 97.) "[P]ublic agencies may delegate the performance of ministerial tasks, including the investigation and determination of facts preliminary to agency action." *California Sch. Emps. Assn. v. Pers. Comm'n*, 3 Cal. 3d 139, 144 (1970); see also Cal. Gov't Code § 7 ("Whenever a power is granted to, or a duty is imposed upon, a public officer, *the power may be exercised* or the duty may be performed *by a deputy of the officer* or by a person authorized, pursuant to law, by the officer, *unless this code expressly provides otherwise*.") Thus, employees of a licensing agency can employ the investigatory tool of issuing a § 820 order.

The BRN's executive officer then has the authority to direct the work of BRN staff and delegate their power to file accusations to his or her designee. The BRN shall appoint an executive officer who shall perform the duties delegated by the board and be responsible to the board for the accomplishment of those duties. Cal. Bus. & Prof. Code, § 2708(a). The BRN has statutory authority to "prosecute all persons guilty of violating this chapter." Cal. Bus. & Prof. Code, § 2715. "Every certificate holder or licensee, including licensees holding temporary licenses, or licensees holding licenses placed in an inactive status, may be disciplined as provided in this article." Cal. Bus. & Prof. Code, § 2750. In addition to the statutory definition of unprofessional conduct as grounds for discipline described in Cal. Bus. & Prof. Code, § 2761, failure to cooperate and participate in any board investigation pending against the licensee is unprofessional conduct that is grounds for discipline. See Cal. Code Regs. tit. 16, § 1441(b). The BRN shall discipline the holder of any license whose default has been entered or who has been heard and found guilty by suspending judgment, placing them upon probation, suspending the

3

right to practice, revoking their license, or taking any other action within the BRN's discretion it deems proper. See Cal. Bus. & Prof. Code, § 2759, (a)-(e).

California Code of Regulations, title 16, section 1405, authorizes the executive officer of the BRN to, among other duties, plan, direct supervise and organize the work of the staff of the board; and, to administer examinations, collect fees, issue licenses and permits and investigate complaints. Cal. Code. Regs., tit. 16, § 1405(a), (d) (Authority of Executive Officer). The executive officer further has the authority to delegate certain functions, including the power and discretion to receive and file accusations, issue subpoenas, set and calendar matters for hearing and perform other functions necessary to the efficient dispatch of the business of conducting the BRN's administrative hearings to his or her designee. See Cal. Code. Regs., tit. 16, § 1403 (Delegation of Certain Functions).

II.    **THE § 820 ORDER AND ACCUSATION IN THIS MATTER ARE VALID**

Pursuant to the foregoing statutes and regulations, there does not appear to be any impropriety concerning the issuance of the Cal. Bus. & Prof. Code, § 820 order concerning Plaintiff on July 18, 2022, or the resulting Accusation filed on November 14, 2022, and served upon Plaintiff on November 16, 2022.

Here, the Petition and Order Compelling Mental and/or Physical Examination was issued by Shannon Johnson, on behalf of Loretta Melby. (Dkt. No. 170, pp. 94-98.)[1] Cal. Bus. & Prof. Code, § 820 provides those orders are issued by licensing agencies, the executive officer of the BRN can plan, direct, supervise and organize the work of BRN staff regarding investigatory complaints, § 820 orders are considered an investigatory tool, and investigative fact finding is a ministerial task that can be delegated to agency employees. See Cal. Code. Regs., tit. 16, § 1405(a), (d); *Alexander D., supra*; *California Sch. Emps. Assn., supra*. Thus, Shannon Johnson, as the Chief of Enforcement for the BRN (Dkt. No. 173-3, p. 34), can

---

[1] Such materials are maintained as confidential by the BRN. However, it is Plaintiff that filed an unredacted copy of the petition with her summary judgment materials.

4

utilize the investigatory tool of issuing a Bus. & Prof. Code, § 820 order to a licensee on behalf of the BRN.

The subsequent Accusation against Plaintiff's license (Dkt. No. 173-3, pp. 5-19) signed by Shannon Johnson as the designee of Executive Officer Loretta Melby, is also valid because the executive officer of the BRN has the authority to delegate to his or her designee the authority to issue disciplinary accusations. Cal. Code. Regs., tit. 16, § 1403. Both items are a valid exercise of the BRN's statutory and regulatory authority.

## CONCLUSION

Licensing agencies have the statutory authority to utilize the investigatory tool provided by Cal. Bus. & Prof. Code, § 820, and there is nothing in the statute's text that limits its use to only certain officers of the agency. Additionally, the BRN's executive officer has the authority to delegate his or her authority to issue licensing accusations to his or her designee. The § 820 order and Accusation in this case are each a valid exercise of the BRN's statutory and regulatory authority.

As set forth in the BRN's motion to dismiss (Dkt. No. 156) and opposition to Plaintiff's motion for summary judgment (Dkt. No. 173), Plaintiff's motion for summary judgment should be denied and the BRN's motion to dismiss granted without leave to amend.

Dated:  December 3, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Jamil R. Ghannam*

JAMIL R. GHANNAM
Supervising Deputy Attorney General
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

LA2024304086
39490561

5