Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com
Plaintiff in Pro Per

**F I L E D**
CLERK, U.S. DISTRICT COURT

06/22/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CSO _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

ESTHER TENDO ATAM,

*Plaintiff*

vs.

KAISER FOUNDATION HOSPITALS ET AL.,

*Defendants*

**Case No.:  2:24-cv-05862-KK-AS**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

**Date:** To Be Determined by the Court
**Time:** To Be Determined by the Court
**Courtroom:** Courtroom 3, 3rd Floor
**Judge:** Hon. Kenly, Kiya Kato.

1.    **Plaintiff Esther Tendo Atam** respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 59(e) and 15(a)(2), for an Order altering or amending the Judgment entered on June 17, 2026, vacating the dismissal of Plaintiff's claims against the BRN Defendants, and granting Plaintiff leave to file the attached Proposed Second Amended Complaint.

2.    This motion is based upon the grounds that: (1) the Court's dismissal order was entered before the expiration of the objection-response period established by Federal Rule of Civil Procedure 72(b)(2); (2) the Court's adoption of

1

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)

the Report and Recommendation failed to address material constitutional and statutory issues expressly raised by Plaintiff; (3) the Court overlooked evidence establishing a viable constitutional claim concerning the unauthorized delegation of authority relating to the issuance of a California Business and Professions Code § 820 examination order; (4) the judgment resulted in manifest injustice; and (5) justice requires granting leave to amend under the liberal standards of Rule 15(a)(2).

## I.    INTRODUCTION

3.    This motion presents extraordinary circumstances warranting relief under Federal Rule of Civil Procedure 59(e). The Court entered judgment dismissing Plaintiff's claims on **June 17, 2026**, before the expiration of the statutory period during which Defendants were entitled to respond to Plaintiff's objections to the Magistrate Judge's Report and Recommendation. As a result, the Court acted on an incomplete record while material constitutional issues remained unresolved.

4.    More significantly, Plaintiff's objections identified a critical legal issue that neither the Magistrate Judge nor the Court substantively addressed: whether a Section 820 mental and physical examination order was issued pursuant to an unlawful delegation of authority by officials of the California Board of Registered Nursing ("BRN"). Plaintiff specifically argued that Defendant Loretta Melby admitted, through sworn testimony and documentary evidence, that authority concerning the issuance of the challenged order was exercised by Chief Enforcement Officer Shannon Johnson pursuant to delegated authority. Plaintiff further argued that such delegation violated governing statutes and regulations and rendered the order void.

5.    Rather than addressing the merits of this argument, the Report and Recommendation omitted any meaningful analysis of the issue. The District Court thereafter adopted the Report and Recommendation without resolving Plaintiff's objections concerning the legality of the delegation, the constitutional implications of the challenged order, and the due process violations arising therefrom.

6.    Because the Court entered judgment before completion of the objection process and because the Court failed to address dispositive issues raised by Plaintiff, relief under Rule 59(e) is necessary to prevent manifest injustice.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

**7.**    Furthermore, because Plaintiff has prepared a Proposed Second Amended Complaint that incorporates the evidence identified in Plaintiff's objections and clarifies the constitutional claims arising from Defendants' conduct, leave to amend should be granted pursuant to Rule 15(a)(2).

## II.    STATEMENT OF FACTS

### A.    THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**8.**    On or about **May 19, 2026**, the Magistrate Judge issued a Report and Recommendation recommending dismissal of Plaintiff's claims against the BRN Defendants.

**9.**    The Report and Recommendation addressed numerous arguments raised by the parties but failed to substantively analyze Plaintiff's contention that the challenged Section 820 examination order was issued pursuant to an unlawful delegation of authority and therefore violated Plaintiff's constitutional rights.

**10.**    The omission was significant because the Court had previously ordered supplemental briefing concerning the validity and authority underlying the Section 820 proceeding. Plaintiff submitted extensive briefing and evidentiary materials addressing that issue.

### B.    PLAINTIFF'S TIMELY OBJECTIONS

**11.**    On **June 8, 2026,** Plaintiff timely filed objections pursuant to Federal Rule of Civil Procedure 72(b).

**12.**    Plaintiff precisely identified that the Report and Recommendation ignored evidence establishing that BRN official Shannon Johnson exceeded her lawful bounds by exercising authority explicitly restricted to the Executive Officer under applicable statutes and regulations. Because this evidence directly impacts the legality of the administrative action at issue, the omission of these facts constitutes a clear error requiring correction under Rule 59(e).

**13.**    Plaintiff argued that this omission was dispositive because it directly affected the validity of the challenged Section 820 order and the resulting constitutional claims.

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)

### C. DEFENDANTS FAILED TO RESPOND

**14.** Pursuant to Federal Rule of Civil Procedure **72(b)(2)** and **28 U.S.C. § 636(b)(1)**, Defendants possessed a strict 14-day statutory right to respond to Plaintiff's **June 8, 2026** Amended Objections, rendering the response deadline **June 22, 2026**. By entering the dismissal order on June 17, 2026, this Court effectively truncated the mandatory briefing cycle and adjudicated Plaintiff's Objections without the benefit of a complete record.

**15.** Defendants neither sought leave to extend their response deadline nor filed any submission challenging the factual and legal assertions set forth in Plaintiff's objections.

### D. ENTRY OF JUDGMENT BEFORE RESOLUTION OF THE ISSUES RAISED

**16.** On **June 17, 2026**, the Court entered judgment dismissing Plaintiff's claims.

**17.** The Court's premature ruling—issued prior to the expiration of the statutory response period and without any defense opposition or extension request on the docket—constitutes a manifest error of law and a procedural defect that warrants reconsideration to preserve Plaintiff's due process rights.

**18.** In doing so, the Court stated that it had conducted a de novo review of the portions of the Report and Recommendation to which objections had been directed.

**19.** However, Plaintiff respectfully submits that meaningful de novo review could not have occurred with respect to the unlawful delegation issue because the Report and Recommendation itself never analyzed that issue and therefore provided no findings for the Court to review or adopt.

**20.** The resulting judgment left unresolved Plaintiff's constitutional claims concerning the validity of the Section 820 order and the authority of the individuals responsible for issuing and enforcing it.

### III. LEGAL STANDARD

**21.** Federal Rule of Civil Procedure 59(e) permits a court to alter or

4

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

amend a judgment to correct clear errors of law or fact, prevent manifest injustice, consider newly discovered evidence, or account for an intervening change in controlling law. Relief under Rule 59(e) is appropriate where the court overlooked material facts or dispositive legal arguments that could affect the outcome of the case. See *School District No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993); *Allstate Insurance Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

22.    Additionally, under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), when a party files specific objections to a Magistrate Judge's Report and Recommendation, the District Court must conduct a de novo review of the challenged portions. A de novo review requires the Court to independently consider and resolve the issues raised in the objections. See *United States v. Raddatz*, 447 U.S. 667, 673-76 (1980); *Reyna-Tapia v. United States*, 328 F.3d 1114, 1121 (9th Cir. 2003).

23.    However, the Report and Recommendation in this matter created a procedural "objection trap" that effectively neutralized Plaintiff's right to meaningful *de novo* review. Specifically, the Report and Recommendation entirely omitted any analysis, mention, or acknowledgement of critical portions of the Summary Judgment record—namely, the additional briefing and oral arguments concerning the validity of the Section 820 order raised during the December 2, 2025 hearing on Plaintiff's Motion for Summary Judgment.

24.    By completely ignoring this subset of the record, the Report and Recommendation forced Plaintiff into an untenable procedural position. Plaintiff was required to object to a total void in the Magistrate Judge's findings. Because the Magistrate Judge failed to grapple with, weigh, or evaluate Plaintiff's arguments and evidence regarding the Section 820 order in the first instance, this Court was left with no analysis to review *de novo*. Instead of reviewing a flawed recommendation, this Court was forced to act as the primary finder of fact on an expanded record that the Report and Recommendation ignored, frustrating the strict statutory architecture of 28 U.S.C. § 636.

25.    Because a *de novo* review requires the District Court to independently consider and resolve the actual issues raised and supported by the record (*Reyna-Tapia, 328 F.3d at 1121*), the adoption of an Report and Recommendation that completely blinds itself to a critical, briefed, and argued component of Plaintiff's Summary Judgment motion constitutes a manifest error of law. To remedy this

5

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

injustice, the Court should grant this Motion, vacate its prior order, and evaluate the omitted Section 820 briefing and hearing record.

26.     Federal Rule of Civil Procedure 15(a)(2) further provides that leave to amend should be "freely give[n] when justice so requires." The Supreme Court has instructed that this rule must be applied with extreme liberality, particularly where amendment may cure pleading deficiencies and permit resolution of claims on their merits. See *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

27.     Accordingly, where a party demonstrates that material constitutional issues were overlooked, dispositive objections were not fully addressed, and amendment would promote adjudication on the merits without prejudice to the opposing party, relief under Rules 59(e) and 15(a)(2) is warranted.

### IV.    ARGUMENTS

### A.    THE COURT COMMITTED A MANIFEST ERROR OF LAW BY OVERLOOKING DEFENDANTS' ADMISSION OF ULTRA VIRES ACTION AND ILLEGAL DELEGATION OF STATUTORY AUTHORITY

28.     Relief under Federal Rule of Civil Procedure 59(e) is appropriate where a court overlooks controlling facts or legal principles that directly affect the outcome of the litigation. *Allstate Insurance Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011). Here, the Court committed manifest error by failing to address evidence demonstrating that Defendant Loretta Melby admitted, through her own sworn declaration, that authority relating to the issuance of the challenged Section 820 order was exercised by a subordinate pursuant to delegated authority. Plaintiff has consistently maintained that such delegation violated California law and rendered the resulting order void ab initio.

29.     The significance of this admission cannot be overstated. The authority to compel a licensee to undergo a mental or physical examination under California Business and Professions Code § 820 is not a routine administrative function. Rather, it is a significant exercise of governmental power that directly affects a licensee's professional rights, reputation, and ability to earn a livelihood. Because the issuance of such an order carries serious constitutional consequences, the exercise of that authority must strictly comply with governing statutes and regulations. Plaintiff's objections specifically argued that Defendant Melby's

6

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

declaration established that the challenged authority was exercised through an unlawful delegation process that lacked statutory authorization.

30.    A professional license constitutes a protected property interest under the Fourteenth Amendment. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-78 (1972); *Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979). Consequently, governmental action depriving an individual of that protected interest must comply with constitutional due process requirements. Where state officials act beyond the scope of authority granted by law, the resulting deprivation of property may constitute a violation of procedural due process actionable under 42 U.S.C. § 1983. See *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).

**a)    Defendant Melby's Declaration Constitutes Evidence of Personal Participation**

31.    To establish liability under 42 U.S.C. § 1983, a plaintiff must demonstrate that the defendant personally participated in or caused the constitutional deprivation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). Plaintiff's position throughout this litigation has been that Defendant Melby's own declaration establishes her personal involvement in the delegation of authority that resulted in the issuance of the challenged Section 820 order.

32.    According to Plaintiff's interpretation of the evidence, Defendant Melby admitted that authority relating to the issuance of the order was exercised by Chief Enforcement Officer Shannon Johnson pursuant to delegated authority. If true, such evidence directly links Defendant Melby to the alleged constitutional deprivation and provides a factual basis for liability under Section 1983. The Court's failure to address this evidence constitutes manifest error because it concerns the very element of personal participation that Defendants argued was lacking.

**b)    Qualified Immunity Does Not Protect Conduct That Violates Clearly Established Law**

33.    Government officials are entitled to qualified immunity only when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

34.     Plaintiff's objections argued that a reasonable Executive Officer of the BRN is presumed to know the limits of authority established by the California Business and Professions Code and the California Code of Regulations governing the agency. Plaintiff specifically contended that **16 CCR § 1405** does not authorize the sub-delegation of discretionary quasi-judicial authority concerning the issuance of a Section 820 order. Therefore, according to Plaintiff's argument, a deliberate decision to permit a subordinate to exercise such authority cannot be characterized as a reasonable mistake of law.

35.     Whether Plaintiff's interpretation ultimately prevails is a question that must be adjudicated on the merits. However, the Court's dismissal order failed to address the argument altogether. Because qualified immunity cannot be resolved without first determining whether the challenged conduct violated clearly established legal requirements, the Court's failure to examine the underlying delegation issue constitutes manifest error requiring reconsideration.

### c)     Ultra Vires Conduct Falls Outside the Protection of Quasi-Judicial Immunity

36.     Defendants have previously asserted immunity defenses based upon their official roles within the BRN. However, absolute or quasi-judicial immunity does not automatically shield conduct undertaken in the clear absence of jurisdiction. See *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

37.     Under the plain language of **16 CCR § 1405**, the authority to issue and approve a Section 820 order is vested solely and exclusively in Defendant Melby. This exclusive statutory command strips Defendant Melby of any legal authority to delegate this power to subordinates. Consequently, any administrative action taken under this unlawful delegation is *ultra vires* and *void ab initio*.

38.     Because discretionary immunity only shields acts committed within the outer perimeter of an official's lawful duties, it is legally inapplicable to *ultra vires* conduct that completely lacks statutory authorization.

39.     By overlooking this distinction, the Court failed to address a critical legal issue that directly affects Defendants' immunity defenses and the viability of Plaintiff's constitutional claims. Because the legality of the delegation is a threshold issue that must be resolved before immunity can be determined, the

8

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

Court's failure to consider the matter constitutes manifest error of law warranting relief under Rule 59(e).

42. Accordingly, Plaintiff respectfully submits that the Court's failure to analyze Defendants' alleged admission of unlawful delegation and ultra vires conduct resulted in a fundamental legal error that materially affected the outcome of the case. Amendment of the Judgment is therefore necessary to permit full consideration of these constitutional and statutory issues.

**B.    THE COURT'S PURPORTED DE NOVO REVIEW WAS RENDERED IMPOSSIBLE BECAUSE THE MAGISTRATE JUDGE COMPLETELY OMITTED PLAINTIFF'S STATUTORY VIOLATION CLAIMS**

41. Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a district court is required to conduct a de novo determination of those portions of a Magistrate Judge's Report and Recommendation to which specific objections have been made. The Supreme Court has made clear that de novo review requires the district court to independently consider the disputed issues and reach its own conclusions regarding the matters raised by the objecting party. *United States v. Raddatz*, 447 U.S. 667, 673-76 (1980). This obligation is not satisfied by a perfunctory adoption of a Report and Recommendation where the underlying issue was never analyzed in the first instance.

42. Here, the record demonstrates that Plaintiff repeatedly raised the issue of unauthorized statutory delegation and ultra vires governmental action throughout the litigation. Most notably, Plaintiff expressly presented these arguments in prior briefing, including Doc. 194, where Plaintiff argued that the Section 820 order was issued through an unlawful delegation of authority in violation of governing statutes and regulations. Plaintiff further argued that such unauthorized conduct directly affected the validity of the order and the constitutionality of the resulting disciplinary proceedings.

43. Despite the significance of these issues, the Magistrate Judge's Report and Recommendation completely omitted any discussion of Plaintiff's statutory delegation claims. The Report contains no substantive analysis of whether Defendant Loretta Melby possessed authority to delegate the issuance of a Section 820 order, whether Chief Enforcement Officer Shannon Johnson lawfully exercised such authority, or whether the challenged order was void as a result of an

PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)

unlawful delegation scheme. Indeed, the constitutional and jurisdictional issues raised by Plaintiff were effectively ignored despite being central to Plaintiff's claims and despite this Court having previously ordered supplemental briefing regarding the validity of the Section 820 proceedings.

44.     Plaintiff timely objected to this omission. Rather than merely disagreeing with conclusions reached by the Magistrate Judge, Plaintiff specifically identified the absence of any analysis concerning the unlawful delegation issue and requested that the District Court conduct the independent review required by 28 U.S.C. § 636(b)(1). Plaintiff's objections expressly explained that the Magistrate Judge failed to address a dispositive constitutional issue and that such omission prevented meaningful consideration of Plaintiff's claims under 42 U.S.C. § 1983.

45.     However, in adopting the Report and Recommendation, the Court stated that it had reviewed and adopted the Magistrate Judge's analysis regarding the issues raised in Plaintiff's objections. Respectfully, that conclusion presents a fundamental problem. Because the Magistrate Judge never analyzed the unlawful delegation issue, there was no analysis for the Court to review, adopt, reject, or modify. A district court cannot defer to reasoning that does not exist. Nor can a court satisfy its statutory obligation of de novo review by adopting a Report and Recommendation on an issue that the Report itself never addressed.

46.     The Ninth Circuit has repeatedly emphasized that de novo review requires independent consideration of all issues specifically raised by the parties. See *United States v. Remsing*, 874 F.2d 614, 617-18 (9th Cir. 1989); *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). Where a Magistrate Judge omits discussion of a dispositive issue and the objecting party specifically identifies that omission, the District Court must independently analyze the issue before entering judgment. Failure to do so constitutes reversible error because it deprives the objecting party of the review guaranteed by Congress under 28 U.S.C. § 636(b)(1).

47.     The error is particularly significant here because Plaintiff's statutory delegation claim was not a peripheral matter. It was a threshold jurisdictional issue that directly impacted the validity of the Section 820 order, the legality of Defendants' conduct, the applicability of immunity defenses, and the existence of constitutional violations under the Fourteenth Amendment. Had the Court addressed the merits of Plaintiff's arguments, the outcome of the litigation could have been materially different. Accordingly, the omission cannot be dismissed as

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

harmless.

**48.** By relying upon a Report and Recommendation that failed to address Plaintiff's statutory violation claims, the Court effectively conducted de novo review on an incomplete record. This failure resulted in manifest error and deprived Plaintiff of the full judicial review mandated by federal law. Relief under Rule 59(e) is therefore necessary to correct this error, vacate the Judgment, and permit meaningful consideration of the constitutional and statutory issues that remain unresolved.

**C.    THE PREMATURE ENTRY OF JUDGMENT INTERCEPTED THE STATUTORY BRIEFING SCHEDULE AND CONSTITUTES A MANIFEST INJUSTICE**

**49.** Federal Rule of Civil Procedure 72(b)(2) expressly provides that a party may file a response to objections to a Magistrate Judge's Report and Recommendation within fourteen (14) days after being served with those objections. This procedure is not a mere formality. Rather, it is an integral component of the statutory review framework established by Congress under 28 U.S.C. § 636(b)(1), which requires a district judge to make a de novo determination of those portions of a Magistrate Judge's Report and Recommendation to which specific objections have been made. See *United States v. Raddatz*, 447 U.S. 667, 673-76 (1980).

**50.** Here, Plaintiff timely filed objections identifying substantial constitutional, statutory, and jurisdictional defects in the proceedings underlying this action. Those objections specifically challenged the legality of the Section 820 order, the unlawful delegation of statutory authority, the validity of Defendants' immunity defenses, and the Magistrate Judge's omission of those issues from the Report and Recommendation. Under Rule 72(b)(2), Defendants' response period remained active until June 22, 2026. Nevertheless, the Court entered final judgment on June 17, 2026, before expiration of the statutory briefing period.

**51.** By entering judgment while the Rule 72 process remained open, the Court effectively intercepted the statutory review procedure mandated by Congress. The Ninth Circuit has repeatedly emphasized that de novo review must be meaningful and must be conducted upon a complete record. See *United States v. Remsing*, 874 F.2d 614, 617-18 (9th Cir. 1989); *United States v. Howell*, 231 F.3d 615, 621-22 (9th Cir. 2000). When judgment is entered before completion of the

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

objection process, the resulting review is necessarily truncated and risks depriving litigants of the protections afforded by § 636(b)(1).

52.    Moreover, the premature dismissal prevented adversarial testing of Plaintiff's objections concerning the unlawful delegation of authority and Defendants' admissions regarding Shannon Johnson's role in the issuance of the challenged Section 820 order. Courts have consistently recognized that procedural due process requires notice and a meaningful opportunity to be heard before a protected property interest may be deprived. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985). Plaintiff's professional nursing license constitutes a protected property interest under the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-78 (1972); *Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979).

53.    The Court's entry of judgment before expiration of the Rule 72(b)(2) response period was therefore not a harmless procedural irregularity. It was a structural error that deprived Plaintiff of the full statutory review process guaranteed by federal law. Because the dismissal occurred before completion of the objection process and before the Court addressed the dispositive constitutional issues raised by Plaintiff, relief under Rule 59(e) is necessary to prevent manifest injustice. See *Allstate Insurance Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

**D.    THE COURT'S DE NOVO REVIEW WAS LEGALLY INSUFFICIENT BECAUSE IT FAILED TO ADDRESS THE CENTRAL CONSTITUTIONAL AND STATUTORY ISSUES RAISED IN PLAINTIFF'S OBJECTIONS**

54.    In its June 17, 2026 Order, the Court stated that it had "conducted a de novo review of those portions of the report to which objections were directed" and adopted the findings and recommendations of the Magistrate Judge. Respectfully, the record demonstrates that such review could not have been meaningfully completed because the Magistrate Judge entirely omitted Plaintiff's statutory delegation claims from the Report and Recommendation.

55.    Under 28 U.S.C. § 636(b)(1), when objections are filed, a district court must independently consider and determine the issues raised therein. *United States v. Raddatz*, 447 U.S. 667, 675 (1980). The Ninth Circuit has made clear that de novo review requires actual consideration of the specific matters raised by the

12

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

objecting party. *Reyna-Tapia v. United States*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Remsing*, 874 F.2d at 617-18. A district court cannot satisfy its statutory obligation by adopting a Report and Recommendation that never addressed the issue being objected to.

