Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com
Plaintiff in Pro Per

**FILED**
CLERK, U.S. DISTRICT COURT

06/24/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ CSO _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER TENDO ATAM, <br><br> *Plaintiff* <br><br> vs. <br><br> KAISER FOUNDATION HOSPITALS ET AL., <br><br> *Defendants* | **Case No.: 2:24-cv-05862-KK-AS** <br><br> **SECOND AMENDED COMPLAINT FOR:** <br> 1. Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964 <br> 2. Retaliation in Violation of (ADA) <br> • Disability Discrimination (FEHA) <br> • Failure to Accommodate (FEHA) <br> • Failure to Engage in Interactive Process (FEHA) <br> • Race and National Origin Discrimination (FEHA) <br> • National Origin Harassment (FEHA) <br> • Failure to Prevent Discrimination, Harassment, and Retaliation (FEHA) <br> • Hostile Work Environment <br> • Wrongful Termination in Violation of Public Policy <br> 3. Tortious Interference with Prospective Economic Advantage <br> 4. Conspiracy to Interfere with Civil |

Rights (42 U.S.C. § 1985)

5. Conspiracy to Deprive Civil Rights (42 U.S.C. § 1983)

6. Violation of Fourteenth Amendment Due Process (42 U.S.C. § 1983)

7. Violation of Civil Rights (42 U.S.C. § 1983)

8. Defamation / Injurious Falsehood

9. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

Before Hon. Judge Kenley Kiya Kato

## PLAINTIFF SEEKS:

- Declaratory Relief;
- Preliminary and Permanent Injunctive Relief;
- Reinstatement and/or Front Pay;
- Compensatory Damages;
- Economic Damages;
- General Damages;
- Special Damages;
- Punitive and Exemplary Damages;
- Attorney's Fees and Costs as Authorized by Law;
- Pre-Judgment and Post-Judgment Interest; and
- Such Other and Further Relief as the Court Deems Just and Proper.

**ESTHER TENDO ATAM**
Plaintiff, In Pro Per

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

I.    PRELIMINARY STATEMENT ............................................................................ 1

   37.    TOLLING AND EXHAUSTION OF ADMINSTRAIVE REMEDIES ......................... 4

II.   STATEMENT OF FACT .................................................................................... 16

   A.   FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION .......................................................................................... 16

   B.   FACTUAL ALLEGATIONS DEFAMATION ..................................................... 24

   C.   FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS ...........25

   D.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ............................................30

   E.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ...........................................32

III.  CAUSES OF ACTION - ...................................................................................40

   COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112) ................................................................................................40

   COUNT 2: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE ......................................................................................................46

   COUNT 3: DEFAMATION PER SE ................................................................... 43

   COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS  (Violation of Civil right Act 42 U.S.C., & 1985) ..............................................................................46

   COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS  (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983) .................................................................................. 54

   COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983) ...........................................................................................57

   COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):) .......................................................... 61

   COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD ...................................... 66

   COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) ................69

IV.   RELIEF SOUGHT .......................................................................................... 75

V.    DEMAND FOR JURY TRIAL ........................................................................... 79

**CASES**

*Ashcroft v. Iqbal*..................................................................................24
*Bell Atlantic Corp. v. Twombly*....................................................... 24
*Holland v. Florida*, 560 U.S. 257, 259 (2010)............................... 9
*Holland v. Florida*, 560 U.S. 258, 249 (2010................................ 10
*Holland v. Florida*, 560 U.S. 631, 653 (2010 ............................... 8
*Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946)................. 9
*Honig v. Doe*, 484 U.S. 305, 327 (1988).......................................7
*Kavanagh v. Noble*, 332 U.S. 535, 539 (1947);............................ 9
*Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982)............11
*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996 ...............10

**STATUTES & RULES**

**(ADA), (42 U.S.C & 12112**..........................................................i, 4, 33
16 CCR § 1405........................................................................ 29, 31, 56
**28 U.S.C & 1738**............................................................................ 4
28 U.S.C section 133 and 28 U.S.C section 1343(a)(3)..................... 1
**28 U.S.C. § 1738**.......................................................................... 10
28 U.S.C. §§ 2201 and...................................................................69
**42 U.S.C & 11111**......................................................................... 6
42 U.S.C. & 1983, 42 U.S.C. & 1985................................................ 1
42 U.S.C. § 11112(a)..................................................................... 61
42 U.S.C. § 11112(b.......................................................................61
42 U.S.C. § 12102(1),.....................................................................34
42 U.S.C. § 12111 *et seq*............................................................. 19
42 U.S.C. § 12111(8)......................................................................34
42 U.S.C. § 12112(b)(5)(A),.......................................................... 19
42 U.S.C. § 1983 .................................................................. passim
42 U.S.C. § 1983 and California Civil Code § 3294........................ 71
**42 U.S.C. § 1985(3))**.................................................................. 21
**42 U.S.C. §§ 11111–11112**......................................................... 60
**42 U.S.C. Section 1983)**:......................................................... 3, 11
**42 U.S.C., & 1983**...........................................................i, 5, 47, 54
California Business and Professions Code § 820............................. 48
Government Code § 12940 et seq................................................... 69
**Rule 12(b)(6)**..........................................................................passim
Rule 12(b)(6)...................................................................................12
**Rule 12(b)(6):**.............................................................................24
**Violation of Civil right Act 42 U.S.C., & 1983)**:....................... 5
**Violation of Civil right Act 42 U.S.C., & 1985**..................... i, 5, 39

1.    Plaintiff submits this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiff has been granted leave to file this pleading by the Courts order date **06/17/2026**, which is attached here to as Exhibit A.

## I.    PRELIMINARY STATEMENT

2.    **Nature of the Action**. This is a civil rights action for declaratory and permanent injunctive relief, as well as compensatory and punitive damages. Plaintiff seeks to remedy a pattern of unlawful termination, state-connected retaliation, and a conspiracy to deprive Plaintiff of her statutory and constitutional rights.

3.    **Wrongful Termination and Retaliation**. This action arises from Defendant Kaiser's unlawful termination of Plaintiff to punish her for engaging in legally protected activities, which was followed by an ongoing campaign of retaliation.

4.    **Weaponization of the Regulatory Process**. As an escalation of this retaliation, Kaiser transmitted a knowingly false report to Defendant Board of Registered Nursing (BRN). By manufacturing allegations of patient abandonment and refusal of fitness-for-duty evaluations, Kaiser intended to trigger a regulatory investigation and destroy Plaintiff's professional career.

5.    **Conspiracy and Harm**. Defendants Kaiser and the BRN conspired to initiate a sham administrative disciplinary process designed to discredit Plaintiff's protected complaints, insulate Kaiser from liability, and introduce institutional bias. This unlawful coordination resulted in the illegal revocation of Plaintiff's Registered Nurse (RN) license, the summary dismissal of her claims, and the denial of her right to petition for redress.

6.    **Relief Sought**. Plaintiff brings this action to clear her name, restore her RN license, and recover damages.

7.    **Exception to Full Faith and Credit (28 U.S.C § 1738): Federal courts generally respect State Courts judgments, but not if the State court**

1

**SECOND AMENDED COMPLAINT**

**lacked Jurisdiction or completely Denied Due Process.**

8.   A Federal court is not bound by Full Faith and Credit under 28 U.S.C § 1738 because the state court judgment lacked fundamental due process. A state court order that bars a plaintiff from filing claims before the expiration of the applicable stature of limitation - without an evidentiary hearing or formal adjudication on the merit - is constitutionally void and **ineligible for res judicata or collateral estoppel.**

9.   **Plaintiff's claims for relief arise from this unified course of unconstitutional conduct and are summarized as follows:**

10. **Deprivation of Constitutional Rights Due Process Violations (42 U.S.C. § 1983)**:

11.   This civil rights action arises under 42 U.S.C. § 1983 to redress a systemic conspiracy between corporate and state court actors that deprived Plaintiff of constitutional rights and blocked all meaningful access to the courts.

12.   To shield corporate defendants from liability for severe workplace violations, Defendants orchestrated a retaliatory campaign of malicious prosecution that resulted in the extrajudicial revocation of Plaintiff's Registered Nurse (RN) license.

13.   Defendants then conspired with state court actors to weaponize procedural machinery, unconstitutionally terminating Plaintiff's timely employment law claims and insulating themselves from legal accountability.

14.   **Violation of the Americans with Disabilities Act (ADA), (42 U.S.C § 12112):**

15.   Defendants violated the Disabilities Act (ADA), 42 U.S.C., § 12111, by failing to engage in good faith interactive process to identify and implement reasonable accommodation, resulting in an adverse employment and unlawful discrimination.

2

**SECOND AMENDED COMPLAINT**

**16.  Defamation and Tortious Interference:**

17.  Defendants engaged in extreme and outrageous conduct involving intentional, malicious and widespread smear campaign, publishing false and defamatory statement to third parties like the Board of Registered Nursing with reckless disregard for the truth, constituting Defamation Per Se and Tortious Interference with Plaintiff's prospective economic advantage.

**18.  Conspiracy to Interfere with Civil Rights  (Violation of Civil right Act 42 U.S.C., § 1985)**:

19.  Defendants conspired and acted in concert for the express purpose of depriving plaintiff of the equal protection of the laws, hindering the course of Justice and violating Plaintiff's constitutional rights.

**20.  Conspiracy to Deprive Civil Rights  (Violation of Civil right Act 42 U.S.C., § 1983)**:

21.  Defendants conspired and acted in concert to violate Plaintiff's First and Fourteenth Amendment Rights by illegally revoking Plaintiff's RN license, weaponizing prefiling orders to block court access, and executing a targeted campaign of harassment designed to force the abandonment of Plaintiff's legal claims.

**22.  Revocation of RN license without Due Process (Violation of the 14th Amendment (42 U.S.C., § 1983):**

23.  An RN license is a protected property interest. Defendants acting under color of State law, deprived Plaintiff of a protected property and liberty interest in their Registered Nurse License without Procedural and Substantive Due Process in Violation of the Fourteenth Amendment.

24.  An administrative "section 820 Order" and subsequent accusation was issued by a subordinate lacking statutory authority acting as a "rubber stamp" without providing plaintiff with a meaningful hearing or the required constitutional safe guards.

3

**SECOND AMENDED COMPLAINT**

**25.  Defamation / Injurious Falsehood:**

**26.**  Defendants knowingly, maliciously and in bad faith submitted False Report to the NPDB outside the immunity protections of **42 U.S.C § 11111**, causing severe, ongoing, and irreparable harm to Plaintiff's professional reputation and livelihood.

**27.  Intentional Infliction of Emotional Distress (IIED):**

**28.**  Defendants engaged in extreme, outrageous, and continuous conduct, intended to terrify, harass and psychologically menace the plaintiff, directly resulting in severe intentional infliction of Emotional Distress and physical manifestation of anxiety.

**29.    TOLLING    AND    EXHAUSTION    OF    ADMINSTRAIVE REMEDIES**

**The Futility of Administrative Exhaustion (Title VII / ADA / FEHA Claims)**

**30.    The Legal Rule:**

**31.**    Federal courts do not require a plaintiff to perform a useless act.

**32.**    Plaintiff is excused from any requirement to exhaust administrative remedies or obtain a secondary Right-to-Sue letter from either the either the California Civil Rights Department (formerly **DFEH/FEHA**) or the Equal Employment Opportunity Commission (EEOC).

**33.**    The Doctrines of Futility and Claim Preclusion Excused Any Secondary Administrative Exhaustion Because Defendants Locked in a Global Adjudication on the Merits.

**34.**    Administrative exhaustion is excused under the "futility exception" when an agency or a prior court ruling has made it impossible or entirely certain that the remedy will be denied.

4

**SECOND AMENDED COMPLAINT**

35.     Seeking an additional or secondary administrative Right-to-Sue letter would be entirely futile under the circumstances of this case.

36.     The futility exception to the administrative exhaustion doctrine applies squarely here. *See, e.g., Honig v. Doe*, 484 U.S. 305, 327 (1988) (exhaustion is not required when it would be futile).

37.     On September 21, 2022, Defendant Kaiser Foundation Hospitals ("KFH") and various Doe defendants secured a final judgment by arguing that the ruling was fatal to all Kaiser entities globally.

38.     Having successfully treated all Kaiser-affiliated entities as a single, indivisible unit to defeat Plaintiff's prior claims, Defendants are judicially estopped from now arguing these entities are separate for preclusion purposes.

39.     Because Defendants locked in a final judicial determination that Plaintiff's claims were globally extinguished, any subsequent administrative filing was entirely futile, legally impossible, and excused under the futility exception to exhaustion.

40.     **The Timeliness of ADA Title II Claims and Equitable Tolling**

41.     **The Legal Rule:** Equitable tolling applies in federal court when a plaintiff pursues their rights diligently but extraordinary circumstances—such as a defendant's subversion of the judicial process or an erroneous procedural dismissal—prevented timely filing on the merits.

42.     On **May 10, 2021**, Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC").

43.     Plaintiff has fully exhausted all administrative remedies required to bring the claims asserted herein.

44.     Plaintiff's claims under the Americans with Disabilities Act ("ADA") accrued on **March 18, 2021**.

45.     On **November 21, 2021**, Plaintiff filed a timely civil action against

5

**SECOND AMENDED COMPLAINT**

Defendant Kaiser Foundation Hospitals in State court.

46.    Plaintiff's claims are timely filed under the doctrines of equitable equitable tolling. Defendants are barred from asserting a statute of limitations defense because their affirmative misconduct, material misrepresentations, and systemic deception prevented Plaintiff from bringing this action within the statutory period.

47.    In the underlying state court action (*Esther Atam vs Kaiser Foundation Hospitals*, Case No: **21STCV41538**), Defendant KFH moved for summary judgment by falsely claiming it was absolutely separate from Southern California Permanente Medical Group ("SCPMG"). In reality, KFH acted as Plaintiff's joint employer and exercised direct operational control.

48.    **On July 14, 2022**, the state court granted KFH summary judgment, concluding it was not the plaintiff's employer. While KFH secured this win by simultaneously arguing the complaint lacked merit without specifying defenses, SCPMG was excluded from the motion, allowing employment claims against SCPMG to remain viable and timely.

49.    Following this ruling, Defendants intentionally misrepresented the scope and legal effect of the State Court's order. Specifically, on September 21, 2022, Defendants submitted a proposed Final Judgment that inaccurately and deceptively asserted the action had been dismissed *on the merits*.

50.    Defendants' false characterization of the dismissal as being "on the merits" constitutes an intentional misrepresentation designed to improperly invoke the doctrine of claim preclusion (*res judicata*).

51.    Defendants manipulated the litigation to secure a final judgment "on the merits," misleading the Court into signing an order that improperly bars Plaintiff from refiling her FEHA claims or curing procedural defects. This deceptive order prejudiced Plaintiff, effectively barring her from pursuing valid claims against any Kaiser entity.

52.    Given her misunderstanding at the time of the ruling, Plaintiff

6

**SECOND AMENDED COMPLAINT**

reasonably believed her claims against SCPMG remained viable because SCPMG was not a party to the separate KFH lawsuit. To preserve her rights based on the facts available to her at the time, Plaintiff initiated a timely separate state action against SCPMG on **December 5, 2022**.

**53.**    On March 10, 2023, Defendant Southern California Permanente Medical Group (SCPMG) moved to dismiss the state court action by improperly asserting res judicata and collateral estoppel. SCPMG falsely claimed that a September 21, 2022 judgment barred all subsequent claims against all Kaiser entities. In doing so, Defendants knowingly misrepresented the legal scope of that judgment to shield SCPMG. SCPMG was completely absent from, and never a party to, the original Kaiser Foundation Hospitals (KFH) motion. Defendants thus weaponized a non-binding judgment to mislead the court.