56.     Plaintiff's objections did not merely disagree with conclusions reached by the Magistrate Judge. Rather, Plaintiff specifically identified a dispositive omission: the Magistrate Judge failed to analyze evidence concerning the validity of the Section 820 order and the alleged unlawful delegation of authority by Defendant Loretta Melby to Chief Enforcement Officer Shannon Johnson. This issue was particularly significant because the Court had previously ordered supplemental briefing concerning the validity of the Section 820 proceedings. See Doc. 188. Plaintiff responded by presenting evidence demonstrating that the challenged order may have been issued through an unauthorized delegation process contrary to California law.

57.     The Report and Recommendation never addressed whether California Business and Professions Code § 820 authorized the challenged conduct. Nor did it analyze whether 16 CCR § 1405 permitted the alleged sub-delegation of discretionary authority. Likewise, the Report failed to consider Plaintiff's argument that an order issued without lawful authority would be void ab initio and incapable of supporting disciplinary action against a professional licensee.

58.     Because the Magistrate Judge omitted these issues entirely, there was no substantive analysis for the Court to review, adopt, reject, or modify. A district court cannot defer to reasoning that does not exist. See *United States v. Ramos*, 65 F.4th 427, 435 (9th Cir. 2023) (de novo review requires independent consideration of disputed matters). Consequently, the Court's adoption of the Report and Recommendation left Plaintiff's central constitutional claims unresolved.

### a)     The Unresolved Procedural Due Process Violations

59.     The Fourteenth Amendment prohibits the State from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV. A professional nursing license is a constitutionally protected property interest. *Roth*, 408 U.S. at 576-78; *Barry*, 443 U.S. at 64 n.11.

60.     Plaintiff's objections argued that Defendant Melby lacked authority under 16 CCR § 1405 to permit a subordinate to independently issue or approve a

13

Section 820 examination order. If true, the resulting order would be void because an administrative agency possesses only those powers granted by statute. See *California Assn. of Psychology Providers v. Rank*, 51 Cal.3d 1, 11 (1990); *Morris v. Williams*, 67 Cal.2d 733, 748 (1967). Actions taken in excess of statutory authority are ultra vires and without legal effect.

61.     Plaintiff further argued that bypassing the official decision-maker deprived Plaintiff of procedural safeguards mandated by California law. Due process requires that decisions affecting protected property interests be made by officials possessing lawful authority and jurisdiction. *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970); *Loudermill*, 470 U.S. at 542-46. An order issued by an unauthorized official cannot satisfy constitutional due process requirements.

### b)     The Unresolved Substantive Due Process Violations

62.     Plaintiff also argued that compelling a mental or physical examination pursuant to an allegedly invalid order and subsequently depriving Plaintiff of her professional license based upon that order constituted arbitrary and capricious state action. Government conduct that is arbitrary, lacks lawful authority, and results in the deprivation of a protected property interest may violate substantive due process. *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998); *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).

63.     If the challenged Section 820 order was issued without lawful authority, then the resulting deprivation of Plaintiff's professional license may constitute precisely the type of arbitrary governmental action prohibited by the Fourteenth Amendment. Yet neither the Report and Recommendation nor the Court's dismissal order addressed this issue.

### c)     The Failure to Address Plaintiff's Objections Constitutes Manifest Error

64.     Rule 59(e) relief is appropriate where a court overlooks dispositive facts or legal arguments that could materially alter the outcome of the litigation. *Herron*, 634 F.3d at 1111; *School District No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Here, Plaintiff timely raised constitutional and statutory issues concerning the validity of the Section 820 order, the legality of Defendants' conduct, and the resulting deprivation of Plaintiff's protected property interest. Neither the Magistrate Judge nor the Court addressed those issues.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

**65.** Because the Court's order contains no substantive analysis of Plaintiff's principal objections, the Court could not have completed the meaningful de novo review required by 28 U.S.C. § 636(b)(1). The resulting judgment therefore rests upon an incomplete review of the record and constitutes manifest error of law. To prevent manifest injustice and ensure compliance with the statutory review process, the Judgment should be altered or amended pursuant to Rule 59(e).

### E.  LEAVE TO AMEND SHOULD BE GRANTED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)

**66.** Even assuming arguendo that the Court concludes Plaintiff's current pleading remains deficient in some respect, dismissal with prejudice is unwarranted because Plaintiff can readily cure any perceived deficiencies through amendment. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely give[n] when justice so requires." The Supreme Court has repeatedly emphasized that this mandate must be applied with "extreme liberality." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit likewise holds that Rule 15's policy favoring amendment is to be applied with extraordinary liberality, particularly in civil rights actions brought under 42 U.S.C. § 1983. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc).

**67.** Here, justice strongly favors amendment because the proposed Second Amended Complaint is based upon evidence that was either overlooked or never substantively addressed during the Court's review of the case. Plaintiff's proposed amendment incorporates evidence produced by Defendants themselves, including a *supplemental briefing* concerning the issuance of the Section 820 order, the role of Chief Enforcement Officer Shannon Johnson, and Defendant Loretta Melby's admissions regarding the exercise of authority within the Board of Registered Nursing. These facts were not manufactured after dismissal; rather, they originate from Defendants' own declarations, pleadings, and evidentiary submissions.

**68.** Most importantly, the proposed amendment directly addresses the constitutional and statutory issues omitted from the Report and Recommendation. Plaintiff's proposed Second Amended Complaint clarifies and refines the claims arising from the alleged unlawful delegation of authority, the resulting deprivation of Plaintiff's constitutionally protected nursing license, and the violations of procedural and substantive due process under the Fourteenth Amendment. Because

the amendment focuses on evidence already contained within the record, it serves the interests of justice by ensuring that the Court evaluates the merits of Plaintiff's constitutional claims based upon a complete factual record.

### a)    The Proposed Amendment Is Not Futile

**69.**    Leave to amend may be denied only where amendment would be futile. *Foman*, 371 U.S. at 182; *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). An amendment is futile only if no set of facts could be alleged that would state a viable claim for relief.

**70.**    That standard is not met here. Plaintiff's proposed amendment incorporates evidence allegedly demonstrating that the challenged Section 820 order was issued through an unlawful delegation of authority. Plaintiff further alleges that such conduct deprived her of a constitutionally protected property interest in her professional nursing license without due process of law. Claims arising under 42 U.S.C. § 1983 for violations of procedural and substantive due process are plainly cognizable causes of action. See *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-78 (1972).

**71.**    Moreover, the evidence supporting the amendment originates from Defendants themselves. Plaintiff specifically relies upon evidence submitted by Defendants in opposition to Plaintiff's Motion for Summary Judgment, including materials attached as [**Exhibit A-1, 2, 3**]. Because the amendment is grounded in record evidence rather than speculation, Defendants cannot establish futility.

### b)    Defendants Will Suffer No Prejudice

**72.**    The Ninth Circuit has repeatedly held that prejudice to the opposing party is the most important factor in determining whether leave to amend should be granted. *Eminence Capital*, 316 F.3d at 1052. Here, Defendants cannot demonstrate any cognizable prejudice.

**73.**    First, the proposed amendment does not introduce an entirely new factual scenario. The claims arise from the same Section 820 proceedings, the same administrative actions, and the same conduct already at issue throughout this litigation. Second, the amendment relies largely upon evidence generated and produced by Defendants themselves. Defendants therefore had actual knowledge

16

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

of the facts underlying the proposed amendment long before this motion was filed.

**74.** Furthermore, Plaintiff provided notice to Defendants of the intent to amend before filing this motion. As reflected in Exhibit B, Plaintiff electronically notified the BRN Defendants of the proposed amendment and the basis for the revised allegations. Consequently, Defendants cannot plausibly claim surprise, unfair disadvantage, or lack of notice.

**75.** Indeed, the absence of prejudice is further demonstrated by the procedural posture of this case. Defendants have not yet substantively responded to Plaintiff's objections concerning the unlawful delegation issue. Under these circumstances, permitting amendment would simply allow the parties to litigate the constitutional issues on their merits rather than foreclosing them through procedural dismissal.

### c)  There Is No Undue Delay, Bad Faith, or Dilatory Motive

**76.** The record contains no evidence of bad faith, undue delay, or dilatory motive. To the contrary, Plaintiff acted diligently in raising the delegation issue throughout the litigation, including during supplemental briefing ordered by the Court, in Plaintiff's summary judgment filings, and in Plaintiff's objections to the Report and Recommendation.

**77.** The proposed amendment became necessary only after Plaintiff discovered that critical constitutional issues and supporting evidence had not been addressed in the Report and Recommendation. Plaintiff moved promptly to seek reconsideration and amendment upon learning that those issues remained unresolved. Such conduct reflects diligence rather than delay.

**78.** Moreover, because the proposed Second Amended Complaint narrows and clarifies the existing constitutional controversy rather than expanding it, amendment will promote judicial efficiency and facilitate resolution of the case on its merits.

### d)  The Interests of Justice Overwhelmingly Favor Amendment

**79.** The Supreme Court has repeatedly emphasized that cases should be decided on their merits whenever possible. *Foman*, 371 U.S. at 181-82. This principle is especially important where constitutional rights are at stake. Plaintiff alleges that state officials deprived her of a constitutionally protected professional

17

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

license through procedures that exceeded statutory authority and violated due process guarantees protected by the Fourteenth Amendment.

80.    Because the proposed Second Amended Complaint is grounded in evidence already contained within the record, causes no prejudice to Defendants, is not futile, and directly addresses the deficiencies identified by the Court, justice requires that leave to amend be granted. See *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Eminence Capital*, 316 F.3d at 1052.

81.    Accordingly, Plaintiff respectfully requests that the Court grant leave to file the attached Proposed Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) so that this matter may be resolved on its merits rather than on procedural grounds.

## F.    THE JUDGMENT LACKS SUFFICIENT FINALITY TO PRECLUDE RELIEF UNDER RULE 59(e)

82.    Federal Rule of Civil Procedure 59(e) expressly authorizes a party to move to alter or amend a judgment within twenty-eight (28) days after entry of judgment. Plaintiff's motion is timely and falls squarely within the period prescribed by Rule 59(e). See *Banister v. Davis*, 590 U.S. 504, 508-09 (2020) (Rule 59(e) permits a district court to reconsider matters properly encompassed within a decision on the merits).

83.    Unlike a motion for a new trial, a Rule 59(e) motion serves the important function of allowing courts to correct manifest errors of law or fact, consider newly discovered evidence, and prevent manifest injustice. *Allstate Insurance Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

84.    Because Plaintiff timely filed this motion and because the Court entered judgment before fully addressing the constitutional and statutory issues raised in Plaintiff's objections, the Judgment has not achieved the level of finality that would justify refusing reconsideration. Rather, the interests of justice favor allowing the Court to revisit its ruling, correct the errors identified herein, and ensure that Plaintiff's constitutional claims receive the meaningful judicial review required by federal law.

85.    For all of these reasons, the Court should alter or amend the Judgment

18

pursuant to Rule 59(e), grant leave to amend pursuant to Rule 15(a)(2), and permit Plaintiff's constitutional claims to proceed on a complete and fully developed record

## V.   CONCLUSION AND PRAYER FOR RELIEF

86.     For all the foregoing reasons, Plaintiff respectfully submits that relief under Federal Rule of Civil Procedure 59(e) is warranted. The record demonstrates that critical constitutional and statutory issues concerning the validity of the Section 820 order, the alleged unlawful delegation of authority, and the resulting deprivation of Plaintiff's protected property interest were never substantively addressed by either the Magistrate Judge or this Court. As a result, the Judgment rests upon an incomplete review of the record and a failure to consider dispositive issues that could materially affect the outcome of this litigation.

87.     Plaintiff further submits that the Court's premature entry of Judgment before expiration of the Rule 72(b)(2) response period interrupted the statutory review process established by 28 U.S.C. § 636(b)(1) and deprived Plaintiff of the meaningful de novo review guaranteed by federal law. Because Plaintiff timely raised these issues through objections and because the Court's Order contains no substantive analysis of those objections, amendment of the Judgment is necessary to prevent manifest injustice and ensure that Plaintiff's constitutional claims receive full and fair consideration.

88.     Additionally, Plaintiff's Proposed Second Amended Complaint cures any perceived pleading deficiencies by incorporating evidence produced by Defendants themselves, clarifying the factual basis of Plaintiff's constitutional claims, and narrowing the issues for adjudication. Amendment will not prejudice Defendants, is not futile, and is fully consistent with the liberal amendment policy embodied in Federal Rule of Civil Procedure 15(a)(2) and recognized by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).

89.     Accordingly, Plaintiff respectfully requests that this Court enter an Order:

a)     Granting Plaintiff's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e);

b)     Vacating the Judgment entered on June 17, 2026;

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

**c)** Conducting a full and meaningful de novo review of the constitutional, statutory, and jurisdictional issues raised in Plaintiff's Objections and omitted from the Report and Recommendation;

**d)** Granting Plaintiff leave to file the attached Proposed Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2);

**e)** Directing the Clerk of Court to accept the Proposed Second Amended Complaint for filing;

**f)** Reopening and resetting any applicable briefing schedule as the Court deems appropriate; and

**g)** Granting such other and further relief as the Court deems just, proper, and equitable.

90. As demonstrated throughout this Motion and in the attached Proposed Second Amended Complaint, Plaintiff has alleged specific and actionable constitutional violations supported by evidence already contained within the record. The interests of justice therefore strongly favor permitting this matter to proceed on its merits rather than allowing dismissal based upon an incomplete review of the issues presented. Respectfully, Plaintiff requests that the Court grant the relief sought herein in its entirety.

DATED: June 22, 2026

Respectfully submitted,
**/s/ Esther Tendo Atam**

Plaintiff, In Pro Per
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com

20

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

# EXHIBIT A

Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com
Plaintiff in Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER TENDO ATAM,<br><br>*Plaintiff*<br><br>vs.<br><br><br>KAISER FOUNDATION HOSPITALS ET AL.,<br><br>*Defendants* | **Case No.:  2:24-cv-05862-KK-AS**<br><br>**SECOND AMENDED COMPLAINT FOR:**<br>1. Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964<br>2. Retaliation in Violation of (ADA)<br>• Disability Discrimination (FEHA)<br>• Failure to Accommodate (FEHA)<br>• Failure to Engage in Interactive Process (FEHA)<br>• Race and National Origin Discrimination (FEHA)<br>• National Origin Harassment (FEHA)<br>• Failure to Prevent Discrimination, Harassment, and Retaliation (FEHA)<br>• Hostile Work Environment<br>• Wrongful Termination in Violation of Public Policy<br>3. Tortious Interference with Prospective Economic Advantage<br>4. Conspiracy to Interfere with Civil |

Rights (42 U.S.C. § 1985)

5. Conspiracy to Deprive Civil Rights (42 U.S.C. § 1983)

6. Violation of Fourteenth Amendment Due Process (42 U.S.C. § 1983)

7. Violation of Civil Rights (42 U.S.C. § 1983)

8. Defamation / Injurious Falsehood

9. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

Before Hon. Judge Kenley Kiya Kato

### PLAINTIFF SEEKS:

- Declaratory Relief;
- Preliminary and Permanent Injunctive Relief;
- Reinstatement and/or Front Pay;
- Compensatory Damages;
- Economic Damages;
- General Damages;
- Special Damages;
- Punitive and Exemplary Damages;
- Attorney's Fees and Costs as Authorized by Law;
- Pre-Judgment and Post-Judgment Interest; and
- Such Other and Further Relief as the Court Deems Just and Proper.

**ESTHER TENDO ATAM**
Plaintiff, In Pro Per

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................i

I.   PRELIMINARY STATEMENT ................................................................................ 1

37.   TOLLING AND EXHAUSTION OF ADMINSTRAIVE REMEDIES ......................... 6

II.   STATEMENT OF FACT ......................................................................................... 19

A.   FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION ...................................................................................................... 19

B.   FACTUAL ALLEGATIONS DEFAMATION ......................................................... 27

C.   FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS ..........29

D.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ............................................33

E.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ...........................................36

III.   CAUSES OF ACTION - ........................................................................................42

COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112) .......................................................................................................42

COUNT 2: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ............................................................................................................47

COUNT 3: DEFAMATION PER SE ..........................................................................44

COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS  (Violation of Civil right Act 42 U.S.C., & 1985) ............................................................................................48

COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS  (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983) .......................................................................................... 57

COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983) ................................................................................................59

COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):) ......................................................... 64

COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD ...................................................... 68

COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) ................71

IV.   RELIEF SOUGHT .................................................................................................77

V.   DEMAND FOR JURY TRIAL ................................................................................81

**CASES**

*Ashcroft v. Iqbal*..................................................................................................24

*Bell Atlantic Corp. v. Twombly*..........................................................................24

*Holland v. Florida*, 560 U.S. 257, 259 (2010)..................................................9

*Holland v. Florida*, 560 U.S. 258, 249 (2010...................................................10

*Holland v. Florida*, 560 U.S. 631, 653 (2010...................................................8

*Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946).....................................9

*Honig v. Doe*, 484 U.S. 305, 327 (1988)............................................................7

*Kavanagh v. Noble*, 332 U.S. 535, 539 (1947);..................................................9

*Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982)................................11

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996....................10

**STATUTES & RULES**

**(ADA), (42 U.S.C & 12112**.....................................................................i, 4, 33

16 CCR § 1405...............................................................................29, 31, 56

**28 U.S.C & 1738**.............................................................................................4

28 U.S.C section 133 and 28 U.S.C section 1343(a)(3)...................................1

**28 U.S.C. § 1738**...........................................................................................10

28 U.S.C. §§ 2201 and.......................................................................................69

**42 U.S.C & 11111**...........................................................................................6

42 U.S.C. & 1983, 42 U.S.C. & 1985....................................................................1

42 U.S.C. § 11112(a).........................................................................................61

42 U.S.C. § 11112(b.........................................................................................61

42 U.S.C. § 12102(1),.......................................................................................34

42 U.S.C. § 12111 *et seq*................................................................................19

42 U.S.C. § 12111(8)........................................................................................34

42 U.S.C. § 12112(b)(5)(A),..............................................................................19

42 U.S.C. § 1983.......................................................................................passim

42 U.S.C. § 1983 and California Civil Code § 3294...........................................71

**42 U.S.C. § 1985(3))**.....................................................................................21

**42 U.S.C. §§ 11111–11112**...........................................................................60

**42 U.S.C. Section 1983)**:........................................................................3, 11

**42 U.S.C., & 1983**.......................................................................i, 5, 47, 54

California Business and Professions Code § 820................................................48

Government Code § 12940 et seq......................................................................69

**Rule 12(b)(6)**.......................................................................................passim

Rule 12(b)(6)......................................................................................................12

**Rule 12(b)(6):**...............................................................................................24

**Violation of Civil right Act 42 U.S.C., & 1983)**:.............................................5

**Violation of Civil right Act 42 U.S.C., & 1985**.....................................i, 5, 39

ii

1.   Plaintiff submits this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiff has been granted leave to file this pleading by the Courts order date **06/17/2026**, which is attached here to as Exhibit A.

## I.   PRELIMINARY STATEMENT

2.   This is a civil action for damages and injunctive relief brought pursuant to 42 U.S.C. & 1983, 42 U.S.C. & 1985,  and the First and Fourteenth Amendments to the United States Constitution to redress coordinated, unlawful conspiracy designed to violate Plaintiff's civil rights, deny due process, and suppress protected petitioning activity secured by the Constitution and laws of the United States. This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343(a)(3)** (civil rights), as this action arises under the Constitution and laws of the United States.

3.   **The "Color of Law" Assertion**: This action arises out of a *continuous*, unlawful conspiracy between between private entity Kaiser Permanente, ("Kaiser"), Gary Carlin and State Actors operating under color of law, specifically agent and officials of the Board of Registered Nursing ("BRN") Loretta Melby.

4.   Defendants Kaiser engaged in a text-book display of bad faith. One day, Defendants explicitly agreed to schedule and administer a Fitness for Duty (FFD) examination for Plaintiff. The very next day, before any such examination could occur, or be realistically scheduled, Kaiser abruptly terminated Plaintiff's employment. Simultaneously,  Kaiser immediately forwarded knowingly false report to the California Board Of Registered Nursing ("BRN") deceptively claiming that Plaintiff had outright refused to take the Examination. This rapid manufactured pretext was a deliberate move to destroy plaintiff's career, justify an unlawful termination and retaliate against plaintiff forming the basis  of the constitutional and statutory claims detailed below.

5.   Kaiser initiated this retaliatory scheme by manufacturing and transmitting a knowingly false and defamatory report to the BRN, concerning

1

**SECOND AMENDED COMPLAINT**

Plaintiff's professional conduct and competency. The objective was to revoke Plaintiff's Registered Nurse License without affording constitutionally mandate procedural Due Process, and to subsequently use the administrative proceedings and state court to insulate themselves from liability and deny the plaintiff access to the courts.

6.    In furtherance of their conspiracy, the defendants agreed and acted jointly to weaponize a fabricated, defamatory, and retaliatory report submitted to the BRN. This malicious report directly cause the unlawful revocation of Plaintiff's RN license without due process of law.