**54.**    The state court's December 13, 2023 dismissal was strictly procedural. It was predicated solely on Plaintiff's financial inability to post a required pre-filing bond. This bond was originally issued on December 22, 2022, based on the false premise that Plaintiff was continuing to pursue litigation already barred by the September 21, 2022 judgment.

**55.**    Because the dismissal was procedural, it was not a final adjudication on the merits and carries no claim-preclusive effect. Furthermore, Defendants affirmatively concealed their joint-employer structure. This active fraudulent concealment prevented Plaintiff from discovering the invalidity of the purported judgment and identifying her claims against the proper entities until March 10, 2023. Consequently, any applicable statutes of limitations must be equitably tolled.

**56.**    Plaintiff exhausted all remaining state avenues when the court denied her motion to vacate in **April 2024**. Plaintiff exercised utmost diligence by immediately filing this federal action as soon as the material facts of Defendants' fraudulent concealment were reasonably uncovered.

**57.**    The doctrine of equitable tolling applies where a defendant's deceptive, manipulative, or obstructive litigation conduct creates an insurmountable barrier to a plaintiff's timely filing. *See, e.g.*, *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947);

7

**SECOND AMENDED COMPLAINT**

*Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946) (holding that equitable tolling applies where a defendant's conduct has misled the plaintiff or obstructed relief).

58.    To the extent Defendants assert that any statute of limitations has run, the doctrine of equitable tolling must intervene. Federal equitable tolling applies when a plaintiff shows: (1) diligent pursuit of their rights, and (2) extraordinary circumstances that stood in their way. *Holland v. Florida*, 560 U.S. 258, 249 (2010).

## II.    PERSONAL JURISDICTION

59.    **Personal Jurisdiction:** This Court has personal jurisdiction over all Defendants pursuant to California Code of Civil Procedure Section 410.10 and the Due Process Clause of the Fourteenth Amendment.

60.    **Corporate Defendants:** Defendants Kaiser Foundation Hospitals, (KFH), Southern California Permanente Medical Group (SCPMG), and the California Board of Registered Nursing are citizens of California, maintain regular and systematic business operations, and have continuous corporate offices within this judicial district.

61.    **Individual Defendants:** Defendants Gary Carlin and the remaining individual Defendants named herein reside and work within the State of California, maintaining sufficient minimum contacts within this forum.

62.    **Purposeful Availment:** All Defendants have purposefully availed themselves of the benefits, privileges, and protections of California law by conducting business, executing official duties, and operating within the state.

63.    **Specific Jurisdiction:** This Court has specific personal jurisdiction over Defendants because the unlawful conduct giving rise to Plaintiff's claims occurred in substantial part within this judicial district.

64.    **Effects Test:** Defendants intentionally directed their wrongful conduct at Plaintiff, a resident of California. Defendants knew or should have

8

**SECOND AMENDED COMPLAINT**

known that their actions would cause severe harm and produce effects within this state, specifically within Los Angeles County.

**65.** **Fair Play and Substantial Justice:** The exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

### III.    JURISDICTION

**66.** This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343(a)(3)** (civil rights), as this action arises under the Constitution and laws of the United States.

**67.** This Court has **personal jurisdiction** over Defendants because Defendants reside in, are incorporated in, maintain their principal place of business in, or systematically conduct substantial continuous business operations within the State of California and this judicial district. Furthermore, a substantial part of the tortious conduct, statutory violations, and omissions giving rise to Plaintiff's claims occurred within this State and judicial district, through which Defendants purposefully availed themselves of the privileges and protections of California law.

### IV.    VENUE

**68.** Venue is proper in the United States District Court for the Central District of California pursuant to **28 U.S.C. § 1391(b)(1) and (b)(2)** because a substantial part of the events, actions, and omissions giving rise to the claims occurred within this judicial district, and Defendants reside or conduct systemic business operations within this district.

**69.** Factual bases supporting venue in this district include, but are not limited to, the following:

9

**SECOND AMENDED COMPLAINT**

**70.    Employment Site**: Plaintiff was employed at the Kaiser West Los Angeles Medical Center, located in Los Angeles County, within this judicial district.

**71.    Unlawful Conduct**: The alleged retaliation, discriminatory suspension, denial of reasonable accommodations under the Americans with Disabilities Act (ADA), and ultimate termination of Plaintiff's employment all took place within this judicial district.

**72.    Corroborating Communications**: Key operational communications involving HR, management, and executive officials took place within this district.

**73.    Administrative Actions**: Plaintiff's internal complaints and EEOC filings originated within this district.

**74.    License Revocation Factual Origin**: The administrative complaint and subsequent revocation of Plaintiff's Registered Nurse (RN) license by the California Board of Registered Nursing (BRN)—which relied upon false and misleading representations by Defendants—had its factual origin in this district.

**75.    State Court Nexus**: The related state court proceedings—including the improper designation of Plaintiff as a vexatious litigant, the denial of claims against the Kaiser entity admitting employment, and the procedural consolidations—occurred within the Los Angeles County Superior Court system, deeply anchoring the factual nexus of this matter to this federal district.

**76.    Evidence and Witnesses**: The operational documents, digital records, key witnesses, and sources of evidence relevant to the adjudication of this matter are located within this judicial district.

**77.    Residency**: Plaintiff resides in Gardena, California, which is situated within the Central District of California.

## V.    PARTIES

**PLAINTIFF**

10

**SECOND AMENDED COMPLAINT**

**78.** **Esther Tendo Atam** ("Plaintiff") is an individual residing in **Gardena, California**, within the jurisdiction of the United States District Court for the Central District of California. At all times relevant to this Complaint, Plaintiff was a licensed **Registered Nurse (RN)** in the State of California. She was employed at **Kaiser West Los Angeles Medical Center**, where she experienced ongoing workplace harassment, retaliation, denial of accommodations under the **Americans with Disabilities Act (ADA)**, and ultimately wrongful termination.

**79.** Plaintiff is a Black woman and a member of multiple protected classes under federal law—including race, color, national origin, and disability status. She brings this action in **pro per** (self-represented), asserting violations of her **civil rights, employment rights, and constitutional guarantees**, as detailed herein.

**DEFENDANTS**

**A.    KAISER FOUNDATION HOSPITALS ("KFH")**

**80.** Defendant KAISER FOUNDATION HOSPITALS ("KFH") is, and at all times mentioned herein is, a nonprofit public benefit corporation organized and existing under the laws of the State of California. KFH maintains its principal place of business in Oakland, California, and operates healthcare facilities throughout the state, including the Kaiser Permanente West Los Angeles Medical Center.

**81.** At all relevant times, Defendant KFH acted as the joint employer of Plaintiff, or otherwise exercised operational control over Plaintiff's employment conditions.

**82.** Plaintiff is informed, believes, and thereon alleges that Defendant KFH actively collaborated, conspired, and acted in concert with other Kaiser entities, the California Board of Registered Nursing ("BRN"), and specific actors within the state court system to retaliate against Plaintiff. This coordinated retaliation occurred in response to Plaintiff asserting her protected legal rights, reporting internal misconduct, and requesting reasonable accommodations under the Americans with Disabilities Act ("ADA").

11

**SECOND AMENDED COMPLAINT**

**83.** Defendant KFH is sued in its corporate capacity for its direct and vicarious liability regarding the following unlawful conduct:

**84. Retaliation**: Engaging in adverse employment actions against Plaintiff for protected activities.

**85. Denial of Court Access**: Engaging in coordinated legal maneuvers designed to obstruct Plaintiff's access to the judicial system.

**86. Sham Fitness for Duty Process**: Supporting, implementing, and executing a pretextual Fitness for Duty ("FFD") evaluation to justify discriminatory actions

**87. Malicious Agency Cooperation**: Cooperating with the BRN to submit false or misleading information, intending to fraudulently frame Plaintiff as mentally unfit to practice.

**B. SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP ("SCPMG")**

**88.** Defendant Southern California Permanente Medical Group ("SCPMG") is, and at all times mentioned herein was, a for-profit professional corporation organized and existing under the laws of the State of California, with its principal place of business in Pasadena, California.

**89.** SCPMG is a medical group affiliated with Kaiser Foundation Hospitals and operates healthcare clinics and medical centers throughout Southern California.

**90.** SCPMG was Plaintiff's direct employer. SCPMG is sued in its corporate capacity for its direct liability and the acts of its agents and employees acting within the scope of their employment. Plaintiff is informed, believes, and thereon alleges that SCPMG is liable for unlawful employment practices and tortious conduct, including but not limited to: employment retaliation, denial of Americans with Disabilities Act (ADA) accommodations, retaliatory termination,

12

**SECOND AMENDED COMPLAINT**

initiating a sham Fitness for Duty (FD) process, and maliciously submitting false, defamatory information to the Board of Registered Nursing (BRN).

## C.    KAISER FOUNDATION HEALTH PLAN Inc ("KFHP Inc.")

91.    Defendant KAISER FOUNDATION HEALTH PLAN Inc. ("KFHP") is a California corporation with its principal place of business in Oakland, California.

92.    At all times relevant to this action, KFHP has been an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(5), employing 15 or more individuals.

93.    KFHP, acting as a joint employer/integrated enterprise with Defendant Southern California Permanente Medical Group, exercised centralized control over Plaintiff's employment terms, conditions, human resources management, labor relations, and workplace accommodations.

## D.    CALIFORNIA BOARD OF REGISTERED NURSING ("BRN")

94.    The BRN is a division of the **California Department of Consumer Affairs**, responsible for regulating and disciplining licensed registered nurses. It is a **state agency** and operates under color of state law. The BRN is named as a necessary party for purposes of injunctive relief. Plaintiff does not seek damages against the BRN itself in compliance with the Court's order.

## E.    LORETTA MELBY

95.    At all relevant times, **Loretta Melby** served as the **Executive Officer** of the **California Board of Registered Nursing (BRN)**, a division of the California Department of Consumer Affairs. She is responsible for the final approval, oversight, and enforcement of disciplinary actions taken against licensed nurses in California.

96.    Plaintiff alleges that under Ms. Melby's leadership:

**SECOND AMENDED COMPLAINT**

**97.** The BRN engaged in retaliatory proceedings based on knowingly false reports submitted by Kaiser,

**98.** The petition against Plaintiff was approved and advanced without investigation or independent verification of facts,

**99.** Cultural and discriminatory language was allowed to stand in official filings, including fabricated references to "voodoo" and "vampires," mischaracterizing Plaintiff's protected expressions,

**100.** The revocation of Plaintiff's license proceeded without procedural due process.

**101.** In her **official capacity**, Melby is sued solely for **prospective injunctive relief**, including reinstatement of Plaintiff's nursing license, correction of false records submitted to the **National Practitioner Data Bank (NPDB)**, and orders preventing future retaliatory actions.

**102.** In her **individual capacity**, Melby is sued under **42 U.S.C. § 1983** for personally approving and authorizing retaliatory and unconstitutional actions, including reliance on false Kaiser submissions, sham administrative proceedings, and revocation of Plaintiff's license without due process.

## F.    GARY CARLIN PRIOR ATTORNEY

**103.** Defendant **Gary Carlin** ("Carlin") is, and at all relevant times was, an attorney licensed to practice law in the State of California. Upon information and belief, Carlin maintains a law office in Los Angeles County, California, and regularly represents clients in employment and civil rights matters.

**104.** Plaintiff retained Carlin for legal representation following workplace harassment, retaliation, and wrongful termination by her employer. Although Carlin filed the initial complaint, they committed legal malpractice by naming only Kaiser Foundation Hospital as a primary defendant. Carlin improperly relegated the direct employer, SCPMG, to a "Doe" defendant status and further committed malpractice by actively concealing evidence of extrinsic fraud.

14

**SECOND AMENDED COMPLAINT**

**105.** Plaintiff further alleges that Carlin's omissions and malpractice enabled Kaiser Foundation entities and the Board of Registered Nursing (BRN) to advance *false* defenses, secure improper judicial rulings, and pursue sham administrative proceedings that culminated in the revocation of Plaintiff's nursing license.

**106.** Plaintiff sues Defendant Carlin in his **individual capacity**, alleging causes of action including **legal malpractice, breach of fiduciary duty, fraudulent concealment, and conspiracy to violate civil rights.**

### G.   DOES 1 THROUGH 50 – UNNAMED DEFENDANTS

**107.** Plaintiff is currently unaware of the true names and identities, whether individual or corporate, of certain entities and individuals who actively participated in, directed, or ratified the events alleged herein.

**108.** Plaintiff therefore sues said Defendants by such fictitious names (DOE Defendants 1 through 10, inclusive). Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such DOE Defendants when they have been ascertained.

**109.** Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated herein as a DOE is or was an official, employee, agent, or representative of Defendant Kaiser and was personally involved in the fabrication, initiation, and/or execution of the retaliatory Fitness for Duty process described herein. These **DOE Defendants** include, but are not limited to:

**110.** Kaiser human resource personnel, direct supervisors or administrative staff who supplied false information, initiated the retaliatory process, or enforced the unwarranted leave and demands placed upon Plaintiff,

**111.** BRN disciplinary agents or investigators,

**112.** Legal actors or assistants who coordinated court filings and manipulated procedural outcomes.

15

**SECOND AMENDED COMPLAINT**

**113.** Plaintiff will amend this Complaint to substitute the true names and roles of DOES 1–50 as they become known through discovery.

## VI.    STATEMENT OF FACT

### A.    FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION

**(Against Kaiser Defendant)**

**a)    Preliminary Allegations & Background Hostile Work Environment**

**114.** Plaintiff is a Black individual of West African originally from Cameroon/Cultural Background descent, placing her within a protected class under Title VII.

**115.** From approximately May 2020 through August 28, 2020, Plaintiff was subjected to persistent, severe, and pervasive verbal harassment, intimidation, and bullying by a male coworker during her employment at the Kaiser West LA Emergency Room Department.

**b)    Protected Activity (The Internal Report)**

**116.** On **August 28, 2020**, Plaintiff engaged in a protected activity under Title VII by submitting a formal internal report regarding the ongoing hostile work environment, to Southern California Permanente Medical Group ("SCPMG") Management, specifically Managers Sarah Poetter and Cheryly Surma.

**117.** During this report, Plaintiff conveyed the extreme severity of the abuse by explaining that the harassment felt like 'voodoo'—a cultural expression intended to communicate the profound, visceral, and paralyzing impact the hostile environment had on her well-being.

**118.** While Defendant was not initially aware of Plaintiff's pre-existing Post-Traumatic Stress Disorder (PTSD), Plaintiff's formal report explicitly put

16

**SECOND AMENDED COMPLAINT**

Defendant on actual notice of the severe, escalating nature of the harassment and the acute emotional distress it was causing.

### c)    Adverse Employment Actions & Disparate Treatment

**119.** Despite this explicit notice and the cultural context provided by Plaintiff, Manager Sarah Poetter bypassed all standard Human Resources disciplinary, investigative, and corrective protocols.

**120.** Instead of investigating the harassment, Defendant swiftly and abruptly dismissed Plaintiff from her active work duties on that same day.

**121.** Defendant targeted Plaintiff's benign cultural expression through the lens of racial animus and cultural stereotypes, weaponizing her words to mischaracterize her as unstable or dangerous.

**122.** On August 28, 2020, Defendant subjected Plaintiff to an unsubstantiated, non-routine psychiatric medical inquiry and evaluation that was entirely untethered from her actual job performance.