7.    To conceal the fabricated nature of the retalitory report and evade scrutiny, Defendants, acting in concert with state agents, petitioned state court for improper prefiling vexatious litigant prefiling orders, leveraging the prefiling orders to protect third parties from meritorious lawsuit and suppress plaintiff's First Amendment Rights.

8.    To immunize Kaiser from liability and permanently suppress plaintiff's legal redress, the BRN actively intervened in an active state court proceedings. Operating outside its lawful regulatory mandate, the BRN submitted a bad-faith filing specifically  designated to orchestrate and support  a highly restrictive prefiling vexatious litigant order against plaintiff.

9.    By acting in concert to secure state court protective orders that shield government third parties from legitimate legal scrutiny, defendants have effectively weaponized state judicial machinery. This conspiracy has deprived plaintiff of protected property and liberty interest, extinguishing plaintiff's livelihood, and completely obstructed  Plaintiff's fundamental right of access to the courts.

10.    The revocation of Plaintiff's license and barring of access to state courts to expose the defamation were accomplished under color of state law. These acts constitute a deprivation of Plaintiff's liberty and property interest in their professional license without Due Process of law, and a Violation of the right to petition the government for redress of grievances.

2

**SECOND AMENDED COMPLAINT**

**11.**    In Response to Plaintiff's protected activities to expose and hold the Defendants accountable for violating constitutional rights, the Defendants—acting in active concert and collusion with state actors—embarked on an extensive , deliberate, and malicious smear campaign , of factual distortions and character assassination and to insulate itself from accountability.

**12.**    By systematically  deploying false narratives and engaging in reactive abuse, the Defendants sought to distort the truth, tarnish the Plaintiff's reputation, and punish them for exercising their fundamental right.

**13.**    This "reactive abuse" was intentionally leveled to discredit plaintiff and obscure Defendants underlying  Civil Right Violations. Through this coordinated effort, the Defendants have inflicted substantial harm and sought to silence the Plaintiff through intimidation and defamation. Plaintiff brings this action to seek redress, clear their name and secure Justice under the Law. Plaintiff  seeks declaratory relief, permanent  injunctive relief, compensatory damages, punitive damages and  to remedy this ongoing pattern of State connected retaliation and reputaional Harm.

**14. Deprivation of Constitutional Rights Due Process Violations (42 U.S.C. Section 1983)**:

**15. Introduction of the Dispute**: This dispute arises out of the application of a **December 22, 2022**, state court prefiling order to a separate, pre-existing employment lawsuit Plaintiff filed on **December 5, 2022**, against Southern California Permanente Medical Group (SCPMG). The enforcement of this order in the 2022 litigation forms the basis of the controversy, leading to the federal claims asserted herein.

**16. The Defendant's Position**: In the 2022 lawsuit, the defendants presented an entry of judgment order from **September 21, 2022**, in a prior case involving a separate entity, Kaiser Foundation Hospitals (KFH).

**17. The Defendant's Argument**: Defendants asserted that the prior judgment constituted a global dismissal of Fair Employment and Housing Act

3

**SECOND AMENDED COMPLAINT**

(FEHA) claims against all Kaiser entities, including SCPMG, thereby subjecting the 2022 lawsuit to the prefiling order.

**18. The State Court's Ruling**: The state court adopted the defendants' characterization of the prior judgment and ordered Plaintiff to post a $10,000 deposit.

**19. The Procedural Dismissal**: Following Plaintiff's failure to post the required deposit, the state court dismissed the lawsuit against SCPMG.

**20. Lack of Merits Determination**: The state court entered the dismissal order without convening an evidentiary hearing or adjudicating the factual merits of Plaintiff's underlying tort claims.

**21. The Impact**: This procedural dismissal terminated Plaintiff's active claims prior to the expiration of the applicable statutes of limitation.

**22. Exception to Full Faith and Credit (28 U.S.C & 1738)**: Federal courts generally respect State Courts judgments, but not if the State court lacked Jurisdiction or **completely Denied Due Process**.

**23.** A Federal court is not bound by Full Faith and Credit under 28 U.S.C & 1738 because the state court judgment lacked fundamental due process. A state court order that bars a plaintiff from filing claims before the expiration of the applicable stature of limitation - without an evidentiary hearing or formal adjudication on the merit - is constitutionally void and **ineligible for res judicata or collateral estoppel.**

**24. Violation of the Americans with Disabilities Act (ADA), (42 U.S.C & 12112):** Defendants violated the Disabilities Act (ADA), 42 U.S.C., & 12111, by failing to engage in good faith interactive process to identify and implement reasonable accommodation, resulting in an adverse employment and unlawful discrimination.

**25. Defamation and Tortious Interference:** Defendants engaged in extreme and outrageous conduct involving intentional, malicious and widespread

4

**SECOND AMENDED COMPLAINT**

smear campaign, publishing false and defamatory statement to third parties like the Board of Registered Nursing with reckless disregard for the truth, constituting Defamation Per Se and Tortious Interference with Plaintiff's prospective economic advantage.

26. **Conspiracy to Interfere with Civil Rights  (Violation of Civil right Act 42 U.S.C., & 1985)**: Defendants conspired and acted in concert for the express purpose of depriving plaintiff of the equal protection of the laws, hindering the course of Justice and violating Plaintiff's constitutional rights.

27. **Conspiracy to Deprive Civil Rights  (Violation of Civil right Act 42 U.S.C., & 1983)**: Defendants intentionally obstructed, intimidated and retaliated against plaintiff to block their fundamental right of access to the courts, guaranteed under the First and Fourteenth Amendments.

28. A prefiling order entered  on **July 7, 2025**  (to protect third parties like the Board of Registered Nursing and Kaiser entities) regarding  unadjudicated California Business and Professions Code & 820 orders constitutes a structural denial of Due Process under the Fourteenth Amendment. A prefiling restriction cannot be weaponized as a blanket immunity shield for third parties where the underlying merits of the fraudulent reporting were never litigated or judicially determined.

29. **Revocation of RN license without Due Process (Violation of the 14th Amendment (42 U.S.C., & 1983):**   An RN license is a protected property interest. Defendants acting under color of State law, deprived Plaintiff of a protected property and liberty interest in their Registered Nurse License without Procedural and Substantive Due Process in Violation of the Fourteenth Amendment.

30. An administrative "section 820 Order" and subsequent accusation was issued by a subordinate lacking statutory authority acting as a "rubber stamp" without providing plaintiff with a meaningful hearing or the required constitutional safe guards.

31. **Defamation  /  Injurious  Falsehood:** Defendants  knowingly, maliciously and in bad faith submitted False Report to the NPDB outside the

5

**SECOND AMENDED COMPLAINT**

immity protections of **42 U.S.C & 11111**, causing severe, ongoing, and irreparable harm to Plaintiff's professional reputation and livelihood."

**32. Intentional Infliction of Emotional Distress (IIED):** Defendants engaged in extreme, outrageous, and continuous conduct, intended to terrify, harass and psychologically menace the plaintiff, directly resulting in severe intentional infliction of Emotional Distress and physical manifestation of anxiety.

**33.    TOLLING    AND    EXHAUSTION    OF    ADMINSTRAIVE REMEDIES**

**The Futility of Administrative Exhaustion (Title VII / ADA / FEHA Claims)**

**34.    The Legal Rule:**

**35.    Federal courts do not require a plaintiff to perform a useless act.**

**36.    Administrative exhaustion is excused under the "futility exception" when an agency or a prior court ruling has made it impossible or entirely certain that the remedy will be denied.**

**37.    The Doctrines of Futility and Claim Preclusion Excused Any Secondary Administrative Exhaustion Because Defendants Locked in a Global Adjudication on the Merits.**

**38.**    Plaintiff is excused from any requirement to obtain a secondary, administrative Right-to-Sue letter from either the California Civil Rights Department (formerly DFEH/FEHA) or the Equal Employment Opportunity Commission (EEOC). The futility exception to the administrative exhaustion doctrine applies squarely here. *See, e.g., Honig v. Doe*, 484 U.S. 305, 327 (1988) (exhaustion is not required when it would be futile).

**39.    On September 21, 2021**, Defendant Kaiser Foundation Hospitals ("KFH") and various Doe defendants successfully secured an entry of final judgment. In doing so, Defendants actively and aggressively argued to the court

6

**SECOND AMENDED COMPLAINT**

that this final judgment was fatal to *all* Kaiser entities as a whole, effectively treating all related entities as a single, indivisible global unit for the purposes of claim preclusion.

40.    By locking in a judicial determination that the operative claims were dead globally, Defendants' own legal maneuvering rendered any secondary administrative filing entirely futile. An administrative agency cannot resurrect a claim that a court of competent jurisdiction has already declared legally dead via a final judgment. Because Defendants successfully bound all Kaiser entities to that **September 21, 2021** judgment, requesting a secondary administrative right-to-sue letter would have been a hollow, meaningless gesture. The law does not require a plaintiff to exhaust administrative remedies where the outcome is a predetermined legal impossibility due to the defendant's own microscopic litigation tactics.

### 41.    The Timeliness of ADA Title II Claims and Equitable Tolling

42.    **The Legal Rule:** Equitable tolling applies in federal court when a plaintiff pursues their rights diligently but extraordinary circumstances—such as a defendant's subversion of the judicial process or an erroneous procedural dismissal—prevented timely filing on the merits.

### 43.    Plaintiff's ADA Title II Claims Are Timely, and to the Extent Any Limitation Period Has Lapsed, Plaintiff is Entitled to Equitable Tolling Due to Defendants' Subversion of Judicial Machinery.

44.    On May 10, 2021, Plaintiff received a valid Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), thereby exhausting administrative remedies and preserving timely federal claims. Plaintiff's Americans with Disabilities Act (ADA) claims accrued on **March 18, 2021,** and are subject to the applicable statutory filing period. Plaintiff diligently pursued these rights by filing a timely action against Kaiser Foundation Hospital (KFH) in State court on **November 21, 2021**, well within the applicable statutory window.

7

**SECOND AMENDED COMPLAINT**

**45.** Equitable tolling is appropriate because Plaintiff pursued their rights with reasonable diligence, but was prevented from timely filing due to extraordinary circumstances utterly beyond their control. Namely, Defendants engaged in bad-faith, contradictory legal maneuvering explicitly designed to obstruct a determination on the merits.

**46.** While the statute of limitations is strictly construed, federal courts consistently recognize that a defendant's inequitable conduct, deception, or bad-faith gamesmanship tolls the limitations period.

**47.** Here, Defendants did not merely defend themselves; they actively subverted the judicial process. Defendants switch-vaunted their legal positions across different fora, asserting contradictory procedural arguments designed solely to exhaust the clock. This intentional, deceptive maneuvering created a moving target that effectively closed the courthouse doors to Plaintiff. This underhanded strategy constitutes an extraordinary circumstance because it directly impeded Plaintiff's ability to file the instant federal action within the nominal limitations window. Defendants cannot use the statute of limitations as both a sword and a shield when their own bad-faith conduct engineered the very delay they now complain of.

**48.** Despite Defendants' systemic obstruction, Plaintiff diligently pursued their claims. Reasonable diligence requires only "reasonable efforts under the circumstances," not maximum feasible diligence. *Holland v. Florida*, 560 U.S. 631, 653 (2010). Plaintiff consistently advanced this litigation and responded promptly to Defendants' manufactured procedural hurdles. Because equitable tolling is a fact-bound inquiry, Plaintiff filed this action immediately upon discovering the full scope of Defendants' fraudulent, contradictory maneuvering. Consequently, equity requires tolling the limitations period to allow a decision on the merits.

**49.** In a prior state court action, Kaiser Foundation Hospitals ('KFH') successfully sought summary judgment on July 14, 2022, solely on the technical, non-substantive ground that it lacked an employment relationship with Plaintiff, producing a Southern California Permanente Medical Group ('SCPMG') paycheck to identify SCPMG as the true employer. Despite this narrow ruling, and while

8

**SECOND AMENDED COMPLAINT**

Doe defendants remained pending, KFH improperly entered a final judgment on **September 21, 2022** purporting to dismiss the entire action, by misrepresenting to the state court that all claims against all Kaiser-related entities had been adjudicated on the merits.

50. Defendants then weaponized this misrepresentation in December 2022—after Plaintiff had already commenced a separate action against SCPMG— by securing a pre-filing vexatious litigant order. The state court, operating under the false preclusion narrative advanced by Defendants, conditioned Plaintiff's ability to proceed on the posting of an arbitrary $10,000 bond. Plaintiff's subsequent administrative dismissal resulted solely from a financial inability to post this exorbitant bond, not from a failure of the substantive merits of the Americans with Disabilities Act ('ADA') claims.

51. Equitable tolling is designed precisely for scenarios where a defendant's own deceptive or manipulative litigation conduct creates a functional, insurmountable barrier to a plaintiff's timely filing. *See, e.g.*, *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947); *Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946) (holding that equitable tolling applies where a defendant's conduct has misled the plaintiff or obstructed relief). Defendants cannot use a procedural shield they acquired through misrepresentation to bar Plaintiff from a federal forum.

52. The diligence prong of the equitable tolling doctrine does not require perfect or flawless execution, but rather 'reasonable diligence' under the circumstances. *Holland v. Florida*, 560 U.S. 257, 259 (2010).

53. Plaintiff has consistently, aggressively, and without delay attempted to bring these claims to light. Plaintiff timely filed against KFH, promptly initiated an action against SCPMG upon learning of their purported employer status via KFH's own evidentiary productions, and was actively litigating when Defendants disrupted the ordinary course of proceedings with the pre-filing order. Plaintiff did not sleep on their rights; rather, Plaintiff's access to the courts was stripped away by a financial requirement triggered by Defendants' misrepresentations. Because Plaintiff filed this federal action as soon as practically viable following the

9

**SECOND AMENDED COMPLAINT**

functional closure of the state court forum, the diligence requirement is fully satisfied.

54.    To the extent Defendants assert that any statute of limitations has run, the doctrine of equitable tolling must intervene. Federal equitable tolling applies when a plaintiff shows: (1) diligent pursuit of their rights, and (2) extraordinary circumstances that stood in their way. *Holland v. Florida*, 560 U.S. 258, 249 (2010).

55.    **March 18, 2021**: Cause of action accrues; ADA Title II statute of limitations begins running.

56.    **May 10, 2021**: Plaintiff successfully obtains a valid EEOC Right-to-Sue letter. **September 21, 2021**: Court enters final judgment for KFH; Defendants argue this judgment legally binds and immunizes all Kaiser entities globally. **December 5, 2022**: Plaintiff files a separate lawsuit against SCPMG (*Pro Per*), well before the March 18, 2023 ADA expiration date. **December 22, 2022**: Defendants obtain a retroactive pre-filing order, placing Plaintiff on the vexatious litigant list and imposing a $10,000 security bond. **December 13, 2023**: Court summarily dismisses the SCPMG case solely for failure to pay the $10,000 bond, bypassing a ruling on the actual merits. **July 7, 2025**: This restriction was heavily compounded on July 7, 2025, after Plaintiff's action against SCPMG was dismissed, and SCPMG successfully obtained an additional, layered prefiling order.

57.    <u>**Exception to Full Faith and Credit (28 U.S.C. § 1738) Phrasing**</u>

58.    Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts generally must give a state court judgment the same preclusive effect it would have in the courts of the rendering State." *Vandegrift v. Pennos*, 2026 WL; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996).

59.    However, a well-established exception dictates that federal courts will not respect or enforce a state court judgment if the rendering court lacked jurisdiction or completely denied the litigant due process." *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982) ("A State may not grant preclusive effect

10

**SECOND AMENDED COMPLAINT**

in its own courts to a constitutionally infirm judgment, and federal courts are not required to accord full faith and credit to such a judgment.").

60. Because Plaintiff has plausibly alleged that the underlying state court lacked completely denied Plaintiff a full and fair opportunity to litigate in violation of Due Process, the state court judgment is constitutionally infirm. Consequently, Section 1738 does not bar Plaintiff's claims.

61. **Deprivation of Constitutional Rights Due Process Violations (42 U.S.C. Section 1983)**:

62. The Prior State Court Judgment Does Not Bar Plaintiff's Claims Because It Was Procured Through a Manifest Error of Law and Constitutes a Fraud on the Court That Violated Due Process.

63. Defendants cannot rely on the prior state court judgment for claim preclusion because that judgment is void as a matter of law. The State Court committed a **manifest error of law and a fraud on the court** by entering a final judgment in favor of the Kaiser entities as Doe defendants.

64. **Extrinsic Fraud Exception**: res judicata does not apply to judgments obtained by fraud on the court or extrinsic fraud that defiled the judicial machinery. D**enial of Due Process**: a judgment transforming a minor prefiling procedural rule into a summary, unadjudicated dismissal before the statute of limitations expired violates core constitutional due process. Specifically, the State Court fundamentally subverted justice by transforming a restrictive, prefiling procedural mechanism—intended merely as an administrative gatekeeping tool—into a premature summary dismissal of Plaintiff's valid, unadjudicated tort claims.

65. This dismissal occurred **well before the expiration of the applicable statute of limitations**, effectively suppressing and killing Plaintiff's viable claims without giving Plaintiff a meaningful opportunity to be heard. Because the state court machinery was subverted to achieve an improper summary termination of unadjudicated claims, the resulting judgment lacks any preclusive effect under federal law. Consequently, Plaintiff has pled sufficient facts to state a plausible claim for relief that survives dismissal under Rule 12(b)(6).

11

**SECOND AMENDED COMPLAINT**

## II.     PERSONAL JURISDICTION

**66.     Personal Jurisdiction:** This Court has personal jurisdiction over all Defendants pursuant to California Code of Civil Procedure Section 410.10 and the Due Process Clause of the Fourteenth Amendment.

**67.     Corporate Defendants:** Defendants Kaiser Foundation Hospitals, (KFH), Southern California Permanente Medical Group (SCPMG), and the California Board of Registered Nursing are citizens of California, maintain regular and systematic business operations, and have continuous corporate offices within this judicial district.

**68.     Individual Defendants:** Defendants Gary Carlin and the remaining individual Defendants named herein reside and work within the State of California, maintaining sufficient minimum contacts within this forum.

**69.     Purposeful Availment:** All Defendants have purposefully availed themselves of the benefits, privileges, and protections of California law by conducting business, executing official duties, and operating within the state.

**70.     Specific Jurisdiction:** This Court has specific personal jurisdiction over Defendants because the unlawful conduct giving rise to Plaintiff's claims occurred in substantial part within this judicial district.

**71.     Effects Test:** Defendants intentionally directed their wrongful conduct at Plaintiff, a resident of California. Defendants knew or should have known that their actions would cause severe harm and produce effects within this state, specifically within Los Angeles County.

**72.     Fair Play and Substantial Justice:** The exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

## III.     JURISDICTION

12

**SECOND AMENDED COMPLAINT**

73.    This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343(a)(3)** (civil rights), as this action arises under the Constitution and laws of the United States.

74.    This Court has **personal jurisdiction** over Defendants because Defendants reside in, are incorporated in, maintain their principal place of business in, or systematically conduct substantial continuous business operations within the State of California and this judicial district. Furthermore, a substantial part of the tortious conduct, statutory violations, and omissions giving rise to Plaintiff's claims occurred within this State and judicial district, through which Defendants purposefully availed themselves of the privileges and protections of California law.

## IV.    VENUE

75.    Venue is proper in the United States District Court for the Central District of California pursuant to **28 U.S.C. § 1391(b)(1) and (b)(2)** because a substantial part of the events, actions, and omissions giving rise to the claims occurred within this judicial district, and Defendants reside or conduct systemic business operations within this district.

76.    Factual bases supporting venue in this district include, but are not limited to, the following:

77.    **Employment Site**: Plaintiff was employed at the Kaiser West Los Angeles Medical Center, located in Los Angeles County, within this judicial district.

78.    **Unlawful Conduct**: The alleged retaliation, discriminatory suspension, denial of reasonable accommodations under the Americans with Disabilities Act (ADA), and ultimate termination of Plaintiff's employment all took place within this judicial district.

79.    **Corroborating Communications**: Key operational communications involving HR, management, and executive officials took place within this district.

13

**SECOND AMENDED COMPLAINT**

**80.** **Administrative Actions**: Plaintiff's internal complaints and EEOC filings originated within this district.

**81.** **License Revocation Factual Origin**: The administrative complaint and subsequent revocation of Plaintiff's Registered Nurse (RN) license by the California Board of Registered Nursing (BRN)—which relied upon false and misleading representations by Defendants—had its factual origin in this district.

**82.** **State Court Nexus**: The related state court proceedings—including the improper designation of Plaintiff as a vexatious litigant, the denial of claims against the Kaiser entity admitting employment, and the procedural consolidations—occurred within the Los Angeles County Superior Court system, deeply anchoring the factual nexus of this matter to this federal district.

**83.** **Evidence and Witnesses**: The operational documents, digital records, key witnesses, and sources of evidence relevant to the adjudication of this matter are located within this judicial district.

**84.** **Residency**: Plaintiff resides in Gardena, California, which is situated within the Central District of California.

## V. PARTIES

### PLAINTIFF

**85.** **Esther Tendo Atam** ("Plaintiff") is an individual residing in **Gardena, California**, within the jurisdiction of the United States District Court for the Central District of California. At all times relevant to this Complaint, Plaintiff was a licensed **Registered Nurse (RN)** in the State of California. She was employed at **Kaiser West Los Angeles Medical Center**, where she experienced ongoing workplace harassment, retaliation, denial of accommodations under the **Americans with Disabilities Act (ADA)**, and ultimately wrongful termination.