**123.** Defendant conditioned Plaintiff's return to active duty upon obtaining a formal "mental clearance," utilizing this arbitrary requirement as a retaliatory barrier to employment.

**124.** Defendant did not require similarly situated non-Black, non-West African National Origin employees to undergo *non-standard psychiatric evaluations* or obtain "*mental clearance*" to maintain active employment.

**125.** Following the forced medical leave demand, Defendants placed Plaintiff on an indefinite, unpaid suspension spanning several months from August 28, 2020, until her formal termination on March 18, 2021.

**126.** This prolonged unpaid suspension effectively stripped Plaintiff of her livelihood and benefits without administrative due process or legitimate business justification.

### d)    Causation, Pretext, and Cover-Up

17

**SECOND AMENDED COMPLAINT**

**127.** A strict temporal proximity exists between Plaintiff's protected activity and Defendant's adverse actions, as the abrupt dismissal, discriminatory medical inquiry, and forced medical clearance all occurred on August 28, 2020—the exact same day Plaintiff reported the harassment.

**128.** The close temporal connection between Plaintiff's protected disclosure and the immediate adverse actions establishes a strong, plausible inference of retaliatory intent.

**129.** Defendant's sudden insistence on a psychiatric evaluation and "mental clearance" was entirely pretextual, designed to mask racial prejudice, punish her cultural expression, and cover up Defendant's failure to address the underlying hostile work environment.

**130.** On November 6, 2020, Plaintiff attended a meeting with Human Resources ("HR") and management, which included Sarah Poetter, Brooke Ball, and Plaintiff's union representatives.

**131.** During this meeting, Sarah Poetter explicitly and falsely denied that Plaintiff had been dismissed from employment on August 28, 2020.

**132.** In truth, on August 28, 2020, Plaintiff was sent home from work, dismissed on the spot without standard HR protocols, and expressly informed that she could not return to work without obtaining a mental health clearance note.

**133.** Despite Plaintiff having already submitted the requested mental health clearance note on September 4, 2020, and presenting it again during the November 6, 2020 meeting, HR and management completely ignored the clearance documentation.

**134.** Instead, during the November 6, 2020 meeting, HR, Sarah Poetter, Brooke Ball, and the union representatives collectively denied that the August 28, 2020 dismissal ever occurred.

18

**SECOND AMENDED COMPLAINT**

**135.** Management and HR instead pressured Plaintiff to sign a backdated suspension slip for August 28, 2020, which falsely cited a purported medication error from August that Plaintiff had no prior knowledge of.

**136.** This coordinated denial of the initial dismissal and the pressure to sign backdated disciplinary forms caused Plaintiff severe emotional distress and mental anguish.

**137.** Sarah Poetter and SCPMG management fabricated this narrative regarding the August 2020 medical error as a pretextual justification to conceal their true retaliatory motive and mask the hostile work environment.

**138.** Plaintiff refused to sign the back-dated suspension slip because it contained false information regarding the nature of her absence.

**139.** In retaliation for Plaintiff's refusal to sign the back-dated suspension slip, Defendant's management immediately escalated Plaintiff's disciplinary status from Level 1 to Level 2.

**140.** Defendant's management further threatened Plaintiff that a failure to cooperate and sign the document would result in her eventual termination.

**141.** Due to the false statements and escalation by Defendant's representatives, Plaintiff openly expressed that she was experiencing extreme emotional distress.

**142.** In response to Plaintiff's visible distress, Defendant's management officially requested yet another mental health clearance note on November 23, 2020.

**143.** Defendant subsequently placed and maintained Plaintiff on an indefinite suspension.

**e)**    **Protected Activity and Notice of Disability**

**144.** On **December 29, 2020,** Plaintiff's healthcare provider, Kang Jiyun PSY, sent a formal written notification via email to Defendants.

19

**SECOND AMENDED COMPLAINT**

**145.** This email explicitly notified Defendants that Plaintiff suffered from a recognized disability, specifically Complex Post-Traumatic Stress Disorder ("C-PTSD").

**146.** The notice stated that Plaintiff's C-PTSD was directly induced by repeated, persistent exposure to a hostile work environment at Kaiser Foundation Hospital West Los Angeles.

**147.** This notification constituted both a formal notice of disability and a protected activity under federal and state enforcement laws

**148.** Approximately one month later, **January 1, 2021**, in direct response to the provider's correspondence, Defendants issued a denial of medical leave—a benefit Plaintiff had never requested.

**149.** Simultaneously, Defendants converted Plaintiff's status from an unpaid, indefinite suspension to an unauthorized and unpaid medical leave

**f)     Damaging Impact and Constructive Discharge**

**150.** As a direct and proximate result of Defendants' ongoing retaliatory suspension and institutional denial, Plaintiff's mental health severely deteriorated, requiring intensive clinical intervention.

**151.** On **February 10, 2021**, Plaintiff's clinical provider issued a formal medical restriction advising that returning to the identical toxic work environment would cause catastrophic harm to Plaintiff's mental health.

**152.** Management and HR weaponized mental health procedures against Plaintiff, a racial minority, thereby creating and maintaining an objectively hostile work environment.

**153.** By refusing to remedy the hostile environment or accommodate the restriction, Defendants made Plaintiff's working conditions objectively intolerable.

**g)     <u>The Retaliatory Chronology and Temporal Proximity</u>**

20

**SECOND AMENDED COMPLAINT**

**h)**    The strict, uninterrupted chronological succession of adverse actions taken against Plaintiff—beginning immediately after her reports of a hostile work environment, followed by her accommodation request, the manufactured fitness-for-duty dispute, her summary termination, and the subsequent Board of Registered Nursing (BRN) report—constitutes compelling circumstantial evidence of Defendants' retaliatory intent.

**i)**    **Plaintiff's Accommodation Request and Protected Activity**

30. Plaintiff previously submitted a valid, professional accommodation request from a licensed psychologist to Defendants on **December 29, 2020**.

**154.**    The psychologist's documentation explicitly cleared Plaintiff to work, subject only to the restriction and accommodation of a transfer away from the hostile work environment to mitigate ongoing psychological trauma.

**j)**    **Defendants' Bad Faith and Failure to Engage in the Interactive Process**

**155.**    Defendants' Human Resources (HR) department acting in bad faith, deliberately misconstrued the psychologist's clear transfer recommendation as an absolute medical inability to work.

**156.**    By treating a specific department transfer request as a total medical disqualification, HR severely misrepresented Plaintiff's medical restrictions to deny the accommodation entirely and evade its mandatory duty to engage in a good-faith interactive process under the Americans with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA).

**k)**    **The Weaponization of the Fitness-for-Duty (FFD) Examination as Pretext**

**157.**    Defendants utilized Plaintiff's protected request for a transfer as a pretextual basis to mandate an unnecessary Fitness-for-Duty (FFD) examination.

**158.**    Mandating an FFD examination when a qualified treating medical professional had already cleared an employee to work under safe conditions

21

**SECOND AMENDED COMPLAINT**

constituted an unlawful, unnecessary hurdle designed to penalize Plaintiff for reporting workplace hostility.

159. Despite the pretextual nature of the directive, Plaintiff explicitly agreed to comply with the employer's FFD request.

**l)    Protected Objections to the Medical Release and Summary Termination**

160. In consenting to the FFD, Plaintiff requested a reasonable modification to Defendants' broad medical release form, asking that inquiries be conducted in writing rather than orally to ensure they remained strictly job-related, consistent with business necessity, and protective of private health information. Plaintiff's request to limit the scope of the medical release constitutes protected activity under applicable employment laws.

161. Rather than engaging in the mandatory interactive process regarding this request, Defendants abruptly and summarily terminated Plaintiff's employment exactly one day after she requested the modification to the medical release form.

162. Defendants' sudden termination of Plaintiff, occurring a single day after her protected activity, establishes an unassailable causal link driven by temporal proximity.

163. Following this request, Defendants engaged in an immediate, unbroken succession of adverse actions: maintaining the hostile work environment, refusing the accommodation, denying Fitness for Duty ("FFD") clearance, terminating employment, and filing a report with the Board of Registered Nursing ("BRN").

164. The close temporal proximity between Plaintiff's protected activities (reporting harassment and requesting accommodation) and Defendants' adverse actions (termination and the BRN report) establishes strong circumstantial evidence of retaliatory intent.

22

**SECOND AMENDED COMPLAINT**

**165.** Discrimination under the ADA includes failing to make reasonable accommodations to the known limitations of an otherwise qualified individual. 42 U.S.C. § 12112(b)(5)(A).

**166.** Federal regulations require an interactive process to identify precise limitations and potential accommodations.

**167.** Plaintiff is a qualified individual with a known mental disability.

**168.** Plaintiff's medical provider sent direct written notices of this disability to Defendants.

**169.** Plaintiff requested a reasonable accommodation for her disability.

**170.** Defendants knew of Plaintiff's disability and her request for an accommodation.

**171.** Defendants failed to engage in a good-faith interactive process.

**172.** Defendants abruptly terminated communications regarding the accommodation request.

**173.** Defendants abandoned standard Human Resources protocols regarding disability accommodations.

**174.** Defendants suspended and subsequently terminated Plaintiff immediately after she requested an accommodation and reported workplace issues.

**175.** The temporal proximity between Plaintiff's protected activity and her termination establishes causation.

**176.** Defendants' adverse employment actions caused Plaintiff ongoing severe psychological harm.

**177.** Plaintiff's factual allegations raise her right to relief above a speculative level for discrimination, retaliation, and a hostile work environment under the ADA and Title VII.

23

**SECOND AMENDED COMPLAINT**

### B.    FACTUAL ALLEGATIONS DEFAMATION

**(Against SCPMG defendants)**

**178.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein

**179.    The Defamatory Statement:** On or about **May 3, 2021**, Sarah Poetter, acting within the course and scope of her employment as a Registered Nurse Manager for Southern California Permanente Medical Group ("SCPMG"), submitted a written report to the California Board of Registered Nursing ("BRN").

**180.    The Substance of the Falsity:** In the BRN report, Poetter falsely stated that Plaintiff suffered from a permanent, intrinsic mental illness that impaired Plaintiff's professional competency.

**181.    Knowledge of Falsity:** Poetter knew this statement was false because she was aware that Plaintiff's temporary distress was caused by workplace harassment, not a functional cognitive impairment.

**182.    Malice and Retaliation:** Defendant intentionally bypassed standard corporate evaluation metrics and refused to administer an objective Fitness For Duty ("FFD") evaluation.

**183.    Pretext and Harm:** Defendant submitted the false BRN report with regular malice to retaliate against Plaintiff, create a pretextual basis for adverse employment action, and harm Plaintiff's nursing license.

**184.    The Shield/Subterfuge:** Defendant utilized the BRN reporting process as a pretextual shield to bypass standard corporate evaluation metrics and intentionally engage in professional character assassination.

**185.    The FFD Denial:** As direct evidence of this bad faith, Defendant simultaneously and intentionally refused to administer an objective Fitness For Duty (FFD) evaluation, which Defendant knew would distinguish situational trauma from cognitive impairment.

24

**SECOND AMENDED COMPLAINT**

**186. Damages:** As a direct result of Defendant's false statement to the BRN, Plaintiff suffered severe harm to their professional reputation, emotional distress, *lost wages and employment opportunities.*

**187. Business Expectancy:** Plaintiff had a valid business expectancy and reasonable expectation of continued employment and future economic advantage within the nursing profession.

**188. Defendant's Knowledge:** Defendant was fully aware of Plaintiff's professional reliance on their nursing license to maintain employment and secure future economic opportunities.

**189. Purposeful Interference:** Defendant intentionally and improperly interfered with Plaintiff's business expectancy by submitting a bad-faith report to the BRN under the guise of a 'mental illness' concern.

**190. Improper Means:** This interference was accomplished through improper means, specifically: bypassing standard corporate evaluation metrics, refusing an objective FFD evaluation, and fabricating a functional cognitive impairment to weaponize a regulatory board against an employee.

**191. Preventing the Relationship:** Defendant's bad-faith report directly triggered a BRN investigation, thereby disrupting, impairing, or threatening Plaintiff's ability to maintain employment and secure future contracts.

**192. Damages:** As a direct and proximate result of Defendant's interference, Plaintiff has suffered economic harm, including [lost wages, benefits, or specific job opportunities], loss of RN licence and livelihood.

**C.   FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS**

**(Against carlin, Kaiser, Melby/BRN Defendants)**

**a)   Part I: THE SUBSTANTIVE CONSPIRACY ALLEGATION (42 U.S.C. § 1985(3))**

25

**SECOND AMENDED COMPLAINT**

**193.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**194.** Plaintiff is a member of a protected class based on her national origin (born in Cameroon West Africa).

**195.** At all times relevant, Plaintiff engaged in protected cultural expressions, communication styles, and behavioral norms inherent to her national origin.

**196.** Defendants exhibited an invidious, class-based animus by weaponizing cultural ignorance and prejudice. Defendants intentionally, and with discriminatory motive, agreed to mischaracterize Plaintiff's deeply rooted, protected cultural expressions as a purported 'mental illness' or psychiatric instability.

**197.** This pathologizing of Plaintiff's national origin traits was a pretextual, discriminatory mechanism driven by class-based animus to strip Plaintiff of her professional credibility.

### b)    The Coordinated Agreement

**198.** On or about November 23, 2021, Defendant Gary Carlin and counsel for Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") entered into an agreement to insulate Kaiser entities from legal liability.

**199.** Written email correspondence confirms the express purpose of this agreement was to suppress Plaintiff's upcoming Department of Civil Rights Department ("CRD", formerly "DFEH") claims.

### c)    The Shared Identity

**200.** Defendants Kaiser Foundation Hospitals ("KFH"), KFHP, and Southern California Permanente Medical Group ("SCPMG") operate collectively as a single enterprise under the public-facing name "Kaiser."

**201.** Defendants intentionally utilized this overlapping institutional identity

26

**SECOND AMENDED COMPLAINT**

to create confusion, evade statutory liability, and obstruct Plaintiff's legal remedies.

### d)    The Retainer Agreement and Omission

**202.**    Plaintiff's retainer agreement with Defendant Carlin explicitly identified "Kaiser" as the target defendant, establishing a meeting of the minds to sue Plaintiff's operational employer.

**203.**    Defendant Carlin received written notice from KFH confirming that SCPMG was Plaintiff's technical employer. Despite this knowledge, Defendant Carlin failed to name SCPMG as a primary defendant, naming them only as a "Doe" defendant.

### e)    The Overt Act I

**204.**    Defendants reached a tacit agreement and meeting of the minds with Plaintiff's former counsel to deny Plaintiff equal protection.

**205.**    Pursuant to this agreement, the parties used interconnected corporate structures to selectively shield Southern California Permanente Medical Group (SCPMG) from liability while protecting the broader Kaiser enterprise.

### f)    Abandonment and Excusable Ignorance:

**206.**    Plaintiff's counsel abandoned his professional duties by failing to execute or explain a Doe amendment to Plaintiff.

**207.**    As a layperson, Plaintiff lacked the legal training to identify this procedural necessity and reasonably relied on counsel's representation that the correct operational entity—Kaiser Foundation Hospitals (KFH)—had been sued.

**208.**    This reliance was reinforced because Plaintiff physically performed all work at the KFH West Los Angeles facility.

### g)    Severance of the Agency Relationship:

**209.**    Counsel's active concealment of these omissions severed the agent-

27

**SECOND AMENDED COMPLAINT**

principal relationship.