**86.** Plaintiff is a Black woman and a member of multiple protected classes under federal law—including race, color, national origin, and disability status. She

14

**SECOND AMENDED COMPLAINT**

brings this action in **pro per** (self-represented), asserting violations of her **civil rights, employment rights, and constitutional guarantees**, as detailed herein.

**DEFENDANTS**

**A.    KAISER FOUNDATION HOSPITALS ("KFH")**

**87.**    Defendant KAISER FOUNDATION HOSPITALS ("KFH") is, and at all times mentioned herein is, a nonprofit public benefit corporation organized and existing under the laws of the State of California. KFH maintains its principal place of business in Oakland, California, and operates healthcare facilities throughout the state, including the Kaiser Permanente West Los Angeles Medical Center.

**88.**    At all relevant times, Defendant KFH acted as the joint employer of Plaintiff, or otherwise exercised operational control over Plaintiff's employment conditions.

**89.**    Plaintiff is informed, believes, and thereon alleges that Defendant KFH actively collaborated, conspired, and acted in concert with other Kaiser entities, the California Board of Registered Nursing ("BRN"), and specific actors within the state court system to retaliate against Plaintiff. This coordinated retaliation occurred in response to Plaintiff asserting her protected legal rights, reporting internal misconduct, and requesting reasonable accommodations under the Americans with Disabilities Act ("ADA").

**90.**    Defendant KFH is sued in its corporate capacity for its direct and vicarious liability regarding the following unlawful conduct:

**91.    Retaliation**: Engaging in adverse employment actions against Plaintiff for protected activities.

**92.    Denial of Court Access**: Engaging in coordinated legal maneuvers designed to obstruct Plaintiff's access to the judicial system.

15

**SECOND AMENDED COMPLAINT**

93.    **Sham Fitness for Duty Process**: Supporting, implementing, and executing a pretextual Fitness for Duty ("FFD") evaluation to justify discriminatory actions

94.    **Malicious Agency Cooperation**: Cooperating with the BRN to submit false or misleading information, intending to fraudulently frame Plaintiff as mentally unfit to practice.

**B.    SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP ("SCPMG")**

95.    Defendant Southern California Permanente Medical Group ("SCPMG") is, and at all times mentioned herein was, a for-profit professional corporation organized and existing under the laws of the State of California, with its principal place of business in Pasadena, California.

96.    SCPMG is a medical group affiliated with Kaiser Foundation Hospitals and operates healthcare clinics and medical centers throughout Southern California.

97.    SCPMG was Plaintiff's direct employer. SCPMG is sued in its corporate capacity for its direct liability and the acts of its agents and employees acting within the scope of their employment. Plaintiff is informed, believes, and thereon alleges that SCPMG is liable for unlawful employment practices and tortious conduct, including but not limited to: employment retaliation, denial of Americans with Disabilities Act (ADA) accommodations, retaliatory termination, initiating a sham Fitness for Duty (FD) process, and maliciously submitting false, defamatory information to the Board of Registered Nursing (BRN).

**C.    KAISER FOUNDATION HEALTH PLAN Inc ("KFHP Inc.")**

98.    Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") is a California corporation with its principal place of business in Oakland, California.

99.    At all times relevant to this action, KFHP has been an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

16

**SECOND AMENDED COMPLAINT**

2000e(b), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(5), employing 15 or more individuals.

**100.** KFHP, acting as a joint employer/integrated enterprise with Defendant Southern California Permanente Medical Group, exercised centralized control over Plaintiff's employment terms, conditions, human resources management, labor relations, and workplace accommodations.

### D.    CALIFORNIA BOARD OF REGISTERED NURSING ("BRN")

**101.** The BRN is a division of the **California Department of Consumer Affairs**, responsible for regulating and disciplining licensed registered nurses. It is a **state agency** and operates under color of state law. The BRN is named as a necessary party for purposes of injunctive relief. Plaintiff does not seek damages against the BRN itself in compliance with the Court's order.

### E.    LORETTA MELBY

**102.** At all relevant times, **Loretta Melby** served as the **Executive Officer** of the **California Board of Registered Nursing (BRN)**, a division of the California Department of Consumer Affairs. She is responsible for the final approval, oversight, and enforcement of disciplinary actions taken against licensed nurses in California.

**103.** Plaintiff alleges that under Ms. Melby's leadership:

**104.** The BRN engaged in retaliatory proceedings based on knowingly false reports submitted by Kaiser,

**105.** The petition against Plaintiff was approved and advanced without investigation or independent verification of facts,

**106.** Cultural and discriminatory language was allowed to stand in official filings, including fabricated references to "voodoo" and "vampires," mischaracterizing Plaintiff's protected expressions,

17

**SECOND AMENDED COMPLAINT**

**107.** The revocation of Plaintiff's license proceeded without procedural due process.

**108.** In her **official capacity**, Melby is sued solely for **prospective injunctive relief**, including reinstatement of Plaintiff's nursing license, correction of false records submitted to the **National Practitioner Data Bank (NPDB)**, and orders preventing future retaliatory actions.

**109.** In her **individual capacity**, Melby is sued under **42 U.S.C. § 1983** for personally approving and authorizing retaliatory and unconstitutional actions, including reliance on false Kaiser submissions, sham administrative proceedings, and revocation of Plaintiff's license without due process.

## F.    GARY CARLIN PRIOR ATTORNEY

**110.** Defendant **Gary Carlin** ("Carlin") is, and at all relevant times was, an attorney licensed to practice law in the State of California. Upon information and belief, Carlin maintains a law office in Los Angeles County, California, and regularly represents clients in employment and civil rights matters.

**111.** Plaintiff retained Carlin for legal representation following workplace harassment, retaliation, and wrongful termination by her employer. Although Carlin filed the initial complaint, they committed legal malpractice by naming only Kaiser Foundation Hospital as a primary defendant. Carlin improperly relegated the direct employer, SCPMG, to a "Doe" defendant status and further committed malpractice by actively concealing evidence of extrinsic fraud.

**112.** Plaintiff further alleges that Carlin's omissions and malpractice enabled Kaiser Foundation entities and the Board of Registered Nursing (BRN) to advance false defenses, secure improper judicial rulings, and pursue sham administrative proceedings that culminated in the revocation of Plaintiff's nursing license.

**113.** Plaintiff sues Defendant Carlin in his **individual capacity**, alleging causes of action including **legal malpractice, breach of fiduciary duty, fraudulent concealment, and conspiracy to violate civil rights.**

18

**SECOND AMENDED COMPLAINT**

### G.    DOES 1 THROUGH 50 – UNNAMED DEFENDANTS

**114.**   Plaintiff is currently unaware of the true names and identities, whether individual or corporate, of certain entities and individuals who actively participated in, directed, or ratified the events alleged herein. Plaintiff therefore sues said Defendants by such fictitious names (DOE Defendants 1 through 10, inclusive). Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such DOE Defendants when they have been ascertained.

**115.**   Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated herein as a DOE is or was an official, employee, agent, or representative of Defendant Kaiser and was personally involved in the fabrication, initiation, and/or execution of the retaliatory Fitness for Duty process described herein. These **DOE Defendants** include, but are not limited to:

**116.**   Kaiser human resource personnel, direct supervisors or administrative staff who supplied false information, initiated the retaliatory process, or enforced the unwarranted leave and demands placed upon Plaintiff,

**117.**   BRN disciplinary agents or investigators,

**118.**   Legal actors or assistants who coordinated court filings and manipulated procedural outcomes.

**119.**   Plaintiff will amend this Complaint to substitute the true names and roles of DOES 1–50 as they become known through discovery.

### VI.    STATEMENT OF FACT

### A.    FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION

**(Against SCPMG, KFH, KFHP Collectively Kaiser Defendant)**

**a)    Preliminary Allegations & Background Hostile Work Environment**

19

**SECOND AMENDED COMPLAINT**

**120.** Plaintiff is a Black individual of [West African originally from Cameroon/Cultural Background] descent, placing her within a protected class under Title VII.

**121.** For approximately three months leading up to August 28, 2020, Plaintiff was subjected to persistent, severe, and pervasive verbal harassment, intimidation, and bullying by a male coworker.

### b)     Protected Activity (The Internal Report)

**122.** On **August 28, 2020**, Plaintiff engaged in a protected activity under Title VII by submitting a formal internal report regarding the ongoing hostile work environment, to Southern California Permanente Medical Group ("SCPMG") Management, specifically Managers Sarah Poetter and Cheryly Surma.

**123.** During this report, Plaintiff conveyed the extreme severity of the abuse by explaining that the harassment felt like 'voodoo'—a cultural expression intended to communicate the profound, visceral, and paralyzing impact the hostile environment had on her well-being.

**124.** While Defendant was not initially aware of Plaintiff's pre-existing Post-Traumatic Stress Disorder (PTSD), Plaintiff's formal report explicitly put Defendant on actual notice of the severe, escalating nature of the harassment and the acute emotional distress it was causing.

### c)     Adverse Employment Actions & Disparate Treatment

**125.** Despite this explicit notice and the cultural context provided by Plaintiff, Manager Sarah Poetter bypassed all standard Human Resources disciplinary, investigative, and corrective protocols.

**126.** Instead of investigating the harassment, Defendant swiftly and abruptly dismissed Plaintiff from her active work duties on that same day.

20

**SECOND AMENDED COMPLAINT**

**127.** Defendant targeted Plaintiff's benign cultural expression through the lens of racial animus and cultural stereotypes, weaponizing her words to mischaracterize her as unstable or dangerous.

**128.** On August 28, 2020, Defendant subjected Plaintiff to an unsubstantiated, non-routine psychiatric medical inquiry and evaluation that was entirely untethered from her actual job performance.

**129.** Defendant conditioned Plaintiff's return to active duty upon obtaining a formal "mental clearance," utilizing this arbitrary requirement as a retaliatory barrier to employment.

**130.** Defendant did not require similarly situated non-Black, non-West African National Origin employees to undergo *non-standard psychiatric evaluations* or obtain "*mental clearance*" to maintain active employment.

**131.** Following the forced medical leave demand, Defendants placed Plaintiff on an indefinite, unpaid suspension spanning several months from August 28, 2020, until her formal termination on March 18, 2021.

**132.** This prolonged unpaid suspension effectively stripped Plaintiff of her livelihood and benefits without administrative due process or legitimate business justification.

### d)    Causation, Pretext, and Cover-Up

**133.** A strict temporal proximity exists between Plaintiff's protected activity and Defendant's adverse actions, as the abrupt dismissal, discriminatory medical inquiry, and forced medical clearance all occurred on August 28, 2020— the exact same day Plaintiff reported the harassment.

**134.** The close temporal connection between Plaintiff's protected disclosure and the immediate adverse actions establishes a strong, plausible inference of retaliatory intent.

21

**SECOND AMENDED COMPLAINT**

**135.** Defendant's sudden insistence on a psychiatric evaluation and "mental clearance" was entirely pretextual, designed to mask racial prejudice, punish her cultural expression, and cover up Defendant's failure to address the underlying hostile work environment.

**136.** On November 6, 2020, Plaintiff attended a meeting with Human Resources ("HR") and management, which included Sarah Poetter, Brooke Ball, and Plaintiff's union representatives.

**137.** During this meeting, Sarah Poetter explicitly and falsely denied that Plaintiff had been dismissed from employment on August 28, 2020.

**138.** In truth, on August 28, 2020, Plaintiff was sent home from work, dismissed on the spot without standard HR protocols, and expressly informed that she could not return to work without obtaining a mental health clearance note.

**139.** Despite Plaintiff having already submitted the requested mental health clearance note on September 4, 2020, and presenting it again during the November 6, 2020 meeting, HR and management completely ignored the clearance documentation.

**140.** Instead, during the November 6, 2020 meeting, HR, Sarah Poetter, Brooke Ball, and the union representatives collectively denied that the August 28, 2020 dismissal ever occurred.

**141.** Management and HR instead pressured Plaintiff to sign a backdated suspension slip for August 28, 2020, which falsely cited a purported medication error from August that Plaintiff had no prior knowledge of.

**142.** This coordinated denial of the initial dismissal and the pressure to sign backdated disciplinary forms caused Plaintiff severe emotional distress and mental anguish.

**143.** Sarah Poetter and SCPMG management fabricated this narrative regarding the August 2020 medical error as a pretextual justification to conceal their true retaliatory motive and mask the hostile work environment.

22

**SECOND AMENDED COMPLAINT**

**144.** Plaintiff refused to sign the back-dated suspension slip because it contained false information regarding the nature of her absence.

**145.** In retaliation for Plaintiff's refusal to sign the back-dated suspension slip, Defendant's management immediately escalated Plaintiff's disciplinary status from Level 1 to Level 2.

**146.** Defendant's management further threatened Plaintiff that a failure to cooperate and sign the document would result in her eventual termination.

**147.** Due to the false statements and escalation by Defendant's representatives, Plaintiff openly expressed that she was experiencing extreme emotional distress.

**148.** In response to Plaintiff's visible distress, Defendant's management officially requested yet another mental health clearance note on November 23, 2020.

**149.** Defendant subsequently placed and maintained Plaintiff on an indefinite suspension.

**e)      Protected Activity and Notice of Disability**

**150.** On **December 29, 2020,** Plaintiff's healthcare provider, Kang Jiyun PSY, sent a formal written notification via email to Defendants.

**151.** This email explicitly notified Defendants that Plaintiff suffered from a recognized disability, specifically Complex Post-Traumatic Stress Disorder ("C-PTSD").

**152.** The notice stated that Plaintiff's C-PTSD was directly induced by repeated, persistent exposure to a hostile work environment at Kaiser Foundation Hospital West Los Angeles.

**153.** This notification constituted both a formal notice of disability and a protected activity under federal and state enforcement laws

23

**SECOND AMENDED COMPLAINT**

**154.** Approximately one month later, **January 1, 2021**, in direct response to the provider's correspondence, Defendants issued a denial of medical leave—a benefit Plaintiff had never requested.

**155.** Simultaneously, Defendants converted Plaintiff's status from an unpaid, indefinite suspension to an unauthorized and unpaid medical leave

#### f)    Damaging Impact and Constructive Discharge

**156.** As a direct and proximate result of Defendants' ongoing retaliatory suspension and institutional denial, Plaintiff's mental health severely deteriorated, requiring intensive clinical intervention.

**157.** On **February 10, 2021**, Plaintiff's clinical provider issued a formal medical restriction advising that returning to the identical toxic work environment would cause catastrophic harm to Plaintiff's mental health.

**158.** Management and HR weaponized mental health procedures against Plaintiff, a racial minority, thereby creating and maintaining an objectively hostile work environment.

**159.** By refusing to remedy the hostile environment or accommodate the restriction, Defendants made Plaintiff's working conditions objectively intolerable.

#### g)    The Retaliatory Chronology and Temporal Proximity

**h)** The strict, uninterrupted chronological succession of adverse actions taken against Plaintiff—beginning immediately after her reports of a hostile work environment, followed by her accommodation request, the manufactured fitness-for-duty dispute, her summary termination, and the subsequent Board of Registered Nursing (BRN) report—constitutes compelling circumstantial evidence of Defendants' retaliatory intent.

#### i)    Plaintiff's Accommodation Request and Protected Activity

30. Plaintiff previously submitted a valid, professional accommodation request from a licensed psychologist to Defendants on **December 29, 2020**.

24

**SECOND AMENDED COMPLAINT**

**160.** The psychologist's documentation explicitly cleared Plaintiff to work, subject only to the restriction and accommodation of a transfer away from the hostile work environment to mitigate ongoing psychological trauma.

**j)      Defendants' Bad Faith and Failure to Engage in the Interactive Process**

**161.** Defendants' Human Resources (HR) department acting in bad faith, deliberately misconstrued the psychologist's clear transfer recommendation as an absolute medical inability to work.

**162.** By treating a specific department transfer request as a total medical disqualification, HR severely misrepresented Plaintiff's medical restrictions to deny the accommodation entirely and evade its mandatory duty to engage in a good-faith interactive process under the Americans with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA).

**k)      The Weaponization of the Fitness-for-Duty (FFD) Examination as Pretext**

**163.** Defendants utilized Plaintiff's protected request for a transfer as a pretextual basis to mandate an unnecessary Fitness-for-Duty (FFD) examination.

**164.** Mandating an FFD examination when a qualified treating medical professional had already cleared an employee to work under safe conditions constituted an unlawful, unnecessary hurdle designed to penalize Plaintiff for reporting workplace hostility.

**165.** Despite the pretextual nature of the directive, Plaintiff explicitly agreed to comply with the employer's FFD request.

**l)      Protected Objections to the Medical Release and Summary Termination**

**166.** In consenting to the FFD, Plaintiff requested a reasonable modification to Defendants' broad medical release form, asking that inquiries be

25

**SECOND AMENDED COMPLAINT**

conducted in writing rather than orally to ensure they remained strictly job-related, consistent with business necessity, and protective of private health information. Plaintiff's request to limit the scope of the medical release constitutes protected activity under applicable employment laws.

167.  Rather than engaging in the mandatory interactive process regarding this request, Defendants abruptly and summarily terminated Plaintiff's employment exactly one day after she requested the modification to the medical release form.

168.  Defendants' sudden termination of Plaintiff, occurring a single day after her protected activity, establishes an unassailable causal link driven by temporal proximity.

169.  Following this request, Defendants engaged in an immediate, unbroken succession of adverse actions: maintaining the hostile work environment, refusing the accommodation, denying Fitness for Duty ("FFD") clearance, terminating employment, and filing a report with the Board of Registered Nursing ("BRN").

170.  The close temporal proximity between Plaintiff's protected activities (reporting harassment and requesting accommodation) and Defendants' adverse actions (termination and the BRN report) establishes strong circumstantial evidence of retaliatory intent.

171.  Under 42 U.S.C. § 12112(b)(5)(A), discrimination includes 'not making reasonable accommodations to the known mental limitations of an otherwise qualified individual with a disability.' The ADA regulations explicitly contemplate an 'interactive process' between the employer and employee to identify the precise limitations and potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(3).

172.  Plaintiff's Complaint alleges a plausible claim for unlawful discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*Taken as true, the direct medical notices from her provider, the total abandonment of standard HR protocols by the Kaiser

26

**SECOND AMENDED COMPLAINT**

Defendants, the temporal proximity between her work place report and her immediate suspension and subsequent termination, and ongoing psychological harm collectively state a plausible claim for relied under Americans with Disabilities Act (ADA) and Title VII for Discrimination, Retaliation and Hostile Work Environment.

173. Plaintiff has pled sufficient factual matter—accepted as true at this stage—showing that Defendants were fully aware of Plaintiff's disability and that Plaintiff requested a reasonable accommodation. Defendants explicitly violated their statutory duties by failing to engage in a good-faith interactive process to identify and implement an accommodation. Instead of exploring viable options, Defendants abruptly broke off communications, leading directly to an adverse employment action and unlawful discrimination. Because these factual allegations raise Plaintiff's right to relief well above a speculative level, Plaintiff has stated a legally sufficient claim that easily survives dismissal under Rule 12(b)(6).

**B.    FACTUAL ALLEGATIONS DEFAMATION**

**(Against all Kaiser defendants)**

174. **WEAPONIZING THE THE LICENSING BOARD AND MALICIOUS REPORTING**

175. **The False Statement:** Southern California Permanete Group employee (SCPMG) Sarah Poetter, acting within the course and scope of her employment as an RN Manager for SCPMG at the Kaiser West Los Angeles Emergency Room, made a knowingly false and defamatory statement to the California Board of Registered Nursing ("BRN"). Specifically, Poetter falsely reported that Plaintiff suffered from a permanent, intrinsic mental illness that impaired Plaintiff's professional competency, directly harming Plaintiff's professional standing and nursing license.

176. **The Knowledge of Falsity (Malice):** Despite knowing Plaintiff's distress was environmentally caused by internal harassment rather than a functional cognitive impairment, Defendant intentionally bypassed standard corporate evaluation metrics. Specifically, Defendant refused to administer an

27

**SECOND AMENDED COMPLAINT**

objective Fitness For Duty (FFD) evaluation that would have verified Plaintiff's competency. Instead, Defendant reported Plaintiff to the licensing Board under the false guise of "mental illness." Defendant did so with the specific intent to commit professional character assassination, retaliate against Plaintiff, and create a pretextual basis for adverse employment action.

177. **Publication:** "Defendant published these false statements by filing a formal report with the BRN on or about **May 3, 2021**.

178. **The Shield/Subterfuge:** Defendant utilized the BRN reporting process as a pretextual shield to bypass standard corporate evaluation metrics and intentionally engage in professional character assassination.

179. **The FFD Denial:** As direct evidence of this bad faith, Defendant simultaneously and intentionally refused to administer an objective Fitness For Duty (FFD) evaluation, which Defendant knew would distinguish situational trauma from cognitive impairment.

180. **Damages:** As a direct result of Defendant's false statement to the BRN, Plaintiff suffered severe harm to their professional reputation, emotional distress, *lost wages and employment opportunities*.

181. **Business Expectancy:** Plaintiff had a valid business expectancy and reasonable expectation of continued employment and future economic advantage within the nursing profession.

182. **Defendant's Knowledge:** Defendant was fully aware of Plaintiff's professional reliance on their nursing license to maintain employment and secure future economic opportunities.

183. **Purposeful Interference:** Defendant intentionally and improperly interfered with Plaintiff's business expectancy by submitting a bad-faith report to the BRN under the guise of a 'mental illness' concern.