210.   Because counsel acted as an adversary in alignment with Defendants, his procedural defaults and failures to amend cannot legally or equitably be imputed to Plaintiff.

### h)    Overt Act II (Exploitation of Omission):

211.   Defendants KFH and SCPMG committed subsequent overt acts to exploit the omitted amendment and dismiss Plaintiff's claims before a trial on the merits.

212.   Specifically, KFH moved for Summary Judgment knowing that Plaintiff's counsel had omitted SCPMG from the complaint.

213.   In that motion, KFH falsely denied employer liability based on payroll technicalities, despite exercising full operational, disciplinary, and managerial control over Plaintiff.

### i)    Overt Act III: The Sham Litigation Paradox

214.   To execute the conspiracy's objective, KFH asserted an absolute corporate separateness from SCPMG to secure summary judgment solely on non-employment grounds.

### j)    Overt Act IV: Misrepresentation to the Court

215.   Upon receiving summary judgment on that narrow technical ground, KFH, in coordination with SCPMG, misrepresented the scope of the summary judgment order to the state court.

216.   On September 21, 2022, KFH drafted and entered a final judgment falsely claiming the lawsuit was dismissed in its entirety on the merits, thereby extinguishing Plaintiff's valid underlying FEHA employment claims.

217.   KFH and SCPMG entered this judgment knowing the statute of limitations had not expired, effectively blocking Plaintiff from correcting the

28

**SECOND AMENDED COMPLAINT**

technical omission.

### k)    Overt Act V: Acts in Furtherance

**218.**    On September 22, 2022, Defendant Gary Carlin filed a formal declaration explicitly supporting KFH's entry of the overbroad final judgment.

**219.**    By filing this declaration, Defendant Carlin acted as an agent for the defense to complete the objective of the conspiracy.

### l)    Injury and Deprivation

**220.**    As a direct result of Defendants' coordinated actions, Plaintiff was deprived of due process, lost all underlying employment claims, and suffered severe economic injury.

### m)    The Meeting of the Minds and Explicit Agreement

**221.**    On or about July 13, 2022, Defendant Kaiser Foundation Hospitals ("Kaiser") and Defendants Loretta Melby and individual Board of Registered Nursing employees ("BRN Defendants") entered into an explicit agreement to damage Plaintiff's professional standing and insulate Kaiser from civil liability.

### n)    Overt act VI: ultra vires state action

**222.**    On or about July 13, 2022, the BRN Defendants, through subordinate Shannon Johnson, acted outside their lawful statutory authority by issuing an invalid examination order under California Business and Professions Code Section 820.

**223.**    Defendant Melby ratified this order despite knowing it lacked an objective administrative basis, in order to advance Kaiser's retaliatory campaign under color of state law.

### o)    Resulting constitutional injury and damages

**224.**    As a direct and proximate result of this conspiracy and the overt acts by Defendants Gary Carlin, Kaiser, and the BRN Defendants, Plaintiff suffered

29

**SECOND AMENDED COMPLAINT**

deprivations of rights secured by the U.S. Constitution, including equal protection and freedom from retaliation.

225. Consequently, Plaintiff sustained concrete injuries, including the loss of their Registered Nurse license.

226. **As a further direct result**, Plaintiff has suffered profound economic damages—including past and future lost earnings and benefits—severe and enduring emotional distress, and irreparable harm to their professional standing and reputation.

### D. FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS

**(Against SCPMG/KAISER/BRN defendants)**

**a) THE FACTUAL BACKGROUND AND PROTECTED PROPERTY INTEREST**

227. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

228. Defendant SCPMG, though a private entity, acted under color of state law by engaging in a conspiracy and joint activity with state court actors to deprive Plaintiff of constitutional rights.

229. Plaintiff possesses a protected property interest under the Fourteenth Amendment in pursuing their timely filed civil cause of action.

230. On December 5, 2022, Plaintiff filed an employment lawsuit against SCPMG asserting valid statutory claims under the California Fair Employment and Housing Act (FEHA).

231. On or about March 10, 2021, SCPMG and state court actors reached a meeting of the minds and entered into an agreement to extinguish Plaintiff's lawsuit without due process.

232. Pursuant to this conspiracy, SCPMG and state court actors agreed to

**SECOND AMENDED COMPLAINT**

falsely characterize the September 21, 2022, dismissal as a ruling "on the merits." This intentional misrepresentation was manufactured specifically to improperly invoke claim preclusion (*res judicata*) and bar the Plaintiff's claims.

233. This joint action intentionally bypassed jurisdictional and evidentiary safeguards to deny Plaintiff access to the courts.

### a) Conspiracy to Deprive Court Access

234. By engaging in a corrupt agreement and conspiracy with a state judge, Defendant SCPMG shed its private status and became a state actor under 42 U.S.C. § 1983. The judge and SCPMG leveraged state judicial machinery for the express purpose of denying Plaintiff access to the courts, rendering SCPMG liable as a willful co-conspirator acting under color of law

235. Defendant SCPMG presented the state court with a September 21, 2022 "entry of judgment" order from a prior case involving Kaiser Foundation Hospitals (KFH).

236. Defendant SCPMG misrepresented to the court that the KFH order constituted a global dismissal of all claims against SCPMG, despite knowing SCPMG was not a party to that case.

237. The state court adopted SCPMG's misrepresentation without independent review and ordered Plaintiff to post a $10,000 security deposit.

### b) Joint Action and Conspiracy to Deprive Constitutional Rights

238. The BRN Defendants, acting under color of state law, and SCPMG reached a meeting of the minds to execute a shared unlawful objective: to block Plaintiff's access to the courts by jointly pursuing prefiling orders in Plaintiff's civil lawsuit—to which the BRN Defendants were not a party—while concurrently revoking Plaintiff's RN license.

239. The BRN Defendants filed documents supporting SCPMG's vexatious litigant motion to restrict Plaintiff's access to the court.

31

**SECOND AMENDED COMPLAINT**

**240.** The combined, concerted, and conspiratorial actions of SCPMG and the BRN Defendants constitute an egregious abuse of state power that shocks the conscience, was devoid of any legitimate state interest, and was executed with the specific intent to deny Plaintiff a fair hearing.

### c) The Resulting Deprivation of Due Process via Joint Judicial Action

**241.** In furtherance of the conspiracy, SCPMG jointly engaged with state court actors to execute the final objective of their illicit agreement: securing a procedural dismissal of Plaintiff's lawsuit against SCPMG on the sole basis of Plaintiff's inability to post a $10,000 deposit.

**242.** This dismissal was intentionally sought by SCPMG and entered by state court actors without convening a formal evidentiary hearing, without the presentation of witnesses, and without adjudicating the actual factual or legal merits of Plaintiff's underlying employment tort claims.

**243.** By jointly orchestrating and executing this procedural dismissal prior to the expiration of the applicable statutes of limitation, Defendant SCPMG— acting in concert with state court actors—permanently extinguished Plaintiff's timely, valid legal claims, directly depriving Plaintiff of their constitutional right to procedural due process and access to the courts under the Fourteenth Amendment.

### d) Causation of Injury (Actual Deprivation Under Color of State Law)

**244.** As a direct and proximate result of the coordinated, conspiratorial, and joint actions of Defendant SCPMG—acting under color of state law—and the State Actors, Plaintiff was stripped of their RN license without due process of law, denied judicial review of their FEHA and ADA claims, and permanently foreclosed from accessing the judicial machinery of the state.

### E.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS

**(Against Melby/BRN Defendants)**

**a)   The statutory/regulatory violations establishing the baseline**

32

**SECOND AMENDED COMPLAINT**

**Falsity)**

245. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

246. **Plaintiff's Protected Property Interest**

247. Plaintiff held a professional nursing license. This license is a constitutionally protected property interest that allows Plaintiff to lawfully practice and earn a living.

248. Where a constitutionally protected property interest is at stake, the Board is required to strictly adhere to mandatory statutory safeguards designed to protect this interest prior to any adverse action.

249. **Authority and Discretion (Cal. Bus. & Prof. Code § 820)**

250. Under California Business and Professions Code Section 820, the California Board of Registered Nursing (BRN) has **discretionary authority**—not a mandatory ministerial duty—to require a licensee to undergo a medical or psychological examination.

251. The probable cause evaluation mandated by Section 820—triggered **"whenever it appears" a licensee may be impaired—is a quasi-judicial** decision requiring the exercise of subjective judgment and discretion.

252. **Delegation of Authority Title 16 CCR 1405**

253. Under Title 16 of the California Code of Regulations (CCR) Section 1405, the discretionary authority to require medical or psychological examinations is delegated exclusively to the BRN's Executive Officer.

254. Upon information and belief, the BRN delegated operational oversight of this evaluation process—including Section 820 examinations—to the Executive Officer, who exercised sole discretionary authority over Plaintiff's evaluation process.

33

**SECOND AMENDED COMPLAINT**

### 255.  Duty and Authority (Melby)

**256.**  Defendant Melby possesses final policy making authority regarding enforcement procedures for the Board. By virtue of this authority, Defendant Melby is responsible for ensuring that all enforcement actions comply with state and federal law.

**257.**  On or about July 13, 2022, Defendant Melby acted under color of state law.

**258.**  On or about July 13, 2022, Defendant Melby directed, permitted, or ratified the delegation of final adjudicatory authority to Chief Enforcement Officer Shannon Johnson.

### 259.   Action of (Johnson)

**260.**  Chief Enforcement Officer Shannon Johnson is a subordinate to Defendant Melby.

**261.**  On or about July 13, 2022, Officer Johnson exercised quasi-judicial licensing authority over Plaintiff.

**262.**  Specifically, Officer Johnson independently approved and issued an Order to Compel a Mental Examination of Plaintiff.

**263.**  This order was issued pursuant to California Business and Professions Code Section 820.

### 264.  Ultra Vires Violations

**265.**   In issuing this order independently, Officer Johnson exercised quasi-judicial power without statutory authorization or procedural due process.

**266.**  This conduct constituted an *ultra vires* act taken under color of state law.

**267.**  Defendant Melby unlawfully delegated this power.

34

**SECOND AMENDED COMPLAINT**

268.   Defendants knew or should have known that bypassing the mandatory, statutory quasi-judicial review process to compel an invasive medical intervention would violate constitutional protections.

269.   **Result and Harm**

270.   As a direct and proximate result of Defendant Melby's unlawful delegation and Johnson's *ultra vires* action, Plaintiff was subjected to an arbitrary deprivation of protected liberty and property interests.

271.   This deprivation occurred without procedural or substantive due process of law, causing injury and damage to the Plaintiff.

272.   **Defendant Melby acted with deliberate indifference** to Plaintiff's constitutional rights by knowingly bypassing the statutory framework to subdelegate this exclusive discretionary power to an unauthorized subordinate.

273.   **The resulting Section 820 order was issued through an unauthorized, ultra vires regulatory mechanism** completely lacking the structural statutory safeguards established by law, thereby violating Plaintiff's right to procedural due process.

b)   **Defeating Defenses of Plausible Deniability and Qualified Immunity**

274.   **Defendant Melby cannot claim plausible deniability** regarding the deprivation. Defendant Melby executed a sworn declaration explicitly admitting she directed and authorized the specific subdelegation that caused the constitutional injury.

275.   **Defendant Melby's sworn admission establishes the requisite personal involvement** and affirmative link under Section 1983, as her direct command set the constitutional deprivation in motion.

276.   **Defendant Melby is not entitled to qualified immunity** because her actions violated clearly established statutory and constitutional law.

35

**SECOND AMENDED COMPLAINT**

**277.   A reasonable official in Defendant Melby's position** is presumed to know the plain, unambiguous language of her own agency's regulations, specifically 16 CCR § 1405, which explicitly prohibits the subdelegation of ultimate discretionary judgement.

**278.   No reasonable official could believe that intentionally violating a mandatory, non-delegable regulatory prohibition** to strip a licensee of their professional property right was lawful or constitute a "good faith" mistake.

### c)   Constructive/Actual Notice

**279.**   On August 8, 2022, Plaintiff served the Board of Registered Nursing (the "Board") with a written administrative objection detailing specific jurisdictional and legal deficiencies regarding the Board's Section 820 order.

**280.**   Defendant Melby and the Board, through counsel Gillian Friedman, acknowledged receipt of Plaintiff's written notice, administrative objection, and supporting documentation.

**281.**   Plaintiff's submission demonstrated that the Section 820 order was legally defective due to a lack of jurisdiction, procedural non-compliance, and an absence of probable cause.

**282.**   Despite receiving notice of these defects, Defendant Melby and the Board failed to take corrective action.

**283.**   On November 16, 2022, an "Accusation" was issued against Plaintiff by an unauthorized subordinate of the Board.

**284.**   The November 16, 2022 Accusation improperly targeted Plaintiff's purported  non-compliance with the legally deficient Section 820 examination order.

### d)   Procedural sham ("The Second Notice")

**285.**   3. The Board falsely claimed it never received a "second Notice of Defense", acting arbitrarily to bypass an adversarial hearing.

36

**SECOND AMENDED COMPLAINT**

**e)      Procedural Due Process**

**286.** Plaintiff was denied meaningful opportunity to be heard before RN license was stripped. State actors cannot intentionally ignore filed notices (like an early Notice of defense) and subsequently enter a "default" as a pretext to deny plaintiff a hearing.

**f)      Substantiative Due Process**

**287.** Defendants' actions in revoking Plaintiff's professional nursing license were arbitrary, capricious, and shock the conscience.

**288.** Defendants revoked Plaintiff's license based on a disciplinary order they knew to be legally invalid.

**289.** Defendants deliberately ignored Plaintiff's valid legal defenses during the revocation process.

**290.** The knowing use of an invalid order and intentional disregard of defenses transcend mere administrative error.

**291.** Defendants' conduct constitutes a substantive violation of Plaintiff's constitutional rights.

**292.** Defendant Melby and the Board of Registered Nursing possessed actual knowledge that revoking Plaintiff's license would trigger a mandatory reporting requirement to the National Practitioner Data Bank (NPDB).

**293.** Defendants intended to trigger, or acted with reckless disregard toward triggering, the damaging NPDB report

**g)      Default Decision and Revocation of Plaintiff's Registered Nurse License**

**294.      The Protected Property Interest**

**295.** At all relevant times, Plaintiff held a Registered Nurse ("RN") license

**SECOND AMENDED COMPLAINT**

issued by the California Board of Registered Nursing ("BRN").

296. Plaintiff's RN license constitutes a valuable professional license and a constitutionally protected property interest under the Fourteenth Amendment.

297. **The Statutory Framework**

298. California Business and Professions Code § 2750 vests disciplinary authority over registered nurses exclusively in the Board itself.

299. Disciplinary action, including license revocation, requires a formal vote, authorization, or ratification by the BRN's governing Board.

300. **The Admissions of Unauthorized Authority**

301. On November 5, 2025, Defendant Loretta Melby executed a sworn declaration in Case No. [**2:24-cv-05862-KK-AS**] concerning the disciplinary procedures used against Plaintiff.

302. In that declaration, Defendant Melby admitted that Chief Enforcement Officer Shannon Johnson approved and issued the Section 820 proceedings against Plaintiff.

303. Defendant Melby further admitted that Defendant Johnson exercised the operational authority that ultimately led to the default decision and revocation of Plaintiff's license.

304. **The Lack of Board Approval**

305. Plaintiff is informed and believes, and thereon alleges, that the BRN governing Board never voted upon, approved, authorized, or ratified the default decision revoking Plaintiff's license.