184. **Improper Means:** This interference was accomplished through improper means, specifically: bypassing standard corporate evaluation metrics,

28

**SECOND AMENDED COMPLAINT**

refusing an objective FFD evaluation, and fabricating a functional cognitive impairment to weaponize a regulatory board against an employee.

**185. Preventing the Relationship:** Defendant's bad-faith report directly triggered a BRN investigation, thereby disrupting, impairing, or threatening Plaintiff's ability to maintain employment and secure future contracts.

**186. Damages:** As a direct and proximate result of Defendant's interference, Plaintiff has suffered economic harm, including [lost wages, benefits, or specific job opportunities], loss of RN licence and livelihood.

**C.    FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS**

**(Against carlin, Kaiser, Melby/BRN Defendants)**

**a)    Part I: THE SUBSTANTIVE CONSPIRACY ALLEGATION (42 U.S.C. § 1985(3))**

**187.** Plaintiff is a member of a protected class based on her national origin (born in Cameroon West Africa). At all times relevant, Plaintiff engaged in protected cultural expressions, communication styles, and behavioral norms inherent to her national origin. Defendants exhibited an invidious, class-based animus by weaponizing cultural ignorance and prejudice. Defendants intentionally, and with discriminatory motive, agreed to mischaracterize Plaintiff's deeply rooted, protected cultural expressions as a purported 'mental illness' or psychiatric instability. This pathologizing of Plaintiff's national origin traits was a pretextual, discriminatory mechanism driven by class-based animus to strip Plaintiff of her professional credibility.

**b)    The Coordinated Agreement:**

**188.** On or about November 23, 2021, Defendant Gary Carlin (Plaintiff's former attorney) and agents/counsel for Defendant Kaiser Foundation Hospitals Health Plan (KFHP Inc.) entered into an agreement—the terms of which are evidenced by non-privileged written email correspondence—to deliberately

29

**SECOND AMENDED COMPLAINT**

insulate Kaiser entities from legal liability. The express purpose of this agreement was to suppress her upcoming Department of Fair Employment and Housing (DFEH/CRD) claims and strip Plaintiff of her professional livelihood.

### c)    The Shared Identity (The "Kaiser" Umbrella):

189.    Kaiser Foundation Hospitals (KFH), Kaiser Foundation Health Plan (KFHP), and the Southern California Permanente Medical Group (SCPMG) operate collectively under the public-facing moniker "Kaiser." Defendants purposely utilized this institutional identity confusion as plausible deniability to evade liability and obstruct justice.

### d)    The Retainer Evidence & Meeting of the Minds:

190.    The attorney's retainer agreement identifying "Kaiser" proves the intent was to sue the total operational employer entity. Despite this explicit knowledge, and despite receiving a direct letter from KFH confirming that SCPMG was the technical employer, counsel failed to name SCPMG as a primary defendant, relegating them strictly to a "Doe" status.

### e)    The Overt Act I

191.    Defendants took overt actions in furtherance of this conspiracy to deny equal protection.

192.    By relying on an orchestrated web of corporate entities, Defendants and Plaintiff's counsel reached a tacit agreement or meeting of the minds to selectively exempt the medical group (SCPMG) from liability while shielding the broader "Kaiser" enterprise.

### f)    Abandonment and Excusable Ignorance:

193.    Counsel completely abandoned his professional duties by failing to execute or explain a Doe amendment to Plaintiff. As a layperson, Plaintiff lacked the legal sophistication to understand the procedural mechanism or necessity of this amendment. Plaintiff reasonably relied on counsel's representation that the

30

**SECOND AMENDED COMPLAINT**

correct operational entity (KFH) had been sued, particularly as Plaintiff physically worked at the West Los Angeles Kaiser facility.

### g)    Severance of the Agency Relationship:

194.    Counsel's active concealment and failure to act completely severed the agent-principal relationship. Because counsel acted as a hostile adversary in alignment with Defendants rather than an agent, his procedural defaults, omissions, and deliberate failures to amend cannot be equitably or legally imputed to Plaintiff.

### h)    Overt Act II (Exploitation of Omission):

195.    In furtherance of this unlawful conspiracy, Defendants KFH and SCPMG committed a series of calculated, deceptive overt acts designed to manipulate judicial processes and globally extinguish Plaintiff's claims without a trial on the merits:

196.    Knowing that Carlin omitted SCPMG, Defendant KFH moved for Summary Judgment.

197.    KFH falsely and fraudulently asserted a total lack of employer liability based strictly on payroll technicalities, despite possessing complete operational, disciplinary, and managerial authority over Plaintiff.

### i)    Overt Act III (The Sham Litigation Paradox):

198.    To execute the conspiracy's objective, KFH asserted a strict, absolute corporate separateness from SCPMG to secure summary judgment on non-employment grounds

### j)    Overt Act IV (Fraudulent Misrepresentation to the Court):

199.    upon receiving summary judgment on that narrow technical ground, KFH—in coordination with SCPMG—intentionally misrepresented the scope of the order to the state court.

200.    KFH drafted and entered a final judgment on September 21, 2022,

31

**SECOND AMENDED COMPLAINT**

claiming that the lawsuit was dismissed *in its entirety on the merits*, thereby globally extinguishing Plaintiff's valid underlying FEHA employment claims. This was done with full knowledge that the statute of limitations had not expired, yet effectively blocked Plaintiff from correcting the technical omission.

### k)    Overt Acts V in Furtherance:

**201.** In absolute furtherance of this illicit agreement, and to seal the collapse of Plaintiff's case, Defendant Gary Carlin took the overt step of filing a formal declaration September 22, 2022, explicitly supporting KFH's entry of judgment. This final act shifted Defendant Carlin from a passive non-advocate to an active agent for the defense, completing the objective of the conspiracy.

### l)    Plausibility Under Rule 12(b)(6):

**202.** Taken together, these facts easily clear the plausibility threshold under *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. When an attorney systematically strips away vital components of a client's case, mirrors the exact discriminatory narratives of the opposition via back-channels, and ultimately files evidence aiding the adversary's entry of judgment, the conduct crosses the line from independent negligence into a plausible, actionable civil rights conspiracy. As a direct result, Plaintiff suffered severe injury, economic ruin, and the total deprivation of due process and equal access to the State court judicial system.

### m)    The Meeting of the Minds and Explicit Agreement

**203.** On or about **July 14, 2022**—the identical day Defendant Kaiser Foundation Hospitals ("Kaiser") obtained a summary judgment against Plaintiff—Defendant Kaiser and the individual defendants employed by the California Board of Registered Nursing, Loretta Melby ("BRN Defendants") entered into an explicit, coordinated agreement and meeting of the minds. The specific, unlawful objective of this agreement was to destroy Plaintiff's professional standing, manufacture a false appearance of mental incapacity, and permanently discredit Plaintiff to insulate Kaiser from ongoing and future civil liability.

### n)    Overt act vi: ultra vires state action

32

**SECOND AMENDED COMPLAINT**

**204.** On or about July 13, 2022, the BRN Defendants, acting in furtherance of the conspiracy and through their subordinate official, Shannon Johnson, executed an ultra vires act entirely outside the scope of their lawful statutory authority. Specifically, Shannon Johnson rubber-stamped a legally invalid examination order pursuant to California Business and Professions Code Section 820.

**205.** Defendant Melby, as Chief Executive, knowingly ratified this legally unenforceable order despite knowing it lacked any objective or independent administrative basis, doing so for the express, coordinated purpose of lending a false veneer of state authority to Kaiser's private retaliatory campaign.

### o)    Resulting constitutional injury and damages

**206. As a direct and proximate result** of the unlawful conspiratorial agreement and overt acts in furtherance thereof by Defendant Gary Carlin, Kaiser, BRN Defendants, Plaintiff suffered severe and irreversible deprivations of rights secured by the Constitution and laws of the United States, including the right to equal protection under the law and freedom from discriminatory retaliation. **Consequently, Plaintiff sustained** concrete, catastrophic, and ongoing injuries, including the loss of their Registered Nurse (RN) license and the absolute deprivation of their right to pursue their chosen profession. **As a further direct result**, Plaintiff has suffered profound economic damages—including past and future lost earnings and benefits—severe and enduring emotional distress, and irreparable harm to their professional standing and reputation.

### D.    FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS

**(Against Kaiser, defendants)**

### a)    THE FACTUAL BACKGROUND AND PROTECTED PROPERTY INTEREST

**207.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

33

**SECOND AMENDED COMPLAINT**

**208.** At all times relevant, Defendant SCPMG, though a private entity, acted **under color of state law** by willfully participating in joint activity, conspiracy, and a shared conspiratorial objective with state actors, including the state court judiciary, to deprive Plaintiff of constitutional rights.

**209.** Plaintiff possesses a constitutionally protected property interest under the Fourteenth Amendment in pursuing their timely filed, active cause of action, which constitutes a recognized form of property that cannot be arbitrarily extinguished by the state without due process of law.

**210.** Plaintiff's December 5, 2022, employment lawsuit against Southern California Permanente Medical Group (SCPMG) asserted active, valid statutory claims under the California Fair Employment and Housing Act (FEHA) and related common law torts.

**211.** The Conspiratorial Agreement and "Color of Law" (The Meeting of the Minds)

**212.** On or about December 22, 2022, and continuing through the date of dismissal, Defendant SCPMG, by and through its legal counsel, entered into a coordinated, joint punitive scheme and conspiratorial agreement with state court actors—specifically to intentionally bypass mandatory jurisdiction and evidentiary safeguards, block her fundamental right of access to the courts and isolate Plaintiff.

**213.** Defendant SCPMG willfully participated in joint activity with the state court to apply a pre-existing, legally distinct prefiling order from a completely separate case involving a different corporate entity (Kaiser Foundation Hospitals) to Plaintiff's independent litigation against SCPMG.

**214.** This coordination transformed Defendant SCPMG/Kaiser entities into a state actor for purposes of 42 U.S.C. § 1983, as they actively leveraged state judicial machinery to execute a shared, unlawful objective: to entirely block Plaintiff's access to the courts without an adjudication on the merits.

**215.** The Overt Acts in Furtherance of the Conspiracy

34

**SECOND AMENDED COMPLAINT**

**216.** In execution of this conspiratorial agreement, Defendant SCPMG knowingly presented a legally inapplicable "entry of judgment" order dated September 21, 2022, from a prior case involving Kaiser Foundation Hospitals (KFH), a legally distinct entity.

**217.** Defendant SCPMG intentionally and fraudulently misrepresented to the court that this prior judgment constituted a "global dismissal" of all FEHA claims against all Kaiser-related entities, including SCPMG, despite knowing that SCPMG was not a party bound by that specific prior order.

**218.** The state court, operating in tandem with and adopting the biased, unverified characterizations proffered by Defendant SCPMG, rubber-stamped Defendant's position without independent judicial review, thereby ordering Plaintiff to post an arbitrary, punitive $10,000 security deposit.

·    Simultaneously, the BRN Defendants, acting under color of state law as state regulatory officials, stepped entirely outside their lawful administrative mandate to interfere in Plaintiff's civil lawsuit against SCPMG, a lawsuit to which the BRN Defendants were never a party.

**219.** The BRN Defendants intentionally filed documents in support of an unlawful vexatious litigant bond within the SCPMG litigation to weaponize the judicial process and financially suffocate Plaintiff's access to the court.

·    Concurrently, the BRN Defendants subjected Plaintiff to an administrative disciplinary proceeding that was void *ab initio*, as it was initiated and pursued by a subordinate official who **lacked any statutory authority** or jurisdiction under state law to act.

·    Despite explicitly and in writing confirming timely receipt of Plaintiff's answer and defense to the administrative charges, the BRN Defendants maliciously, arbitrarily, and in bad faith entered a default judgment against Plaintiff.

·    The combined, concerted actions of SCPMG and the BRN Defendants constitute an egregious abuse of power that shocks the conscience, devoid of any

35

**SECOND AMENDED COMPLAINT**

legitimate state interest, and executed with the sole intent to deny Plaintiff a fair hearing.

### b) The Resulting Deprivation of Due Process

220. The state court subsequently executed the final objective of the conspiracy by issuing a procedural dismissal of Plaintiff's lawsuit against SCPMG on the sole basis of Plaintiff's inability to post the $10,000 deposit.

221. This dismissal was intentionally entered without convening a formal evidentiary hearing, without the presentation of witnesses, and without adjudicating the actual factual or legal merits of Plaintiff's underlying employment tort claims.

222. By executing this procedural dismissal prior to the expiration of the applicable statutes of limitation, Defendant SCPMG and state court actors permanently extinguished Plaintiff's timely, valid legal claims, directly depriving Plaintiff of their constitutional right to procedural due process and access to the courts under the Fourteenth Amendment.

### c) Causation of injury (Actual Deprivation)

223. As a direct and proximate result of the coordinated, conspiratorial actions of Defendant SCPMG and the State Actors, Plaintiff was stripped of their RN license without due process of law, denied judicial review of their FEHA and ADA claims, and permanently foreclosed from accessing the judicial machinery of the state.

### E.    FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS

### (Against Melby/BRN Defendants)

### a)    The statutory/regulatory violations establishing the baseline Falsity)

36

**SECOND AMENDED COMPLAINT**

**224.** At all relevant times, California Business and Profession Code Section 820 governed the strict procedural and evidentiary requirements necessary to legally issue an order for a mental/physical examination.

**225. Plaintiff holds a constitutionally protected property interest** in their professional license, which cannot be suspended, revoked, or restricted without due process of law.

**226. Defendant Loretta Melby, acting under color of state law**, intentionally and proximately caused the deprivation of Plaintiff's property interest by executing an ultra vires subdelegation of her exclusive statutory authority.

**227. Defendant Melby possessed non-delegable authority** to issue Section 820 orders. **Under 16 CCR § 1405**, this power is explicitly non-delegable and restricted to the Executive Officer.

**228.** Because Section 820 specifically targets the **quasi-judicial discretion** of the "licensing agency"

**229.** (the formal Board members collectively and their designated Executive Officer) to compel an invasive medical or psychological intervention, California administrative law treats this as a **non-delegable, discretionary corporate act**. The board members and the Executive Officer cannot hand off or sub-delegate the discretionary evaluation of "whenever it appears" (the initial evidentiary threshold of probable cause) to lower-level investigators or external contractors.

**230.** Defendant Melby, acting under color of state law, knowingly and with deliberate indifference to Plaintiff's constitutional rights, established an unlawful de facto policy, custom, or practice of sub-delegating non-delegable, discretionary quasi-judicial authority under California Business and Professions Code Section 820.

**231.** Defendant Melby possesses final policy making authority regarding enforcement procedures for the Board. On or about July 13, 2022, Defendant Melby personally abdicated her statutory duty and deliberately authorized, directed,

37

**SECOND AMENDED COMPLAINT**

or ratified an unlawful sub-delegation to her subordinate, Chief Enforcement Officer Shannon Johnson.

232. Defendant Johnson, lacking any legal or quasi-judicial authority to make a probable cause determination under Section 820, drafted, finalized, and *approved* both a petition and an order compelling an invasive psychological examination of Plaintiff.

233. Defendant Melby's intentional sub-delegation and Defendant Johnson's unauthorized execution of the order were the moving forces behind the arbitrary deprivation of Plaintiff's Fourth Amendment right against Fourteenth Amendment substantive and procedural due process liberty interests.

234. Defendants knew or should have known that bypassing the mandatory, statutory quasi-judicial review process to compel an invasive medical intervention would violate clearly established constitutional protections, thereby stripping Defendants of any entitlement to qualified immunity.

235. **Defendant Melby acted with deliberate indifference** to Plaintiff's constitutional rights by knowingly bypassing the statutory framework to subdelegate this exclusive discretionary power to an unauthorized subordinate.

236. **The resulting Section 820 order was issued through an unauthorized, ultra vires regulatory mechanism** completely lacking the structural statutory safeguards established by law, thereby violating Plaintiff's right to procedural due process.

b) **Defeating Defenses of Plausible Deniability and Qualified Immunity**

237. **Defendant Melby cannot claim plausible deniability** regarding the deprivation. Defendant Melby executed a sworn declaration explicitly admitting she directed and authorized the specific subdelegation that caused the constitutional injury.

38

**SECOND AMENDED COMPLAINT**

**238. Defendant Melby's sworn admission establishes the requisite personal involvement** and affirmative link under Section 1983, as her direct command set the constitutional deprivation in motion.

**239. Defendant Melby is not entitled to qualified immunity** because her actions violated clearly established statutory and constitutional law.

**240. A reasonable official in Defendant Melby's position** is presumed to know the plain, unambiguous language of her own agency's regulations, specifically 16 CCR § 1405, which explicitly prohibits the subdelegation of ultimate discretionary judgement.

**241. No reasonable official could believe that intentionally violating a mandatory, non-delegable regulatory prohibition** to strip a licensee of their professional property right was lawful or constitute a "good faith" mistake.

**c)      Constructive/Actual Notice**

**242.   August 8, 2022**, Plaintiff served the Board of Registered Nursing with written notice detailing the specific legal deficiency of the order and challenging the jurisdiction.

**243.** Melby and the Board of Registered Nursing through her attorney Gillian Friedman acknowledged written Notice, administrative objection and supporting documentation demonstrating that the section 820 order violated specific statutory defects, including jurisdiction, procedural non compliance (no investigation) and probable cause.

**244.** Despite receiving direct, uncontraindicated notice of these legal and factual defects, Defendant Melby and the Board of Registered Nursing deliberately ignored corrective measures and plaintiff received an *"accusation"* **issued November 16, 2022**, by same unauthorized subordinate, targeting non compliance with the non legally binding section 820 Exam.

**d)      Procedural sham ("The Second Notice")**

39

**SECOND AMENDED COMPLAINT**

**245.** 3. The Board falsely claimed it never received a "second Notice of Defense", acting arbitrarily to bypass an adversarial hearing.

### e)    Procedural Due Process

**246.** Plaintiff was denied meaningful opportunity to be heard before RN license was stripped. State actors cannot intentionally ignore filed notices (like an early Notice of defense) and subsequently enter a "default" as a pretext to deny plaintiff a hearing.

### f)    Substantiative Due Process

**247.** Plaintiff was subjected to government actions that were arbitrary, capricious, or "shock the conscience". Revoking a professional license based on knowingly invalid order and a deliberately ignored defense transcends simple administrative error and constitute a substantive constitutional violation.

**248.** Defendant Melby and the Board of Registered Nursing knew that revoking plaintiff's license on these false pretense would trigger a mandatory requirement to the National Practitioner Data Bank (NPDB).

### g)    Default Decision and Revocation of Plaintiff's Registered Nurse License

**249.** California Business and Professions Code § 2750 establishes the California Board of Registered Nursing ("BRN") and vests disciplinary authority concerning registered nurses in the Board itself. At all relevant times, Plaintiff held a Registered Nurse ("RN") license issued by the BRN. Plaintiff's RN license constituted a valuable professional license and a constitutionally protected property interest under the Fourteenth Amendment to the United States Constitution.

**250.** On or about July 13, 2022, a Petition and Order for Mental and Physical Examination pursuant to California Business and Professions Code § 820 was approved and executed by Chief Enforcement Officer Shannon Johnson. Following the Section 820 proceedings, disciplinary actions were initiated against Plaintiff that ultimately resulted in a default decision and revocation of Plaintiff's

40

**SECOND AMENDED COMPLAINT**

RN license.

251.   On November 5, 2025, Defendant Loretta Melby executed a sworn declaration in Case No. 2:24-cv-05862-KK-AGR concerning the actions taken against Plaintiff and the procedures utilized during the disciplinary process. In that declaration and related filings, Defendant Melby admitted that Chief Enforcement Officer Shannon Johnson exercised authority concerning the approval and issuance of the Section 820 proceedings that ultimately led to the default decision and revocation of Plaintiff's RN license.

252.   The default decision revoking Plaintiff's RN license was approved and executed through the actions of Chief Enforcement Officer Shannon Johnson. Plaintiff is informed and believes, and thereon alleges, that the nine-member Board of Registered Nursing never voted upon, approved, authorized, or ratified the default decision revoking Plaintiff's RN license.

253.   Plaintiff is further informed and believes, and thereon alleges, that no formal vote of the Board was conducted authorizing the revocation of Plaintiff's license and that the revocation decision was instead implemented through administrative actions undertaken by Chief Enforcement Officer Shannon Johnson. Defendant Melby and Chief Enforcement Officer Shannon Johnson caused Plaintiff's RN license to be revoked despite the absence of any Board vote, Board authorization, or Board ratification approving such disciplinary action.

254.   As a direct and proximate result of Defendants' actions, Plaintiff lost her professional nursing license, her ability to practice her profession, her earning capacity, and other significant property and liberty interests protected by the Fourteenth Amendment. By causing the revocation of Plaintiff's RN license through actions allegedly undertaken outside the statutory procedures required by California law, Defendants deprived Plaintiff of constitutionally protected property interests without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

255.   The actions of Defendant Melby and Chief Enforcement Officer Shannon Johnson were a substantial factor in causing the injuries, damages, and

41

**SECOND AMENDED COMPLAINT**

constitutional deprivations suffered by Plaintiff.

**h)    Reputational Harm and NPDB**

256.    The derogatory report was immediately submitted to the National Practitioner Data Bank (NPDB), severely damaging plaintiffs ability to engage in their chosen profession.