306. Plaintiff is informed and believes, and thereon alleges, that no formal Board vote was ever conducted to authorize said revocation.

307. Instead, the default decision and subsequent license revocation were

38

**SECOND AMENDED COMPLAINT**

implemented entirely through the administrative actions of Chief Enforcement Officer Shannon Johnson.

308. Defendant Melby and BRN official Shannon Johnson caused Plaintiff's RN license to be revoked despite knowing they lacked the mandatory Board vote, authorization, or ratification required by law.

309. As a direct and proximate result of Defendants' actions, Plaintiff suffered the loss of her professional nursing license.

310. Defendants' actions destroyed Plaintiff's ability to practice her profession and stripped her of her earning capacity.

311. Defendants' actions deprived Plaintiff of significant property and liberty interests protected by the Fourteenth Amendment.

312. Defendants caused the revocation of Plaintiff's Registered Nurse (RN) license outside the statutory procedures required by California law.

313. By bypassing these statutory procedures, Defendants deprived Plaintiff of constitutionally protected property interests without due process of law.

314. Defendants' deprivation of Plaintiff's due process rights violates the Fourteenth Amendment and 42 U.S.C. § 1983.

315. The actions of Defendant Melby were a substantial factor in causing Plaintiff's injuries, damages, and constitutional deprivations.

316. The actions of Chief Enforcement Officer Shannon Johnson were a substantial factor in causing Plaintiff's injuries, damages, and constitutional deprivations.

h)    **Reputational Harm and NPDB**

317. On February 3, 2023, Defendant Melby and Defendant Board of Registered Nursing ("BRN") submitted a false and derogatory report regarding Plaintiff to the National Practitioner Data Bank ("NPDB").

39

**SECOND AMENDED COMPLAINT**

**318.** Defendants submitted the NPDB report with actual malice, corruption, and intentional ill-will.

**319.** At the time of publication, Defendants had actual knowledge that the statements contained within the NPDB report were entirely false.

**320.** Defendants' false publication to the NPDB was the direct and proximate cause of severe, ongoing injury to Plaintiff's professional reputation and operational standing.

**321.** As a direct result of Defendants' malicious actions, Plaintiff has been effectively precluded from securing employment as a Registered Nurse.

**322.** Plaintiff has suffered, and continues to suffer, substantial economic damages, total loss of earning capacity, severe mental anguish, and emotional distress.

## VII.    CAUSES OF ACTION -

<u>**COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112)**</u>

**(Against Kaiser Defendants)**

**323.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**324.** At all times relevant to this action, Plaintiff suffered from Complex Post-Traumatic Stress Disorder ('C-PTSD'), a severe mental health condition characterized by prolonged and repeated trauma, rather than a single event.

**325.** Plaintiff's C-PTSD constitutes a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), as it substantially limits one or more major life activities, including but not limited to, interacting with others, sleeping,and regulating emotional functions.

40

**SECOND AMENDED COMPLAINT**

**326.** At all times relevant to this action, Plaintiff was a 'qualified individual' within the meaning of the ADA, 42 U.S.C. § 12111(8). Despite the severe symptoms of C-PTSD, Plaintiff was fully capable of performing the essential functions of their position, either with or without a reasonable accommodation.

**327.** Plaintiff successfully performed the essential functions of the position, as evidenced by **positive performance reviews, and  lack of disciplinary history prior to the discrimination.**

**328.** At all times relevant, Defendants were employers engaged in an industry affecting commerce who employed 15 or more employees, making them covered entities under the ADA.

**329.** Defendants knew or had reason to know of Plaintiff's disability.

**330.** On **December 29, 2020**, Plaintiff explicitly notified Defendants of their medical limitations.

**331.** This notification was made by submitting a written accommodation request and supporting medical documentation to Human Resources representative Wilbert Jones at Kaiser West LA.

**332.** Specifically, Plaintiff requested a reasonable accommodation of a transfer to an open Emergency Room Registered Nurse position at Kaiser West LA.

**333.** Alternatively, Plaintiff requested a transfer to an open Clinic Registered Nurse position at Kaiser West LA.

**334.** Plaintiff was fully qualified for both the Emergency Room and Clinic Registered Nurse positions.

**335.** The physical environment of the Kaiser West LA Emergency Room Department became medically untenable for Plaintiff.

**336.** Immediate supervisors and Human Resources personnel subjected Plaintiff to an ongoing hostile work environment within the department.

41

**SECOND AMENDED COMPLAINT**

337. Defendants' discriminatory actions and harassment directly targeted Plaintiff's known medical vulnerabilities.

338. Defendants' conduct created specific clinical triggers that severely exacerbated Plaintiff's Complex Post-Traumatic Stress Disorder (C-PTSD) symptoms.

339. Defendants knew of Plaintiff's mental health condition and subsequently regarded Plaintiff as having a disabling mental impairment.

340. Based on this perception, supervisors subjected Plaintiff to unlawful stigma, thereby intensifying the hostility of the workplace.

341. A lateral transfer away from the Kaiser West LA Emergency Room Department was a medically necessary and reasonable accommodation.

342. The requested transfer would have removed Plaintiff from the specific clinical triggers caused by their supervisors.

343. The transfer would have mitigated Plaintiff's C-PTSD symptoms, allowing Plaintiff to perform all essential functions of the position.

344. An open and available position for a Registered Nurse (RN) Emergency Room Clinic existed at the time at the Kaiser West LA Hospital location.

345. Providing this transfer would not have imposed an undue hardship on Defendants' business operations.

346. As a direct and proximate result of Defendants' failure to accommodate Plaintiff, Plaintiff suffered severe adverse employment actions.

347. As a further direct and proximate result of Defendants' refusal to engage in a good-faith interactive process, Plaintiff suffered severe adverse employment actions.

42

**SECOND AMENDED COMPLAINT**

**348.** On January 1, 2021, Defendants placed Plaintiff on involuntary unpaid leave.

**349.** On March 18, 2021, Defendants terminated Plaintiff's employment.

**350.** As a direct and proximate result of Defendants' discriminatory and unlawful conduct, Plaintiff suffered, and continues to suffer, economic damages, including lost back pay, lost front pay, and a loss of employment benefits.

**351.** As a further direct and proximate result of Defendants' discriminatory and unlawful conduct, Plaintiff suffered, and continues to suffer, severe emotional distress and mental anguish.

**352.** Defendants' discriminatory and unlawful conduct permanently exacerbated Plaintiff's clinical Complex Post-Traumatic Stress Disorder (C-PTSD) symptoms.

## COUNT 2: WRONGFUL TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

**(Against Kaiser Defendants)**

**a)      Defendants' Scheme to Target Plaintiff**

**353.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**354.** On or about March 18, 2021, Kaiser employees Brooke Ball, Poetter, Surma, Jones, and Pruss, acting within the scope of their employment with Kaiser Permanente, initiated a coordinated campaign to terminate Plaintiff.

**355.** In furtherance of this campaign, Defendants fabricated disciplinary allegations, mishandled Plaintiff's disability accommodation requests, and falsified Plaintiff's performance records.

**356.** Defendants falsely asserted that Plaintiff was mentally unfit to perform their duties at the Kaiser West LA Emergency Room Department.

43

**SECOND AMENDED COMPLAINT**

**357.** Defendants' assertions were meritless, contradicted by Plaintiff's satisfactory performance record, and used as a pretext for discrimination and retaliatory animus against Plaintiff.

**b)    The False Statements and Publication (The BRN Complaint)**

**358.** On or about **May 3, 2021**, Defendants submitted a formal, unprivileged written complaint regarding Plaintiff to the California Board of Registered Nursing ('BRN'). Defendants published these statements to a third party despite knowing the statements were false, or acting with reckless disregard for their truth or falsity."

**359.** The written complaint submitted by Defendants contained the explicit and materially false statement that Plaintiff 'failed to comply with the employer's Fitness For Duty Directive.

**360.** In truth, Plaintiff fully complied with all lawful directives by submitting all requested documentation on **February 10, 2021**. To the extent Defendants contend any directive remained outstanding, Defendants failed to execute the mandatory administrative processes required to enforce such a directive.

**361.** Defendants intended for the BRN to rely on this false report and knew the BRN would be legally mandated to initiate an investigation, thereby directly endangering Plaintiff's professional nursing license and livelihood.

**c)    Specific Facts Demonstrating Actual Malice**

**362.** Defendants engaged in the aforementioned conduct with actual malice, a reckless disregard for the truth, and the specific intent to cause severe harm to Plaintiff.

**363.** Defendants possessed direct knowledge that their accusations against Plaintiff were false.

44

**SECOND AMENDED COMPLAINT**

**364.** Prior to HR issuing the **March 10, 2021** Fitness for Duty (FFD) directive, Plaintiff's healthcare provider emailed a formal accommodation request directly to the Employer.

**365.** HR affirmatively acknowledged receipt of this accommodation request but subsequently ignored it.

**366.** Instead of engaging in the interactive process, HR issued the FFD directive on March 10, 2021, with a response deadline of **March 19, 2021**.

**367.** Plaintiff explicitly agreed to comply with the FFD directive on March 17, 2021.

**368.** Despite Plaintiff's compliance and the pending deadline, the Employer abruptly terminated Plaintiff on March 18, 2021—one day before the response deadline expired.

**369.** Furthermore, the Employer falsely reported to the Board of Registered Nursing (BRN) that Plaintiff had abandoned their position or left work in October 2020, directly contradicting the contemporaneous March 2021 employment records.

### d)  Defamation Per Se and Damages

**370.** The Defendants' false statements directly impute a lack of integrity, incompetence, and unfitness to practice within the Plaintiff's profession as a Registered Nurse.

**371.** Because these statements directly prejudice the Plaintiff in their professional trade and status as a licensed healthcare provider, they constitute defamation *per se*, and injury to the Plaintiff's professional reputation is presumed as a matter of law.

**372.** As a direct and proximate result of the Defendants' false report, the Plaintiff has suffered severe emotional distress, loss of employment opportunities, significant legal expenses to defend their license, and the catastrophic loss of their nursing career, RN license, and livelihood.

45

**SECOND AMENDED COMPLAINT**

## COUNT 3: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

**(Against Kaiser Defendants)**

**373.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**374.** At all relevant times, Plaintiff had an established, valid prospective economic relationship with Kaiser Permanente as an Emergency Room Registered Nurse, which carried a probability of future economic benefit.

**375.** As Plaintiff's former employer, Defendants had actual knowledge of this specific employment relationship and Plaintiff's prospective economic opportunities

**376.** Defendants intentionally and independently disrupted this relationship by submitting a knowingly false report to the Board of Registered Nursing (BRN) stating Plaintiff was unfit to practice and refused a Fitness-for-Duty examination, despite internal emails confirming Plaintiff agreed to comply.

**377.** Defendants engaged in this conduct with the specific intent to disrupt Plaintiff's professional opportunities and blackball Plaintiff from the nursing profession.

**378.** As a direct and proximate result of Defendants' wrongful interference, Plaintiff's relationship with Kaiser Permanente was disrupted, resulting in termination on March 18, 2021. Consequently, Plaintiff suffered and continues to suffer substantial economic damages, including lost wages of approximately $70,000 annually, lost benefits, and severe reputational harm.

## COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (Violation of Civil right Act 42 U.S.C., & 1985)

**(Against ALL Defendants)**

46

**SECOND AMENDED COMPLAINT**

**379.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**380.** Courts have long recognized that simultaneous or sequential acts by multiple individuals toward a shared unlawful objective constitute conspiracy evidence under § 241. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

### a) **Establish the Discriminatory Animus (The Core "Why")**

**381.** Plaintiff is a Black woman of Cameroonian national origin and West African ancestry. As such, she belongs to multiple protected classes under Title VII of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, and national origin.

**382.** At all relevant times, Plaintiff exhibited cultural expressions and communication styles inherent to her national origin.

**383.** Defendants intentionally and falsely categorized Plaintiff's cultural traits as a psychiatric condition or mental illness.

**384.** Defendants used this false characterization as a pretext to destroy Plaintiff's professional credibility and terminate her employment due to her national origin.

**385.** Defendants explicitly or tacitly agreed to insulate corporate entities from liability, terminate Plaintiff's employment, and permanently blacklisting her from the nursing industry.

**386.** Defendants coordinated disciplinary timelines, shared falsified internal reporting, and fabricated non-discriminatory business reasons to mask their joint, class-based animus against Plaintiff's national origin.

**387.** In retaliation for Plaintiff filing a State Court lawsuit and reporting her manager to the California Board of Registered Nursing (BRN), Defendants agreed to block Plaintiff's access to the courts.

47

**SECOND AMENDED COMPLAINT**

**388.** In furtherance of this conspiracy, Defendants knowingly disseminated false rumors characterizing Plaintiff as "psychotic" and "unfit for duty" to corporate networks and the BRN.

**389.** Defendants initiated a bad-faith BRN investigation using these fabricated allegations to exhaust Plaintiff's resources, threaten her license, and coerce her into abandoning her civil rights litigation.

### b) <u>Attorney's Gary Carlin's Betrayal and "Meeting of the Minds"</u>

**390.** To state a viable claim under 42 U.S.C. § 1985(3) against a private attorney, a plaintiff must allege specific facts showing the attorney intentionally joined a unified plan with Kaiser to violate protected rights. Independent legal representation—even if characterized by poor performance or professional negligence—fails to establish the requisite meeting of the minds or shared conspiratorial objective necessary to transform a private actor into a co-conspirator.

### c) The Retainer Agreement and Scope of Representation

**391.** On or about **March 19, 2021**, Plaintiff and Attorney Defendant entered into a formal, written retainer agreement.

**392.** The express purpose of this agreement was to secure legal representation to file and litigate FEHA employment discrimination claims against all responsible Kaiser entities.

**393.** These entities included Kaiser Foundation Hospitals ("KFH"), Southern California Permanente Medical Group ("SCPMG"), and Kaiser Foundation Health Plan ("KFHP").

### d) The Integrated Enterprise / Joint Employer Reality

**394.** At all times relevant, Plaintiff performed services at the Kaiser Foundation Hospital West LA facility.

48

**SECOND AMENDED COMPLAINT**

**395.** Plaintiff was completely integrated into KFH's operations, utilized KFH equipment, and was subject to KFH policies, rendering KFH a joint employer or part of an integrated enterprise under FEHA.

**396.** Attorney Defendant knew or should have known that KFH, SCPMG, and KFHP operated as an integrated enterprise, meaning all three entities were jointly liable for the underlying FEHA violations.

### e)    The Conspiratorial Agreement and Overt Acts

**397.** Unbeknownst to Plaintiff, and in direct contradiction to the retainer agreement, Attorney Defendant entered into an implicit or explicit agreement with agents of KFH.

**398.** The objective of this conspiracy was to systematically derail, sabotage, and defeat Plaintiff's upcoming FEHA discrimination claims due to discriminatory animus against Plaintiff's protected class.

### f)    Corporate Shell Game Manipulation:

**399.** Defendant Attorney knew Plaintiff physically worked at the Kaiser Foundation Hospital (KFH) West LA facility, which exercised joint operational control over Plaintiff. Defendant Attorney also knew Southern California Permanente Medical Group (SCPMG) issued Plaintiff's Fitness for Duty directive.

**400.** Despite this knowledge, Defendant Attorney sued only KFH. Defendant Attorney excluded Kaiser Foundation Health Plan (KFHP) from the complaint and designated SCPMG as a "Doe" defendant. Defendant Attorney omitted these entities to intentionally provide KFH with a "wrong employer" summary judgment defense based on SCPMG payroll records.