257.    At the time of the publication on February 3, 2023, Melby and the Board of Registered Nursing acted with actual malice, corruption, intentional ill-will under the standard set forth in *New York Times Co. V. Sullivan*, in that she had actual knowledge that the statement was false.

258.    As a direct and proximal result of the BRN's malicious publication of these false statement to the NPDB, plaintiff has suffered severe operational, professional, and reputaional injury.

259.    The defamatory NPDB publication has effectively precluded plaintiff from securing employment as a Registered Nurse, causing ongoing economic damages, loss of earning capacity, mental anguish and emotional distress.

**VII.    CAUSES OF ACTION -**

**COUNT    I:    VIOLATION    OF    THE    AMERICANS    WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112)**

**(Against Kaiser Defendants)**

260.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

261.    At all times relevant to this action, Plaintiff suffered from Complex Post-Traumatic Stress Disorder ('C-PTSD'), a severe mental health condition characterized by prolonged and repeated trauma, rather than a single event.

262.    Plaintiff's C-PTSD constitutes a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), as it substantially limits one or more major life

42

**SECOND AMENDED COMPLAINT**

activities, including but not limited to, interacting with others, sleeping,and regulating emotional functions.

263. At all times relevant to this action, Plaintiff was a 'qualified individual' within the meaning of the ADA, 42 U.S.C. § 12111(8). Despite the severe symptoms of C-PTSD, Plaintiff was fully capable of performing the essential functions of their position, either with or without a reasonable accommodation.

264. Plaintiff successfully performed the essential functions of the position, as evidenced by **positive performance reviews, and  lack of disciplinary history prior to the discrimination.**

265. At all times relevant, Defendants were employers engaged in an industry affecting commerce who employed 15 or more employees, making them covered entities under the ADA.

266. Defendants knew or had reason to know of Plaintiff's disability because Plaintiff explicitly notified Defendants of their medical limitations on **December 29, 2020** by submitting a written accommodation request and medical documentation to **HR representative Wilbert Jones for Kaiser Weat LA**. Specifically, Plaintiff requested a reasonable accommodation of a transfer to an open **Emergency Room Registered Nurse Position/Clinic/Kaiser West LA** for which Plaintiff was fully qualified.

267. **The  specific  physical  environment** of the Kaiser West LA Emergency Room Department became medically untenable for Plaintiff due to an ongoing hostile work environment perpetrated by Plaintiff's immediate supervisors and Human Resources personnel.

268. **Defendants' discriminatory actions** and ongoing harassment directly targeted Plaintiff's medical vulnerabilities, creating specific clinical triggers that severely exacerbated Plaintiff's C-PTSD symptoms.

269. **Rather than mitigating the hostile environment**, Defendants' awareness of Plaintiff's condition resulted in unlawful "regarded-as" discrimination,

43

**SECOND AMENDED COMPLAINT**

wherein supervisors treated Plaintiff with a perceived mental illness stigma, thereby intensifying the hostility of the workplace.

**270.   A lateral transfer away** from the Kaiser West LA Emergency Room Department was a necessary and reasonable accommodation.

**271. This transfer would have removed** Plaintiff from the specific clinical triggers caused by their supervisors, thereby mitigating their C-PTSD symptoms and allowing Plaintiff to perform all essential functions of their position

**272.**   An open and available position for a **Registerd Nurse Emergency Room Clinic** existed at the time at the **Kaiser West LA Hospital Location**. Providing this transfer would not have imposed an undue hardship on Defendants' business operations, as Defendants regularly transfer employees between facilities.

**273.**   As a direct and proximate result of Defendants' affirmative failure to accommodate Plaintiff and their refusal to engage in a good-faith interactive process, Plaintiff suffered severe adverse employment actions. Specifically, Defendants placed Plaintiff on involuntary unpaid leave on January 1, 2021, and ultimately terminated Plaintiff's employment on March 18, 2021

**274.**   As a direct result of Defendants' discriminatory and unlawful conduct, Plaintiff has suffered, and continues to suffer, severe economic damages, including lost back pay, lost front pay, and a loss of employment benefits. Plaintiff has further suffered severe emotional distress, mental anguish and a permanent exacerbation of their clinical C-PTSD symptoms.

## COUNT 2: WRONGFUL TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

**(Against Kaiser Defendants)**

**a)     Defendants' Scheme to Target Plaintiff**

**275.**   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

44

**SECOND AMENDED COMPLAINT**

**276.** On or about March 18, 2021, Defendants Brooke Ball (Chief Executive Officer), Sarah Poetter (Emergency Room Supervisor), Cheryl Surma (Emergency Room Supervisor), Wilbert Jones (HR Disability Case Manager), and Douglas Pruss (HR Director), acting within the course and scope of their employment with <u>Kaiser Permanente</u>, initiated a coordinated campaign against Plaintiff. Specifically, these individuals fabricated disciplinary allegations, mishandled Plaintiff's disability accommodation requests, and generated falsified performance records. The express purpose of this joint conduct was to establish a pretextual justification to terminate Plaintiff's employment and blackball Plaintiff within the medical industry.

**277.** Defendants' assertion that Plaintiff was mentally unfit to perform their duties was entirely fabricated, meritless, and contradicted by Plaintiff's established record of satisfactory performance at the Kaiser West LA Emergency Room Department. Defendants advanced this false narrative as a mere pretext to mask their discriminatory and retaliatory animus against Plaintiff.

**b)    The False Statements and Publication (The BRN Complaint)**

**278.** On or about **May 3, 2021**, Defendants submitted a formal, unprivileged written complaint regarding Plaintiff to the California Board of Registered Nursing ('BRN'). Defendants published these statements to a third party despite knowing the statements were false, or acting with reckless disregard for their truth or falsity."

**279.** The written complaint submitted by Defendants contained the explicit and materially false statement that Plaintiff 'failed to comply with the employer's Fitness For Duty Directive.

**280.** In truth, Plaintiff fully complied with all lawful directives by submitting all requested documentation on **February 10, 2021**. To the extent Defendants contend any directive remained outstanding, Defendants failed to execute the mandatory administrative processes required to enforce such a directive.

45

**SECOND AMENDED COMPLAINT**

**281.** Defendants intended for the BRN to rely on this false report and knew the BRN would be legally mandated to initiate an investigation, thereby directly endangering Plaintiff's professional nursing license and livelihood.

### c) Specific Facts Demonstrating Actual Malice

**282.** Defendants engaged in the aforementioned conduct with actual malice, a reckless disregard for the truth, and the specific intent to cause severe harm to Plaintiff.

**283.** Defendants possessed direct knowledge that their accusations against Plaintiff were false.

**284.** Prior to HR issuing the **March 10, 2021** Fitness for Duty (FFD) directive, Plaintiff's healthcare provider emailed a formal accommodation request directly to the Employer.

**285.** HR affirmatively acknowledged receipt of this accommodation request but subsequently ignored it.

**286.** Instead of engaging in the interactive process, HR issued the FFD directive on March 10, 2021, with a response deadline of **March 19, 2021**.

**287.** Plaintiff explicitly agreed to comply with the FFD directive on March 17, 2021.

**288.** Despite Plaintiff's compliance and the pending deadline, the Employer abruptly terminated Plaintiff on March 18, 2021—one day before the response deadline expired.

**289.** Furthermore, the Employer falsely reported to the Board of Registered Nursing (BRN) that Plaintiff had abandoned their position or left work in October 2020, directly contradicting the contemporaneous March 2021 employment records.

### d) Defamation Per Se and Damages

46

**SECOND AMENDED COMPLAINT**

**290.** The Defendants' false statements directly impute a lack of integrity, incompetence, and unfitness to practice within the Plaintiff's profession as a Registered Nurse.

**291.** Because these statements directly prejudice the Plaintiff in their professional trade and status as a licensed healthcare provider, they constitute defamation *per se*, and injury to the Plaintiff's professional reputation is presumed as a matter of law.

**292.** As a direct and proximate result of the Defendants' false report, the Plaintiff has suffered severe emotional distress, loss of employment opportunities, significant legal expenses to defend their license, and the catastrophic loss of their nursing career, RN license, and livelihood.

## COUNT 3: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Against Kaiser Defendants)**

**293.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**294.** At all relevant times, Plaintiff possessed a concrete and valid prospective economic relationship with Kaiser Permanente, arising from Plaintiff's position as an Emergency Room Registered Nurse. This established employment relationship carried a certain probability of future economic benefit to Plaintiff, specifically yielding a predictable annual salary of $80,000, along with standard employment benefits, which would have been realized but for Defendant's interference.

**295.** Defendant had actual knowledge of Plaintiff's specific employment relationship and prospective economic opportunities with Kaiser Permanente. Defendant possessed this knowledge because Defendant is Plaintiff's former employer.

47

**SECOND AMENDED COMPLAINT**

**296.** Defendants engaged in a targeted effort to disrupt Plaintiff's employment opportunities by weaponizing a false report to the Board of Registered Nursing. Specifically, Defendants reported that Plaintiff was unfit to practice and had refused an order to undergo a Fitness-for-Duty (FFD) examination.

**297.** Defendants knew this statement was false; internal email correspondence explicitly demonstrates that Plaintiff had agreed to comply with the FFD order. Rather than honoring this agreement, Defendants completely misrepresented and denied a prior accommodation request from Plaintiff's medical provider, using the false administrative report as a direct vehicle to sabotage Plaintiff's career.

**298.** Defendants engaged in this conduct with the specific intent to disrupt Plaintiff's professional opportunities and to blackball Plaintiff from the nursing profession. Defendants' intent is evidenced by **the fact that Defendants bypassed internal protocols to follow through with their FFD, but instead plaintiff was terminated and reported to the BRN**.

**299.** As a direct and proximate result of Defendants' intentional and wrongful interference, the prospective economic relationships were actualized into harm. Specifically, on **March 18, 2021**, **Kaiser Permanente** terminated plaintiff's Employment. As a result, Plaintiff has suffered and continues to suffer substantial economic damages, including lost wages, benefits, and severe damage to professional reputation, in an amount to be proven at trial

## COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (Violation of Civil right Act 42 U.S.C., & 1985)

**(Against ALL Defendants)**

**300.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**301.** Courts have long recognized that simultaneous or sequential acts by multiple individuals toward a shared unlawful objective constitute conspiracy evidence under § 241. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

48

**SECOND AMENDED COMPLAINT**

### a)    Establish the Discriminatory Animus (The Core "Why")

**302.**    Plaintiff is a Black woman of Cameroonian national origin and West African ancestry. As such, she belongs to multiple protected classes under Title VII of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, and national origin.

**303.**    . At all times relevant, Plaintiff engaged in protected cultural expressions, communication styles, and behavioral norms inherent to her national origin. Defendants, specifically management at Southern California Permanente Medical Group (SCPMG), exhibited an invidious, class-based animus by weaponizing cultural ignorance and prejudice. Defendants intentionally and discriminatorily mischaracterized Plaintiff's deeply rooted, protected cultural expressions as a purported 'mental illness' or psychiatric instability. This pathologizing of Plaintiff's national origin traits was not a neutral misunderstanding, but a pretextual, discriminatory mechanism designed to strip Plaintiff of her professional credibility and justify an unlawful termination based purely on class-based animus.

**304.**    The    Defendants—including    SCPMG,    Kaiser    Foundation Hospital/Kaiser Foundation Health Plan Inc. and individual managing agents— entered into an agreement, tacit or explicit, to insulate the corporate entities from liability and permanently strip Plaintiff of her professional livelihood. Defendants' assertions of legitimate, non-discriminatory business reasons for Plaintiff's termination constitute a coordinated system of plausible deniability. In reality, the foundational motivation of this conspiracy was the class-based animus against Plaintiff's national origin. The individual actors operated in concert, sharing falsified internal reporting and aligning their disciplinary timelines across separate Kaiser entities to guarantee Plaintiff's immediate termination and subsequent industry blacklisting.

**305.**    Following Plaintiff's protected activities—specifically, the filing of a formal lawsuit against Kaiser Foundation Hospital and the submission of a regulatory report against her manager to the California Board of Registered Nursing (BRN)—Defendants escalated their conspiratorial objective. In direct

**SECOND AMENDED COMPLAINT**

retaliation, and in furtherance of the conspiracy, Defendants formulated and executed a malicious plan to completely block Plaintiff's access to the courts and permanently revoke her Professional Registered Nurse (RN) license.

306. To achieve this, conspirators knowingly disseminated an extremely vile, demonstrably false rumor across corporate and professional networks characterizing Plaintiff as 'psychotic' and 'unfit for duty.' Defendants utilized these fabricated psychiatric allegations to trigger a bad-faith regulatory investigation, intending to leverage the BRN's disciplinary powers as an arm of the conspiracy. This overt act was precisely designed to exhaust Plaintiff's financial resources, destroy her professional standing, and intimidate her into abandoning her federal civil rights litigation.

### b) **Attorney's Betrayal and "Meeting of the Minds"**

307. To state a viable claim under 42 U.S.C. § 1985(3) against a private attorney, a plaintiff must allege specific facts showing the attorney intentionally joined a unified plan with Kaiser to violate protected rights. Independent legal representation—even if characterized by poor performance or professional negligence—fails to establish the requisite meeting of the minds or shared conspiratorial objective necessary to transform a private actor into a co-conspirator.

### c) **The Retainer Agreement and Scope of Representation**

308. On or about **March 19, 2021**, Plaintiff and Attorney Defendant entered into a formal, written retainer agreement.

309. The express purpose of this agreement was to secure legal representation to file and litigate FEHA employment discrimination claims against all responsible Kaiser entities.

310. These entities included Kaiser Foundation Hospitals ("KFH"), Southern California Permanente Medical Group ("SCPMG"), and Kaiser Foundation Health Plan ("KFHP").

### d) **The Integrated Enterprise / Joint Employer Reality**

50

**SECOND AMENDED COMPLAINT**

**311.** At all times relevant, Plaintiff performed services at the Kaiser Foundation Hospital West LA facility.

**312.** Plaintiff was completely integrated into KFH's operations, utilized KFH equipment, and was subject to KFH policies, rendering KFH a joint employer or part of an integrated enterprise under FEHA.

**313.** Attorney Defendant knew or should have known that KFH, SCPMG, and KFHP operated as an integrated enterprise, meaning all three entities were jointly liable for the underlying FEHA violations.

**e)    The Conspiratorial Agreement and Overt Acts**

**314.** Unbeknownst to Plaintiff, and in direct contradiction to the retainer agreement, Attorney Defendant entered into an implicit or explicit agreement with agents of KFH.

**315.** The objective of this conspiracy was to systematically derail, sabotage, and defeat Plaintiff's upcoming FEHA discrimination claims due to discriminatory animus against Plaintiff's protected class.

**f)    Corporate Shell Game Manipulation**:

**316.** Attorney Defendant was fully aware that Plaintiff physically worked at the Kaiser Foundation Hospital West LA facility and that KFH exercised joint operational control. Attorney Defendant was also explicitly aware that Southern California Permanente Medical Group (SCPMG) issued the Fitness for Duty (FFD) directive.

**317.** Despite this knowledge, Attorney Defendant intentionally sued *only* KFH, leaving SCPMG and Kaiser Foundation Health Plan (KFHP) out of the main complaint, and relegating SCPMG to a "Doe" defendant without explaining the corporate significance to the trusting Plaintiff. This omission was a deliberate overt act designed to give KFH an airtight, technical "wrong employer" summary judgment defense using an SCPMG payroll check.

51

**SECOND AMENDED COMPLAINT**

### g)   Discriminatory Animus and Injury

**318.**   The conspiratorial agreement between Attorney Defendant and KFH was motivated by a shared, class-based, invidiously discriminatory animus against Plaintiff as a member of a protected class.

### h)   Overt Acts to Highlight "Meeting of the Minds":

**319.**   Plaintiffs' counsel engaged in email correspondence with KFH regarding the plaintiff's alleged mental health condition, effectively mirroring and validating the pretextual framework established by KFH/SCPMG.

**320.**   The existence of this illicit agreement and shared discriminatory animus is evinced by specific, non-privileged email communications between Attorney Defendant and counsel/agents for KFH dated on or about **November 23, 2021**.

**321.**   In these communications, Attorney Defendant actively discussed Plaintiff's "purported mental illness." Rather than advocating for Plaintiff, Attorney Defendant adopted, mirrored, and validated KFH and SCPMG's pretextual defense narrative. These communications demonstrate a meeting of the minds to stigmatize Plaintiff, undermine Plaintiff's credibility, and manufacture a record to justify dismissing Plaintiff's civil rights claims.

**322.**   The alignment of Attorney Defendant's failure to amend the complaint, the strategic exclusion of known employer entities, and the back-channel emails adopting the defense's discriminatory mental health narrative cannot be attributed to mere negligence or coincidence. These coordinated actions plausibly demonstrate a meeting of the minds to intentionally deny Plaintiff equal access to the courts and equal protection of civil rights laws.

**323.**   As a direct and proximate result of this conspiracy, Plaintiff was deprived of the equal protection of the laws, stripped of a meaningful opportunity to litigate valid FEHA civil rights claims, and suffered severe financial and emotional injury

52

**SECOND AMENDED COMPLAINT**

### i)    Judicial Deception (KFH's Overt Acts)

**324.**    At all relevant times, Defendant KFH acted as a joint employer with SCPMG. Plaintiff operated entirely under KFH's direct operational mandates, utilizing KFH equipment, abiding by KFH's HR policies, and answering to a unified Kaiser Permanente chain of command. The physical issuance of paychecks by SCPMG was a mere administrative formality that did not diminish KFH's status as a de facto employer under California's [Fair Employment and Housing Act (FEHA)].

**325.**    Defendants KFH and SCPMG engaged in a conscious meeting of the minds to defeat Plaintiff's civil rights claims through corporate shell manipulation. Defendant KFH knowingly weaponized an operational omission in Plaintiff's state FEHA complaint—specifically, the technical omission of SCPMG as a named party—by moving for Summary Judgment. KFH knew that it exercised comprehensive employer authority over Plaintiff, yet it fraudulently asserted it lacked employer liability solely because it did not cut Plaintiff's paychecks. This motion was not a good-faith defense, but an overt act in furtherance of a civil rights conspiracy designed to leave Plaintiff without an active employer-target to hold accountable.

**326.**    In furtherance of this conspiracy, Defendant KFH executed a contradictory litigation maneuver designed to extinguish Plaintiff's claims globally while evading liability on the merits. On one hand, KFH moved for Summary Judgment by asserting strict **entity separateness**, arguing it was not technically the entity that processed Plaintiff's paychecks.

**327.**    Concurrently, however, KFH abandoned this entity separateness by moving for a final judgment on September 21, 2022, encompassing all unserved 'Doe' defendants and unserved Kaiser affiliates. KFH deceptively argued that a summary judgment granted solely as to KFH extinguished the entirety of Plaintiff's FEHA employment claims against *all* Kaiser entities and unnamed defendants, despite those entities never appearing, never answering, and never moving for summary judgment.

**SECOND AMENDED COMPLAINT**

**328.** This contradictory whipsaw maneuver was not an independent defense strategy, but a coordinated effort to run down the clock on the statute of limitations. By deploying entity separateness as a shield against individual liability, and entity unity as a sword to secure a global dismissal, Defendants successfully barred Plaintiff from substituting other Kaiser entities. This operational and legal shell game constitutes an overt act that successfully deprived Plaintiff of their **constitutional right to meaningful access to the courts** and equal protection under the law.

**329.** Executing the final stage of the illicit agreement, Co-Conspirator Gary Carlin directly followed through on the conspiratorial plan by drafting and filing a false or bad-faith declaration on September 22, 2022 in support of Defendant KFH's Entry of Judgment, effectively ensuring the dismissal of Plaintiff's valid FEHA employment claims.

**330.** As a direct and proximate result of Defendants' coordinated conspiracy and overt acts, Plaintiff suffered severe, irreversible injury. Plaintiff was completely deprived of the constitutional right to have a fair, uncompromised day in court, suffered the total destruction of valuable legal claims (property interests), and sustained severe economic and emotional damages due to the targeted denial of equal protection under civil rights laws.

### j)    State-Actor Involvement Overt Acts (The BRN Connection):

**331.** In parallel furtherance of this unlawful conspiracy to destroy Plaintiff's professional standing and shield co-conspirators from liability, Defendant ('Kaiser') knowingly dispatched a false, malicious, and defamatory report to the California Board of Registered Nursing ('BRN'). Kaiser possessed actual knowledge of the report's absolute falsity via Plaintiff's authentic medical records, which were under Kaiser's exclusive control.

**332.** To execute the objectives of the conspiracy, a subordinate official at the BRN, acting completely outside the scope of lawful statutory authority (*ultra vires*), rubber-stamped a legally invalid examination order pursuant to California Business and Professions Code Section 820. This rubber-stamped order lacked any

54

**SECOND AMENDED COMPLAINT**

legitimate, independent administrative basis and was issued solely to give a veneer of state authority to Kaiser's retaliatory campaign.

**333.** Defendant Melby Chief Executive Officer of the Board of Registered Nursing ("BRN") possessed actual, subjective knowledge that the BRN rubber-stamped order was legally void and unenforceable. Despite this knowledge, Defendants intentionally subjected Plaintiff to this invalid order on July 14, 2022—the exact same day that Kaiser Foundation Hospitals obtained summary judgment in the parallel litigation. The precise temporal alignment of these severe adverse actions constitutes circumstantial evidence of a concrete 'meeting of the minds' and a highly coordinated plan, entirely discarding any plausible deniability of independent, non-conspiratorial behavior.