### g)    Discriminatory Animus and Injury

**401.** The conspiratorial agreement between Attorney Defendant and KFH was motivated by a shared, class-based, invidiously discriminatory animus against Plaintiff as a member of a protected class.

49

**SECOND AMENDED COMPLAINT**

h)   **Overt Acts to Highlight "Meeting of the Minds":**

**402.** On or about November 23, 2021, Attorney Defendant and counsel for Kaiser Defendants entered into an illicit agreement to undermine Plaintiff's civil rights claims.

**403.** Non-privileged emails show Attorney Defendant adopted and validated the defense's pretextual narrative by targeting Plaintiff's "purported mental illness" to destroy Plaintiff's credibility.

**404.** To execute this conspiracy, Defendant Gary Carlin intentionally failed to amend the complaint and strategically excluded known employer entities.

**405.** This coordinated meeting of the minds directly deprived Plaintiff of due process, foreclosed the litigation of valid FEHA claims, and caused severe financial and emotional harm.

i)   **Judicial Deception (Kaiser Defendants Overt Acts)**

**406.   Joint Employment Relationship**: At all relevant times, Defendant KFH acted as a joint employer of Plaintiff alongside SCPMG. Plaintiff performed work under KFH's direct operational control, used KFH equipment, adhered to KFH Human Resources policies, and reported through a unified Kaiser Permanente chain of command. SCPMG's issuance of paychecks was an administrative function that did not negate KFH's status as an employer under the Fair Employment and Housing Act (FEHA).

**407.   Civil Rights Conspiracy Elements**: Defendants KFH and SCPMG conspired and reached a meeting of the minds to deprive Plaintiff of civil rights remedies through corporate shell manipulation.

**408.** To advance this conspiracy, KFH moved for summary judgment based on the technical omission of SCPMG from Plaintiff's administrative FEHA complaint.

**409.** KFH asserted it lacked liability solely because it did not process

50

**SECOND AMENDED COMPLAINT**

Plaintiff's paychecks, despite knowing it exercised comprehensive operational control over Plaintiff's employment.

**410.  Overt Acts in Furtherance of the Conspiracy**: In furtherance of the conspiracy, KFH executed contradictory litigation strategies to shield both entities from liability.

**411.**  KFH asserted strict entity separateness to escape employer liability in the summary judgment phase, while simultaneously leveraging its corporate relationship with SCPMG to defeat Plaintiff's claims globally.

**412.**  On September 21, 2022, Defendant KFH moved for a final judgment encompassing all unserved "Doe" defendants and unserved Kaiser affiliates.

**413.**  KFH falsely argued that a summary judgment granted solely to KFH extinguished Plaintiff's FEHA claims against all non-appearing, non-moving Kaiser entities.

**414.**  On September 22, 2022, Co-Conspirator Gary Carlin executed the next step of the agreement by filing a bad-faith declaration supporting KFH's entry of judgment.

**415.**  Defendants coordinated this strategy to run down the statute of limitations and block Plaintiff from substituting Kaiser entities, to include SCPMG and KFHP Inc.

**416.**  This coordinated manipulation of entity status deprived Plaintiff of their protected right to meaningful access to the courts and equal protection under the law.

**417.**  As a direct and proximate result of Defendants' coordinated conspiracy and overt acts, Plaintiff suffered severe, irreversible injury. Plaintiff was completely deprived of the constitutional right to have a fair, uncompromised day in court, suffered the total destruction of valuable legal claims (property interests), and sustained severe economic and emotional damages due to the targeted denial of equal protection under civil rights laws.

51

**SECOND AMENDED COMPLAINT**

## j)   State-Actor Involvement Overt Acts (The BRN Connection):

**418.**   Defendant Kaiser knowingly submitted a false and defamatory report regarding Plaintiff to the California Board of Registered Nursing (BRN).

**419.**   Kaiser knew the report was false because it contradicted Plaintiff's authentic medical records within Kaiser's exclusive control. Kaiser sent this report to destroy Plaintiff's professional standing and shield co-conspirators from liability.

**420.**   In furtherance of this conspiracy, BRN officials acted outside their lawful authority (*ultra vires*) by issuing a legally invalid examination order under California Business and Professions Code Section 820. This order lacked an independent administrative basis and was issued solely to advance Kaiser's retaliatory objectives.

**421.**   On July 14, 2022—the same day Kaiser Foundation Hospitals obtained summary judgment in the parallel litigation —Defendant Melby enforced a legally void and unenforceable Board of Registered Nursing ("BRN") order against Plaintiff. Melby did so with actual, subjective knowledge that the order was *void*.

**422.**   The precise temporal alignment of these actions constitutes circumstantial evidence of a coordinated plan and a meeting of the minds between Defendants.

**423.**   Kaiser's false reporting, the BRN's extra-legal Section 820 order, and Melby's enforcement of that void order establish a plausible inference of a conspiracy under 42 U.S.C. § 1985(3). This conspiracy directly deprived Plaintiff of protected civil and professional rights, causing severe and concrete damages.

## k)   Improper Prefiling Orders

**424.**   To conceal this conspiracy and maintain plausible deniability, Defendants executed the following synchronized overt acts:

## l)   The Kaiser Entities' Improper Judicial Blocking:

52

**SECOND AMENDED COMPLAINT**

**425.** In September 2021, while Plaintiff's Fair Employment and Housing Act (FEHA) statutory filing window was running, Defendant Kaiser Foundation Hospitals (KFH) knowingly misrepresented to the state court that an entry of judgment constituted a global dismissal of all Kaiser entities.

**426.** Based on this misrepresentation, the Kaiser entities sought and obtained a pre-filing vexatious litigant order against Plaintiff.

**427.** Defendants procured this pre-filing order with the specific, unlawful intent to block Plaintiff's procedural access to the state court and prevent her from timely filing her FEHA employment claims.

**m)** **The BRN Subordinates' Ultra Vires Enforcement:**

**428.** On or about November 16, 2022, BRN official Shannon Johnson, acting as a subordinate of the California Board of Registered Nursing (BRN), issued an administrative Accusation against Plaintiff.

**429.** Defendant Johnson based this Accusation entirely on a California Business and Professions Code § 820 order.

**430.** The underlying § 820 order was legally void and unenforceable, rendering Defendant Johnson's issuance of the Accusation an *ultra vires* act outside her lawful authority.

**n)** **The Falsification of Administrative Records:**

**431.** On or about January 1, 2023, BRN official Shannon Johnson, acting independently, falsely recorded that Plaintiff failed to file a Notice of Defense, despite having received Plaintiff's timely pre-accusation defense.

**432.** Relying on this falsified record, BRN official Johnson executed a default order revoking Plaintiff's Registered Nurse license, depriving Plaintiff of a protected property interest without due process of law.

**o)** **The Fraudulent Default and License Revocation:**

53

**SECOND AMENDED COMPLAINT**

**433.** As a direct and proximate result, Defendants unlawfully stripped Plaintiff of her Registered Nurse license through a void administrative proceeding, causing severe professional and financial damages.

### p)   The Default and NPDB Blacklist:

**434.** In final execution of the conspiracy, Defendants executed their conspiracy by transmitting a fraudulent "refusal to comply" report regarding Plaintiff to the National Practitioner Data Bank (NPDB).

**435.** Defendants intended this fraudulent report to extend the deprivation of Plaintiff's rights across state lines.

**436.** The NPDB report blacklisted Plaintiff, preventing them from securing employment nationwide.

### q)   Class-Based Animus:

**437.** The actions of the corporate and state-actor co-conspirators were motivated by an invidious, class-based discriminatory animus against Plaintiff due to her protected class status and her protected whistleblowing activities.

### r)   Damages:

**438.** As a direct and proximate result of the conspiratorial actions of the Defendants, Plaintiff has suffered extreme economic damages, complete deprivation of her professional livelihood, and severe emotional distress

## COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS  (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983)

**(Against KFH and BRN Defendants)**

**439.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54

**SECOND AMENDED COMPLAINT**

### a)    Color of State Law & Joint Action (Defeating Private Deniability)

**440.**    At all times relevant, all Defendants acted under color of state law. Defendant Kaiser, though a private entity, is liable as a state actor under 42 U.S.C. § 1983.

**441.**    Kaiser defendants acted in willful concert, joint action, and conspiracy with the BRN Defendants to deprive Plaintiff of their rights. Through this conspiracy and its deeply entwined role in the state's regulatory mechanism, Kaiser's conduct is fairly attributable to the State.

**442. The Conspiracy Agreement** (Defeating Rule 12(b)(6) Parallel Conduct Objections)

**443.**    Defendants conspired and reached a meeting of the minds to deprive Plaintiff of their Fourteenth Amendment due process rights. Specifically, Defendants agreed to strip Plaintiff of their professional license and employment through a coordinated, unlawful objective. To achieve this, Defendants knowingly fabricated evidence to bypass the Board of Registered Nursing's (BRN) independent investigation

**444.**    In furtherance of this conspiracy, the BRN Defendants knowingly accepted, relied upon, and advanced Kaiser's false report. The BRN Defendants intentionally used this false report as an instrument to execute the conspiracy, rather than conducting an objective evaluation.

### b)    Overt Act  (The Ultra Vires Order):

**445.**    In direct furtherance of the conspiracy, a subordinate BRN Defendant, lacking independent statutory authority to act on behalf of the Board, issued a legally unenforceable order compelling a physical/mental evaluation under California Business and Professions Code § 820.

### c)    Knowledge and Intent (Defeating Plausible Deniability)

**446.**    Prior to the Section 820 order, Plaintiff provided the BRN Defendants

55

**SECOND AMENDED COMPLAINT**

with a comprehensive medical release to obtain records from Plaintiff's treating healthcare provider.

447.   These medical records, which were available to the BRN Defendants, explicitly documented that Plaintiff was mentally competent, lacked any cognitive impairment, and required a workplace accommodation solely to prevent temporary situational PTSD exacerbation triggered by workplace harassment.

448.   Discriminatory Animus & Due Process Violation:

449.   On or about July 13, 2022, BRN official Shannon Johnson was armed with actual knowledge of Plaintiff's medical competency and specific reasonable accommodation requests.

450.   Disregarding Plaintiff's medical documentation, BRN official Shannon Johnson bypassed standard statutory protections and issued an *ultra vires* and discriminatory petition and order.

451.   Her petition maliciously and falsely labeled Plaintiff as "mentally ill" and "incompetent," an act undertaken to accomplish a shared, conspiratorial goal with Defendant Kaiser to unlawfully harm Plaintiff's rights..

### d)   Overt Act 2: Fraud on the Court & Extinguishing Rights

452.   Further advancing the conspiracy and seeking to immunize themselves from liability, Defendant Kaiser falsely stated to the court that a limited state court summary judgment order operated as a global dismissal of all Kaiser entities and claims.

453.   Defendant Kaiser made this misrepresentation to manufacture a false defense of res judicata and collateral estoppel.

454.   On **December 22, 2022**, Defendant Kaiser utilized this inaccurate state court judgment to obtain a vexatious litigant prefiling order against Plaintiff.

455.   Defendant Kaiser and the BRN Defendants agreed to coordinate their efforts to insulate the BRN Defendants from liability regarding a void Section 820

**SECOND AMENDED COMPLAINT**

order.

456.  In furtherance of this agreement, the BRN Defendants issued a non-compliance accusation against Plaintiff on **November 16, 2022**.

457.  On **January 6, 2023**, the BRN official Shannon Johnson issued a default decision revoking Plaintiff's RN license.

458.  The BRN official Shannon Johnson  based this default decision on a false claim that Plaintiff failed to file a Notice of Defense.

459.  Defendants acted jointly and under color of state law to deprive Plaintiff of their livelihood and due process rights.

## COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983)

**(Against SCPMG /Kaiser Defendant acting under color of law)**

460.  Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

461.  Plaintiff does not seek federal appellate review of any specific state court judgment or order.

462.  Plaintiff asserts an independent challenge under 42 U.S.C. § 1983 to a systemic defect in the state's procedural mechanisms.

463.  At all relevant times, Defendant SCPMG acted under color of law.

464.  SCPMG willfully engaged in joint activity with the state judiciary to subvert procedural rules and insulate fraud from scrutiny transforming a private dispute into a state-enforced deprivation of statutory remedies.

**a)**    **Protected Property and Liberty Interests:**

465.  Plaintiff possesses a constitutionally protected property and liberty

**SECOND AMENDED COMPLAINT**

interest in their professional nursing license and the fundamental right to pursue their chosen livelihood.

466. On December 5, 2022, Plaintiff commenced a distinct civil action against Defendant SCPMG in state court, alleging fraud and violations of the Fair Employment and Housing Act (FEHA).

467. Defendant SCPMG was neither a party to nor named in Plaintiff's prior litigation against Kaiser Foundation Hospitals (KFH), which had concluded September 21, 2022.

468. To escape liability in the December 2022 action, Defendant SCPMG intentionally made material misrepresentations to the state court, falsely asserting that the KFH judgment extinguished all claims against SCPMG.

469. This coordinated action was executed with the specific intent to obstruct Plaintiff's access to the courts, thereby preventing her from defending her Registered Nurse (RN) license, which constitutes a constitutionally protected property interest.

470. The state court judge acted as a willing participant in this joint activity with Defendant SCPMG, transforming SCPMG's private defense tactics into state action designed to deprive Plaintiff of her rights under color of law.

b)   **Conspiracy and Joint Action to Deprive Procedural Safeguards:**

471. Defendants SCPMG and the State Court Judge, acting in concert and with a shared, unlawful objective, willfully conspired to deprive Plaintiff of Due Process and Access to the Courts under the Fourteenth Amendment.

472. Defendant SCPMG acted under color of state law by engaging in a continuous, willful conspiracy and joint action with the state court judge. The explicit, shared objective of this joint enterprise was to insulate SCPMG from liability by extrajudicially extinguishing Plaintiff's viable claims.

473. In furtherance of this conspiracy, SCPMG knowingly introduced

58

**SECOND AMENDED COMPLAINT**

material misrepresentations to the state court. Specifically, SCPMG falsely asserted that a September 21, 2022 summary judgment in favor of Kaiser Foundation Hospitals (KFH) extinguished distinct, independent claims against SCPMG.

474. SCPMG manufactured this misrepresentation despite actual and constructive knowledge—conclusively established by the state court record—that SCPMG is a legally distinct corporate entity, was never a party to the KFH action, and was entirely absent from the KFH summary judgment record.

475. The state court judge knowingly adopted SCPMG's false representations, actively disregarded uncontroverted, conflicting payroll evidence, and intentionally treated the two distinct corporate entities as a single global unit. The judge did so with the specific intent to fabricate a pretextual procedural bar against Plaintiff's claims, demonstrating a corrupt meeting of the minds with SCPMG.

476. To execute the final objective of the joint action, the state court judge bypassed mandatory statutory procedures. The court issued a punitive minute order imposing a $10,000 litigation bond on Plaintiff without holding the contractually and legally required evidentiary hearing, thereby depriving Plaintiff of property and due process of law.

477. This conspiratorial abuse of state court procedures constituted a structural breakdown of the adversarial framework.

478. As a direct result of Defendants' joint actions, Plaintiff was denied a fair, impartial forum and deprived of fundamental due process under the Fourteenth Amendment.

c)      Preclusion of Merits and Arbitrary Dismissal:

479. Defendant SCPMG, acting in concert with the state court, enforced a security deposit mandate without an evidentiary record or due process protections. This enforcement resulted in the summary dismissal of Plaintiff's employment and fraud claims solely for failure to post the bond, depriving Plaintiff of a protected

59

**SECOND AMENDED COMPLAINT**

property interest without due process.