**334.** The systematic alignment of Kaiser's knowingly false reporting, the BRN official's extra-legal issuance of the Section 820 order, and Defendant Melby's enforcement of a known void order on the day of summary judgment establishes a plausible inference of a conspiracy under 42 U.S.C. § 1985(3). These actions directly resulted in the deprivation of Plaintiff's protected civil and professional rights, causing concrete and severe damages.

### k) **Improper Prefiling Orders**

**335.** To insulate their coordinated conspiracy from federal and state judicial scrutiny and ensure their respective actions maintained a veneer of "plausible deniability," Defendants executed a sequence of highly synchronized, fraudulent overt acts:

### l) **The Kaiser Entities' Improper Judicial Blocking:**

**336.** In or around **September 2021**, while Plaintiff's FEHA statutory filing clock (triggered by her **March 18, 2021** termination) was actively running, Defendant KFH knowingly misrepresented to the court that an entry of judgment constituted a global dismissal of all Kaiser entities. To completely seal Plaintiff's physical and procedural access to state courts, Kaiser entities immediately sought and obtained highly restrictive, legally unsupported pre-filing vexatious litigant

55

<strong>SECOND AMENDED COMPLAINT</strong>

orders. These orders were procured intentionally to destroy Plaintiff's ability to remedy her FEHA employment claims.

#### m) The BRN Subordinates' Ultra Vires Enforcement:

337. On or about **November 16, 2022**, while Kaiser entities successfully blocked Plaintiff from state courts, BRN subordinate Shannon Johnson acted *ultra vires* to issue a follow-up administrative Accusation based entirely on a legally void and unenforceable California Business and Professions Code § 820 order.

#### n) The Falsification of Administrative Records:

338. On or about **January 1, 2023** despite the Plaintiff having served a pre-accusation defense that explicitly put the Board of Registered Nursing (BRN) on notice that its pending order lacked both jurisdiction and probable cause, BRN co-conspirator Shannon Johnson intentionally falsified official administrative records to untruthfully state that "no Notice of Defense" had been filed, and independently approved a default decision and order revoking the Plaintiff's RN license.

#### o) The Fraudulent Default and License Revocation:

339. Defendants weaponized this manufactured record omission to secure a fraudulent default license revocation against Plaintiff, effectively neutralizing her Registered Nurse license via a void administrative mechanism.

340. **The Default and NPDB Blacklist:**

341. In final execution of the conspiracy, Defendants immediately transmitted a fraudulent "refusal to comply" report to the National Practitioner Data Bank (NPDB). This orchestrated transmission was designed to extend the deprivation of rights beyond state lines, completely freezing Plaintiff's legal ability to secure employment nationwide.

#### p) Class-Based Animus:

56

**SECOND AMENDED COMPLAINT**

**342.** The actions of the corporate and state-actor co-conspirators were motivated by an invidious, class-based discriminatory animus against Plaintiff due to her protected class status and her protected whistleblowing activities.

**q)    Damages:**

**343.** As a direct and proximate result of the conspiratorial actions of the Defendants, Plaintiff has suffered extreme economic damages, complete deprivation of her professional livelihood, and severe emotional distress

## COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983)

**(Against KFH and BRN Defendants)**

**344.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**a)    Color of State Law & Joint Action (Defeating Private Deniability)**

**345.** At all times relevant, the BRN Defendants acted under color of state law. Defendant Kaiser, though a private entity, acted as a state actor for purposes of 42 U.S.C. § 1983 because it engaged in joint action, willful concert, and a conspiracy with the BRN Defendants. Kaiser's actions were so intertwined with the state's regulatory mechanism that its conduct is fairly attributable to the State.

**346.** The Conspiracy Agreement (Defeating Rule 12(b)(6) Parallel Conduct Objections)

**347.** Defendants entered into an agreement and reached a shared "meeting of the minds" to deprive Plaintiff of their clearly established Fourteenth Amendment due process rights. This agreement went beyond routine, independent administrative reporting. Defendants knowingly acted in coordination toward a common, unlawful objective: to strip Plaintiff of their professional license and employment remedies using fabricated evidence, ensuring the BRN would bypass an independent, objective investigation.

57

**SECOND AMENDED COMPLAINT**

**348.** The BRN Defendants knowingly accepted, relied upon, and advanced Kaiser's knowingly false report. Rather than conducting an objective evaluation, the BRN Defendants utilized the false report as an instrument to execute the conspiratorial objective.

**b)** **Overt Act (The Ultra Vires Order):**

**349.** In direct furtherance of the conspiracy, a subordinate BRN Defendant, lacking independent statutory authority to act on behalf of the Board, issued a legally unenforceable order compelling a physical/mental evaluation under California Business and Professions Code § 820.

**c)** **Knowledge and Intent (Defeating Plausible Deniability)**

**350.** Prior to the issuance of the Section 820 order, Plaintiff provided the BRN Defendants with a comprehensive medical release allowing them to directly obtain medical records from Plaintiff's treating healthcare provider.

**351.** These medical records, possessed by or immediately available to the BRN Defendants, explicitly documented that:

**352.** Plaintiff was fully mentally competent and suffered from no severe or debilitating mental illness.

**353.** Plaintiff's requested workplace accommodation to Kaiser was specifically tailored to prevent situational, temporary complex PTSD exacerbations triggered by documented workplace harassment, rather than any functional cognitive impairment or professional incompetence.

**354.** Discriminatory Animus & Due Process Vilation:

**355.** Armed with actual knowledge of Plaintiff's medical competency and accommodation requests, the subordinate BRN Defendant bypassed standard statutory protections and issued an ultra vires, discriminatory petition and order.

58

**SECOND AMENDED COMPLAINT**

**356.** This petition falsely, maliciously, and discriminatorily labeled Plaintiff as "psychotic" and "incompetent," entirely disregarding the medical documentation to accomplish the conspiratorial goal shared with Defendant Kaiser.

### d)    Overt Act 2: Fraud on the Court & Extinguishing Rights

**357.** Further advancing the conspiracy and seeking to immunize themselves from liability, Defendant KFH misrepresented the scope of a state court summary judgment order. KFH falsely stated to the court that a limited summary judgment operated as a global, total dismissal of all Kaiser entities and fully extinguished Plaintiff's Fair Employment and Housing Act (FEHA) claims. This misrepresentation was designed to manufacture a false defense of res judicata or collateral estoppel, leveraging state judicial machinery to finalize the deprivation of Plaintiff's constitutional and statutory rights.

**358.** Defendant Kaiser intentionally and deceptively used the improper state court judgment to secure an unlawful vexatious litigant prefiling order on **December 22, 2022**. This prefiling order was the direct product of a conspiratorial agreement and shared unlawful objective between Kaiser and the BRN Defendants. Specifically, the defendants coordinated their efforts to insulate the BRN Defendants from liability and prevent state court litigation concerning their issuance of a legally void Section 820 order.

**359.** In furtherance of this joint venture, the BRN Defendants leveraged Kaiser's misrepresentations to unconstitutionally revoke Plaintiff's RN license. They issued a groundless non-compliance accusation on **November 16, 2022**, and a fraudulent default decision on **January 6, 2023**, falsely claiming Plaintiff failed to enter a Notice of Defense. This joint action between private and state defendants under color of law directly deprived Plaintiff of livelihood and due process under 42 U.S.C. § 1983.

**COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983)**

**(Against SCPMG Defendant acting under color of law)**

59

**SECOND AMENDED COMPLAINT**

**360.**   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**361.**   This claim does not seek federal appellate review of any specific state court judgment, nor does it ask this Court to overturn a state court order. Rather, Plaintiff asserts a **direct, independent federal challenge** under 42 U.S.C. § 1983 to a systemic, structural defect in the state's procedural mechanisms that completely foreclosed adversarial testing.

**362.**   At all times relevant, Defendant SCPMG acted **under color of law** by willfully engaging in joint activity with the state judicial machinery. SCPMG did not merely utilize standard court processes; it actively subverted state procedural rules to insulate third-party fraud from judicial scrutiny, transforming a private dispute into a state-enforced deprivation of statutory remedies.

### a)   Protected Property and Liberty Interests:

**363.**   Plaintiff possesses a constitutionally protected property and liberty interest in their professional nursing license, their fundamental right to pursue a chosen livelihood, and their right to a fair, impartial judicial process free from arbitrary deprivation.

**364.**   The Retroactive and Fraudulent Application of Prefiling Orders:

**365.**   On **December 5, 2022**, Plaintiff commenced a separate, distinct action against Southern California Permanente Medical Group (SCPMG) alleging fraud and distinct FEHA violations. SCPMG was never a party to, nor named in, the prior litigation involving Kaiser Foundation Hospitals (KFH) which concluded on **September 21, 2021.**

**366.**   To escape liability, Defendant SCPMG intentionally made material misrepresentations to the state court, falsely asserting that the KFH judgment extinguished all claims against SCPMG. By actively misleading the tribunal, SCPMG induced the court to retroactively and unconstitutionally *subject Plaintiff's pre-existing December 5, 2022 case* to a restrictive prefiling order that was not entered until December 22, 2022.

**SECOND AMENDED COMPLAINT**

### b)    Conspiracy and Joint Action to Deprive Procedural Safeguards:

**367.**    Defendant SCPMG willfully participated in joint action and conspired with state actors under color of law to bypass mandatory procedural safeguards. Specifically, SCPMG and the state court deprived Plaintiff of a mandatory evidentiary hearing prior to subjecting Plaintiff to an oppressive and prohibitive $10,000 vexatious litigant bond. This bond was weaponized to suppress a legitimate lawsuit detailing how SCPMG was legally distinct from KFH and completely absent from the KFH summary judgment record.

### c)    Preclusion of Merits and Arbitrary Dismissal:

**368.**    Despite the complete absence of an evidentiary record or due process protections, Defendant SCPMG and the court proceeded to enforce the unconstitutional security deposit mandate, resulting in the summary dismissal of Plaintiff's valid fraud and employment claims solely for failure to post the unconstitutional bond.

### d)    Retaliatory and Bad-Faith State Action:

**369.**    Defendant SCPMG, acting under color of state law, intentionally manipulated the state court system to obtain a second, layered prefiling order on **July 7, 2025**. This action was taken in direct retaliation for Plaintiff's exercise of their First Amendment right to petition the government by filing a federal civil rights action on **June 10, 2024**. The subsequent state order served no legitimate judicial purpose and was procured in bad faith.

**370.**    Defendant's conduct constitutes a structural denial of due process, as it was designed exclusively to insulate Kaiser entities and third parties from accountability and punish Plaintiff for protected litigation activities, thereby depriving Plaintiff of their constitutionally protected right of access to the courts.

### e)    Structural Error and Systemic Bias:

**371.**    The successive prefiling orders entered on December 22, 2022, and July 7, 2025, by the Stanley Mosk Courthouse—procured through the deceptive

61

**SECOND AMENDED COMPLAINT**

joint actions of KFH and SCPMG—go beyond mere procedural errors. By acting as a sweeping, prospective shield to protect selected third parties (including the Board of Registered Nursing and Kaiser entities) from ever facing civil liability, the court's mechanism became infected with systemic bias.

**372.** This institutional breakdown constitutes a **structural defect** in the constitution of the trial mechanism, rendering the state court proceedings fundamentally unfair and amounting to a structural denial of Due Process under the Fourteenth Amendment.

### f) The Defendant Insulating Scheme:

**373.** On May 26, 2026, the Stanley Mosk Courthouse issued an order denying the vacatur of prefiling orders. While the court characterized Plaintiff's petition using pejorative language—calling Plaintiff "obsessed, abusive, and lacking insight"—the core operational effect of the order went far beyond the narrow, permissible bounds of regulating a vexatious litigant.

### g) Impermissible Broadening as a Structural Defect:

**374.** Rather than acting as a targeted administrative screening device, the state court's prefiling mechanism has been structurally corrupted and impermissibly expanded. The operational reality of the May 26, 2026 order is the creation of a prospective, absolute immunity blanket covering separate administrative and private third parties—specifically, the **California Board of Registered Nursing**, **Loretta Melby**, and **Gillian Friedman**.

### h) Denial of Access to Courts for Independent Claims:

**375.** By utilizing the prefiling order to completely block judicial evaluation of unadjudicated, fraudulent California Business and Professions Code § 820 orders, the judicial mechanism has been structurally altered. It no longer acts as a neutral arbiter. Instead, it operates as an insuperable barrier that completely eliminates the basic constitutional requirement of judicial scrutiny over separate administrative actions.

**SECOND AMENDED COMPLAINT**

### i) Stripping Defendants of Plausible Deniability:

**376.** Defendants Board of Registered Nursing, Loretta Melby, cannot claim plausible deniability or good-faith reliance on the May 26, 2026 order. Defendants had actual, documented knowledge that the underlying § 820 orders were procured through fraud, lacked an adjudicative basis, and violated clearly established law.

### j) Active Conspiratorial Exploitation:

**377.** Defendants intentionally and actively exploited the state court's overbroad prefiling mechanism as a liability shield. They did so with the specific intent to block the adjudication of their own independent fraudulent conduct. Where state actors and private parties intentionally weaponize an overbroad judicial administrative order to insulate unadjudicated fraudulent acts from ever being reviewed by a court, the adversarial framework is destroyed, constituting a structural denial of due process.

**378.** The prefiling restriction, as applied, completely bars Plaintiff from accessing judicial remedies for separate, unlitigated wrongs without a prior, individualized, and meaningful hearing on the merits of those specific claims. By expanding the scope of a prefiling restriction to shield third parties from liability for underlying fraudulent reporting that was never factually tested or judicially determined, the state mechanism creates an unconstitutional, absolute immunity blanket.

**379.** The state procedural rule, as applied to these unique facts, is not narrowly tailored to achieve any compelling state interest. Instead, the rule was weaponized to completely bypass necessary procedural safeguards, permanently blocking Plaintiff's access to federal and state statutory remedies.

**380.** The deployment of state judicial machinery to immunize extrinsic fraud from adversarial testing constitutes a structural breakdown of the forum. This structural defect renders the state court forum incapable of providing a fair and impartial adjudication.

**SECOND AMENDED COMPLAINT**

**381.** The wholesale foreclosure of a meaningful opportunity to be heard **shocks the conscience** and violates the standard of fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment

## COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):)

**(Against BRN Defendants)**

**382.** Plaintiff re alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**383.** At all times relevant to this Complaint, Defendant Loretta Melby acted under color of state law in her official capacity as the, Executive Officer for the California Board of Registered Nursing ("BRN"). In doing so, her actions were performed within the scope of her official duties and employment with the State of California.

**384.** To state a claim under 42 U.S.C. § 1983 for due process violations, a plaintiff must allege:

(1) the deprivation of a constitutionally protected interest in life, liberty, or property; and

(2) that the deprivation was organic to state action or committed by a person acting under color of state law without constitutional safeguards

**385.** **Protected Property Interest:** At all times relevant, Plaintiff held a valid professional license issued by the State of California, which constitutes a constitutionally protected property interest under the Fourteenth Amendment. This interest cannot be suspended, revoked, or burdened without robust procedural due process.

**386.** Plaintiff possessed a constitutionally protected property interest in their Registered Nurse (RN) License No. **[761179] a**nd a legitimate claim of entitlement to pursue their profession, deeply rooted in the California **Nursing**

64

**SECOND AMENDED COMPLAINT**

**Practice Act** (NPA) under California Business and Professions Code (BPC) § 2700 et seq.

387.    This statutory framework codifies the rules, licensing requirements, and scope of the nursing profession, transforming a standard job into a legally recognized property right protected by due process.

388.    Because the State of California explicitly regulates and grants this professional license under the Business and Professions Code, the plaintiff possesses a vested right that cannot be arbitrarily revoked or diminished without formal administrative due process. Consequently, the NPA serves as the independent statutory source creating and defining the plaintiff's secure legal entitlement to practice nursing within the state.

389.    Plaintiff possesses a constitutionally protected liberty interest in their professional reputation and the freedom to practice their chosen profession as a Registered Nurse.

390.    Defendants, and each of them, were at all relevant times officials, employees, or agents of the State nursing board, acting under color of state law in their official and individual capacities.

391.    Defendants, acting under color of state law, intentionally, recklessly, or with deliberate indifference deprived Plaintiff of these protected property and liberty interests without due process of law.

a)    **Deprivation of Procedural Due Process (42 U.S.C. § 1983)**

392.    **Lack of Lawful Authority and Jurisdiction:**

393.    Defendant Melby, acting under color of state law, acted completely outside her lawful jurisdiction and statutory authority under 16 CCR § 1405 and California Business and Professions Code § 820.

394.    **Ultra Vires Acts:** Defendant Melby unlawfully delegated mandatory, non-delegable statutory authority to an unauthorized subordinate staff member to

65

**SECOND AMENDED COMPLAINT**

independently petition for and independently approve a mental or physical health examination order.

**395. Void Ab Initio Order:** Because the subordinate lacked the legal jurisdiction to issue the § 820 order, the resulting order was void *ab initio*.

**396. Deprivation of Safeguards:** By bypassing the mandatory discretionary review and or group discretion of the Board, Defendant Melby intentionally stripped Plaintiff of the structural, statutory, and procedural safeguards designed to prevent arbitrary, single-person administrative overreach.

**397. No Adequate Remedy:** Defendant Melby then restricted or revoked Plaintiff's professional license based entirely on non-compliance with this void and unauthorized order, failing to provide a pre-deprivation hearing or lawful process.

**b)    Defeating "Plausible Deniability" & Qualified Immunity**

**398.**  Defendant Melby had fair warning that her conduct was unlawful.

**399. No Discretionary Immunity for Ultra Vires Acts:** Qualified immunity only protects officials performing discretionary functions. Defendant Melby acted completely outside her statutory authority under 16 CCR § 1405. An official cannot claim qualified immunity for *ultra vires* actions that they had no legal jurisdiction to perform.

**400. Clearly Established Law:** It is clearly established under the Fourteenth Amendment that a state official may not deprive a licensee of their livelihood based on a void order issued without legal jurisdiction. No reasonable official in Defendant Melby's position could have believed she possessed the authority to allow a subordinate to bypass mandatory Board safeguards.

**401. Waiver and Concession:** By failing to respond to Plaintiff's Objections, Defendant Melby waived any opposition and conceded the central legal and factual errors. She cannot now invent a plausible deniability defense when the factual record of her unauthorized directive stands unrefuted.

66

**SECOND AMENDED COMPLAINT**

**402.** By utilizing a "rubber stamp" process devoid of statutory authority, Defendants failed to provide minimum constitutional safeguards, thereby depriving Plaintiff of a fair hearing before an impartial tribunal.

c)    **Deprivation of Substantive Due Process (42 U.S.C. § 1983)**

**403.** Descendant Loretta Melby had direct, personal, and affirmative involvement in the constitutional deprivation by executing a sworn declaration wherein she admitted to bypassing mandatory statutory frameworks.

**404. Arbitrary and Capricious Action:** Defendant Melby's actions were arbitrary, capricious, and a pretextual abuse of administrative power.

**405. Shocks the Conscience:** Forcing a licensed professional to submit to an intrusive, compelled medical or psychological evaluation via an unauthorized, invalid command—and subsequently stripping them of their livelihood for allegedly resisting that unlawful command—constitutes egregious official misconduct that shocks the conscience.

**406. No Legitimate State Interest:** There is no legitimate, rational state interest in enforcing an administrative order issued by an unauthorized employee in direct violation of state regulations.

**407. Color of Law / Personal Involvement (For § 1983 Claims):** Melby was acting in her official capacity (under color of state law) and was *personally involved* in the deprivation of plaintiff's rights.

**408. Qualified Immunity**: **Defendant Melby** violated Plaintiff's clearly established **Fourteenth Amendment due process rights** by failing to ensure compliance with mandatory statutory protocols before revoking Plaintiff's Registered Nurse license.

**409.** Under **California Code of Regulations (CCR) Title 16, § 1405**, Defendant Melby holds exclusive, non-delegable authority to direct staff work and bears strict responsibility for actions taken by subordinates on her behalf. By permitting the revocation to proceed without her independent, discretionary review

67

**SECOND AMENDED COMPLAINT**

process, Defendant Melby acted with deliberate indifference to Plaintiff's protected property interest in their professional license.

**410. Deprivation of a Protected Interest:** Plaintiff's RN license constitutes a constitutionally protected property and liberty interest under the Fourteenth Amendment, which cannot be stripped or revoked without robust Procedural Due Process. Defendant Melby knew, or objectively should have known, that failing to maintain strict statutory and regulatory protocols before revoking said license would directly violate Plaintiff's clearly established constitutional right to a fair, compliant, and independent review process.

**411. Causation and Damages:** Defendant Melby's affirmative actions, material omissions, and failure to supervise directly and proximately caused the unlawful deprivation of Plaintiff's constitutional rights. As a direct and proximate result of Defendants' unconstitutional conduct under color of state law, Plaintiff suffered an immediate loss of their livelihood, catastrophic financial ruin, severe emotional distress, mental anguish, and permanent damage to their professional reputation.

**412.** Defendants' actions shock the conscience and lack any rational relationship to any legitimate government or public safety interest.

## COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD

**(Against Melby/BRN Defendants)**

**a)   The False NPDB Report Submission:**

**413.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**414.** On or about February 3, 2023, Defendants, acting under color of state law, drafted, authorized, and electronically submitted an Adverse Action Report to the National Practitioner Data Bank ("NPDB") regarding Plaintiff Esther Atam Specifically, Defendants published the following false statement of fact: *"[Plaintiff]*

68

**SECOND AMENDED COMPLAINT**

*failed to comply with boards section 820 Exam order."* This statement was disseminated nationwide to hospitals, licensing boards, and professional entities.

**b)     Defeating Plausible Deniability & Establishing Knowledge (Rule 9(b))**

**415.**    Particularity of Falsity and Actual Knowledge:

**416.**    Defendants made an objectively false statement of fact when they published that Plaintiff failed to comply with a *valid* Section 820 Examination order. In truth, no legally binding or enforceable Section 820 order existed at the time of the statement.

**417.**    The purported order was a 'rubber-stamped' document issued by a subordinate official who lacked the statutory authority to issue such orders. Because the underlying order was legally void *ab initio* for lack of jurisdiction and absence of probable cause, Plaintiff could not, as a matter of law, fail to comply with it. Defendants' statement asserting non-compliance was therefore objectively false.

**418.**    Defendants did not make an innocent mistake or a negligent administrative error; they acted with actual knowledge of falsity and a reckless disregard for the truth. Defendants possessed subjective, actual knowledge that the order was void and unenforceable through multiple distinct channels:

**419. Internal Knowledge:** Defendants knew that the individual who issued the rubber-stamped order lacked the statutory and jurisdictional authority to do so.

**420. Express Notice:** Prior to manufacturing the default revocation, Defendants received and reviewed Plaintiff's *Preaccusation Notice of Defense.* This explicit legal notice explicitly informed Defendants that the order lacked jurisdiction, was issued without probable cause, and was legally unenforceable.

**421.**    Despite having this direct knowledge in their immediate possession, Defendants intentionally ignored these facts. They proceeded to manufacture and

69

**SECOND AMENDED COMPLAINT**

publish a default Registered Nurse (RN) license revocation based entirely on Plaintiff's non-compliance with an order they knew to be a nullity.

422. Defendants acted with calculated malice, fully aware that Chief Enforcement Officer Shannon Johnson lacked the inherent authority to unilaterally approve or execute a default decision. By intentionally bypassing mandatory Board review, Defendants manufactured an administrative process and subsequent registered nurse (RN) revocation that lacked all legal authority. Consequently, the entire administrative proceeding is void *ab initio*, rendering the disciplinary action an actionable, unlawful overreach.

c)   **Elimination of Plausible Deniability via "Rubber Stamp" / Cat's Paw Liability:**

423. Defendants cannot claim plausible deniability or lack of knowledge based on corporate or administrative insulation. The final decision-makers acted as a mere "rubber stamp," blindly and automatically ratifying the unauthorized, vindictive, and false allegations manufactured by subordinate officials. Defendants knowingly abdicated their statutory duty of independent verification.

424. By intentionally bypassing all investigative checklists and regulatory review mechanisms, Defendants deliberately insulated themselves from the truth, establishing a conscious avoidance of facts that constitutes actual knowledge under Federal Rule of Civil Procedure 9(b).

d)   **Stripping HCQIA Immunity (42 U.S.C. §§ 11111–11112)**

425. Exclusion of HCQIA Immunity Under § 11111:

426. Defendants are completely excluded from qualified immunity under 42 U.S.C. § 11111(a)(2) because they provided information to the NPDB that they knew to be false at the time of submission.

427. Failure to Meet Objective Standards Under § 11112(a):

70

**SECOND AMENDED COMPLAINT**

428.   Defendants fail to meet the objective standards required for immunity under 42 U.S.C. § 11112(a). The reporting action was a bad-faith sham motivated entirely by personal animus and retaliatory persecution. It was not undertaken in the reasonable belief that the action was in furtherance of quality healthcare.

e)    **Denial of Due Process and Fair Hearing Under § 11112(b):**

429.   Defendants further forfeited HCQIA immunity by failing to afford Plaintiff adequate notice and fair hearing procedures under 42 U.S.C. § 11112(b). Specifically, Defendants utilized a summary, non-adversarial "rubber stamp" process completely devoid of statutory authority.

430.   Defendants failed to provide minimum constitutional safeguards, actively denied Plaintiff the right to present evidence or confront accusers, and deprived Plaintiff of a fair hearing before an impartial tribunal.

f)    **Causation and Damages**

431.   Severe and Irreparable Harm:

432.   As a direct and proximate result of Defendants' false, bad-faith report to the NPDB, Plaintiff has suffered and continues to suffer severe, permanent, and irreparable harm. This includes the immediate destruction of her professional reputation, disqualification from employment opportunities, lost wages, emotional distress, and a nationwide blacklisting within the healthcare industry.

## COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

**(Against Kaiser and BRN Defendants)**

433.   Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

a)    **Intent and Recklessness (Defeating Plausible Deniability):**

71

**SECOND AMENDED COMPLAINT**

**434.** Defendants acted intentionally, or with reckless disregard of a high probability that their actions would cause Plaintiff severe emotional distress. Defendants possessed specific knowledge of Plaintiff's pre-existing vulnerability—specifically, a work-induced mental injury previously caused by Defendants.

**435.** Despite this knowledge, Defendants intentionally weaponized this specific vulnerability against Plaintiff. **Defendants coordinated an ongoing, six-year campaign of targeted civil harassment specifically designed to induce a complete psychological breakdown.**

**436.** To circumvent direct detection and maintain a veneer of plausible deniability, Defendants operated through intermediaries, utilizing administrative influence within the Board of Nursing and utilizing third parties within the court system to execute an uninterrupted pattern of civil harassment and systemic intimidation.

**b)    Extreme and Outrageous Conduct:**

**437.** Defendants' conduct was extreme, outrageous, and went completely beyond all possible bounds of decency, rendering it utterly intolerable in a civilized community. This continuous course of conduct included, but was not limited to, the following specific, overt acts.

**i.    Fact 1**:

**438.** On **March 17, 2021**, Plaintiff affirmatively agreed to comply with Defendant's directives to engage in the interactive process regarding Plaintiff's accommodation needs, specifically consenting to participate in a Fitness for Duty ("FFD") evaluation order.

**439.** On **March 18, 2021**—less than 24 hours after Plaintiff agreed to comply—Plaintiff made a protected, good-faith request for a minor, reasonable procedural accommodation: adjusting the medical release authorization from *oral communication* to *written communication* to protect Plaintiff's medical privacy and ensure an accurate record.

72

**SECOND AMENDED COMPLAINT**

440. Immediately upon receiving this reasonable accommodation request, and without executing any analytical review or engaging in discussion, Defendant **abruptly and punitively terminated** Plaintiff's employment.

441. Defendant completely failed and refused to engage in a good-faith interactive process regarding Plaintiff's known workplace restrictions or accommodations prior to termination. Instead, Defendant utilized the FFD directive as a bad-faith pretextual trap, executing an immediate termination to maximize financial and emotional vulnerability.

c)    **Defendant's Actual Knowledge and Exploitation of Vulnerability**

442. Defendants possessed direct, actual, and written knowledge of Plaintiff's severe psychological injury and vulnerability, derived explicitly from medical documentation submitted by Plaintiff's treating healthcare provider.

443. The medical documentation explicitly put Defendants on notice that Plaintiff suffered a severe psychological injury caused directly by the workplace environment, which was actively exacerbated by a toxic, hostile work environment characterized by persistent harassment and psychological gaslighting.

444. Despite this explicit medical notice, Defendants intentionally engaged in a calculated campaign of psychological violence designed to distort Plaintiff's reality, gaslight her into believing a wrongful suspension on August 28, 2022, never occurred, and falsely fabricate a narrative that Plaintiff abandoned her position.

445. With full, actual knowledge of Plaintiff's medical status, Defendants maliciously fabricated and submitted a false report to the Board of Registered Nursing (BRN) with the specific intent to defame Plaintiff, jeopardize her professional license, and destroy her livelihood.

446. Defendants' BRN report contained knowingly false statements, asserting that Plaintiff 'refused to comply with a Fitness for Duty (FFD) directive' and 'abandoned her position' in October 2020.

73

**SECOND AMENDED COMPLAINT**

**447.** In truth, and as documented by Defendants' own internal records, Plaintiff never abandoned her position. Rather, Defendants placed Plaintiff on an unpaid, unrequested medical leave and terminated her employment exactly one day after she agreed to the FFD evaluation.

**448.** Defendants' targeted conduct in manufacturing and submitting a knowingly false report to a licensing board—specifically weaponized against a vulnerable employee whom Defendants knew to be experiencing severe, employer-induced psychological distress—exceeds all possible bounds of decent human behavior, is utterly intolerable in a civilized community, and constitutes extreme and outrageous conduct as a matter of law.

**449.** Defendants acted intentionally and recklessly, with full awareness that targeting a nurse's professional license while she was suffering from a documented psychological injury would cause severe, debilitating emotional distress.

**450.** As a direct and proximate result of Defendants' outrageous conduct, harassment, gaslighting, and malicious BRN reporting, Plaintiff suffered and continues to suffer severe emotional distress, profound anxiety and a catastrophic impact on her professional standing, necessitating ongoing therapy.

**ii.    Fact 2**:

**d)    Extreme and Outrageous Conduct:**

**451.** Defendants, and each of them, engaged in a continuous, coordinated, and calculated pattern of extreme and outrageous conduct directed at Plaintiff. This conduct went far beyond the boundaries of standard administrative error or employment disputes and was entirely intolerable in a civilized community.

**e)    The Coordinated Conspiracy to Harass:**

**452.** Specifically, Defendants Kaiser and the BRN Defendants actively conspired, agreed, and acted in concert with agents of the Board of Registered Nursing ("BRN")to subject Plaintiff to severe harassment. This joint enterprise strips away any defense of plausible deniability by orchestrating private employer

74

**SECOND AMENDED COMPLAINT**

actions in direct reliance upon state-agency power, thereby merging public regulatory authority with private retaliation to deprive Plaintiff of constitutional rights.

**f)    The Ultra Vires and Unauthorized Mechanism:**

**453.**   In furtherance of this conspiracy, on or about **July 13, 2022**, Defendants utilized a subordinate employee of the BRN to independently approve and issue a  petition and order compelling Plaintiff to undergo an unauthorized *second mental examination* under California Business and Professions Code Section 820. This subordinate entirely lacked the statutory authority to independently issue such an order, making the action strictly *ultra vires*. Defendants knew or recklessly disregarded that this order was unlawful, yet weaponized it as a tool of psychological and professional coercion.

**g)    Weaponization of Discriminatory Pretext:**

**454.**   The *ultra vires* petition and order were not legitimate administrative actions, but were deeply rooted in racial and national origin discrimination. Defendants maliciously fabricated and weaponized offensive, discriminatory tropes against Plaintiff by falsely alleging in public or official records that Plaintiff "spoke to vampires and voodoo spirits," suffered from severe mental illness, abandoned her nursing duties and was unfit for duty. Defendants utilized these specific, highly offensive fabrications with the express intent to humiliate Plaintiff, degrade their cultural background, and destroy their professional reputation.

**h)    The Fraudulent Default Scheme:**

**455.**   To finalize their scheme and maximize the emotional and professional distress inflicted upon Plaintiff, Defendants manufactured a fraudulent default decision. The BRN Defendants issued this default on the explicitly false and fraudulent premise that Plaintiff failed to comply with the unauthorized Section 820 orders, and falsely asserted that no Notice of Defense had been received, despite knowing that Plaintiff had validly defended themselves.

**i)    Intent and Recklessness:**

75

**SECOND AMENDED COMPLAINT**

**456.** Defendants acted with the specific intent to cause Plaintiff severe emotional distress, or acted with absolute and reckless disregard of the high probability that their discriminatory tropes, unauthorized orders, and fraudulent default would cause such distress.

### j)    Causation and Severe Emotional Distress:

**457.** As a direct and proximate result of Defendants' extreme, outrageous, and conspiratorial conduct, Plaintiff suffered and continues to suffer severe and debilitating emotional distress, mental anguish, humiliation, and professional ruin, in an amount to be proven at trial.

### iii.    Fact 3:

**458.** Defendants cannot claim plausible deniability or independent parallel action. The actions of the BRN and the Kaiser entities directly intersected in an unbroken, continuous pattern of retaliatory conduct from **July 14, 2022**, through the present.

**459.** The temporal proximity and perfect operational coordination between the BRN revoking Plaintiff's livelihood and the concurrent erection of an insurmountable $10,000 financial barrier to court access demonstrate an integrated, overlapping conspiracy. This coordinated effort was explicitly confirmed by the Court's **May 26, 2026**, minute order, which overtly linked prefiling restrictions to the protection of 'BRN third parties,' establishing a clear intent to insulate one another from liability and strip Plaintiff of their civil rights.

**460.** Defendants acted intentionally, oppressively, and with a calculated purpose to inflict severe psychological and financial ruin upon Plaintiff.

### 461.    Causation

**462.** As a direct and proximate result of Defendants' coordinated, systemic campaign to completely *erase* Plaintiff's professional identity and block all avenues of legal redress, Plaintiff has suffered and continues to suffer severe, unyielding emotional distress, profound helplessness, clinical anxiety, and ongoing

76

**SECOND AMENDED COMPLAINT**

<span style="color:red">psychological trauma of a nature that no reasonable person should be expected to endure.</span>

## VIII.   RELIEF SOUGHT

463.   WHEREFORE, Plaintiff **ESTHER TENDO ATAM** respectfully requests that judgment be entered in her favor and against Defendants **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; BOARD OF REGISTERED NURSING; LORETTA MELBY; GARY CARLIN; and DOES 1–100**, and that this Court grant the following relief:

### A.   DECLARATORY RELIEF

464.   A declaration that Defendants' acts, omissions, policies, customs, practices, and conduct described herein violated Plaintiff's rights under the United States Constitution, including the First and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act, and the California Fair Employment and Housing Act.

### B.   INJUNCTIVE RELIEF

465.   Preliminary and permanent injunctive relief prohibiting Defendants from continuing the unlawful conduct complained of herein and requiring Defendants to take all necessary corrective actions to remedy the constitutional and statutory violations suffered by Plaintiff.

### C.   ECONOMIC DAMAGES

466.   An award of all past and future economic damages according to proof at trial, including but not limited to:

467.   Lost wages;

468.   Lost earnings capacity;

469.   Lost employment opportunities;

77

**SECOND AMENDED COMPLAINT**

**470.**  Lost retirement benefits;

**471.**  Lost employment benefits;

**472.**  Loss of professional opportunities; and

**473.**  Other consequential economic losses.

**D.      NON-ECONOMIC DAMAGES**

**474.**  An award of compensatory damages for:

**475.**  Emotional distress;

**476.**  Mental anguish;

**477.**  Anxiety;

**478.**  Humiliation;

**479.**  Pain and suffering;

**480.**  Reputational harm;

**481.**  Loss of enjoyment of life; and

**482.**  Other non-economic injuries according to proof.

**E.      PUNITIVE DAMAGES**

**483.**  Punitive and exemplary damages against all Defendants whose conduct was malicious, oppressive, fraudulent, reckless, or in conscious disregard of Plaintiff's federally protected rights, in an amount sufficient to punish and deter similar misconduct.

**F.      CIVIL RIGHTS REMEDIES**

78

**SECOND AMENDED COMPLAINT**

**484.**  All remedies available under 42 U.S.C. §§ 1983 and 1985, including such equitable and legal relief as may be necessary to fully redress the deprivation of Plaintiff's constitutional rights.

### G.    ADA AND FEHA REMEDIES

**485.**  All relief authorized under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the California Fair Employment and Housing Act, Government Code § 12940 et seq., including equitable, compensatory, and statutory remedies.

### H.    COSTS AND FEES

**486.**  An award of costs of suit, litigation expenses, expert witness fees where authorized by law, and reasonable attorney's fees to the fullest extent permitted by applicable statutes.

### I.    PREJUDGMENT AND POST-JUDGMENT INTEREST

**487.**  Prejudgment and post-judgment interest at the maximum rate permitted by law.

### J.    DECLARATORY RELIEF CONCERNING LICENSE REVOCATION AND NPDB REPORTING

**488.**  A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment Due Process rights by unlawfully revoking their Registered Nurse license. This constitutionally deficient administrative process directly deprived Plaintiff of a protected liberty and property interests without due process of law. Specifically, the revocation relied upon an invalid Business and Professions Code § 820 order, denied Plaintiff a meaningful opportunity to be heard, and culminated in a default decision approved by an unauthorized subordinate who completely lacked the statutory authority to strip Plaintiff of their professional license.

**SECOND AMENDED COMPLAINT**

**489.** A declaration that the publication and reporting of the disciplinary action to the National Practitioner Data Bank ("NPDB") were unconstitutional and unlawful because the underlying disciplinary proceedings were void, conducted in violation of procedural and substantive due process, and resulted in a deprivation of Plaintiff's protected liberty and property interests.

### K.    INJUNCTIVE RELIEF REGARDING RN LICENSE

**490.** A preliminary and permanent injunction directing the California Board of Registered Nursing and its officers, successors, agents, employees, and persons acting in concert with them to:

**491.** Vacate and set aside the Default Decision and Order entered against Plaintiff;

**492.** Vacate all disciplinary findings arising from the unlawful administrative proceedings;

**493.** Reinstate Plaintiff's Registered Nurse license to active and unrestricted status;

**494.** Restore all rights, privileges, and benefits associated with Plaintiff's professional nursing license; and

**495.** Cease enforcement of any disciplinary restrictions arising from the challenged proceedings.

### L.    REMOVAL OF NPDB REPORTING

**496.** An Order directing Defendants to immediately withdraw, retract, correct, and permanently remove any adverse report, notation, disciplinary action, or derogatory entry submitted to the National Practitioner Data Bank ("NPDB") arising from the unlawful disciplinary proceedings challenged herein.

**497.** An Order requiring Defendants to notify all agencies, employers, licensing entities, credentialing organizations, and governmental bodies that

80

**SECOND AMENDED COMPLAINT**

received such information that the disciplinary action has been vacated and is no longer valid.

## M.   PUNITIVE AND EXEMPLARY DAMAGES AGAINST KAISER DEFENDANTS

498.   An award of punitive and exemplary damages against the Kaiser Defendants in an amount sufficient to punish and deter future misconduct because their actions were intentional, malicious, oppressive, fraudulent, retaliatory, and carried out with conscious disregard for Plaintiff's federally protected rights.

499.   Plaintiff alleges that the Kaiser Defendants knowingly engaged in discriminatory and retaliatory conduct, intentionally submitted false and defamatory reports concerning Plaintiff's mental fitness and professional competence, interfered with Plaintiff's professional licensing status, and participated in a coordinated effort to destroy Plaintiff's career and livelihood. Accordingly, punitive damages are warranted under applicable federal and California law, including 42 U.S.C. § 1983 and California Civil Code § 3294.

## N.   SUCH OTHER RELIEF

500.   For such other and further legal, equitable, declaratory, injunctive, compensatory, punitive, and special relief as the Court deems just, proper, and necessary to fully remedy the violations alleged herein.

## IX.   DEMAND FOR JURY TRIAL

501.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Esther Tendo Atam hereby demands a trial by jury on all issues so triable, including all claims for compensatory and punitive damages arising under Title VII, the ADA, 42 U.S.C. §§ 1983, 1985, and related statutes.

502.   A jury is especially appropriate here given the fact-intensive disputes over retaliation, discrimination, fabrication of evidence, and conspiracy. Determining credibility, motive, and damages requires a jury's judgment, not summary adjudication by state actors who previously disregarded Plaintiff's rights.

81

**SECOND AMENDED COMPLAINT**

## X.    CERTIFICATE OF SERVICE

**503.  I** hereby certify that on June 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the registered participants. I further certify that I simultaneously served a true and correct copy of the foregoing document via email to the following counsel of record at the email addresses listed below notification of such filing to the following:

**Christian J Rowley**, crowley@seyfarth.com,
5266201420@filings.docketbird.com,
jblackwell@seyfarth.com,
ktruesdale@seyfarth.com,
ndavilla@seyfarth.com,
sfocalendar@seyfarth.com,
shobrien@seyfarth.com
**Brandon Keith Franklin** , brandon.franklin@clydeco.us,
lisa.vera@clydeco.us,
patricia.inabnet@clydeco.us
**Gary R Carlin**, gary@garycarlinlaw.com,
andrewj@garycarlinlaw.com,
bill@garycarlinlaw.com,
daniel.e@garycarlinlaw.com,
jahaira@garycarlinlaw.com,
kathy@garycarlinlaw.com,
marisol@garycarlinlaw.com,
vincent@garycarlinlaw.com
**Jamil R Ghannamjamil**, ghannam@doj.ca.gov,
Bruce.McGagin@doj.ca.gov,
Carrie.Vue@doj.ca.gov,
TORT-ECF@doj.ca.gov

_____
Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

82

**SECOND AMENDED COMPLAINT**

## XI.    VERIFICATION

**504.**   I, Esther Tendo Atam, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 06/22/2025 at 13621 Arcturus Ave. Gardena CA 90249.

Respectfully submitted,

_____
Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

DATED: June 22, 2026

Respectfully submitted,
**/s/ Esther Tendo Atam**

Plaintiff, In Pro Per
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com

83

**SECOND AMENDED COMPLAINT**