### d)   Overt Act 1: Retaliatory and Bad-Faith State Action:

480.   On July 7, 2025, Defendant SCPMG, acting under color of state law and in active concert with the state court judge, carried out an overt act in furtherance of this conspiracy by procuring a second vexatious litigant prefiling order against Plaintiff.

481.   The state court judge knowingly and willfully joined this conspiracy by signing the July 7, 2025, order, thereby providing the necessary state action to effectuate the constitutional deprivation.

482.   Defendant SCPMG sought, and the state judge granted, this order in direct retaliation for Plaintiff exercising their First Amendment right to petition the government, specifically for filing a federal civil rights action on June 10, 2024.

483.   This retaliatory invocation of state law served no legitimate judicial purpose, was executed in bad faith, and constituted a malicious, unconstitutional abuse of process designed to burden Plaintiff's right of access to the courts.

484.   As a direct result of this coordinated overt act, Plaintiff suffered severe injury, including the total suppression of their legal claims and the violation of their fundamental constitutional rights

### e)   Structural and Systemic Bias:

485.   The successive prefiling orders entered on December 22, 2022, and July 7, 2025, operated as a prospective shield to insulate Kaiser entities and selected third parties from civil liability.

486.   The joint procurement of these orders by KFH and SCPMG created a systemic bias within the adjudication mechanism of the Stanley Mosk Courthouse.

487.   This institutional bias constitutes a structural defect in the state court proceedings, resulting in a denial of due process under the Fourteenth Amendment.

60

**SECOND AMENDED COMPLAINT**

**f)**     **Impermissible Broadening as a Structural Defect**:

**488.**   Defendants SCPMG and the State Judge engaged in an unlawful conspiracy, reaching a explicit meeting of the minds to perpetrate malicious prosecution and violate Plaintiffs' constitutional rights.

**489.**   In furtherance of the conspiracy, the state court issued a May 26, 2026 order that unlawfully expanded pre-filing restrictions to unadjudicated claims involving entirely separate, unrelated administrative actions.

**490.**   This concerted application transformed a limited screening mechanism into an unconstitutional, absolute barrier to state court access, intentionally depriving Plaintiffs of due process.

**491.**   As a further overt act, the state court's order extrajudicially granted prospective, absolute immunity to non-party state actors—the California Board of Registered Nursing, Loretta Melby, and Gillian Friedman—thereby acting outside its jurisdiction to shield co-conspirators from liability.

**492.**   This extrajudicial structural expansion intentionally eliminated mandatory judicial review under California Business and Professions Code § 820, successfully executing the conspiracy's goal to strip Plaintiff of due process and access to the courts.

**g)**     **Denial of Access to Courts for Independent Claims:**

**493.**   This total bar was executed without providing Plaintiff a prior, individualized, or meaningful hearing on the merits of those specific claims.

**494.**   Plaintiff is completely stripped of the constitutional right to seek judicial remedy for independent, unadjudicated injuries.

**495.**   The wholesale foreclosure of Plaintiff's right to be heard shocks the conscience and violates the standard of fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment.

**h)**     **Proximate Cause and Damages**

61

**SECOND AMENDED COMPLAINT**

**496.** As a direct and proximate result of this conspiracy, malicious prosecution, and due process violation, Plaintiff has suffered, and continues to suffer, constitutional injury and economic damages.

## COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):)

**(Against BRN Defendants)**

**497.** Plaintiff re alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**498.** At all times relevant to this Complaint, Defendant Loretta Melby acted under color of state law in her official capacity as the, Executive Officer for the California Board of Registered Nursing ("BRN"). In doing so, her actions were performed within the scope of her official duties and employment with the State of California.

**499.** To state a claim under 42 U.S.C. § 1983 for due process violations, a plaintiff must allege:

(1) the deprivation of a constitutionally protected interest in life, liberty, or property; and

(2) that the deprivation was organic to state action or committed by a person acting under color of state law without constitutional safeguards

**500.** At all times relevant, Plaintiff held a valid California Registered Nurse (RN) License **No. 761179**.

**501.** Plaintiff's license constitutes a constitutionally protected property interest and a vested legal entitlement under the Fourteenth Amendment, created and defined by the California Nursing Practice Act, Cal. Bus. & Prof. Code § 2700 et seq.

62

**SECOND AMENDED COMPLAINT**

**502.** Plaintiff possesses a constitutionally protected liberty and property interest in their professional reputation and license to practice as a Registered Nurse.

**503.** At all relevant times, Defendants acted under color of state law in both their official and individual capacities as agents of the State nursing board.

**504.** Defendants intentionally and with deliberate indifference deprived Plaintiff of these protected interests without due process of law.

### a) Deprivation of Procedural Due Process (42 U.S.C. § 1983)

**505. Lack of Lawful Authority and Jurisdiction:**

**506.** Defendant Melby, acting under color of state law, acted completely outside her lawful jurisdiction and statutory authority under Under Title 16 California Code of Regulations (CCR) § 1405 and California Business and Professions Code § 820.

**507.** Defendant Melby unlawfully delegated mandatory, non-delegable statutory authority to an unauthorized subordinate staff member to independently petition for and independently approve a mental or physical health examination order.

**508.** Because the subordinate lacked the legal jurisdiction to issue the § 820 order, the resulting order was void *ab initio*.

**509.** By bypassing the mandatory discretionary review and or group discretion of the Board, Defendant Melby intentionally stripped Plaintiff of the structural, statutory, and procedural safeguards designed to prevent arbitrary, single-person administrative overreach.

**510.** Defendant Melby then restricted or revoked Plaintiff's professional license based entirely on non-compliance with this void and unauthorized order, failing to provide a pre-deprivation hearing or lawful process.

### b) Defeating "Plausible Deniability" & Qualified Immunity

63

**SECOND AMENDED COMPLAINT**

**511.** Defendant Melby had fair warning that her conduct was unlawful.

**512.** Qualified immunity only protects officials performing discretionary functions. Defendant Melby acted completely outside her statutory authority under 16 CCR § 1405. An official cannot claim qualified immunity for *ultra vires* actions that they had no legal jurisdiction to perform.

**513.** It is clearly established under the Fourteenth Amendment that a state official may not deprive a licensee of their livelihood based on a void order issued without legal jurisdiction. No reasonable official in Defendant Melby's position could have believed she possessed the authority to allow a subordinate to bypass mandatory Board safeguards.

**514.** By failing to respond to Plaintiff's Objections, Defendant Melby waived any opposition and conceded the central legal and factual errors. She cannot now invent a plausible deniability defense when the factual record of her unauthorized directive stands unrefuted.

**515.** By utilizing a "rubber stamp" process devoid of statutory authority, Defendants failed to provide minimum constitutional safeguards, thereby depriving Plaintiff of a fair hearing before an impartial tribunal.

**c)      Deprivation of Substantive Due Process (42 U.S.C. § 1983)**

**516.** Defendant Loretta Melby had direct, personal, and affirmative involvement in the constitutional deprivation by executing a sworn declaration wherein she admitted to bypassing mandatory statutory frameworks.

**517.** Defendant Melby's actions were arbitrary, capricious, and a pretextual abuse of administrative power.

**518.** Forcing a licensed professional to submit to an intrusive, compelled medical or psychological evaluation via an unauthorized, invalid command—and subsequently stripping them of their livelihood for allegedly resisting that unlawful command—constitutes egregious official misconduct that shocks the conscience.

64

**SECOND AMENDED COMPLAINT**

**519.** There is no legitimate, rational state interest in enforcing an administrative order issued by an unauthorized employee in direct violation of state regulations.

**520.** **Color of Law / Personal Involvement (For § 1983 Claims):** Melby was acting in her official capacity (under color of state law) and was *personally involved* in the deprivation of plaintiff's rights.

**521.** **Qualified Immunity**: Defendant Melby violated Plaintiff's clearly established **Fourteenth Amendment due process rights** by failing to ensure compliance with mandatory statutory protocols before revoking Plaintiff's Registered Nurse license.

**522.** Under **California Code of Regulations (CCR) Title 16, § 1405**, Defendant Melby holds exclusive, non-delegable authority to direct staff work and bears strict responsibility for actions taken by subordinates on her behalf.

**523.** Defendant Melby acted with deliberate indifference to Plaintiff's protected property interest in their professional nursing license.

**524.** Specifically, Melby permitted a subordinate Chief Enforcement Officer to independently approve a default decision and order of revocation.

**525.** Because this action bypassed the mandatory discretionary review process of the nine-member Board, it constituted a completely unauthorized, *ultra vires* act undertaken entirely without jurisdiction.

**526.** **Deprivation of a Protected Interest:** Plaintiff's RN license constitutes a constitutionally protected property and liberty interest under the Fourteenth Amendment, which cannot be stripped or revoked without robust Procedural Due Process.

**527.** Defendant Melby knew, or objectively should have known, that failing to maintain strict statutory and regulatory protocols before revoking said license would directly violate Plaintiff's clearly established constitutional right to a fair, compliant, and independent review process.

65

**SECOND AMENDED COMPLAINT**

**528.** **Causation and Damages** :  Defendant Melby's affirmative actions, material omissions, and failure to supervise directly and proximately caused the unlawful deprivation of Plaintiff's constitutional rights.

**529.** As a direct and proximate result of Defendants' unconstitutional conduct under color of state law, Plaintiff suffered an immediate loss of their livelihood, catastrophic financial ruin, severe emotional distress, mental anguish, and permanent damage to their professional reputation.

**530.** Defendants' actions shock the conscience and lack any rational relationship to any legitimate government or public safety interest.

## COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD

**(Against Melby/BRN Defendants)**

**a)**     **The False NPDB Report Submission:**

**531.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**532.** On or about February 3, 2023, Defendants, acting under color of state law, drafted, authorized, and electronically submitted an Adverse Action Report to the National Practitioner Data Bank ("NPDB") regarding Plaintiff Esther Atam.

**533.** Specifically, Defendants published the following false statement of fact: *"[Plaintiff] failed to comply with boards section 820 Exam order."* This statement was disseminated nationwide to hospitals, licensing boards, and professional entities.

**b)**     **Defeating Plausible Deniability & Establishing Knowledge (Rule 9(b))**

**534.** Particularity of Falsity and Actual Knowledge:

**535.** Defendants made an objectively false statement of fact when they published that Plaintiff failed to comply with a *valid* Section 820 Examination

66

<strong>SECOND AMENDED COMPLAINT</strong>

order. In truth, no legally binding or enforceable Section 820 order existed at the time of the statement.

536. The purported order was a 'rubber-stamped' document issued by a subordinate official who lacked the statutory authority to issue such orders.

537. Because the underlying order was legally void *ab initio* for lack of jurisdiction and absence of probable cause, Plaintiff could not, as a matter of law, fail to comply with it. Defendants' statement asserting non-compliance was therefore objectively false.

538. Defendants did not make an innocent mistake or a negligent administrative error; they acted with actual knowledge of falsity and a reckless disregard for the truth.

539. Defendants possessed subjective, actual knowledge that the order was void and unenforceable through multiple distinct channels:

540. **Internal Knowledge:** Defendants knew that the individual who issued the rubber-stamped order lacked the statutory and jurisdictional authority to do so.

541. **Express Notice:** Prior to manufacturing the default revocation, Defendants received and reviewed Plaintiff's *Preaccusation Notice of Defense*. This explicit legal notice explicitly informed Defendants that the order lacked jurisdiction, was issued without probable cause, and was legally unenforceable.

542. Despite having this direct knowledge in their immediate possession, Defendants intentionally ignored these facts. They proceeded to manufacture and publish a default Registered Nurse (RN) license revocation based entirely on Plaintiff's non-compliance with an order they knew to be a nullity.

543. Defendants acted with calculated malice, fully aware that Chief Enforcement Officer Shannon Johnson lacked the inherent authority to unilaterally approve or execute a default decision.

67

**SECOND AMENDED COMPLAINT**

**544.** By intentionally bypassing mandatory Board review, Defendants manufactured an administrative process and subsequent registered nurse (RN) revocation that lacked all legal authority.

**545.** Consequently, the entire administrative proceeding is void *ab initio*, rendering the disciplinary action an actionable, unlawful overreach.

**c)** **Elimination of Plausible Deniability via "Rubber Stamp" / Cat's Paw Liability:**

**546.** Defendants cannot claim plausible deniability or lack of knowledge based on corporate or administrative insulation. The final decision-makers acted as a mere "rubber stamp," blindly and automatically ratifying the unauthorized, vindictive, and false allegations manufactured by subordinate officials. Defendants knowingly abdicated their statutory duty of independent verification.

**547.** By intentionally bypassing all investigative checklists and regulatory review mechanisms, Defendants deliberately insulated themselves from the truth, establishing a conscious avoidance of facts that constitutes actual knowledge under Federal Rule of Civil Procedure 9(b).

**d)** **Stripping HCQIA Immunity**

**548.** Exclusion of HCQIA Immunity Under § 11111:

**549.** Defendants are completely excluded from qualified immunity under 42 U.S.C. § 11111(a)(2) because they provided information to the NPDB that they knew to be false at the time of submission.

**550.** Failure to Meet Objective Standards Under § 11112(a):

**551.** Defendants fail to meet the objective standards required for immunity under 42 U.S.C. § 11112(a). The reporting action was a bad-faith sham motivated entirely by personal animus and retaliatory persecution. It was not undertaken in the reasonable belief that the action was in furtherance of quality healthcare.

**e)** **Denial of Due Process and Fair Hearing Under § 11112(b):**

68

**SECOND AMENDED COMPLAINT**

**552.** Defendants further forfeited HCQIA immunity by failing to afford Plaintiff adequate notice and fair hearing procedures under 42 U.S.C. § 11112(b). Specifically, Defendants utilized a summary, non-adversarial "rubber stamp" process completely devoid of statutory authority.

**553.** Defendants failed to provide minimum constitutional safeguards, actively denied Plaintiff the right to present evidence or confront accusers, and deprived Plaintiff of a fair hearing before an impartial tribunal.

**f)** **Causation and Damages**

**554.** Severe and Irreparable Harm:

**555.** As a direct and proximate result of Defendants' false, bad-faith report to the NPDB, Plaintiff has suffered and continues to suffer severe, permanent, and irreparable harm. This includes the immediate destruction of her professional reputation, disqualification from employment opportunities, lost wages, emotional distress, and a nationwide blacklisting within the healthcare industry.

## COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

**(Against Kaiser and BRN Defendants)**

**556.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**a)** **Intent and Recklessness (Defeating Plausible Deniability):**

**557.** Defendants acted intentionally, or with reckless disregard of a high probability that their actions would cause Plaintiff severe emotional distress. Defendants possessed specific knowledge of Plaintiff's pre-existing vulnerability—specifically, a work-induced mental injury previously caused by Defendants.

**558.** Despite this knowledge, Defendants intentionally weaponized this specific vulnerability against Plaintiff. **Defendants coordinated an ongoing, over**

**SECOND AMENDED COMPLAINT**

**four-years campaign of targeted civil harassment specifically designed to induce a complete psychological breakdown.**

559. To circumvent direct detection and maintain a veneer of plausible deniability, Defendants, operating through third-party intermediaries in the court system and the Board of Nursing, engaged in continuous civil harassment against Plaintiff.

**b)      Extreme and Outrageous Conduct:**

560. Defendants' conduct was extreme, outrageous, and went completely beyond all possible bounds of decency, rendering it utterly intolerable in a civilized community. This continuous course of conduct included, but was not limited to, the following specific, overt acts.

**i.      Fact 1**:

561. On **March 17, 2021**, Plaintiff affirmatively agreed to comply with Defendant's directives to engage in the interactive process regarding Plaintiff's accommodation needs, specifically consenting to participate in a Fitness for Duty ("FFD") evaluation order.

562. On **March 18, 2021**—less than 24 hours after Plaintiff agreed to comply—Plaintiff made a protected, good-faith request for a minor, reasonable procedural accommodation: adjusting the medical release authorization from *oral communication* to *written communication* to protect Plaintiff's medical privacy and ensure an accurate record.

563. Immediately upon receiving this reasonable accommodation request, and without executing any analytical review or engaging in discussion, Defendant **abruptly and punitively terminated** Plaintiff's employment.

564. Defendant completely failed and refused to engage in a good-faith interactive process regarding Plaintiff's known workplace restrictions or accommodations prior to termination. Instead, Defendant utilized the FFD

70

**SECOND AMENDED COMPLAINT**

directive as a bad-faith pretextual trap, executing an immediate termination to maximize financial and emotional vulnerability.

### c)    Defendant's Actual Knowledge and Exploitation of Vulnerability

565.    Defendants possessed direct, actual, and written knowledge of Plaintiff's severe psychological injury and vulnerability, derived explicitly from medical documentation submitted by Plaintiff's treating healthcare provider.

566.    The medical documentation explicitly put Defendants on notice that Plaintiff suffered a severe psychological injury caused directly by the workplace environment, which was actively exacerbated by a toxic, hostile work environment characterized by persistent harassment and psychological gaslighting.

567.    Despite this explicit medical notice, Defendants intentionally engaged in a calculated campaign of psychological violence designed to distort Plaintiff's reality, gaslight her into believing a wrongful suspension on August 28, 2022, never occurred, and falsely fabricate a narrative that Plaintiff abandoned her position.

568.    With full, actual knowledge of Plaintiff's medical status, Defendants maliciously fabricated and submitted a false report to the Board of Registered Nursing (BRN) with the specific intent to defame Plaintiff, jeopardize her professional license, and destroy her livelihood.

569.    Defendants' BRN report contained knowingly false statements, asserting that Plaintiff 'refused to comply with a Fitness for Duty (FFD) directive' and 'abandoned her position' in October 2020.

570.    In truth, and as documented by Defendants' own internal records, Plaintiff never abandoned her position. Rather, Defendants placed Plaintiff on an unpaid, unrequested medical leave and terminated her employment exactly one day after she agreed to the FFD evaluation.

571.    Defendants' targeted conduct in manufacturing and submitting a knowingly false report to a licensing board—specifically weaponized against a

71

**SECOND AMENDED COMPLAINT**

vulnerable employee whom Defendants knew to be experiencing severe, employer-induced psychological distress—exceeds all possible bounds of decent human behavior, is utterly intolerable in a civilized community, and constitutes extreme and outrageous conduct as a matter of law.

572. Defendants acted intentionally and recklessly, with full awareness that targeting a nurse's professional license while she was suffering from a documented psychological injury would cause severe, debilitating emotional distress.

573. As a direct and proximate result of Defendants' outrageous conduct, harassment, gaslighting, and malicious BRN reporting, Plaintiff suffered and continues to suffer severe emotional distress, profound anxiety and a catastrophic impact on her professional standing, necessitating ongoing therapy.

ii.     **Fact 2**:

d)     **Extreme and Outrageous Conduct:**

574. Defendants, and each of them, engaged in a continuous, coordinated, and calculated pattern of extreme and outrageous conduct directed at Plaintiff. This conduct went far beyond the boundaries of standard administrative error or employment disputes and was entirely intolerable in a civilized community.

e)     **The Coordinated Conspiracy to Harass:**

575. Defendants Kaiser and the BRN Defendants agreed, conspired, and acted in concert to subject Plaintiff to severe harassment and retaliation.

576. Defendants willfully participated in joint activity to merge Kaiser's private employer actions with the BRN's regulatory power, thereby depriving Plaintiff of constitutional rights under color of state law.

f)     **The Ultra Vires and Unauthorized Mechanism:**

577. In furtherance of the conspiracy, on or about July 13, 2022, Defendants permitted a subordinate BRN employee to issue a petition and order compelling Plaintiff to undergo a mental examination under California Business

72

**SECOND AMENDED COMPLAINT**

and Professions Code § 820.

578. The subordinate employee lacked the statutory authority to issue the July 13, 2022 order, rendering the action *ultra vires* and legally unauthorized.

579. Defendants acted intentionally, willfully, or with reckless disregard for Plaintiff's constitutional rights by executing this unauthorized order to coerce and harm Plaintiff professionally and personally.

**g)    Weaponization of Discriminatory Pretext:**

580. Defendants weaponized the ultra vires July 13, 2022 order as a pretext for discrimination based on Plaintiff's race and national origin.

581. To justify the order, Defendants maliciously fabricated official records falsely alleging Plaintiff was unfit for duty and suffered from severe mental illness.

582. Defendants specifically targeted Plaintiff's cultural background by inventing offensive tropes—including false allegations regarding "vampires and voodoo spirits"—to humiliate Plaintiff and destroy her professional reputation.

**h)    The Fraudulent Default Scheme:**

583. Defendants issued a fraudulent default decision on the false premise that Plaintiff failed to comply with unauthorized Section 820 orders.

584. Defendants falsely asserted that no Notice of Defense had been received, despite having actual knowledge that Plaintiff had timely and validly submitted a defense.

585. Defendants used this fraudulent default scheme to finalize the deprivation of Plaintiff's professional credentials and inflict severe emotional and professional distress.

**i)    Intent and Recklessness:**

73

**SECOND AMENDED COMPLAINT**

**586.** Defendants acted with the specific intent to cause Plaintiff severe emotional distress, or acted with absolute and reckless disregard of the high probability that their discriminatory tropes, unauthorized orders, and fraudulent default would cause such distress.

### j)    Causation and Severe Emotional Distress:

**587.** As a direct and proximate result of Defendants' extreme, outrageous, and conspiratorial conduct, Plaintiff suffered and continues to suffer severe and debilitating emotional distress, mental anguish, humiliation, and professional ruin, in an amount to be proven at trial.

### iii.    Fact 3:

**588.** Defendants cannot claim plausible deniability or independent parallel action. The actions of the BRN and the Kaiser entities directly intersected in an unbroken, continuous pattern of retaliatory conduct from **July 14, 2022**, through the present.

**589.** The temporal proximity between the BRN revoking Plaintiff's livelihood and the concurrent imposition of an insurmountable $10,000 financial barrier to court access demonstrates an integrated conspiracy.

**590.** This coordinated effort to insulate one another from civil liability and deny Plaintiff access to the courts was confirmed by the State Court's May 26, 2026, minute order.

**591.** Defendants acted intentionally, oppressively, and with a calculated purpose to inflict severe psychological and financial ruin upon Plaintiff.

### 592.    Causation

**593.** As a direct and proximate result of Defendants' coordinated, systemic campaign to completely *erase* Plaintiff's professional identity and block all avenues of legal redress, Plaintiff has suffered and continues to suffer severe, unyielding emotional distress, profound helplessness, clinical anxiety, and ongoing

74

**SECOND AMENDED COMPLAINT**

psychological trauma of a nature that no reasonable person should be expected to endure.

## VIII.   RELIEF SOUGHT

**594.**   WHEREFORE, Plaintiff **ESTHER TENDO ATAM** respectfully requests that judgment be entered in her favor and against Defendants **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; BOARD OF REGISTERED NURSING; LORETTA MELBY; GARY CARLIN; and DOES 1–100**, and that this Court grant the following relief:

### A.   DECLARATORY RELIEF

**595.**   A declaration that Defendants' acts, omissions, policies, customs, practices, and conduct described herein violated Plaintiff's rights under the United States Constitution, including the First and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act, and the California Fair Employment and Housing Act.

### B.   INJUNCTIVE RELIEF

**596.**   Preliminary and permanent injunctive relief prohibiting Defendants from continuing the unlawful conduct complained of herein and requiring Defendants to take all necessary corrective actions to remedy the constitutional and statutory violations suffered by Plaintiff.

### C.   ECONOMIC DAMAGES

**597.**   An award of all past and future economic damages according to proof at trial, including but not limited to:

**598.**   Lost wages;

**599.**   Lost earnings capacity;

**600.**   Lost employment opportunities;

75

**SECOND AMENDED COMPLAINT**

**601.** Lost retirement benefits;

**602.** Lost employment benefits;

**603.** Loss of professional opportunities; and

**604.** Other consequential economic losses.

**D.     NON-ECONOMIC DAMAGES**

**605.** An award of compensatory damages for:

**606.** Emotional distress;

**607.** Mental anguish;

**608.** Anxiety;

**609.** Humiliation;

**610.** Pain and suffering;

**611.** Reputational harm;

**612.** Loss of enjoyment of life; and

**613.** Other non-economic injuries according to proof.

**E.     PUNITIVE DAMAGES**

**614.** Punitive and exemplary damages against all Defendants whose conduct was malicious, oppressive, fraudulent, reckless, or in conscious disregard of Plaintiff's federally protected rights, in an amount sufficient to punish and deter similar misconduct.

**F.     CIVIL RIGHTS REMEDIES**

76

**SECOND AMENDED COMPLAINT**

**615.** All remedies available under 42 U.S.C. §§ 1983 and 1985, including such equitable and legal relief as may be necessary to fully redress the deprivation of Plaintiff's constitutional rights.

### G.    ADA AND FEHA REMEDIES

**616.** All relief authorized under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the California Fair Employment and Housing Act, Government Code § 12940 et seq., including equitable, compensatory, and statutory remedies.

### H.    COSTS AND FEES

**617.** An award of costs of suit, litigation expenses, expert witness fees where authorized by law, and reasonable attorney's fees to the fullest extent permitted by applicable statutes.

### I.    PREJUDGMENT AND POST-JUDGMENT INTEREST

**618.** Prejudgment and post-judgment interest at the maximum rate permitted by law.

### J.    DECLARATORY RELIEF CONCERNING LICENSE REVOCATION AND NPDB REPORTING

**619.** A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment Due Process rights by unlawfully revoking their Registered Nurse license. This constitutionally deficient administrative process directly deprived Plaintiff of a protected liberty and property interests without due process of law.

**620.** Specifically, the revocation relied upon an invalid Business and Professions Code § 820 order, denied Plaintiff a meaningful opportunity to be heard, and culminated in a default decision approved by an unauthorized subordinate who completely lacked the statutory authority to strip Plaintiff of their professional license.

77

**SECOND AMENDED COMPLAINT**

**621.** A declaration that the publication and reporting of the disciplinary action to the National Practitioner Data Bank ("NPDB") were unconstitutional and unlawful because the underlying disciplinary proceedings were void, conducted in violation of procedural and substantive due process, and resulted in a deprivation of Plaintiff's protected liberty and property interests.

### K.    INJUNCTIVE RELIEF REGARDING RN LICENSE

**622.** A preliminary and permanent injunction directing the California Board of Registered Nursing and its officers, successors, agents, employees, and persons acting in concert with them to:

**623.** Vacate and set aside the Default Decision and Order entered against Plaintiff;

**624.** Vacate all disciplinary findings arising from the unlawful administrative proceedings;

**625.** Reinstate Plaintiff's Registered Nurse license to active and unrestricted status;

**626.** Restore all rights, privileges, and benefits associated with Plaintiff's professional nursing license; and

**627.** Cease enforcement of any disciplinary restrictions arising from the challenged proceedings.

### L.    REMOVAL OF NPDB REPORTING

**628.** An Order directing Defendants to immediately withdraw, retract, correct, and permanently remove any adverse report, notation, disciplinary action, or derogatory entry submitted to the National Practitioner Data Bank ("NPDB") arising from the unlawful disciplinary proceedings challenged herein.

**629.** An Order requiring Defendants to notify all agencies, employers, licensing entities, credentialing organizations, and governmental bodies that

78

**SECOND AMENDED COMPLAINT**

received such information that the disciplinary action has been vacated and is no longer valid.

## M. PUNITIVE AND EXEMPLARY DAMAGES AGAINST KAISER DEFENDANTS

630. Plaintiff is entitled to punitive and exemplary damages against the Kaiser Defendants under 42 U.S.C. § 1983 and California Civil Code § 3294.

631. The Kaiser Defendants acted with malice, oppression, and fraud by intentionally manufacturing false, defamatory reports specifically designed to strip Plaintiff's professional license, target Plaintiff's mental fitness, and destroy Plaintiff's livelihood.

632. These coordinated, retaliatory actions were executed with conscious, reckless disregard for Plaintiff's federally protected rights, intentionally inflicting an insurmountable, near-fatal financial and professional burden designed to cause complete professional and psychological collapse.

633. The Kaiser Defendants engaged in this continuous, five-year campaign of targeted harassment and professional destruction with actual malice and full knowledge that their actions lacked any logical, factual or legal basis.

634. An award of punitive damages is necessary in an amount sufficient to punish the Kaiser Defendants and deter such egregious, bad-faith misconduct.

## N. SUCH OTHER RELIEF

635. For such other and further legal, equitable, declaratory, injunctive, compensatory, punitive, and special relief as the Court deems just, proper, and necessary to fully remedy the violations alleged herein.

## IX. DEMAND FOR JURY TRIAL

636. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Esther Tendo Atam hereby demands a trial by jury on all issues so triable, including all claims for compensatory and punitive damages arising under Title VII,

79

**SECOND AMENDED COMPLAINT**

the ADA, 42 U.S.C. §§ 1983, 1985, and related statutes.

**637.** A jury is especially appropriate here given the fact-intensive disputes over retaliation, discrimination, fabrication of evidence, and conspiracy. Determining credibility, motive, and damages requires a jury's judgment, not summary adjudication by state actors who previously disregarded Plaintiff's rights.

## X.    CERTIFICATE OF SERVICE

**638.    I** hereby certify that on June 24, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the registered participants. I further certify that I simultaneously served a true and correct copy of the foregoing document via email to the following counsel of record at the email addresses listed below notification of such filing to the following:

**Christian J Rowley**, crowley@seyfarth.com,
5266201420@filings.docketbird.com,
jblackwell@seyfarth.com,
ktruesdale@seyfarth.com,
ndavilla@seyfarth.com,
sfocalendar@seyfarth.com,
shobrien@seyfarth.com
**Brandon Keith Franklin** , brandon.franklin@clydeco.us,
lisa.vera@clydeco.us,
patricia.inabnet@clydeco.us
**Gary R Carlin**, gary@garycarlinlaw.com,
andrewj@garycarlinlaw.com,
bill@garycarlinlaw.com,
daniel.e@garycarlinlaw.com,
jahaira@garycarlinlaw.com,
kathy@garycarlinlaw.com,
marisol@garycarlinlaw.com,
vincent@garycarlinlaw.com
**Jamil R Ghannamjamil**, ghannam@doj.ca.gov,
Bruce.McGagin@doj.ca.gov,
Carrie.Vue@doj.ca.gov,
TORT-ECF@doj.ca.gov

80

**SECOND AMENDED COMPLAINT**

Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

## XI.   VERIFICATION

**639.**   I, Esther Tendo Atam, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 06/22/2025 at 13621 Arcturus Ave. Gardena CA 90249.

Respectfully submitted,

Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

DATED: June 24, 2026

Respectfully submitted,
**/s/ Esther Tendo Atam**

Plaintiff, In Pro Per
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com

81

**SECOND AMENDED COMPLAINT**