FILED

CLERK, U.S. DISTRICT COURT

06/29/26

CENTRAL DISTRICT OF CALIFORNIA

BY _____ AF _____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com
Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTHER TENDO ATAM, <br><br> *Plaintiff* <br><br> vs. <br><br> KAISER FOUNDATION HOSPITALS ET AL., <br><br> *Defendants* | **Case No.: 2:24-cv-05862-KK-AS** <br><br> **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)** |

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**1.** Plaintiff Esther Tendo Atam respectfully requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201, of the following documents and records maintained on this Court's docket and within the official

23

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

administrative record referenced throughout these proceedings.

2.    The documents identified below are matters of public record, are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned, and are proper subjects of judicial notice. Plaintiff requests judicial notice not for the truth of disputed factual assertions contained therein, but for the existence of the documents, the statements made therein, the procedural history reflected thereby, and the fact that such materials were before the Court during the pendency of these proceedings.

**DOCUMENTS FOR WHICH JUDICIAL NOTICE IS REQUESTED**

**Exhibit A**

Minutes and Order Re: Plaintiff's Motion for Summary Judgment, dated December 2, 2025.

**Exhibit 1**

Petition and Order for Mental and Physical Examination Pursuant to California Business and Professions Code § 820, approved and executed by Shannon Johnson on or about July 13, 2022.

**Exhibit 2**

Defendants' Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment, filed December 3, 2025.

**Exhibit 3**

Declaration of Loretta Melby submitted in connection with Defendants' Summary Judgment filings and Statement of Undisputed Facts, dated November 5, 2025.

**Exhibit 4**

Petition for Civil Harassment Restraining Order filed by Loretta Melby, dated February 6, 2023.

**Exhibit 5**

24

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

Magistrate Judge's Report and Recommendation issued May 19, 2026.

**Exhibit 6**

District Court Order Accepting the Report and Recommendation and Entering Judgment, dated June 17, 2026.

**Exhibit B**

Proof of Electronic Service reflecting service of Plaintiff's Rule 59 Motion and related filings.

**Exhibit C**

Plaintiff's Proposed Second Amended Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

3.     Federal Rule of Evidence 201(b) authorizes a court to take judicial notice of facts that are not subject to reasonable dispute because they are either generally known within the court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

4.     Federal courts routinely take judicial notice of their own records, dockets, orders, pleadings, and proceedings. See Headwaters Inc. v. United States Forest Service, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (court may take judicial notice of proceedings in other courts if they have a direct relation to matters at issue); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (judicial notice appropriate for court filings and matters of public record); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992); Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).

5.     The requested exhibits consist primarily of documents already filed in this action, documents expressly referenced in the Court's prior proceedings, and records relied upon by the parties during summary judgment briefing. Judicial notice of these materials is therefore appropriate and necessary to ensure an accurate understanding of the procedural and factual record.

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

1. Importantly, Plaintiff is not attempting to introduce entirely new evidence through this Request. Rather, Exhibits A through 6 consist of documents that were already before the Court, filed on the Court's docket, or submitted by the parties during the summary judgment proceedings. These materials formed part of the record available for consideration before issuance of the Report and Recommendation and before entry of Judgment.

2. Judicial notice is particularly appropriate because Plaintiff's Rule 59(e) Motion asserts that critical portions of the record were overlooked or omitted during the review process. Specifically, Plaintiff contends that evidence concerning the issuance of the Section 820 Order, Defendant Loretta Melby's admissions regarding delegated authority, and related constitutional issues were not substantively addressed in the Report and Recommendation despite being presented to the Court through prior briefing and evidentiary submissions.

3. A Rule 59(e) motion may properly be granted where necessary to correct manifest errors of law or fact or to prevent manifest injustice. See Allstate Insurance Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011); School District No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Judicial notice of the complete record is necessary to permit the Court to evaluate whether material evidence and arguments were omitted from consideration and whether amendment of the Judgment is warranted.

4. Plaintiff respectfully submits that the documents identified herein are directly relevant to the issues presented by Plaintiff's Rule 59(e) Motion and Plaintiff's request for leave to amend under Rule 15(a)(2). Consideration of these materials will assist the Court in conducting a complete review of the record and ensuring that all relevant constitutional, statutory, and procedural issues are fully considered.

5. WHEREFORE, Plaintiff respectfully requests that this Court take judicial notice of Exhibits A, 1 through 6, Exhibit B, and Exhibit C, and consider such materials in connection with Plaintiff's Motion to Alter or Amend Judgment pursuant to Federal Rule of Civil Procedure 59(e) and Motion for Leave to File a Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).

26

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

Dated: June 22, 2026
Respectfully submitted,

_____
ESTHER TENDO ATAM
Plaintiff, Pro Se

27

**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO ALTER OR AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e) AND FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(a)(2)**

# EXHIBITS:

| Exhibits | Document Description | Document Date | Page Range |
|---|---|---|---|
| EXHIBIT A | Proceeding: Minutes and Order Re: Plaintiff's Motion for Summary Judgment | 12/02/2025 | Pages 8 – 9 |
| EXHIBIT 1 | Petition and Order for Section 820 Exam | 07/13/2022 | Pages 11 – 15 |
| EXHIBIT 2 | Sur-Reply in support of Opposition to motion for summary judgment / Petition and Order | 12/03/2025 | Pages 17 – 21 |
| EXHIBIT 3 | Declaration Of Loretta Melby for Summary Judgement | 11/05/2025 | Pages 23 – 26 |
| EXHIBIT 4 | Pettion Of Loretta Melby for Civil Harassment Restraining Order | 02/06/2023 | Pages 28 – 33 |

| Exhibits | Document Description | Document Date | Page Range |
|---|---|---|---|
| EXHIBIT 5 | Magistrate Judge's Report and Recommendation | 05/19/2026 | Pages 35 – 75 |
| EXHIBIT 6 | Order accepting Magistrate Judge's Report and Recommendation | 06/16/2026 | Pages 77 – 79 |
| EXHIBIT B | Proof of Electronic Service | 06/22/2026 | Pages 81 – 82 |
| EXHIBIT C | Proposed Second Amended Complaint as to Loretta Melby in her Personal and Official Capacity | 06/22/2026 | Pages 84 |

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  CV-24-05862-KK-AGR                                    Date: December 2, 2025

Title     Esther Tendo Atam v. Kaiser Foundation Health Plan Inc., et. al.

Present: The Honorable: Alicia G. Rosenberg, United States Magistrate Judge

| K. Lozada | CS 12/02/2025 |
|-----------|---------------|
| Deputy Clerk | Court Reporter / Recorder |

| Plaintiff (appearing *pro se*): | Attorney(s) Present for Defendants: |
|-----------|---------------|
| Esther Tendo Atam | Christian J. Rowley |
| | Jamil R. Ghannam |
| | William Welden |

**Proceedings: MINUTES & ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 168)**

Case is called.  Plaintiff appears pro se.  Counsel state that their appearances.  The court hears oral argument.

At the hearing, Plaintiff raises, for the first time, an argument that the Section 820 order was not validly issued by the person who signed it.  The court therefore gives the affected parties the opportunity to file supplemental briefs on this narrow question.

IT IS ORDERED that:

1. The BRN Defendants may file a supplemental brief on the question of whether the Section 820 order was validly issued by the person who signed it by December 9, 2025.

2. If the BRN Defendants file a supplemental brief by December 9, 2025, Plaintiff may file a supplemental brief in response by December 16, 2025.

3. The court will take Plaintiff's motion for summary judgment under submission after the day the last supplemental brief is filed without further oral argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV-24-05862-KK-AGR                                      Date: December 2, 2025

Title      Esther Tendo Atam v. Kaiser Foundation Health Plan Inc., et. al.

|  | 0:45 |
|---|---|
| **Initials of Preparer** | kl |

# EXHIBIT 1

ROB BONTA
Attorney General of California
KIM KASRELIOVICH
Supervising Deputy Attorney General
THOMAS L. RINALDI
Supervising Deputy Attorney General
State Bar No. 206911
300 So. Spring Street, Suite 1702
Los Angeles, CA 90013
 Telephone: (213) 269-6310
 Facsimile: (916) 731-2126
*Attorneys for Petitioner*

**BEFORE THE
BOARD OF REGISTERED NURSING
DEPARTMENT OF CONSUMER AFFAIRS
STATE OF CALIFORNIA**

| | |
|---|---|
| In the Matter of the Petition and Order Compelling Mental and/or Physical Examination of: <br><br> **ESTHER TENAO ATAM** <br> 13621 Arcturus Ave <br> Gardena, CA 90249 <br><br> Registered Nurse License No. 761179 <br><br> Respondent. | Case No. 4002021005658 <br><br> **PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION** <br><br> [Bus. & Prof. Code § 820] |

Petitioner alleges:

## PARTIES

1.    Loretta Melby, R.N., M.S.N. (Petitioner) brings this Petition and Order Compelling Mental and/or Physical Examination solely in her official capacity as the Executive Officer of the Board of Registered Nursing ("Board"), Department of Consumer Affairs.

2.    On or about October 8, 2009, the Board of Registered Nursing issued Registered Nurse License Number 761179 to Esther Tenao Atam (Respondent). The Registered Nurse License was in full force and effect at all times relevant to the charges brought in this Petition and will expire on September 30, 2023, unless renewed.

///

1

Petition and Order Compelling Mental and/or Physical Examination

## JURISDICTION

3. This Petition and Order Compelling Mental and/or Physical Examination is brought before the Board, Department of Consumer Affairs under the authority of the following laws. All section references are to the Business and Professions Code ("Code") unless otherwise indicated.

4. Section 820 of the Code states:

Whenever it appears that any person holding a license, certificate or permit under this division or under any initiative act referred to in this division may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, the licensing agency may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency. The report of the examiners shall be made available to the licentiate and may be received as direct evidence in proceedings conducted pursuant to Section 822.

5. Section 821 of the Code provides that the licentiate's failure to comply with an order issued under section 820 shall constitute grounds for the suspension or revocation of the licentiate's certificate of license.

6. Section 822 of the Code states:

If a licensing agency determines that its licentiate's ability to practice his or her profession safely is impaired because the licentiate is mentally ill, or physically ill affecting competency, the licensing agency may take action by any one of the following methods:

(a) Revoking the licentiate's certificate or license.

(b) Suspending the licentiate's right to practice.

(c) Placing the licentiate on probation.

(d) Taking such other action in relation to the licentiate as the licensing agency in its discretion deems proper.

The licensing section shall not reinstate a revoked or suspended certificate or license until it has received competent evidence of the absence or control of the condition which caused its action and until it is satisfied that with due regard for the public health and safety the person's right to practice his or her profession may be safely reinstated.

7. Section 2764 of the Code provides, in pertinent part, that the expiration of a license shall not deprive the Board of jurisdiction to proceed with a disciplinary proceeding against the licensee or to render a decision imposing discipline on the license.

///

2

## CAUSE FOR MENTAL AND/OR PHYSICAL EXAMINATION
### (Possible Mental and/or Physical Illness Impairing Safe Practice)

8.    Respondent's ability to safely practice as a registered nurse may be impaired due to mental and/or physical illness. The circumstances are as follows:

9.    Respondent worked as a per diem nurse at Kaiser Permanente West Los Angeles Emergency Department from January 2020 to October 2020. On or about August 28, 2020, several staff members reported to the manager that Respondent was possibly having a mental breakdown. The manager subsequently met with Respondent, during which she displayed concerning behavior, which included bizarre ideas about voodoo and vampires. This prompted the manager to release Respondent from her licensed duties and request that she submit to a Fitness for Duty exam before she could return to work. Respondent was asked several times to submit to the exam, but she failed to comply and was therefore placed on administrative leave. As a result of her failure to comply, Respondent was subject to termination but before that could occur, she submitted her resignation.

10.    After Respondent separated from Kaiser, she began sending disturbing and threatening emails to various staff members. The emails referenced her being in a crisis, being psychotic, needing therapy, and having extreme rage. Respondent also threatened revenge against her former manager and was asked several times to cease from further communication with Kaiser staff.

11.    Based on the foregoing, Respondent is subject to an order of the Board requiring that Respondent be mentally and physically examined under Code section 820 in that it appears that Respondent may be unable to safely practice as a registered nurse because Respondent's ability to practice is impaired due to mental illness and/or physical illness affecting competency.

### ORDER

In consideration of the foregoing information, it appears that Respondent may be mentally and/or physically ill to the extent that Respondent's competency to practice safely as a registered nurse is impaired.

IT IS THEREFORE ORDERED, under Business and Professions Code section 820:

3

Petition and Order Compelling Mental and/or Physical Examination

1.    That Respondent Esther Tenao Atam shall submit to a mental and/or physical examination conducted by a physician specializing in psychiatry or a psychologist selected by the Board, or its designee, to determine whether Respondent is mentally and/or physically ill to such an extent as to affect her ability to practice as a registered nurse safely;

2.    That the examination(s) of Respondent shall be conducted at a time that is mutually convenient to Respondent and the examiner selected by the Board, but in no case later than thirty (30) days after the service of this Order;

3.    That the examination(s) shall continue from day to day until completed, and shall include any and all examinations and tests ordered and/or conducted by the examining psychiatrist or psychologist as considered necessary in their professional judgment.  The results of said examination(s) shall be reported by the examiner(s) in a detailed written report, setting forth their findings and conclusions, whereupon such reports shall be delivered to the Executive Officer of the Board, with a copy of said report(s) to be provided to Respondent; and

4.    That the failure of Respondent to comply with this Order by either refusing or failing to submit to the examinations, or by refusing or failing to cooperate with the examiners, shall constitute grounds for disciplinary action against her Registered Nurse License, pursuant to Business and Professions Code section 821.

**IT IS SO ORDERED THIS** _____13th_____ **day of** _____July_____ **, 2022.**

_Shannon Johnson_

_for_ LORETTA MELBY, R.N., M.S.N.
Executive Officer
Board of Registered Nursing
Department of Consumer Affairs
State of California
*Petitioner*

LA2022601601
65259714.docx

4

Petition and Order Compelling Mental and/or Physical Examination

## DECLARATION OF SERVICE BY CERTIFIED MAIL AND FIRST CLASS MAIL
(Separate Mailings)

Case Name:    **In the Matter of the Petition for 820 Examination of: Esther Tenao Atam**

Case No.:     **4002021005658**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On July 14, 2022, I served the attached **COVER LETTER; PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION** by placing a true copy thereof enclosed in a sealed envelope as certified mail with return receipt requested, and another true copy of the **COVER LETTER; PETITION AND ORDER COMPELLING MENTAL AND/OR PHYSICAL EXAMINATION** was enclosed in a second sealed envelope as first class mail in the internal mail collection system at the Office of the Attorney General at 300 South Spring Street, Suite 1702, Los Angeles, CA  90013-1230, addressed as follows:

Esther Tenao Atam
13621 Arcturus Ave
Gardena, CA 90249
*Respondent*

**Certified Article Number**

9414 7266 9904 2178 2445 26

**SENDER'S RECORD**

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 14, 2022, at Los Angeles, California.

_____
Declarant

_____
Signature

LA2022601601
65271776.docx

# EXHIBIT 2

.

ROB BONTA
Attorney General of California
JAMIL R. GHANNAM
Supervising Deputy Attorney General
State Bar No. 300730
 1300 I Street, Suite 125
 Sacramento, CA 95814
 Telephone: (916) 210-7674
 Fax: (916) 322-8288
 E-mail: Jamil.Ghannam@doj.ca.gov
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## CENTRAL DISTRICT

| | |
|---|---|
| **ESTHER TENDO ATAM,**<br><br>Plaintiff,<br><br>v.<br><br>**KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, GILLIAN FRIEDMAN, LORETTA MELBY, THE BOARD OF REGISTERED NURSING AND GARY CARLIN,**<br><br>Defendants. | Case No. 2:24-cv-05862-KK-AGR<br><br>**SUR-REPLY IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Fed. R. Civ. P. 56<br><br>Date: December 2, 2025<br>Time: 10:00 a.m.<br>Courtroom: 550, 5th Floor<br>Judge: The Honorable Alicia G. Rosenberg<br>Trial Date: TBD<br>Action Filed: 7/10/2024 |

## INTRODUCTION

At the hearing on the motion for summary judgment on December 2, 2025, the Court requested Defendants State of California, by and through the Board of Registered Nursing (BRN), Loretta Melby and Gillian Friedman (BRN Defendants) to provide additional briefing regarding the limited issue of whether Cal. Bus. & Prof. Code, § 820 orders and licensing accusations can be issued by persons

1

delegated to perform such tasks within the BRN, or whether those tasks must be performed by the executive officer of the BRN.

Review of pertinent legal authorities provides that these matters can be validly performed by others within the licensing agency. It is the licensing agencies which have the statutory authority to utilize the investigatory tool provided by Cal. Bus. & Prof. Code, § 820, and there is nothing in the statute's text that limits its use to only certain officers of any agency. California regulations further provide that the BRN's executive officer can delegate their authority to issue licensing accusations to his or her designee. The § 820 order and Accusation in this case are each a valid exercise of the BRN's statutory and regulatory authority.

As set forth in the BRN's motion to dismiss (Dkt. No. 156) and opposition to Plaintiff's motion for summary judgment (Dkt. No. 173), Plaintiff's motion for summary judgment should be denied and the BRN's motion to dismiss granted without leave to amend.

## ARGUMENT

### I. THE BRN HAS THE AUTHORITY TO ISSUE CAL. BUS. & PROF. CODE, § 820 ORDERS, AND THE BRN'S EXECUTIVE OFFICER CAN DELEGATE THEIR POWER TO ISSUE ACCUSATIONS

Cal. Bus. & Prof. Code, § 820 provides that those orders are issued by the licensing agencies, and the statute's text does not place a limitation upon which officer within the agency can issue it. "Whenever it appears that any person holding a license, certificate or permit under this division or under any initiative act referred to in this division may be unable to practice his or her profession safely because the licentiate's ability to practice is impaired due to mental illness, or physical illness affecting competency, *the licensing agency* may order the licentiate to be examined by one or more physicians and surgeons or psychologists designated by the agency." Cal. Bus. & Prof. Code, § 820 (emphasis added).

Nothing in the text of Business and Professions Code section 820 limits who within the licensing agency can authorize the issuance of any such order. "Section

2

820 applies to all healing arts practitioners licensed or certificated by the state[.]" *Alexander D. v. State Bd. of Dental Examiners*, 231 Cal. App. 3d 92, 95 (Ct. App. 1991). Cal. Bus. & Prof. Code, § 820 examinations are an investigatory tool, where the licensee faces no potential discipline until formal adjudicatory proceedings are commenced. (*Id.* at 97.) "[P]ublic agencies may delegate the performance of ministerial tasks, including the investigation and determination of facts preliminary to agency action." *California Sch. Emps. Assn. v. Pers. Comm'n*, 3 Cal. 3d 139, 144 (1970); see also Cal. Gov't Code § 7 ("Whenever a power is granted to, or a duty is imposed upon, a public officer, *the power may be exercised* or the duty may be performed *by a deputy of the officer* or by a person authorized, pursuant to law, by the officer, *unless this code expressly provides otherwise*.") Thus, employees of a licensing agency can employ the investigatory tool of issuing a § 820 order.

The BRN's executive officer then has the authority to direct the work of BRN staff and delegate their power to file accusations to his or her designee. The BRN shall appoint an executive officer who shall perform the duties delegated by the board and be responsible to the board for the accomplishment of those duties. Cal. Bus. & Prof. Code, § 2708(a). The BRN has statutory authority to "prosecute all persons guilty of violating this chapter." Cal. Bus. & Prof. Code, § 2715. "Every certificate holder or licensee, including licensees holding temporary licenses, or licensees holding licenses placed in an inactive status, may be disciplined as provided in this article." Cal. Bus. & Prof. Code, § 2750. In addition to the statutory definition of unprofessional conduct as grounds for discipline described in Cal. Bus. & Prof. Code, § 2761, failure to cooperate and participate in any board investigation pending against the licensee is unprofessional conduct that is grounds for discipline. See Cal. Code Regs. tit. 16, § 1441(b). The BRN shall discipline the holder of any license whose default has been entered or who has been heard and found guilty by suspending judgment, placing them upon probation, suspending the

3

right to practice, revoking their license, or taking any other action within the BRN's discretion it deems proper. See Cal. Bus. & Prof. Code, § 2759, (a)-(e).

California Code of Regulations, title 16, section 1405, authorizes the executive officer of the BRN to, among other duties, plan, direct supervise and organize the work of the staff of the board; and, to administer examinations, collect fees, issue licenses and permits and investigate complaints. Cal. Code. Regs., tit. 16, § 1405(a), (d) (Authority of Executive Officer). The executive officer further has the authority to delegate certain functions, including the power and discretion to receive and file accusations, issue subpoenas, set and calendar matters for hearing and perform other functions necessary to the efficient dispatch of the business of conducting the BRN's administrative hearings to his or her designee. See Cal. Code. Regs., tit. 16, § 1403 (Delegation of Certain Functions).

## II. THE § 820 ORDER AND ACCUSATION IN THIS MATTER ARE VALID

Pursuant to the foregoing statutes and regulations, there does not appear to be any impropriety concerning the issuance of the Cal. Bus. & Prof. Code, § 820 order concerning Plaintiff on July 18, 2022, or the resulting Accusation filed on November 14, 2022, and served upon Plaintiff on November 16, 2022.

Here, the Petition and Order Compelling Mental and/or Physical Examination was issued by Shannon Johnson, on behalf of Loretta Melby. (Dkt. No. 170, pp. 94-98.)[1] Cal. Bus. & Prof. Code, § 820 provides those orders are issued by licensing agencies, the executive officer of the BRN can plan, direct, supervise and organize the work of BRN staff regarding investigatory complaints, § 820 orders are considered an investigatory tool, and investigative fact finding is a ministerial task that can be delegated to agency employees. See Cal. Code. Regs., tit. 16, § 1405(a), (d); *Alexander D., supra*; *California Sch. Emps. Assn., supra*. Thus, Shannon Johnson, as the Chief of Enforcement for the BRN (Dkt. No. 173-3, p. 34), can

---

[1] Such materials are maintained as confidential by the BRN. However, it is Plaintiff that filed an unredacted copy of the petition with her summary judgment materials.

4

utilize the investigatory tool of issuing a Bus. & Prof. Code, § 820 order to a licensee on behalf of the BRN.

The subsequent Accusation against Plaintiff's license (Dkt. No. 173-3, pp. 5-19) signed by Shannon Johnson as the designee of Executive Officer Loretta Melby, is also valid because the executive officer of the BRN has the authority to delegate to his or her designee the authority to issue disciplinary accusations. Cal. Code. Regs., tit. 16, § 1403. Both items are a valid exercise of the BRN's statutory and regulatory authority.

## CONCLUSION

Licensing agencies have the statutory authority to utilize the investigatory tool provided by Cal. Bus. & Prof. Code, § 820, and there is nothing in the statute's text that limits its use to only certain officers of the agency. Additionally, the BRN's executive officer has the authority to delegate his or her authority to issue licensing accusations to his or her designee. The § 820 order and Accusation in this case are each a valid exercise of the BRN's statutory and regulatory authority.

As set forth in the BRN's motion to dismiss (Dkt. No. 156) and opposition to Plaintiff's motion for summary judgment (Dkt. No. 173), Plaintiff's motion for summary judgment should be denied and the BRN's motion to dismiss granted without leave to amend.

Dated: December 3, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California

**/s/ Jamil R. Ghannam**
JAMIL R. GHANNAM
Supervising Deputy Attorney General
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

LA2024304086
39490561

5

# EXHIBIT 3

.

ROB BONTA
Attorney General of California
JAMIL R. GHANNAM
Acting Supervising Deputy Attorney General
State Bar No. 300730
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7674
 Fax: (916) 322-8288
 E-mail: Jamil.Ghannam@doj.ca.gov
*Attorneys for Defendants State of California, by and through the Board of Registered Nursing, Loretta Melby and Gillian Friedman*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DISTRICT

| | |
|---|---|
| **ESTHER TENDO ATAM,** | Case No. 2:24-cv-05862-KK-AGR |
| Plaintiff, | **DECLARATION OF LORETTA MELBY** |
| **v.** | Fed. R. Civ. P. 56 |
| **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS, SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, GILLIAN FRIEDMAN, LORETTA MELBY, THE BOARD OF REGISTERED NURSING AND GARY CARLIN,** | Date: December 2, 2025<br>Time: 10:00 a.m.<br>Courtroom: 550, 5th Floor<br>Judge: The Honorable Alicia G. Rosenberg<br>Trial Date: TBD<br>Action Filed: 7/10/2024 |
| Defendants. | |

I, Loretta Melby, declare as follows:

1.   I am currently employed by defendant State of California, by and through the Board of Registered Nursing, (BRN) and have been since 2014. Since 2020, I have served as the Executive Officer of the BRN. The BRN is an independent agency within the State of California, under the Department of Consumer Affairs.

1

The BRN is the agency vested with the regulation of the practice of registered nursing in the state of California. (Cal. Bus. & Prof. Code, §§ 2701, 2708.1.) Specifically, the BRN is the entity vested with statutory authority to license, regulate, and discipline licensees in the profession of registered nursing within the state of California. As the Executive Officer of the BRN, my duties generally include, but are not limited to: As the Executive Officer of the BRN, my duties generally include, but are not limited to: under the general direction and leadership of the 9-member Board and its Administrative Committee, the Executive Officer (EO) of the Board of Registered Nursing functions as Chief EO who has overall responsibility for the management of the Board's resources and staff. The EO is also responsible for overseeing all aspects of the Boards regulatory requirements in the State of California which includes enforcement of general and advanced nursing practice standards, enforcement of professional conduct, maintenance of a recovery program for impaired nurses, and the requirement of mandatory continuing education and current practices for licensure renewal. As an expert in public policy, the EO is further responsible for interpreting and executing the intent of all Board policies to the public and to other governmental agencies. I have personal knowledge of the facts and opinions made within this declaration, and if called as a witness, I would and could testify competently thereto.

2. I have reviewed and am aware of Plaintiff Esther Atam's allegations against me in this proceeding, specifically, that she alleges I or others at the BRN conspired with unidentified individuals at Kaiser to revoke her nursing license.

3. I did not personally participate in the review of any nursing complaint sent to the BRN concerning Plaintiff's license to practice nursing. I also did not conduct, lead, or participate in the investigation into any complaint sent to the BRN concerning Plaintiff's license to practice nursing.

4. Review of complaints, investigations, and enforcement actions, if any, taken in response to complaints submitted to the BRN are performed by the BRN's

2

Enforcement Division, whose staff is supervised by, respectively, the Chief of Enforcement and Supervising Special Investigator. The BRN employs trained investigators to conduct investigations on behalf of the BRN. The BRN's Chief of Enforcement at the time concerning Plaintiff's license from 2021 to 2023, was Shannon Johnson. The Chief of Enforcement makes the determination concerning complaint and investigative assignments to BRN staff.

5. From 2021 to 2023, I did not have any written or verbal communications with any individuals from Plaintiff's workplace, Kaiser West Los Angeles Medical Center, or the Southern California Permanente Medical Group, regarding the Plaintiff, her work performance, or her capacity to perform the professional functions of a licensed nurse, or otherwise.

6. I did not author, review, or directly approve the Cal. Bus. & Prof. Code, § 820 order compelling an examination to determine fitness to practice regarding Plaintiff, in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson.

7. I did not author, review, or approve the Accusation regarding Plaintiff in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson.

8. I did not author, review, or determine the Default Decision and Order regarding Plaintiff in BRN Case No. 4002021005658. Such review and approval was performed by my designee and Chief of Enforcement, Shannon Johnson. My name appears in the top right corner bearing the seal of the BRN in order to certify the Default Decision and Order as a verified document of a public agency because such information regarding licenses are generally required to be made publicly available. (Cal. Bus. & Prof. Code, § 27.)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed November 5, 2025, at San Diego, California.

3

_____

Loretta Melby
Executive Officer
Board of Registered Nursing

LA2024304086
95659792.docx

4

# EXHIBIT 4

.

**CH-100**  **Request for Civil Harassment Restraining Orders**

Read *Can a Civil Harassment Restraining Order Help Me? (form CH-100-INFO)* before completing this form. Also fill out *Confidential CLETS Information (form CLETS-001)* with as much information as you know.

Clerk stamps date here when form is filed.

F I L E D
Clerk of the Superior Court

FEB 07 2023

By: V. Lozano, CLERK
EAST COUNTY DIVISION

**(1) Person Seeking Protection**

a. Your Full Name:
   Loretta Melby                    Age: 45

   Your Lawyer *(if you have one for this case)*
   Name: _____  State Bar No.: _____
   Firm Name: _____

b. Your Address *(If you have a lawyer, give your lawyer's information. If you do not have a lawyer and want to keep your home address private, you may give a different mailing address instead. You do not have to give telephone, fax, or email.)*

   Address: 1108 La Mesa Ave
   City: Spring Valley    State: CA   Zip: 91977
   Telephone: 619 322 4515   Fax: _____
   Email Address: ~~lorettamelby@aol.com~~ Loretta.melby@dia.ca.gov

Fill in court name and street address:

**Superior Court of California, County of San Diego**
☐ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
☑ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

Court fills in case number when form is filed.

**Case Number:**
37-2023-00005213-CU-HR-EC

**(2) Person From Whom Protection Is Sought**

Full Name: Esther Tenio Atam              Age: 39
Address *(if known):* 13621 Arcturus Ave
City: Gardena                State: CA   Zip: 90249

**(3) Additional Protected Persons**

a. Are you asking for protection for any other family or household members? ☑ Yes ☐ No   *If yes, list them:*

| Full Name | Gender | Age | Lives with you? | How are they related to you? |
|---|---|---|---|---|
| Kevin Gillette | M | 47 | ☑ Yes ☐ No | husband |
| Kristen Bass | F | 29 | ☑ Yes ☐ No | daughter |
| Jon Owen | M | 35 | ☑ Yes ☐ No | friend |
| | | | ☐ Yes ☐ No | |

☐ *Check here if there are more persons. Attach a sheet of paper and write "Attachment 3a—Additional Protected Persons" for a title. You may use form MC-025, Attachment.*

b. Why do these people need protection? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 3b—Why Others Need Protection" for a title.*

She has threatened "you take from me. I take from you." She knows my home address & I live with these people.

**This is not a Court Order.**

Judicial Council of California, www.courts.ca.gov
Rev. January 1, 2023, Mandatory Form
Code of Civil Procedure, §§ 527.6 and 527.9

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

CH-100, Page 1 of 6
→

Case Number:

37-2023-00005213-CU-HR-EC

**(4) Relationship of Parties**

How do you know the person in ②? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 4—Relationship of Parties" for a title.*

She is a licensee. I took her license away as part of my job at the CA Board of Registered Nursing.

**(5) Venue**

Why are you filing in this county? *(Check all that apply):*
a. ☐ The person in ② lives in this county.
b. ☒ I was harassed by the person in ② in this county.
c. ☒ Other *(specify):* I live in this county

**(6) Other Court Cases**

a. Have you or any of the persons named in ③ been involved in another court case with the person in ②?

☒ Yes   ☐ No   *(If yes, check each kind of case and indicate where and when each was filed.)*

| | Kind of Case | Filed in *(County/State)* | Year Filed | Case Number *(if known)* |
|---|---|---|---|---|
| (1) ☐ | Civil Harassment | | | |
| (2) ☐ | Domestic Violence | | | |
| (3) ☐ | Divorce, Nullity, Legal Separation | | | |
| (4) ☐ | Paternity, Parentage, Child Custody | | | |
| (5) ☐ | Elder or Dependent Adult Abuse | | | |
| (6) ☐ | Eviction | | | |
| (7) ☐ | Guardianship | | | |
| (8) ☐ | Workplace Violence | | | |
| (9) ☐ | Small Claims | | | |
| (10) ☐ | Criminal | | | |
| (11) ☒ | Other *(specify):* RN License # 761179 revocation | Sacramento, CA | 2022 | 40020210565B |

b. Are there now any protective or restraining orders in effect relating to you or any of the persons in ③ and the person in ②? ☒ No   ☐ Yes   *(If yes, attach a copy if you have one.)*

**(7) Description of Harassment**

Harassment means violence or threats of violence against you, or a course of conduct that seriously alarmed, annoyed, or harassed you and caused you substantial emotional distress. A course of conduct is more than one act.

a. Tell the court about the last time the person in ② harassed you.
   (1) When did it happen? *(provide date or estimated date):* first email received 7/21/2022 continues to escalate through today.
   (2) Who else was there? multiple other recipients in the many emails.

**This is not a Court Order.**

**Request for Civil Harassment Restraining Orders**
**(Civil Harassment Prevention)**

Case Number:
37-2023-00005213-CU-HR-EC

(7) a. (3) How did the person in (2) harass you? *(Explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(3)—Describe Harassment" for a title.*

threats are varied   states   I will send exact note for seven days straight and if anyone shall thinks this is just random ranch, I swear we shall find out!

States rv will come after me, she will not rest etc.

(4) Did the person in (2) use or threaten to use a gun or any other weapon?

☒ Yes ☐ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(4)—Use of Weapons" for a title.*

mentioned stabbing in emails

(5) Were you harmed or injured because of the harassment?

☐ Yes ☒ No *(If yes, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7a(5)—Harm or Injury" for a title.*

(6) Did the police come? ☐ Yes ☒ No

Michael Panino Investigator #358 Special officer various unit
DyE investigates has gone to her residence to ask her to stop.

If yes, did they give you or the person in (2) an Emergency Protective Order? ☐ Yes ☒ No

CHP threat assessment unit is involved
Investigate deft legal # 2072A Dignitary Protection Section - South

If yes, the order protects *(check all that apply):*

☐ Me   ☐ The person in (2)   ☐ The persons in (3).

Chris Drouin  Deputy Ranch San Diego Sheriff
filed incident report

*(Attach a copy of the order if you have one.)*

b. Has the person in (2) harassed you at other times?

☒ Yes ☐ No *(If yes, describe prior incidents and provide dates of harassment below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 7b—Previous Harassment" for a title.*

ongoing   escalating again after revocation of RV license 2/3/2013

This is not a Court Order.

**Case Number:**

37-2023-00006213-CU-HR-EC

### Check the orders you want. ☑

**(8) ☒ Personal Conduct Orders**

I ask the court to order the person in **(2) not** to do any of the following things to me or to any person to be protected listed in **(3)**:

a. ☐ Harass, intimidate, molest, attack, strike, stalk, threaten, assault (sexually or otherwise), hit, abuse, destroy personal property of, or disturb the peace of the person.

b. ☒ Contact the person, either directly or indirectly, in **any** way, including, but not limited to, in person, by telephone, in writing, by public or private mail, by interoffice mail, by email, by text message, by fax, or by other electronic means.

c. ☒ Other *(specify):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 8c—Other Personal Conduct Orders," for a title.*

Work place - including home office
California Board of Registered Nursing    1747 N. Market Blvd suite 150    Sacramento CA
95834

*The person in **(2)** will be ordered not to take any action to get the addresses or locations of any protected person unless the court finds good cause not to make the order.*

**(9) ☒ Stay-Away Orders**

a. I ask the court to order the person in **(2)** to stay at least 100 yards away from *(check all that apply):*

| | |
|---|---|
| (1) ☒ Me. | (8) ☒ My vehicle. |
| (2) ☒ The other persons listed in **(3)**. | (9) ☐ Other *(specify):* |
| (3) ☒ My home. | |
| (4) ☒ My job or workplace. | |
| (5) ☐ My school. | |
| (6) ☐ My children's school. | |
| (7) ☐ My children's place of child care. | |

b. If the court orders the person in **(2)** to stay away from all the places listed above, will he or she still be able to get to his or her home, school, or job?    ☒ Yes  ☐ No   *(If no, explain below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 9b—Stay-Away Orders," for a title.*

**(10) Firearms (Guns), Firearm Parts, and Ammunition**

Does the person in **(2)** own or possess any firearms (guns), firearm parts, or ammunition? This includes firearm receivers and frames, and any item that may be used as or easily turned into a receiver or frame (see Penal Code section 16531).    ☐ Yes  ☐ No  ☒ I don't know

*If the judge grants a protective order, the person in **(2)** will be prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive firearms (guns), firearm parts, and ammunition while the protective order is in effect. The person in **(2)** will also be ordered to turn in to law enforcement, or sell to or store with a licensed gun dealer, any firearms (guns) and firearm parts within their immediate possession or control.*

This is not a Court Order.

 

| Case Number: |
|---|
| 37-2023-00005213-CU-HR-EC |

**(11)** ☒ **Temporary Restraining Order**

I request that a Temporary Restraining Order (TRO) be issued against the person in ② to last until the hearing. I am presenting form CH-110, *Temporary Restraining Order,* for the court's signature together with this *Request.*

Has the person in ② been told that you were going to go to court to seek a TRO against him or her?

☒ Yes ☐ No *(If you answered no, explain why below):*

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 11—Temporary Restraining Order" for a title.*

due to emails rec .

**(12)** ☒ **Request to Give Less Than Five Days' Notice of Hearing**

*You must have your papers personally served on the person in ② at least five days before the hearing, unless the court orders a shorter time for service. (Form CH-200-INFO explains* What Is "Proof of Personal Service"? *Form CH-200,* Proof of Personal Service, *may be used to show the court that the papers have been served.)*

If you want there to be fewer than five days between service and the hearing, explain why below:

☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 12—Request to Give Less Than Five Days' Notice" for a title.*

Seven day cnnl down in emails rec. starting 2/12 for revocation of license 2/3/2023

**(13)** ☒ **No Fee for Filing or Service**

a. ☒ There should be no filing fee because the person in ② has used or threatened to use violence against me, has stalked me, or has acted or spoken in some other way that makes me reasonably fear violence.

b. ☒ The sheriff or marshal should serve (notify) the person in ② about the orders for free because my request for orders is based on unlawful violence, a credible threat of violence, or stalking.

c. ☐ There should be no filing fee and the sheriff or marshal should serve the person in ② for free because I am entitled to a fee waiver. *(You must complete and file form FW-001,* Application for Waiver of Court Fees and Costs *.)*

**(14)** ☐ **Lawyer's Fees and Costs**

I ask the court to order payment of my ☐ lawyer's fees ☐ Court costs.

The amounts requested are:

| Item | Amount | Item | Amount |
|---|---|---|---|
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |

☐ *Check here if there are more items. Put the items and amounts on the attached sheet of paper or form MC-025 and write "Attachment 14—Lawyer's Fees and Costs" for a title.*

**This is not a Court Order.**

| Case Number: |
| --- |
| 37-2023-00005213-CU-HR-EC |

**(15) ☐ Possession and Protection of Animals**

I ask the court to order the following:

a. ☐ That I be given the sole possession, care, and control of the animals listed below, which I own, possess, lease, keep, or hold, or which reside in my household.
   *(Identify animals by, e.g., type, breed, name, color, sex.)*

   _____
   _____

   I request sole possession of the animals because *(specify good cause for granting order):*

   ☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 15a—Possession of Animals" for a title.*

   _____
   _____
   _____

b. ☐ That the person in ② must stay at least_____ yards away from, and not take, sell, transfer, encumber, conceal, molest, attack, strike, threaten, harm, or otherwise dispose of, the animals listed above.

**(16) ☐ Additional Orders Requested**

I ask the court to make the following additional orders *(specify):*

   ☐ *Check here if there is not enough space for your answer. Put your complete answer on the attached sheet of paper or form MC-025 and write "Attachment 16—Additional Orders Requested," for a title.*

   _____
   _____
   _____

**(17)** Number of pages attached to this form, if any: _____

Date: _____2⎰6⎰2023_____

_____
*Lawyer's name (if any)*

▶ _____
*Lawyer's signature*

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: _____2⎮6⎮2023_____

Loretta Melby
*Type or print your name*

▶ Loretta Melby
*Sign your name*

This is not a Court Order.

Rev. January 1, 2023          **Request for Civil Harassment Restraining Orders**          CH-100, Page 6 of 6
                                   **(Civil Harassment Prevention)**

# EXHIBIT 5

.

Case 2:24-cv-05862-KK-AS   Document 220   Filed 06/29/26   Page 34 of 170   Page ID #:9060

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTHER TENDO ATAM | CASE NUMBER: |
| PLAINTIFF(S) | 2:24−cv−05862−KK−AGR |
| v. | |
| KAISER FOUNDATION HEALTH PLAN INC., et al. | |
| DEFENDANT(S) | **NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

TO:      All Parties of Record

You are hereby notified that the Magistrate Judge's Report and Recommendation has been filed on   May 19, 2026  .

Any party having Objections to the Report and Recommendation and/or order shall, not later than   June 11, 2026  , file and serve a written statement of Objections with points and authorities in support thereof before the Honorable   Magistrate Judge Alicia G. Rosenberg  . A party may respond to another party's Objections within 14 days after being served with a copy of the Objections.

Failure to object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of Objections and any Response thereto, or upon expiration of the time for filing Objections or a Response, the case will be submitted to the District Judge for disposition. Following entry of Judgment and/or Order, all motions or other matters in the case will be considered and determined by the District Judge.

The Report and Recommendation of a Magistrate Judge is not a Final Appealable Order. A Notice of Appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until entry of a Judgment and/or Order by the District Judge.

CLERK, UNITED STATES DISTRICT COURT

Dated:   May 19, 2026  

By:  /s/ *Karl Lozada*  
Deputy Clerk

M−51A (12/09)          NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ESTHER TENDO ATAM,

        Plaintiff,

    vs.

KAISER FOUNDATION HEALTH
PLAN INC., *et. al.*,

        Defendants.

Case No. CV-24-05862-KK (AGR)

**REPORT AND RECOMMENDATION**

    The court submits this Report and Recommendation to the Honorable Kenly Kiya Kato, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.  For the reasons set forth below, the court recommends the disposition set forth at the end of the Report.

## I.

## <mark>SUMMARY OF PERTINENT PROCEEDINGS</mark>

On July 10, 2024, Plaintiff Esther Tendo Atam, proceeding *pro se*, filed this civil rights action. (Dkt. No. 1.) The complaint names three categories of defendants: (1) Kaiser Foundation Health Plan Inc. ("KFHP"), Kaiser Foundation Hospitals ("KFH"), Southern California Permanente Medical Group ("SCPMG") (collectively, "Kaiser Defendants"); (2) Board of Registered Nursing, ("BRN"), BRN Executive Director Loretta Melby ("Melby"), and Deputy Attorney General Gillian Friedman ("Friedman") (collectively, "BRN Defendants"); and (3) private attorney Gary Carlin ("Carlin").

On August 18, 2025, Plaintiff was granted leave to file a First Amended Complaint ("FAC") against all Defendants. (Dkt. No. 137.) Plaintiff filed the operative FAC on September 18, 2025. (Dkt. Nos. 144, 147.)

The following motions are pending before the court:

1. The Kaiser Defendants' motion to dismiss. (Dkt. Nos. 154, 155.) Plaintiff filed an opposition. (Dkt. Nos. 161, 162.)

2. The BRN Defendants' motion to dismiss. (Dkt. No. 156.) Plaintiff filed an opposition. (Dkt. No. 167.)

3. Plaintiff's motion for leave to file a Second Amended Complaint. (Dkt. No. 163, 180.) Plaintiff filed a supplemental brief. (Dkt. No. 165.) The BRN Defendants filed an opposition. (Dkt. No. 166.)

4. Plaintiff's motion for summary judgment.[1] (Dkt. No. 168.) Plaintiff filed an opening brief. (Dkt. Nos. 168-70.) All Defendants filed opposition briefs. (Dkt. Nos. 173-75.) Plaintiff filed a reply and supplemental

---

[1] The court construes Plaintiff's ex parte application regarding the timeliness of her motion for summary judgment as a supplemental brief. (Dkt. No. 180.)

briefs.  (Dkt. Nos. 180, 181, 187, 199-203.) [2]  The BRN and Plaintiff filed supplemental briefs in response to a court order.  (Dkt. Nos. 190, 194.)

    5.  Defendant Carlin's motion to set aside default.  (Dkt. No. 177.)  Plaintiff filed an opposition.  (Dkt. No. 186.)

    6.  Plaintiff's motion for default judgment against Defendant Carlin.  (Dkt. No. 182, 183.)  Defendant Carlin filed an opposition.  (Dkt. No. 195.)  Plaintiff filed a reply.  (Dkt. No. 197.)

The motions have been taken under submission.

**II.**

## FACTUAL BACKGROUND

Plaintiff was formerly employed as a registered nurse by SCPMG.  (FAC. ¶¶ 17, 21.)  The BRN is a California regulatory body that licenses and regulates registered nurses.  (*Id.* ¶ 25.)  Defendant Melby is the Executive Officer of the BRN.  (*Id.* ¶ 26.)  Defendant Friedman is a Deputy Attorney General who represented the BRN in proceedings that culminated in the revocation of Plaintiff's registered nursing license.  (*Id.* ¶ 30.)  Defendant Carlin is a private attorney.  (*Id.* ¶ 33.)

Plaintiff alleges that she experienced discrimination and bullying during her employment by SCPMG.  (*Id.* ¶ 392.)  Plaintiff alleges that she reported the bullying and harassment to SCPMG management, but SCPMG failed to conduct a proper investigation. (*Id.* ¶ 397-98.)  Plaintiff alleges that SCPMG retaliated against her for raising her complaint by placing her on a verbal suspension.  (*Id.*)  Plaintiff's employment was terminated on March 18, 2021.  (*Id.* ¶ 189.)

---

[2] On February 6, March 11, March 29, April 16, and May 6, 2026, Plaintiff filed five additional pleadings relating to the motions under consideration in this R&R.  (Dkt. Nos 199-203).  The Court exercises its discretion to consider these filings despite any procedural irregularities or timeliness issues.  Plaintiff is cautioned against serial filings in the future without leave of court.  Such serial filings delay the court's ability to take motions under submission.  The court also considers BRN's reply brief notwithstanding any timeliness issues.

Plaintiff hired Defendant Carlin to represent her in litigation against her former employer. On November 21, 2021, he filed a complaint against KFH on her behalf. (*Id.* ¶ 48.) According to Plaintiff, Carlin named solely KFH as a defendant instead of also naming SCPMG and KFHP. KFH was able to obtain summary judgment on the ground that no employment relationship existed between it and Plaintiff. (*Id.* ¶ 49.) KFH claimed that the summary judgment covered all Kaiser entities. (*Id.*) On December 5, 2022, Plaintiff filed another lawsuit against the Kaiser entity SCPMG and was subsequently labeled a vexatious litigant by the state court. (*Id.* ¶¶ 56-59, 84.)

On July 14, 2022, Plaintiff received a Petition and Order "purporting" to compel Plaintiff to submit to a mental and/or physical examination under Cal. Bus. & Prof. Code § 820. (*Id.* ¶ 115.) Plaintiff alleges that the petition rested on fabricated grounds and was intended to tarnish Plaintiff's reputation and discredit her professionally. (*Id.* ¶¶ 116-18.) She alleges collusion between the BRN Defendants and the Kaiser Defendants based on the timing of the petition and the vexatious litigant order. (*Id.* ¶ 126.)

Plaintiff alleges that the BRN Defendants defamed Plaintiff by distributing false and damaging information about her mental health and professional competence to the National Practitioner Data Bank (NPDB) and the Department of Health Care Services (DHCS). (*Id.* ¶¶ 174-76.) Plaintiff further alleges that the BRN's § 820 proceedings were a sham to retaliate against Plaintiff for complaining about discrimination. (*Id.* ¶¶ 171-72.) Plaintiff alleges the BRN Defendants' actions were motivated by racial and cultural animus. Plaintiff claims the BRN Defendants "weaponiz[ed] Plaintiff's cultural expressions, distort[ed] her words into claims of irrationality, and pursu[ed] false mental health stigmatization." (*Id.* ¶¶ 181-82.)

## III.

## <mark>LEGAL STANDARDS</mark>

### A. Motion to Dismiss

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citations and internal quotation marks omitted).

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

A *pro se* complaint is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a *pro se* civil rights complaint, the plaintiff should be given "notice of the deficiencies in his or her complaint" and provided "an opportunity to amend the complaint to overcome deficiencies unless it is clear [the deficiencies] cannot be cured by amendment." *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987); *see also Lopez v. Smith*, 203 F.3d 1122,

5

1129 (9th Cir. 2000) (en banc). Nevertheless, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez*, 203 F.3d at 1129.

### B. **Motion to Vacate Entry of Default**

The court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). In assessing whether good cause exists, courts look at three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default judgment would prejudice the other party. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). These three factors are disjunctive, meaning that default may be entered or set aside if any of these three factors are met. *Id.* (quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir.2000)). The test is the same as for vacating a default judgment under Fed. R. Civ. P. 60(b), but the three factors are more liberally interpreted when considering relief from entry of default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (emphasis in original; citations and quotation marks omitted). "[T]o treat a failure to answer as culpable, the [defendant] must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process." *Id.* (citation and quotation marks omitted). The defendant "cannot be treated as culpable simply for having made a conscious choice not to answer." *Id.* In general, a defendant's failure to respond to the complaint is considered culpable for purposes of the good cause factors when there is no explanation of the default

6

inconsistent with a "devious, deliberate, willful, or bad faith failure to respond." *Id.* (citation omitted). Simple carelessness is not enough. *Id.*

## C. **Motion for Default Judgment**

"[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984). As such, default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). "Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id*. at 1471-72.

## D. **Motion to File Second Amended Complaint**

"After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003); Fed. R. Civ. P. 15(a)). "Although leave to amend 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), it 'is not to be granted automatically.'" *Zivkovic v. Southern Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted). Rather, "[t]he court considers five factors in assessing the propriety of leave to amend — bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). These factors are not given equal weight. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845

7

(9th Cir. 1995), *superseded by statute on other grounds,* Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1226 (1996). Prejudice to the opposing party is also a crucial factor. *See Eminence Capital*, 316 F.3d at 1052 ("it is the consideration of prejudice to the opposing party that carries the greatest weight").

### E. Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex Corp.,* 477 U.S. at 323-24). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986).

The court must view all evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in its favor. *Anderson*, 477 U.S. at 255. A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (internal quotation marks and citations omitted). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

8

This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

Not every factual dispute will defeat summary judgment. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphases in original, citation and quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted). Put another way, when a plaintiff moves for summary judgment on a claim for relief, the plaintiff "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also* Hon. A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial,* § 14:140 (rev. ed. 2015) (when plaintiff seeks summary judgment, its burden is to demonstrate (1) with admissible evidence that no genuine dispute of material fact exists as to any element of its claim for relief, entitling it to judgment as a matter of law, and (2) the lack of any genuine dispute of material fact as to defendant's affirmative defenses).

## IV.

## BRN DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

The BRN Defendants request that the court take judicial notice of certain

proceedings in *The Matter of Accusation against: Esther Tenao Atam*, Case No. 4002021005658 ("Accusation") in connection with their motion to dismiss the complaint. Specifically, they seek judicial notice that: (1) on November 14, 2022, an Accusation was filed by the BRN against Plaintiff (Declaration of Jamil R. Ghannam ("Ghannam Decl."), Exh. B at 4-6); (2) the Accusation, Statement to Respondent, Notice of Defense, Request for Discovery, and Discovery statutes were served by mail on or about November 16, 2022 to Plaintiff's address of record with the BRN (*Id.*, Exh. B at 16); (3) the BRN issued a Default Decision and Order against Plaintiff on January 6, 2023 (*Id.*, Exh. C at 1-3); (4) the Default Decision and Order found that Plaintiff was served the Accusation and certain other documents by mail on or about November 16, 2022, but she never responded to the Accusation and did not file a Notice of Defense (*Id.*, Exh. C at 2 ¶¶ 3, 6); (5) the Default Decision and Order found that Plaintiff was in default, and BRN would take action regarding the Accusation based on the evidence in the record without a hearing (*Id.*, Exh. C at 2 ¶¶ 7-8); and (6) that Defendant Friedman was one of three attorneys listed on the Accusation (*Id.*, Exh. B at 1, 4, 11). (*See* Dkt. No. 31-3.) Plaintiff did not oppose the BRN Defendants' request for judicial notice.

"Judicial notice may be taken of records of state agencies and other undisputed matters of public record." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004). Courts may not take judicial notice of disputed facts contained within public records. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

Plaintiff does not oppose the BRN Defendants request for judicial notice. The BRN Defendants' request for judicial notice is GRANTED.

10

## V.

**BRN DEFENDANTS' MOTION TO DISMISS**

On August 18, 2025, the District Court adopted this Court's Report and Recommendation ("Report") with respect to the BRN Defendants' motion for judgment on the pleadings.  (Dkt. No. 137.)  The District Court granted leave to amend only as to the "(i) federal official capacity claims against Defendant Melby for prospective injunctive relief; (ii) federal individual capacity claims against Defendants Melby and Friedman; and (iii) due process claims under the California Constitution against Defendants Melby and Friedman for relief other than damages." (*Id.*)  The District Court ordered that should Plaintiff file a First Amended Complaint, it must "be complete in and of itself without reference to a prior complaint, attachment, exhibit, pleading, or other document."  (*Id.*)

The Court dismissed without leave to amend "(i) all federal claims against the BRN and Deputy Attorney General Gillian Friedman ("Friedman") (collectively, "BRN Defendants") in her official capacity under the Eleventh Amendment; (ii) all federal claims against Defendant BRN Executive Director Loretta Melby, ("Melby"), in her official capacity except for prospective injunctive relief; (iii) all damages claims for violation of the California Constitution; and (iv) all state law tort claims against the BRN Defendants."  (*Id.*)

Despite the Order, it appears that Plaintiff's FAC includes claims that were dismissed without leave to amend.  It is recommended that the claims previously dismissed without leave to amend be dismissed with prejudice for the same reasons previously articulated in the Report and the District Court order.

In addition, the BRN Defendants move to dismiss Plaintiff's FAC on the grounds that (1) Plaintiff fails to state sufficient facts to establish claims against Defendant Melby in her personal capacity or in her official capacity for prospective injunctive relief; (2) Plaintiff fails to state facts sufficient to establish claims against Defendant Friedman in her personal capacity; (3) Plaintiff fails to allege facts

11

sufficient to show violations of Plaintiff's due process rights with respect to her nursing license; and (4) Plaintiff fails to state plausible claims for relief against the BRN Defendants under the Americans with Disabilities Act ("ADA") or criminal statutes.[3]

### A. <mark>Individual Capacity Claims Against Defendant Loretta Melby</mark>

The FAC alleges that Defendant Melby initiated the § 820 proceedings in an effort "to protect Kaiser, to silence Plaintiff, and to permanently damage her professional credibility." (FAC ¶ 275.) Specifically, Plaintiff argues that the fact that the BRN's § 820 "petition was filed on the same day that the Kaiser Defendants obtained a court order that Plaintiff was not a Kaiser employee is evidence of coordinated efforts on the part of the BRN Defendants and the Kaiser Defendants. (FAC ¶ 279.) Defendant Melby thereby enabled and furthered a conspiracy of "long-standing abuse coordinated and rallied by Kaiser" against Plaintiff in the form of psychological abuse and torment. (FAC ¶¶ 276-77.)

The BRN Defendants argue that Plaintiff's FAC contains no facts indicating that Defendant Melby took any actions in an individual capacity to initiate or participate in a conspiracy. The BRN Defendants also argue that Plaintiff's FAC fails to establish that Defendant Melby participated in any part of the proceedings resulting in the revocation of Plaintiff's nursing license. Plaintiff argues that her FAC sufficiently pleads claims against Defendant Melby because it alleges that "(1) Defendant Melby personally participated in retaliatory actions, including approving and signing petitions containing false and discriminatory statements against Plaintiff (FAC ¶¶ 232, Exhibits 10-15, pg 250-297); (2) the BRN defendants ratified and advanced Kaiser's retaliatory efforts in the BRN proceedings, including misuse of prefiling orders and support of vexatious litigant

---

[3] Because the court recommends dismissal of all claims against the BRN Defendants with prejudice, the court need not address the BRN Defendants' argument that the FAC fails to satisfy Fed. R. Civ. P. 8.

designations (FAC ¶¶ 249), and (3) Defendant Melby's actions were not ministerial but deliberate, aimed at depriving Plaintiff of her constitutional rights." (Dkt. No. 161 ¶¶ 74-76.)

### 1. Standard

"On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*, at 166.  However, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir. 1982).

Claims of conspiracy under § 1985 are subject to a heightened pleading standard which requires specific facts. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) To allege a conspiracy, Plaintiff must allege facts to support an "agreement or meeting of the minds to violate constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (quotation marks omitted). Conclusory allegations of a conspiracy are insufficient to state a § 1983 claim." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989)." Rather, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (quotation and citation omitted). Finally, parallel independent conduct is insufficient to establish a conspiracy. *Gaetz v. City of Riverside*, 722 F.Supp.3d 1054, 1070 (C.D. Cal. 2024).

### 2. Discussion

Plaintiff's FAC does not include any facts demonstrating how Defendant Melby caused any violation of Plaintiff's constitutional rights in her individual capacity.  Similarly, the FAC does not allege facts to support Plaintiff's conclusory allegations of conspiracy between Defendant Melby and the Kaiser Defendants to deprive her of her constitutional rights.  The fact that the BRN issued the order for examination under § 820 on July 14, 2022, on the same date that the Superior

13

Court issued a ruling on Kaiser's motion for summary judgment in Plaintiff's state court action (Dkt. No. 147 at 156-58; Dkt. No. 170 at 76-79) does not raise a plausible inference of conspiracy between Melby or any BRN defendant, on the one hand, and a Kaiser Defendant, on the other hand.  *Ashcroft*, 556 U.S. at 678 (requiring allegation of facts sufficient to raise "reasonable inference that the defendant is liable for the misconduct alleged" and not merely "sheer possibility that a defendant has acted unlawfully").

Given that Plaintiff was previously given an opportunity to amend, it is recommended that Plaintiff's claims against Defendant Melby be dismissed with prejudice.  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999) (district court's discretion to deny leave to amend is "particularly broad" when plaintiff previously received leave to amend).

## B. Official Capacity Claims for Prospective Injunctive Relief

Plaintiff argues that her FAC "alleges specific due process violations by BRN defendants, including their collusion with Kaiser to impose unlawful prefiling orders, their support of a $10,000 vexatious litigant bond, and their denial of notice and meaningful hearing rights during the revocation process (FAC ¶¶ 249, Exhibits 10-15, 250-297)."

### 1. Procedural Due Process

The Fourteenth Amendment provides that a state shall not deprive a person of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV.  "To obtain relief on § 1983 claims based upon procedural due process, the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process."  *Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011).  A professional license is considered property protected by the Constitution, and an agency cannot deprive a licensee of a license without due process.  *Mishler v. Nevada State Bd. of Medical Examiners*, 896 F.2d 408,

14

409-10 (9th Cir. 1990); *see also Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996) (holding physician has constitutionally protected interest in medical license).

The essence of procedural due process is that "individuals whose property interests are at stake are entitled to 'notice and an opportunity to be heard.'" *Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Due process requires "an opportunity for some kind of hearing prior to the deprivation of a significant property interest." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) (emphasis added). The state must afford an opportunity to be heard at a meaningful time and in a meaningful manner. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982). However, a state "certainly affords due process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule." *Id.*

The BRN is responsible for administering the statutory scheme governing the licensing of registered nurses and for disciplining registered nurses it has licensed. Cal. Bus. & Prof. Code §§ 2701, 2732, 2750, 2759. The BRN may order a licensee to undergo an examination whenever it appears that the licensee's ability to practice his or her profession is impaired due to mental illness or physical illness affecting competency.[4] Cal. Bus. & Prof. Code § 820. Failure to comply with a § 820 order "shall constitute grounds for the suspension or revocation of the licentiate's certificate or license." Cal. Bus. & Prof. Code § 821. The Board "is not required to show good cause for a section 820 order nor is a licensee entitled to challenge the basis for the order before submitting to the

---

[4] *See* Cal. Bus. & Prof. Code § 820 (authorizing "licensing agency" to order licentiate to be examined). At the hearing, Plaintiff argued that someone signed the § 820 order on the Melby's behalf. Nothing prohibits the executive officer from having a designee sign on her behalf. *See* Cal. Bus. & Prof. Code § 2708(a) (appointment of executive officer); 16 Cal. Code Regs. § 1405 (authority of executive officer); *Id.* § 1403 (delegation to executive officer's designee).

15

required examination." *Fettgather v. Bd. of Psychology*, 17 Cal. App. 5th 1340, 1342 (2017); *Lee v. Bd. of Registered Nursing*, 209 Cal. App. 4th 793, 796-98 (2012).

A § 820 examination "is an investigatory, not an accusatory, procedure," and, as such, courts have been unwilling to find that these procedures violate due process. *See Arnett v. Dal Cielo*, 14 Cal. 4th 4, 9 (1996). "[R]equiring [a licensee] to submit to the section 820 mental examination and challenge the results of that examination only after a formal accusation alleging mental illness is brought" strikes "the appropriate balance between the private and public interest." *Id.* at 1348 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *see Fettgather*, 17 Cal. App. 5th at 1347 ("It is settled that [the licensee's] right to practice was not implicated by the order for a mental examination . . . as [t]he order did not immediately threaten his license, but was merely an authorized administrative inquiry, falling squarely within the police power to protect the public.") (citations omitted)).

Plaintiff's FAC, its attachments, and documents of which the court has taken judicial notice demonstrate that: On July 14, 2022, the BRN issued a § 820 order that Plaintiff undergo a mental examination. Plaintiff did not comply with the order. On November 14, 2022, the BRN filed an Accusation charging Plaintiff with failure to comply with the § 820 order. On January 6, 2023, the BRN issued a Default Decision and Order finding that Plaintiff had waived her right to a hearing by failing to file a Notice of Defense within 15 days after service of the Accusation, and that the BRN would take action based on the evidence in the record without a hearing. (Ghannan Decl., Exh. C.) The Default Decision and Order found the charge supported by clear and convincing evidence, and revoked Plaintiff's nursing license. (*Id.*)

Like her initial complaint, Plaintiff's FAC does not plausibly allege a deprivation of her federal due process rights by virtue of the issuance of the § 820

16

order.  The § 820 order "was merely part of the investigative phase" and did not impair Plaintiff's right to practice as a registered nurse, "which could only happen with a successful accusation leading to the Board imposing discipline."  *Lee*, 209 Cal. App. 4th at 798 (denying due process claim of registered nurse who did not comply with § 820 order and argued order should not have been issued).

Plaintiff's claims of a federal due process violation in connection with the revocation of her registered nursing license after the Accusation was filed fair no better.  Plaintiff alleges that she filed a formal objection to the § 820 order on July 26, 2022 and filed a Notice of Defense on August 8, 2022 before the Accusation was filed.  (FAC ¶ 120.)  Plaintiff does not claim to have filed a Notice of Defense "[w]ithin 15 days after service of the accusation," but rather that she filed a Notice of Defense before the Accusation was filed.  (FAC ¶ 124.)

The facts as alleged in Plaintiff's FAC fall short of a federal due process violation.  Plaintiff's FAC demonstrates that Plaintiff "failed to comply with an Order issued pursuant to Business and Professions Code section 820 by failing to file her Notice of Defense within 15 days of service of the accusation."[5]  Thus, Plaintiff's failure to comply with the § 820 order does not constitute a federal due process violation.  *See Fettgather*, 17 Cal. App. 5th at 1348; *Lee*, 209 Cal. App. 4th at 798 (finding irrelevant, in § 821 proceeding based on failure to comply with § 820 order, plaintiff's argument that § 820 order should not have issued).

Given that Plaintiff previously had an opportunity to amend, it is recommended that Plaintiff's procedural due process claim against the BRN Defendants be dismissed without further leave to amend.  *Griggs*, 170 F.3d at 879.

---

[5]  The record before the court does not contain any indication that Plaintiff challenged the BRN's Default Decision and Order in a writ proceeding pursuant to Cal. Civ. Proc. Code § 1094.5.

## 2. <mark>Substantive Due Process</mark>

Plaintiff's substantive due process claim arises from her allegation that the BRN "reli[ed] on fabricated allegations and procedural irregularities resulted in revocation [of Plaintiff's nursing license] without the constitutionally required safeguards." (FAC ¶ 297.)

To state a substantive due process claim, Plaintiff must allege a "'government deprivation of life, liberty, or property.'" *See Costanich v. Dep't of Social & Health Serv.*, 627 F.3d 1101, 1110-11 (9th Cir. 2010) (analyzing deliberate fabrication of evidence claim in foster care license revocation proceeding under substantive due process). "To sustain a deliberate fabrication of evidence claim, [courts] have held that a plaintiff must, '*at a minimum*, point to evidence that supports at least one of the following two propositions: (1) Defendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.'" *Id.* at 1111 (citation omitted; emphasis in original).

Plaintiff's FAC does not allege facts to support a deliberate fabrication of evidence claim under either theory. Just as in *Lee*, Plaintiff challenges her employer's allegations against her as false. The *Lee* court concluded that such a challenge "might have been relevant if the revocation was actually based on a claimed lack of mental fitness. But matters never got to that stage." *Lee*, 209 Cal. App. 4th at 798. Instead, Lee's license as a registered nurse was revoked in a § 821 proceeding after she refused to submit to a mental examination pursuant to a § 820 order. *Id.* at 795-96; *see also Fettgather*, 17 Cal. App. 5th at 1348 (following the analysis in *Lee*).

Similarly, Plaintiff has not plausibly alleged a deprivation of her substantive due process rights by virtue of the § 820 order, which was "part of the

investigative phase" and did not impair Plaintiff's right to practice as a registered nurse, "which could only happen with a successful accusation leading to the Board imposing discipline." *Lee*, 209 Cal. App. 4th at 798. The government's interest in compliance with the § 820 order is compelling. *Fettgather*, 17 Cal. App. 5th at 1349. At the same time, the licentiate's right to privacy "is adequately protected by the statutory mechanism that keeps the investigation confidential up until the filing of an accusation charging incompetency on the merits." *Id.* at 1348; *Id.* at 1347 (noting Board is authorized to consider § 820 examination in closed session under Cal. Bus. & Prof. Code § 827; noting § 820 examination report is confidential until accusation is filed under Cal. Bus. & Prof. Code § 828). Requiring compliance with the § 820 order "protects a licentiate from groundless charges because it allows the Board to initially and confidential[ly] determine that mental state prior to the bringing of any accusation to revoke a license." *Id.* at 1349. Moreover, Plaintiff's FAC does not allege facts supporting a deliberate fabrication of evidence claim in connection with the § 821 proceeding.

Given that Plaintiff previously had an opportunity to amend, it is recommended that Plaintiff's substantive due process claim against the BRN Defendants be dismissed without further leave to amend. *Griggs*, 170 F.3d at 879.

### C. Claims Against Friedman

Plaintiff's FAC alleges that Defendant Friedman served as an attorney to the BRN on the Accusation filed in Case No. 4002021005658, and drafted legal pleadings and advanced legal theories that contained false and defamatory allegations against Plaintiff. (FAC ¶¶ 39-42.) Plaintiff alleges that these proceedings ultimately resulted in revocation of her nursing license. (FAC ¶ 39.) Plaintiff alleges that Friedman "acted personally and intentionally in revoking Plaintiff's nursing license and retaliating against her for engaging in protected

activity."[6]  (FAC ¶¶ 302, 568-69.)

The BRN Defendants argue that these allegations implicate Defendant Friedman's absolute immunity as a prosecuting attorney.  Plaintiff argues that Friedman "engaged in investigative and conspiratorial acts with Kaiser, supporting misuse of prefiling orders and enforcement tactics (FAC ¶¶ 293)."

Prosecutors are entitled to absolute immunity from § 1983 lawsuits for their actions in initiating and presenting the government's case. *Imbler v. Pachtman* (1976) 424 U.S. 409, 427-31.  Courts have held that deputy attorney generals representing medical boards have prosecutorial immunity from lawsuits for any actions they commit while discharging their litigation-related duties during proceedings concerning revocation of a medical license.  *See Yoonessi v. Albany Med. Ctr.,* 352 F.Supp.2d 1096, 1098, 1103 (C.D. Cal. 2005).  Specifically, "[a]n attorney in the Attorney General's Office is immune from lawsuits for any action she commits in discharging her litigation-related duties." *Id.*

Plaintiff's FAC fails to allege facts sufficient to establish claims against Defendant Friedman that do not invoke Defendant Friedman's prosecutorial immunity.  Given that Plaintiff previously had an opportunity to amend, it is recommended that Plaintiff's claims against Defendant Friedman be dismissed without further leave to amend.  *Griggs*, 170 F.3d at 879.

### D. ADA Claims

Plaintiff alleges that the BRN Defendants violated her rights under the Americans with Disabilities Act ("ADA") by retaliating against her for complaining about harassment and discrimination in the workplace.  (FAC ¶ 328.) Plaintiff alleges that "by submitting false NPDB records to permanently damage Plaintiff's career" the BRN Defendants engaged in an "additional retaliatory measure designed to prevent Plaintiff from securing future employment or licensure, linking

---

[6]   To be clear, Defendant Friedman was an attorney of record for the BRN on the Accusation and did not issue the Default Decision and Order.

the misconduct directly to Plaintiff's protected activity."  (FAC ¶ 329.)

The BRN Defendants argue that Plaintiff did not have leave to amend her complaint to allege violations of the ADA against the BRN Defendants and that Plaintiff's allegations relate to discrimination she experienced during her employment with Kaiser, not the BRN.  Plaintiff argues that her allegations of violations of the ADA against the BRN Defendants arise under Title II of the ADA for "Public Services," not Title I of the ADA for "Employment."

Assuming Plaintiff intended to bring a cause of action against the BRN Defendants under Title II of the ADA, the ADA does not provide for individual capacity lawsuits against state officials.  *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) ("The ADA applies only to public entities."); *Simmons v. Miranda-Mares*, 2023 WL 6783290, at *3 (C.D. Cal. Sept. 15, 2023); *see also Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as Garcia is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.")  Plaintiff cannot bring such ADA claims against Defendant Melby or Defendant Friedman.

Even assuming Plaintiff could overcome Eleventh Amendment immunity against the BRN, Plaintiff does not allege any facts to support a plausible ADA claim.  Title II of the ADA provides:  "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A complaint must allege facts showing that (1) Plaintiff is a qualified individual with a disability; (2) Plaintiff was either excluded from participation in or denied the benefits of a public entity's services, program, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.  *Weinrich v. Los Angeles Cty. Metro. Transp. Authority*,

21

114 F.3d 976, 978 (9th Cir. 1997). Intentional discrimination requires the complaint to allege facts showing "that a defendant acted with 'deliberate indifference,' which requires 'both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood.'" *Updike v. Multnomah Cty.*, 870 F.3d 939, 950-51 (9th Cir. 2017) (citation omitted). "'When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.'" "To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Id.* at 951 (citation omitted).

The FAC alleges no facts to support a plausible claim that Plaintiff was excluded from participation in, or denied the benefits of, any services, programs, or activities of the BRN or was subjected to discrimination by the BRN by reason of any disability she has. Indeed, it is undisputed that Plaintiff did not participate in the § 820 mental examination. Therefore, as described above, the proceedings before the BRN terminated before the nature and degree of Plaintiff's disability, and the nature of any accommodation for her, ever came before the BRN. The FAC does not allege any facts to support either prong of deliberate indifference.

For these same reasons, the FAC does not plausibly allege facts showing that any protected activity was the but-for cause of the revocation of her license for purposes of a retaliation claim. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (holding plaintiff must allege but for causation to establish retaliation claim); *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (applying but for causation to retaliation claims under Title II of ADA); *see also Sabatini v. Cal. Bd. of Registered Nursing*, 849 Fed. Appx. 634, 636-37 (9th Cir. 2021) (affirming dismissal without leave to

amend of retaliation claims for failure to allege facts supporting but for causation in Title II ADA claim). The FAC also does not plausibly allege facts showing that any protected activity was the but-for cause of reporting to the National Practitioner Data Bank ("NPDB"). *See* 42 U.S.C. § 1396r-2 (mandating reporting of revocation or suspension of license by state licensing authority); 45 C.F.R. §§ 60.3, 60.5 (mandating reporting of license revocation or suspension after formal proceeding to NPDB); *see also* Cal. Welf. & Inst. Code § 14043.6 (suspension by DHCS of individual whose license has been revoked or suspended by state licensing authority).

Because Plaintiff cannot cure these deficiencies, it is recommended that Plaintiff's claims for violations of the ADA against the BRN Defendants be dismissed without leave to amend. *Lopez*, 203 F.3d at 1129.

### E. Criminal Statutes

In her FAC, Plaintiff references various criminal statutes as the basis for some of her claims against the BRN Defendants. For example, the FAC references violations of 18 U.S.C. § 241, 18 U.S.C. § 371, 18 U.S.C. § 1001, and 18 U.S.C. § 249.

Plaintiff does not have a private right of action to bring these claims against the BRN Defendants because these are <u>criminal</u> statutes. *See, e.g.*, *Peabody v. United States*, 394 F.2d 175, 177 (9th Cir.1968) (stating that § 241 does not provide a private right of action); *Soloman v. Scheper*, 2025 WL 2995473, at *5 (C.D. Cal. July 30, 2025) (citing *Rockefeller v. U.S. Ct. of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (no private right of action under 18 U.S.C. § 242 and 371)). *See also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone; in *Cort v. Ash*, 422 U.S. 66, 80, 95 S.Ct. 2080, 2089, 45 L.Ed.2d 26 (1975), for example, we refused to infer a private right of action from 'a bare criminal statute.' And we have not

23

suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions." (See *Touche Ross*, 442 U.S., at 568, 99 S.Ct., at 2485 ("[Q]uestion of the existence of a statutory cause of action is, of course, one of statutory construction")). (citations omitted).

Because Plaintiff cannot cure these deficiencies, it is recommended that Plaintiff's claims for violations of 18 U.S.C. § 241, 18 U.S.C. § 371, 18 U.S.C. § 1001, and 18 U.S.C. § 249, and other criminal statutes be dismissed without leave to amend. *Lopez*, 203 F.3d at 1129.

## VI.

## <mark>KAISER DEFENDANTS' MOTION TO DISMISS</mark>

The Kaiser Defendants move to dismiss the FAC on the grounds that (1) it fails to satisfy Fed. R. Civ. P. 8; (2) the FAC does not allege that Plaintiff exhausted her administrative remedies, and (3) Plaintiff's causes of action for intentional infliction of emotional distress and whistleblower retaliation pursuant to Cal. Lab. Code § 1102.5 are barred by the applicable statute of limitations.

### A.    Rule 8

The Kaiser Defendants argue that Plaintiff's FAC should be dismissed in its entirety for failing to comply with Fed. R. Civ. P. 8.

Plaintiff's FAC contains 599 numbered paragraphs, not including subparagraphs, and 48 exhibits.  The FAC asserts claims for the following against the Kaiser Defendants:[7]

(1)    Civil Rights Conspiracy (42 U.S.C. §§ 1983, 1985) against all Defendants;

(2)    Conspiracy Against Rights (18 U.S.C. § 241) against all Defendants;

---

[7] Although the FAC makes allegations against the Attorney General's Office and Superior Court Judge Small (FAC ¶¶ 39, 43-47, 69-83, 149), they are not named as defendants in the caption and are not included in the list of defendants in the body of the FAC.  Therefore, the court concludes that they are not defendants in this action.

(3) Conspiracy to Obstruct Justice (18 U.S.C. § 371) against all Defendants;

(4) Retaliation in Violation of Title VII of the Civil Rights Act of 1964 against Defendants SCPMG and KFHP;

(5) Disability Discrimination in Violation of the ADA against Defendants SCPMG and KFHP;

(6) Disability Discrimination and Retaliation in Violation of the ADA against Defendants SCPMG and KFHP.

(7) Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964;

(8) Retaliation and Failure to Accommodate in Violation of the California Fair Employment and Housing Act ("FEHA") against Defendants SCPMG and KFHP;

(9) Whistleblower Retaliation under Cal. Lab. Code §1102.5 against Defendants SCPMG and KFHP; and

(10) Intentional Infliction of Emotional Distress against Defendants SCPMG and KFHP.

In addition, throughout the FAC, Plaintiff identifies numerous causes of action, some of which do not identify a corresponding defendant. (*See* FAC ¶¶ 474-86.)  These causes of action include, but are not limited to: Deprivation of Rights under Color of Law (18 U.S.C. § 242); Violation of the Due Process Clause of the Fifth Amendment and Fourteenth Amendment; and Violation of the Equal Protection Clause of the Fifth Amendment and Fourteenth Amendment.  Plaintiff may also be asserting claims under the First Amendment as well as state tort claims, including claims for defamation and breach of fiduciary duty.  (*Id.* ¶¶ 36, 194-96, 284-87, 437-41.)  Plaintiff seeks (1) economic damages; (2) compensatory damages; (3) punitive damages; (4) injunctive relief; and (5) attorney's fees and costs.  (*Id.* ¶ 599.)  The FAC also includes sections titled

25

"Plaintiff's Arguments to Strike Kaiser Defendants Defenses," "Plaintiff's Arguments to Strike BRN Defenses," and "Plaintiff's Arguments to Strike Carlin's Defenses." (*See generally Id.* ¶¶ 519-98, Sections XXX-XXXII.) These sections appear to be Plaintiff's responses to defenses raised in Defendants' answers to Plaintiff's initial complaint.

## 1. <mark>Legal Standard</mark>

Rule 8 requires "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a); *see Ashcroft*, 556 U.S. at 677-78 ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). The "short and plain" statement "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (citation omitted). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft*, 556 U.S. at 678 (internal citations omitted).

Rule 8's requirement of "each averment of a pleading to be 'simple, concise, and direct,' applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). In other words, "dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit," but rather focuses on whether the complaint "provide[s] defendants notice of what legal claims are

asserted against which defendants." *Id.* at 1176, 1179. A pleading "violates Rule 8 [when] it involves so-called 'shotgun pleading.' Shotgun pleading occurs when: (1) one party pleads that multiple parties did an act, without identifying which party did what specifically; or (2) when one party pleads multiple claims and does not identify which specific facts are allocated to which claim." *Manago v. Santoro*, No. 1:21-cv-01464-ADA-HBKPC, 2023 WL 7342730, at *3 (E.D. Cal. Nov. 7, 2023), *accepted by* 2024 WL 1312933 (E.D. Cal. Mar. 26, 2024)).

## 2. Discussion

The Kaiser Defendants argue that the FAC violates Rule 8 because the FAC (1) is lengthy and includes impermissible legal arguments and citations; and (2) contains conclusory, argumentative, confusing, and irrelevant factual allegations. (Dkt. Nos. 154, 156.) In her opposition,[8] Plaintiff argues that her FAC "contains 599 numbered paragraphs and 48 exhibits that document retaliation, discrimination, conspiracy, fabrication of sham pleadings, and due process violations," and permissibly states facts to support her causes of action. (Dkt. No. 161 ¶ 1.) Further, Plaintiff argues she is entitled to include exhibits with her complaint pursuant to Rule 10(c).

In *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996), the plaintiffs' second amended complaint was dismissed because the it did not "provide defendants with notice of what legal claims [were] asserted against which defendants," and instead was argumentative with prolix allegations consisting of "mostly 'narrative ramblings' and 'storytelling or political griping.'" *Id.* at 1175. In dismissing the second amended complaint, the district court gave the plaintiffs specific instructions on how to draft to draft the third amended complaint to avoid dismissal. Specifically, the district court told the plaintiffs to "file a complaint

---

[8] Plaintiff's opposition addresses both the BRN Defendants' and the Kaiser Defendants' motions to dismiss collectively instead of filing separate oppositions. Plaintiff's opposition is confusing in that it refers to "Defendants" generally instead of specifying which Defendants' argument is being addressed.

'which states clearly how each and every defendant is alleged to have violated plaintiffs' legal rights'" and to "edit their twenty-six-page introduction and focus on linking their factual allegations to actual legal claims." *Id.*

The plaintiffs failed to follow the judge's instructions. *Id.* at 1176. The third amended complaint was 35 pages long and mostly repeated "the vices" of the second amended complaint. While "the claims for relief designated legal theories on which the relief was based . . . [the] plaintiffs did not specify which defendants were liable on which of the claims. Instead, each claim says 'defendants'' conduct violated various rights of plaintiffs, without saying which defendants." *Id.* The third amended complaint read "like a magazine story instead of a traditional complaint." *Id.* As such, the district court dismissed the plaintiffs' third amended complaint without leave to amend. *Id.*

The Ninth Circuit affirmed the district court's dismissal of the plaintiffs' third amended complaint on the grounds that the complaint was "argumentative, prolix, replete with redundancy, and largely irrelevant." *Id.* at 1177. The Ninth Circuit Court held that "dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *Id.* at 1179. In fact, the magistrate judge found some claims that may have survived a Rule 12(b)(6) motion to dismiss. However, the plaintiffs' failure to file a "simple, concise, and direct" pleading was sufficient for dismissal independent of Rule 12(b)(6). *Id.*[9]

Plaintiff argues that *McHenry* is inapplicable because *McHenry* involved "a complaint where it was impossible to tell 'who is being sued, for what relief, and on what theory.'" (Dkt. No. 161 ¶¶ 16, 25, 41.) Plaintiff heavily relies on *Hearns v. San Bernardino Police Dep't.*, 530 F.3d 1124 (9th Cir. 2008), to support her claim that her FAC satisfies Rule 8. In *Hearns*, the district court dismissed the

---

[9] The Ninth Circuit Court also held that while dismissal of a complaint with prejudice is a harsh remedy, the dismissal of the plaintiffs' complaint with prejudice was proper in light of the fact that the district court permitted the plaintiffs the opportunity to amend their complaint twice. *McHenry*, 84 F.3d at 1178-79.

plaintiff's 81-page complaint without prejudice because of the length and unnecessary detail of the factual section. The plaintiff filed a first amended complaint that was 68 pages but substantively similar. *Id.* at 1127. The district court dismissed the first amended complaint with prejudice for failing to comply with Rule 8 and the court's prior order. *Id.* The Ninth Circuit Court vacated the dismissal and remanded for further proceedings. *Id.* at 1133. The Ninth Circuit found that the plaintiff's complaint was "logically organized, divided into a description of the parties, a chronological factual background, and a presentation of enumerated legal claims, each of which lists the liable Defendants and legal basis therefor." *Id.* at 1132. The defendants did "not attempt to identify particular allegations as immaterial or unnecessary. They [did] not assert that the complaint fails to set forth cognizable causes of action, that the legal theories are incoherent, or that they cannot tell which causes of action are alleged against which Defendants. *They simply object that the complaint provides too much factual detail*." *Id.* (emphasis added). Although "[t]he FAC and the original complaint contain[ed] excessive detail, [they] [were] intelligible and clearly delineate[d] the claims and the Defendants against whom the claims are made." *Id.* As such, the FAC in *Hearns* did not violate Rule 8. *Id.*

After review, Plaintiff's FAC contains some similarity to the complaint in *McHenry*. The FAC contains lengthy sections of legal arguments and argumentative and seemingly irrelevant facts. For example, numerous sections and paragraphs discussing Los Angeles Superior Court Judge Small and the Attorney General's Office. (FAC ¶¶ 39, 43-47, 60-64, 87, 91-92, 96-114, 125-27, 149-50.) The FAC includes nearly 80 paragraphs in which plaintiff "strikes" the various defendants' defenses. (*See, e.g.*, FAC ¶¶ 519-598.) Similar to *McHenry*, the FAC is confusing, ambiguous, and often unintelligible. Plaintiff's initial complaint was 71 pages with 217 paragraphs and 188 pages of exhibits, totaling 259 pages. (Dkt. No. 1.) Conversely, Plaintiff's FAC is 110 pages with 599

paragraphs and 570 pages of exhibits, totaling 680 pages. Despite being significantly longer, Plaintiff's FAC does not clearly identify (1) how many causes of action are alleged, (2) what those causes of action are, and (3) against whom those causes of action are alleged. (*See* FAC ¶¶ 474-86.) Instead, the causes of action are hidden amongst hundreds of paragraphs. Indeed, Plaintiff's FAC's cover page states that, besides the enumerated causes of action, there are "other related claims as alleged below," thus failing to identify all causes of action herself. (*See* FAC at 1.)

Because it is recommended that the Kaiser Defendants' motion to dismiss be granted with leave to amend on other grounds, the court does not separately recommend dismissal based on Rule 8. Plaintiff is cautioned that any second amended complaint should remove legal argument, clearly list each claim and the defendants against whom the claim is asserted, and clearly allege the facts supporting liability against each defendant under that claim.

**B.** <mark>**Exhaustion of Administrative Remedies**</mark>

The Kaiser Defendants argue that Plaintiff's claims for violations of Title VII, the ADA, and/or FEHA should be dismissed on the grounds that the FAC fails to allege that Plaintiff exhausted her administrative remedies prior to filing her lawsuit. (Dkt. No. 154.) In her opposition, Plaintiff claims she exhausted her remedies by obtaining a Right-to-Sue letter from California's Civil Rights Department ("CRD").[10] (Dkt. No. 161, ¶ 55.)[11]

---

[10] Plaintiff's opposition claims that she received a Right-to-Sue letter from California's "DFEH." The California Civil Rights Department ("CRD") was known as the California Department of Fair Employment and Housing ("DFEH") until July 2022.

[11] Plaintiff also filed a document titled "Plaintiff's Brief in Support of Declaratory Relief on Exhaustion of Administrative Remedies." (Dkt. No. 162.) It is unclear what relief Plaintiff is seeking as Plaintiff subsequently filed a motion to file an amended complaint including allegations relating to exhaustion of her administrative remedies. (Dkt. No. 163.)

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission (EEOC[)]." *Fort Bend Cty. v. Davis*, 587 U.S. 541, 543 (2019). The exhaustion requirement applies to Plaintiff's claims under the ADA as well. *See Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999) (citing 42 U.S.C. § 12117(a)). Similarly, "[b]efore filing a civil action alleging FEHA violations, an employee must exhaust his or her administrative remedies with [the CRD]." *Willis v. Superior Court*, 195 Cal. App. 4th 143, 153 (2011). "Exhaustion includes the timely filing of administrative complaints addressing the claims and parties at issue, as well as the procurement of right-to-sue letters." *Kim v. Konad USA Distribution, Inc.*, 226 Cal. App. 4th 1336, 1345 (2014).

Title VII's exhaustion requirement is a claim-processing rule, "albeit a mandatory one." *Fort Bend*, 587 U.S. at 551. A court "must enforce the rule if a party 'properly raise[s]' it." *Id.* at 549 (citation omitted). The FAC does not allege that Plaintiff exhausted her administrative remedies prior to bringing her claims under Title VII, the ADA, or the FEHA. Plaintiff seems to acknowledge the omission because she filed a "Motion for Leave to File [Second] Amended Complaint"[12] that would be "limited solely to the inclusion of a clarifying paragraph expressly pleading exhaustion of administrative remedies" after the Kaiser Defendants filed their motion to dismiss. (Dkt. No. 163, ¶ 1.)

It is recommended that the Kaiser Defendants' motion to dismiss Plaintiff's claims under Title VII, the ADA, and the FEHA be granted with leave to amend. Allegations outside the FAC may not be considered on a motion to dismiss. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003); *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Nevertheless, the court may

---

[12] In her motion, Plaintiff seeks leave to file a first amended complaint. However, Plaintiff has already filed a First Amended Complaint. As such, the court interprets Plaintiff's motion as requesting leave to file a Second Amended Complaint.

consider Plaintiff's arguments in determining whether leave to amend is warranted.  Here, Plaintiff may be able to allege facts showing exhaustion of remedies.  Plaintiff's motion for summary judgment alleges that she obtained a right-to-sue letter from the CRD on May 10, 2021, although it is not mentioned in or attached to the Separate Statement of Undisputed Facts.  (Dkt. No. 168 at 7 ¶ 18; Dkt. No. 170.)

### C.    Statute of Limitations

The Kaiser Defendants argue that Plaintiff's claims for intentional infliction of emotional distress ("IIED") and whistleblower retaliation under Cal. Lab. Code § 1102.5 are barred by the applicable statute of limitations.  (Dkt. No. 154.)

A complaint is subject to dismissal when the statute of limitations bar is established on the face of the complaint.  *Von Saher v. Norton Simon Museum of Art*, 592 F.3d 954, 969 (9th Cir. 2010).

### 1.  IIED

IIED has a two-year statute of limitations.  Cal. Civ. Code § 335.1.  The two-year time period accrues once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant.  *See Wassmann v. S. Orange Cty. Cmty. Coll. Dist.*, 24 Cal. App. 5th 825, 853 (2018).

Plaintiff alleges that she suffered IIED from the Kaiser Defendants' conduct in "fabricating disciplinary records, denying accommodations despite medical documentation, retaliating against protected activity, and escalating threats up to termination and license revocation."  (FAC ¶ 516.)  According to the FAC, this conduct occurred from August 2020 through February 2021.  (FAC ¶ 458.)  Accordingly, the two-year statute of limitations expired two years later in February 2023.  Plaintiff did not bring the pending lawsuit against the Kaiser Defendants until July 10, 2024, and Plaintiff's initial complaint did not include a cause of action for IIED.  (*See* Dkt. No. 1.)  Plaintiff first alleged a claim for IIED in the FAC on

September 18, 2025, well beyond the limitations period. (Dkt. No. 144.) Absent equitable tolling, which is addressed below, her claim would be barred.

### 2. <mark>Whistleblower Retaliation</mark>

The Kaiser Defendants argue that Plaintiff's claims for whistleblower retaliation under Cal. Lab. Code § 1102.5 are barred by the applicable statute of limitations. (Dkt. No. 154.)

California law prohibits an employer from retaliating against an employee "for disclosing information to a government or law enforcement agency," if the employee reasonably believes this information relates to a violation of state or federal statutes or regulations. Cal. Lab. Code § 1102.5(b). A claim for whistleblower retaliation under California Labor Code § 1102.5 is generally subject to the three-year statute of limitations for "liability created by statute" under Cal. Civ. Proc. Code § 338(a). *See e.g., Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 917 (E.D. Cal. 2017). Plaintiff's employment was terminated by SCMPG on March 18, 2021. (FAC ¶ 189.) The statute of limitations expired three years later on March 18, 2024. Plaintiff did not file the pending lawsuit until July 10, 2024, four months after the statute of limitations expired. (Dkt. No. 1.) Absent equitable tolling, Plaintiff's whistleblower retaliation claims would be barred.

### 3. <mark>Equitable Tolling</mark>

Under California law, equitable tolling is available to a plaintiff "when, possessing several legal remedies [s]he, reasonably and in good faith, pursues one designed to lessen the extent of [her] injuries or damage." *Butler v. Nat'l Cmty. Renaissance of Calif.*, 766 F.3d 1191, 1204 (9th Cir. 2014). To show entitlement to equitable tolling, "a plaintiff must establish 'timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.'" *Id.* (internal quotation marks and citation omitted).

33

Timely exhaustion of remedies with a state agency may constitute "a good faith pursuit of a legal remedy designed to lessen the extent of a plaintiff's damages." *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, 696 (9th Cir. 2003*).* "If a plaintiff's first claim and second claim concern different wrongs, however, equitable tolling is not available." *Id.* at 695. Moreover, the first claim must be timely filed. *See Beaudoin v. Schlachter*, 672 Fed. Appx. 706, 707 (9th Cir. 2016) (affirming denial of equitable tolling when first claim was untimely").

It is recommended that the Kaiser Defendants' motion to dismiss based on the statute of limitations be granted with leave to amend. The Separate Statement of Undisputed Facts in support of Plaintiff's motion for summary judgment does not contain facts in support of equitable tolling. Nevertheless, as discussed above, Plaintiff's motion alleges receipt of a right-to-sue letter on May 10, 2021 and may be able to establish equitable tolling as to one or more causes of action. *See Broam*, 320 F.3d at 1026 n.2; *Schneider*, 151 F.3d at 1197 n.1.

## VII.

## PLAINTIFF'S MOTION FOR LEAVE TO FILE

## SECOND AMENDED COMPLAINT

On October 9, 2025, Plaintiff filed a motion requesting leave to file a second amended complaint. (Dkt. No. 163.) Plaintiff requested leave to amend her complaint to include "a clarifying paragraph expressly pleading exhaustion of administrative remedies." (*Id.* ¶ 1.) The BRN Defendants filed an opposition on October 21, 2025. (Dkt. No. 166.)

It is recommended that Plaintiff's motion for leave to file the second amended complaint be denied without prejudice to her ability to file a Second Amended Complaint within the parameters set forth in this Report. Plaintiff's current proposed second amended complaint contains claims that have been previously dismissed with prejudice or that do not raise a plausible claim for relief for the reasons set forth in this Report.

**VIII.**

<mark>**DEFENDANT CARLIN'S MOTION TO SET ASIDE ENTRY OF DEFAULT AND PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**</mark>

Defendant Carlin moves to vacate entry of his default on the grounds that (1) Defendant Carlin's failure to answer Plaintiff's FAC was not willful; (2) Defendant Carlin has several meritorious defenses to the allegations contained in Plaintiff's FAC; and (3) Plaintiff is not prejudiced by the Court vacating default of Defendant Carlin. Conversely, Plaintiff moves for entry of default judgment against Defendant Carlin on the grounds that Defendant Carlin failed to answer her FAC.

**A. Relevant Procedural History**

**1. <mark>Original Complaint</mark>**

On July 10, 2024, Plaintiff filed this civil lawsuit. (Dkt. No. 1.) On September 26, 2024, Plaintiff requested that the Court enter default against Defendant Carlin for failing to answer Plaintiff's original complaint. (Dkt. Nos. 39, 40.) On September 27, 2024, Defendant Carlin filed his answer to Plaintiff's original complaint. (Dkt. No. 38.)

On September 30, 2024, Plaintiff filed a motion to strike Defendant Carlin's answer to Plaintiff's initial complaint. (Dkt. No. 53.) Plaintiff's motion was denied on August 18, 2025. (Dkt. No. 137.)

**2. <mark>FAC</mark>**

On September 18, 2025, Plaintiff filed her FAC, which alleges claims for legal malpractice and fraudulent concealment against Defendant Carlin. (Dkt. No. 144.) On October 30, 2025, Plaintiff filed a motion requesting entry of default against Defendant Carlin for failing to answer Plaintiff's FAC. (Dkt. No. 171.) Default was entered against Defendant Carlin on November 4, 2025. (Dkt. No. 172.)

35

On November 12, 2025, Defendant Carlin filed a motion to set aside his default. (Dkt. No. 177.) Defendant Carlin attached a draft answer to Plaintiff's FAC as an exhibit to his motion. (*Id.*)

On November 13, 2025, Plaintiff filed a motion for default judgment against Defendant Carlin. (Dkt. No. 182.)

On November 20, 2025, Plaintiff filed an opposition to Defendant Carlin's motion to vacate entry of his default. (Dkt. No. 186.)

On December 31, 2025, Defendant Carlin filed a second motion to vacate/void default judgement. (Dkt. No. 195.)

On January 5, 2026, Plaintiff filed an objection and response to Defendant Carlin's second motion to vacate/void default judgment. (Dkt. Nos. 196, 197.)

**B. Defendant Carlin's Motion to Set Aside Entry of Default and Plaintiff's Motion for Default Judgment**

On September 18, 2025, Plaintiff filed and served Defendant Carlin with her FAC. (Dkt. Nos. 147, 171.) As such, Defendant Carlin's response to Plaintiff's FAC was due on or before October 25, 2025. Fed. R. Civ. P. 12(a)(1)(A)(i). Defendant Carlin did not file a response to Plaintiff's FAC by October 25, 2025. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Thus, the clerk entered default against Defendant Carlin on November 4, 2025. (Dkt. No. 172.)

The court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). In assessing whether good cause exists, courts look at three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default would prejudice the other party. *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004). These factors are liberally interpreted when considering relief from an entry of default. *Hawaii*

36

*Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). "As these factors are disjunctive, the district court was free to deny the motion 'if any of the three factors was true.'" *Franchise Holding II, LLC*, 375 F.3d at 926 (quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir.2000)).

In his motion, Defendant Carlin argues that all three factors weigh in favor of setting aside his default. (Dkt. No. 177.) First, Defendant Carlin argues that his failure to respond to Plaintiff's FAC was not culpable. Defendant Carlin states that the failure to respond to Plaintiff's FAC arose from "administrative oversight during the transition of case files and calendaring at his law office." Defendant Carlin states that his law office lost three attorneys between June 2024 and September 2025, and that the increase in caseload resulted in "difficulty keeping up with Plaintiff's myriad of emails." Second, Defendant Carlin argues that he has meritorious defenses to the claims Plaintiff raises in her FAC, including lack of personal involvement and failure to state a claim. Defendant Carlin attached a proposed answer to his motion to set aside default which contains such defenses. Third, Defendant Carlin argues that Plaintiff would not be prejudiced by setting aside his default because the litigation is still in its early stages. As such, Defendant Carlin argues that his failure to timely respond to Plaintiff's FAC is a result of excusable neglect warranting setting aside his default.

In her opposition, Plaintiff argues that Defendant Carlin did not show excusable neglect warranting setting aside his default. First, Plaintiff argues that the amount of time between the service of her FAC and the entry of default evidence culpable conduct on behalf of Defendant Carlin. Plaintiff also points to Defendant Carlin's actions in a state court proceeding to show that Defendant Carlin was willfully refusing to participate in this federal action. Second, Plaintiff argues that Defendant Carlin's purported defenses are not meritorious and thus do not warrant setting aside his default. Finally, Plaintiff argues that she would be

37

prejudiced by the court setting aside Defendant Carlin's default for various reasons, including Defendant Carlin's pattern of behavior resulting in Plaintiff's prior request for default against Defendant Carlin, as well as ongoing reputational harm from which Plaintiff suffers.

Defaults are highly disfavored, and a default may be set aside for good cause. *Franchise Holding II, LLC*, 375 F.3d at 925. "[S]imple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010).

While Defendant Carlin's actions evidence excusable neglect, there is nothing suggesting that Defendant Carlin's failure to respond to Plaintiff's FAC was devious, deliberate, willful, or done in bad faith. In the declaration submitted in support of the motion to set aside default, Defendant Carlin's counsel states that the failure to respond to Plaintiff's FAC was due to an administrative oversight resulting from the departure of several attorneys at Defendant Carlin's law office, in addition to the overwhelming number of communications exchanged between the parties in this matter. Indeed, Defendant Carlin filed an opposition to Plaintiff's motion for summary judgment a day prior to filing his pending motion to set aside default, evidencing an intention to engage in the present litigation. (Dkt. No. 175.)

Further, it is unlikely that Plaintiff will suffer prejudice by setting aside Defendant Carlin's default. Given that the litigation is still at the pleading stage, Plaintiff will not suffer prejudice by setting aside Defendant Carlin's default.

It is recommended that the court grant Defendant Carlin's motion to set aside entry of default and deny Plaintiff's motion for default judgment.

38

**IX.**

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff has also filed a motion for summary judgment against all defendants based on the allegations in her FAC. (Dkt. No. 168.)

It is recommended that Plaintiff's motion for summary judgment against the BRN Defendants be denied in light of the dismissal of all claims against the BRN Defendants. *See Lawyers for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1063 n.5 (9th Cir. 2025) (affirming district court's denial of motion for summary judgment as moot after dismissing plaintiff's claims with prejudice), *cert. denied*, 2025 U.S. LEXIS 4607 (Dec. 8, 2025).

It is recommended that Plaintiff's motion for summary judgment against the Kaiser Defendants be denied in light of the recommendation that the Kaiser Defendants' motion to dismiss be granted with leave to amend. The court has inherent authority to manage its docket. *Gibson v. City of Portland*, 165 F.4th 1265, 1289 (9th Cir. 2026). The Separate Statement of Undisputed Facts in support of Plaintiff's motion for summary judgment did not address exhaustion of remedies, the statute of limitations, or equitable tolling. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). The Kaiser Defendants have not had an opportunity to address any pertinent arguments in her supplemental filings.

It is recommended that Plaintiff's motion for summary judgment against Defendant Carlin be denied based on the recommendations that entry of default be set aside and that Plaintiff's motion for default judgment be denied.

**X.**

**RECOMMENDATION**

For the reasons discussed above, it is recommended that the District Court issue an Order accepting this Report and Recommendation and:

1. Granting the BRN Defendants' motion to dismiss without leave to

39

amend.

2. Granting the Kaiser Defendants' motion to dismiss with leave to file a Second Amended Complaint within 30 days after entry of the District Court's order.

3. Granting Defendant Carlin's motion to set aside entry of default and permitting Defendant Carlin to file a responsive pleading to the FAC within 14 days after entry of the District Court's order.

4. Denying Plaintiff's motion for default judgment against Defendant Carlin.

5. Denying Plaintiff's motion to file the proposed second amended complaint.

6. Denying Plaintiff's motion for summary judgment.[13]

7. Referring the matter, the magistrate judge for further proceedings.[14]

If Plaintiff chooses to file a Second Amended Complaint, the Second Amended Complaint may include only claims against the Kaiser Defendants and Defendant Carlin.  The Second Amended Complaint must be labeled as such, bear the case number assigned to this case, and be complete in and of itself without incorporating by reference a prior complaint, attachment, or pleading with respect to the claims against the Kaiser Defendants or Defendant Carlin.

DATED: May 19, 2026

_____
ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE

---

[13] The court grants Plaintiff's request to consider supplemental filings.  (Dkt. Nos. 180, 201, 203.)

[14] The court may consider modifications to the case scheduling order pursuant to Fed. R. Civ. P. 16(d)(4).

# EXHIBIT 6

.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION

ESTHER TENDO ATAM,

               Plaintiff,

    v.

KAISER FOUNDATION HEALTH PLAN, INC., et. al.,

               Defendants.

Case No. CV 24-05862-KK (AS)

**ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMNEDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636, the Court has reviewed the First Amended Complaint, all of the records herein, including the Report and Recommendation of United States Magistrate Judge Alicia Rosenberg (Dkt. No. 204)), Plaintiff's Original and Amended Objections to the Magistrate Judge's Report and Recommendation (Dkt. Nos. 208, 210, "Objections"), and Plaintiff's Declaration in Support of her Original Objections (Dkt. No. 211). Plaintiff's motion for leave to exceed page limitations nunc pro tunc regarding the objections (Dkt No. 209) is GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the Court has conducted a *de novo* review of those portions of the Report to which Objections were directed. Having completed its review, the Court accepts the findings and recommendations set forth in the Report. In sum, Plaintiff's Objections do not cause the Court to reconsider its decision to accept the Magistrate Judge's conclusions and recommendations.

**IT IS ORDERED** that (1) Defendants Kaiser Foundation Health Plan, Kaiser Foundation Hospitals, and Southern California Permanente Medical Group's ("Kaiser Defendants") motion to dismiss is GRANTED WITH LEAVE TO FILE A SECOND AMENDED COMPLAINT; (2) Defendant Board of Registered Nursing, Executive Director Loretta Melby, and Deputy Attorney General Gillian Friedman's ("BRN Defendants") motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND; (3) Defendant Carlin's motion to set aside entry of default is GRANTED; Defendant Carlin is ordered to file a response to the First Amended Complaint within fourteen (14) days of the date of this Order; (4) Plaintiff's motion for default judgment against Defendant Carlin is DENIED; and (5) Plaintiff's motion for summary judgment is DENIED.

Plaintiff may file a Second Amended Complaint consistent with the Report and Recommendation of United States Magistrate Judge no later than thirty (30) days from the date of this Order. Plaintiff is cautioned that any Amended Complaint may only include claims against the Kaiser Defendants and Defendant Carlin, and must be complete in itself without reference to any prior complaint or any

2

other document with respect to the claims against the Kaiser Defendants and Defendant Carlin, and may not add any new claims or new defendants without prior leave of the Court.

If Plaintiff does not file a Second Amended Complaint within thirty (30) days of the date of this Order, Plaintiff's remaining claims will be dismissed with prejudice.

**IT IS FURTHER ORDERED** that the Clerk serve copies of this Order and the Magistrate Judge's Report and Recommendation on Plaintiff.

DATED: June 16, 2026

_____
KENLY KIYA KATO
UNITED STATES DISTRICT JUDGE

3

**EXHIBIT B**

Re: REQUEST FOR SERVICE LINK

From:   natasha tendo (natashchan1@yahoo.com)

To:     jamil.ghannam@doj.ca.gov; crowley@seyfarth.com; thix@seyfarth.com

Date:   Monday, June 22, 2026 at 05:18 PM PDT

Dear Counsel,

Please find attached copies of the documents submitted to the Clerk for processing and filing
today, **June 22, 2026:**

**https://fx.doj.ca.gov/filedrop/~mRkdek**

- **Rule 59(e) Motion**

- **Plaintiff's Request to Take Judicial Notice**

- **Proposed Order**

- **Second Amended Complaint**

Respectfully submitted,

Esther Atam
Plaintiff, Pro Se

> On Friday, June 19, 2026 at 07:36:27 AM PDT, Jamil Ghannam <jamil.ghannam@doj.ca.gov> wrote:
>
> Here you go.
>
> https://fx.doj.ca.gov/filedrop/~mRkdek
>
>> Jamil R. Ghannam
>> Supervising Deputy Attorney General
>> Office of the Attorney General
>> Tort & Condemnation Section
>> 1300 I Street, 12th Floor
>> Sacramento, CA
>> (916) 210-7674
>
> CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally
> privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or

disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

---

**From:** natasha tendo <natashchan1@yahoo.com>
**Sent:** Thursday, June 18, 2026 8:23 PM
**To:** Jamil Ghannam <Jamil.Ghannam@doj.ca.gov>; thix@seyfarth.com; crowley@seyfarth.com
**Subject:** REQUEST FOR SERVICE LINK

**EXTERNAL EMAIL:** This message was sent from outside DOJ. Please do not click links or open attachments that appear suspicious.

Ghannam,

As per your discretion, provide a service link for post-judgment motion.

Esther Atam.

Yahoo Mail: Search, Organize, Conquer

CONFIDENTIALITY NOTICE: This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication.

 6. PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER.docx1.edit.MOTION RULE 59 E.pdf
1.3 MB

 6. PLAINTIFF'S NOTICE OF MOTION AND MOTION TO ALTER.docx1.edit.PROPOSED ORDER..pdf
265.4 KB

# EXHIBIT C

Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com
Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ESTHER TENDO ATAM, <br><br> *Plaintiff* <br><br> vs. <br><br> KAISER FOUNDATION HOSPITALS ET AL., <br><br> *Defendants* | **Case No.: 2:24-cv-05862-KK-AS** <br><br> **SECOND AMENDED COMPLAINT FOR:** <br> 1. Wrongful Termination in Violation of Title VII of the Civil Rights Act of 1964 <br> 2. Retaliation in Violation of (ADA) <br> • Disability Discrimination (FEHA) <br> • Failure to Accommodate (FEHA) <br> • Failure to Engage in Interactive Process (FEHA) <br> • Race and National Origin Discrimination (FEHA) <br> • National Origin Harassment (FEHA) <br> • Failure to Prevent Discrimination, Harassment, and Retaliation (FEHA) <br> • Hostile Work Environment <br> • Wrongful Termination in Violation of Public Policy <br> 3. Tortious Interference with Prospective Economic Advantage <br> 4. Conspiracy to Interfere with Civil |

Rights (42 U.S.C. § 1985)

5. Conspiracy to Deprive Civil Rights (42 U.S.C. § 1983)
6. Violation of Fourteenth Amendment Due Process (42 U.S.C. § 1983)
7. Violation of Civil Rights (42 U.S.C. § 1983)
8. Defamation / Injurious Falsehood
9. Intentional Infliction of Emotional Distress

**DEMAND FOR JURY TRIAL**

Before Hon. Judge Kenley Kiya Kato

**PLAINTIFF SEEKS:**

- Declaratory Relief;
- Preliminary and Permanent Injunctive Relief;
- Reinstatement and/or Front Pay;
- Compensatory Damages;
- Economic Damages;
- General Damages;
- Special Damages;
- Punitive and Exemplary Damages;
- Attorney's Fees and Costs as Authorized by Law;
- Pre-Judgment and Post-Judgment Interest; and
- Such Other and Further Relief as the Court Deems Just and Proper.

**ESTHER TENDO ATAM**
Plaintiff, In Pro Per

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................i

I.      PRELIMINARY STATEMENT .......................................................................... 1

  37.      TOLLING AND EXHAUSTION OF ADMINSTRAIVE REMEDIES ......................... 6

II.     STATEMENT OF FACT ...................................................................................... 19

  A.   FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION ................................................................................................. 19

  B.   FACTUAL ALLEGATIONS DEFAMATION .................................................... 27

  C.   FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS ........... 29

  D.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ............................. 33

  E.   FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS ............................. 36

III.    CAUSES OF ACTION - .....................................................................................42

  COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112) ..............................................................................................42

  COUNT 2: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE .................................................................................................47

  COUNT 3: DEFAMATION PER SE .....................................................................44

  COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS  (Violation of Civil right Act 42 U.S.C., & 1985) ...................................................................................48

  COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS  (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983) ........................................................................ 57

  COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983) ....................................................................................59

  COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):) ................................................ 64

  COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD .......................................68

  COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) ................71

IV.     RELIEF SOUGHT ...............................................................................................77

V.   DEMAND FOR JURY TRIAL .............................................................................81

**CASES**

*Ashcroft v. Iqbal*......................................................................................................24

*Bell Atlantic Corp. v. Twombly*...............................................................................24

*Holland v. Florida*, 560 U.S. 257, 259 (2010).........................................................9

*Holland v. Florida*, 560 U.S. 258, 249 (2010.........................................................10

*Holland v. Florida*, 560 U.S. 631, 653 (2010.........................................................8

*Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946)...........................................9

*Honig v. Doe*, 484 U.S. 305, 327 (1988).................................................................7

*Kavanagh v. Noble*, 332 U.S. 535, 539 (1947);.....................................................9

*Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982)....................................11

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996.......................10

**STATUTES & RULES**

**(ADA), (42 U.S.C & 12112**...........................................................................i, 4, 33

16 CCR § 1405...................................................................................29, 31, 56

**28 U.S.C & 1738**......................................................................................4

28 U.S.C section 133 and 28 U.S.C section 1343(a)(3).............................................1

**28 U.S.C. § 1738**....................................................................................10

28 U.S.C. §§ 2201 and.............................................................................69

**42 U.S.C & 11111**...................................................................................6

42 U.S.C. & 1983, 42 U.S.C. & 1985.......................................................................1

42 U.S.C. § 11112(a)..............................................................................61

42 U.S.C. § 11112(b.................................................................................61

42 U.S.C. § 12102(1),...............................................................................34

42 U.S.C. § 12111 *et seq*.........................................................................19

42 U.S.C. § 12111(8)................................................................................34

42 U.S.C. § 12112(b)(5)(A),.....................................................................19

42 U.S.C. § 1983..............................................................................passim

42 U.S.C. § 1983 and California Civil Code § 3294........................................71

**42 U.S.C. § 1985(3))**..............................................................................21

**42 U.S.C. §§ 11111–11112**..................................................................60

**42 U.S.C. Section 1983)**:....................................................................3, 11

**42 U.S.C., & 1983**........................................................................i, 5, 47, 54

California Business and Professions Code § 820........................................48

Government Code § 12940 et seq................................................................69

**Rule 12(b)(6)**.........................................................................................passim

Rule 12(b)(6)..............................................................................................12

**Rule 12(b)(6):**.........................................................................................24

**Violation of Civil right Act 42 U.S.C., & 1983)**:....................................5

**Violation of Civil right Act 42 U.S.C., & 1985**...............................i, 5, 39

1.    Plaintiff submits this Second Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Plaintiff has been granted leave to file this pleading by the Courts order date **06/17/2026**, which is attached here to as Exhibit A.

## I.    PRELIMINARY STATEMENT

2.    This is a civil action for damages and injunctive relief brought pursuant to 42 U.S.C. & 1983, 42 U.S.C. & 1985,  and the First and Fourteenth Amendments to the United States Constitution to redress coordinated, unlawful conspiracy designed to violate Plaintiff's civil rights, deny due process, and suppress protected petitioning activity secured by the Constitution and laws of the United States. This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343(a)(3)** (civil rights), as this action arises under the Constitution and laws of the United States.

3.    **The "Color of Law" Assertion**: This action arises out of a *continuous*, unlawful conspiracy between between private entity Kaiser Permanente, ("Kaiser"), Gary Carlin and State Actors operating under color of law, specifically agent and officials of the Board of Registered Nursing ("BRN") Loretta Melby.

4.    Defendants Kaiser engaged in a text-book display of bad faith. One day, Defendants explicitly agreed to schedule and administer a Fitness for Duty (FFD) examination for Plaintiff. The very next day, before any such examination could occur, or be realistically scheduled, Kaiser abruptly terminated Plaintiff's employment. Simultaneously,  Kaiser immediately forwarded knowingly false report to the California Board Of Registered Nursing ("BRN") deceptively claiming that Plaintiff had outright refused to take the Examination. This rapid manufactured pretext was a deliberate move to destroy plaintiff's career, justify an unlawful termination and retaliate against plaintiff forming the basis  of the constitutional and statutory claims detailed below.

5.    Kaiser initiated this retaliatory scheme by manufacturing and transmitting a knowingly false and defamatory report to the BRN, concerning

1

**SECOND AMENDED COMPLAINT**

Plaintiff's professional conduct and competency. The objective was to revoke Plaintiff's Registered Nurse License without affording constitutionally mandate procedural Due Process, and to subsequently use the administrative proceedings and state court to insulate themselves from liability and deny the plaintiff access to the courts.

6.  In furtherance of their conspiracy, the defendants agreed and acted jointly to weaponize a fabricated, defamatory, and retaliatory report submitted to the BRN. This malicious report directly cause the unlawful revocation of Plaintiff's RN license without due process of law.

7.  To conceal the fabricated nature of the retalitory report and evade scrutiny, Defendants, acting in concert with state agents, petitioned state court for improper prefiling vexatious litigant prefiling orders, leveraging the prefiling orders to protect third parties from meritorious lawsuit and suppress plaintiff's First Amendment Rights.

8.  To immunize Kaiser from liability and permanently suppress plaintiff's legal redress, the BRN actively intervened in an active state court proceedings. Operating outside its lawful regulatory mandate, the BRN submitted a bad-faith filing specifically  designated to orchestrate and support  a highly restrictive prefiling vexatious litigant order against plaintiff.

9.  By acting in concert to secure state court protective orders that shield government third parties from legitimate legal scrutiny, defendants have effectively weaponized state judicial machinery. This conspiracy has deprived plaintiff of protected property and liberty interest, extinguishing plaintiff's livelihood, and completely obstructed  Plaintiff's fundamental right of access to the courts.

10.  The revocation of Plaintiff's license and barring of access to state courts to expose the defamation were accomplished under color of state law. These acts constitute a deprivation of Plaintiff's liberty and property interest in their professional license without Due Process of law, and a Violation of the right to petition the government for redress of grievances.

2

**SECOND AMENDED COMPLAINT**

**11.**   In Response to Plaintiff's protected activities to expose and hold the Defendants accountable for violating constitutional rights, the Defendants—acting in active concert and collusion with state actors—embarked on an extensive , deliberate, and malicious smear campaign , of factual distortions and character assassination and to insulate itself from accountability.

**12.**   By systematically deploying false narratives and engaging in reactive abuse, the Defendants sought to distort the truth, tarnish the Plaintiff's reputation, and punish them for exercising their fundamental right.

**13.**   This "reactive abuse" was intentionally leveled to discredit plaintiff and obscure Defendants underlying Civil Right Violations. Through this coordinated effort, the Defendants have inflicted substantial harm and sought to silence the Plaintiff through intimidation and defamation. Plaintiff brings this action to seek redress, clear their name and secure Justice under the Law. Plaintiff seeks declaratory relief, permanent injunctive relief, compensatory damages, punitive damages and to remedy this ongoing pattern of State connected retaliation and reputaional Harm.

**14. Deprivation of Constitutional Rights Due Process Violations (42 U.S.C. Section 1983)**:

**15. Introduction of the Dispute**: This dispute arises out of the application of a **December 22, 2022**, state court prefiling order to a separate, pre-existing employment lawsuit Plaintiff filed on **December 5, 2022**, against Southern California Permanente Medical Group (SCPMG). The enforcement of this order in the 2022 litigation forms the basis of the controversy, leading to the federal claims asserted herein.

**16. The Defendant's Position**: In the 2022 lawsuit, the defendants presented an entry of judgment order from **September 21, 2022**, in a prior case involving a separate entity, Kaiser Foundation Hospitals (KFH).

**17. The Defendant's Argument**: Defendants asserted that the prior judgment constituted a global dismissal of Fair Employment and Housing Act

3

**SECOND AMENDED COMPLAINT**

(FEHA) claims against all Kaiser entities, including SCPMG, thereby subjecting the 2022 lawsuit to the prefiling order.

**18. The State Court's Ruling**: The state court adopted the defendants' characterization of the prior judgment and ordered Plaintiff to post a $10,000 deposit.

**19. The Procedural Dismissal**: Following Plaintiff's failure to post the required deposit, the state court dismissed the lawsuit against SCPMG.

**20. Lack of Merits Determination**: The state court entered the dismissal order without convening an evidentiary hearing or adjudicating the factual merits of Plaintiff's underlying tort claims.

**21. The Impact**: This procedural dismissal terminated Plaintiff's active claims prior to the expiration of the applicable statutes of limitation.

**22. Exception to Full Faith and Credit (28 U.S.C & 1738)**: Federal courts generally respect State Courts judgments, but not if the State court lacked Jurisdiction or **completely Denied Due Process**.

**23.** A Federal court is not bound by Full Faith and Credit under 28 U.S.C & 1738 because the state court judgment lacked fundamental due process. A state court order that bars a plaintiff from filing claims before the expiration of the applicable stature of limitation - without an evidentiary hearing or formal adjudication on the merit - is constitutionally void and **ineligible for res judicata or collateral estoppel.**

**24. Violation of the Americans with Disabilities Act (ADA), (42 U.S.C & 12112):** Defendants violated the Disabilities Act (ADA), 42 U.S.C., & 12111, by failing to engage in good faith interactive process to identify and implement reasonable accommodation, resulting in an adverse employment and unlawful discrimination.

**25. Defamation and Tortious Interference:** Defendants engaged in extreme and outrageous conduct involving intentional, malicious and widespread

4

**SECOND AMENDED COMPLAINT**

smear campaign, publishing false and defamatory statement to third parties like the Board of Registered Nursing with reckless disregard for the truth, constituting Defamation Per Se and Tortious Interference with Plaintiff's prospective economic advantage.

26.  **Conspiracy to Interfere with Civil Rights  (Violation of Civil right Act 42 U.S.C., & 1985)**: Defendants conspired and acted in concert for the express purpose of depriving plaintiff of the equal protection of the laws, hindering the course of Justice and violating Plaintiff's constitutional rights.

27.  **Conspiracy to Deprive Civil Rights  (Violation of Civil right Act 42 U.S.C., & 1983)**: Defendants intentionally obstructed, intimidated and retaliated against plaintiff to block their fundamental right of access to the courts, guaranteed under the First and Fourteenth Amendments.

28.  A prefiling order entered  on  **July 7, 2025**  (to protect third parties like the Board of Registered Nursing and Kaiser entities) regarding  unadjudicated California Business and Professions Code & 820 orders constitutes a structural denial of Due Process under the Fourteenth Amendment. A prefiling restriction cannot be weaponized as a blanket immunity shield for third parties where the underlying merits of the fraudulent reporting were never litigated or judicially determined.

29.  **Revocation of RN license without Due Process (Violation of the 14th Amendment (42 U.S.C., & 1983):**  An RN license is a protected property interest. Defendants acting under color of State law, deprived Plaintiff of a protected property and liberty interest in their Registered Nurse License without Procedural and Substantive Due Process in Violation of the Fourteenth Amendment.

30.  An administrative "section 820 Order" and subsequent accusation was issued by a subordinate lacking statutory authority acting as a "rubber stamp" without providing plaintiff with a meaningful hearing or the required constitutional safe guards.

31. **Defamation / Injurious Falsehood:** Defendants knowingly, maliciously and in bad faith submitted False Report to the NPDB outside the

5

**SECOND AMENDED COMPLAINT**

immunity protections of **42 U.S.C & 11111**, causing severe, ongoing, and irreparable harm to Plaintiff's professional reputation and livelihood."

**32. Intentional Infliction of Emotional Distress (IIED):** Defendants engaged in extreme, outrageous, and continuous conduct, intended to terrify, harass and psychologically menace the plaintiff, directly resulting in severe intentional infliction of Emotional Distress and physical manifestation of anxiety.

**33.** **TOLLING AND EXHAUSTION OF ADMINSTRAIVE REMEDIES**

**The Futility of Administrative Exhaustion (Title VII / ADA / FEHA Claims)**

**34.** **The Legal Rule:**

**35.** Federal courts do not require a plaintiff to perform a useless act.

**36.** Administrative exhaustion is excused under the "futility exception" when an agency or a prior court ruling has made it impossible or entirely certain that the remedy will be denied.

**37.** **The Doctrines of Futility and Claim Preclusion Excused Any Secondary Administrative Exhaustion Because Defendants Locked in a Global Adjudication on the Merits.**

**38.** Plaintiff is excused from any requirement to obtain a secondary, administrative Right-to-Sue letter from either the California Civil Rights Department (formerly DFEH/FEHA) or the Equal Employment Opportunity Commission (EEOC). The futility exception to the administrative exhaustion doctrine applies squarely here. *See, e.g., Honig v. Doe*, 484 U.S. 305, 327 (1988) (exhaustion is not required when it would be futile).

**39.** **On September 21, 2021**, Defendant Kaiser Foundation Hospitals ("KFH") and various Doe defendants successfully secured an entry of final judgment. In doing so, Defendants actively and aggressively argued to the court

6

**SECOND AMENDED COMPLAINT**

that this final judgment was fatal to *all* Kaiser entities as a whole, effectively treating all related entities as a single, indivisible global unit for the purposes of claim preclusion.

40. By locking in a judicial determination that the operative claims were dead globally, Defendants' own legal maneuvering rendered any secondary administrative filing entirely futile. An administrative agency cannot resurrect a claim that a court of competent jurisdiction has already declared legally dead via a final judgment. Because Defendants successfully bound all Kaiser entities to that **September 21, 2021** judgment, requesting a secondary administrative right-to-sue letter would have been a hollow, meaningless gesture. The law does not require a plaintiff to exhaust administrative remedies where the outcome is a predetermined legal impossibility due to the defendant's own microscopic litigation tactics.

41. **The Timeliness of ADA Title II Claims and Equitable Tolling**

42. **The Legal Rule:** Equitable tolling applies in federal court when a plaintiff pursues their rights diligently but extraordinary circumstances—such as a defendant's subversion of the judicial process or an erroneous procedural dismissal—prevented timely filing on the merits.

43. **Plaintiff's ADA Title II Claims Are Timely, and to the Extent Any Limitation Period Has Lapsed, Plaintiff is Entitled to Equitable Tolling Due to Defendants' Subversion of Judicial Machinery.**

44. On May 10, 2021, Plaintiff received a valid Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), thereby exhausting administrative remedies and preserving timely federal claims. Plaintiff's Americans with Disabilities Act (ADA) claims accrued on **March 18, 2021,** and are subject to the applicable statutory filing period. Plaintiff diligently pursued these rights by filing a timely action against Kaiser Foundation Hospital (KFH) in State court on **November 21, 2021**, well within the applicable statutory window.

7

**SECOND AMENDED COMPLAINT**

**45.** Equitable tolling is appropriate because Plaintiff pursued their rights with reasonable diligence, but was prevented from timely filing due to extraordinary circumstances utterly beyond their control. Namely, Defendants engaged in bad-faith, contradictory legal maneuvering explicitly designed to obstruct a determination on the merits.

**46.** While the statute of limitations is strictly construed, federal courts consistently recognize that a defendant's inequitable conduct, deception, or bad-faith gamesmanship tolls the limitations period.

**47.** Here, Defendants did not merely defend themselves; they actively subverted the judicial process. Defendants switch-vaunted their legal positions across different fora, asserting contradictory procedural arguments designed solely to exhaust the clock. This intentional, deceptive maneuvering created a moving target that effectively closed the courthouse doors to Plaintiff. This underhanded strategy constitutes an extraordinary circumstance because it directly impeded Plaintiff's ability to file the instant federal action within the nominal limitations window. Defendants cannot use the statute of limitations as both a sword and a shield when their own bad-faith conduct engineered the very delay they now complain of.

**48.** Despite Defendants' systemic obstruction, Plaintiff diligently pursued their claims. Reasonable diligence requires only "reasonable efforts under the circumstances," not maximum feasible diligence. *Holland v. Florida*, 560 U.S. 631, 653 (2010). Plaintiff consistently advanced this litigation and responded promptly to Defendants' manufactured procedural hurdles. Because equitable tolling is a fact-bound inquiry, Plaintiff filed this action immediately upon discovering the full scope of Defendants' fraudulent, contradictory maneuvering. Consequently, equity requires tolling the limitations period to allow a decision on the merits.

**49.** In a prior state court action, Kaiser Foundation Hospitals ('KFH') successfully sought summary judgment on July 14, 2022, solely on the technical, non-substantive ground that it lacked an employment relationship with Plaintiff, producing a Southern California Permanente Medical Group ('SCPMG') paycheck to identify SCPMG as the true employer. Despite this narrow ruling, and while

8

**SECOND AMENDED COMPLAINT**

Doe defendants remained pending, KFH improperly entered a final judgment on **September 21, 2022** purporting to dismiss the entire action, by misrepresenting to the state court that all claims against all Kaiser-related entities had been adjudicated on the merits.

50.    Defendants then weaponized this misrepresentation in December 2022—after Plaintiff had already commenced a separate action against SCPMG— by securing a pre-filing vexatious litigant order. The state court, operating under the false preclusion narrative advanced by Defendants, conditioned Plaintiff's ability to proceed on the posting of an arbitrary $10,000 bond. Plaintiff's subsequent administrative dismissal resulted solely from a financial inability to post this exorbitant bond, not from a failure of the substantive merits of the Americans with Disabilities Act ('ADA') claims.

51.    Equitable tolling is designed precisely for scenarios where a defendant's own deceptive or manipulative litigation conduct creates a functional, insurmountable barrier to a plaintiff's timely filing. *See, e.g.*, *Kavanagh v. Noble*, 332 U.S. 535, 539 (1947); *Holmberg v. Armbrecht*, 327 U.S. 392, 396-97 (1946) (holding that equitable tolling applies where a defendant's conduct has misled the plaintiff or obstructed relief). Defendants cannot use a procedural shield they acquired through misrepresentation to bar Plaintiff from a federal forum.

52.    The diligence prong of the equitable tolling doctrine does not require perfect or flawless execution, but rather 'reasonable diligence' under the circumstances. *Holland v. Florida*, 560 U.S. 257, 259 (2010).

53.    Plaintiff has consistently, aggressively, and without delay attempted to bring these claims to light. Plaintiff timely filed against KFH, promptly initiated an action against SCPMG upon learning of their purported employer status via KFH's own evidentiary productions, and was actively litigating when Defendants disrupted the ordinary course of proceedings with the pre-filing order. Plaintiff did not sleep on their rights; rather, Plaintiff's access to the courts was stripped away by a financial requirement triggered by Defendants' misrepresentations. Because Plaintiff filed this federal action as soon as practically viable following the

9

**SECOND AMENDED COMPLAINT**

functional closure of the state court forum, the diligence requirement is fully satisfied.

54.     To the extent Defendants assert that any statute of limitations has run, the doctrine of equitable tolling must intervene. Federal equitable tolling applies when a plaintiff shows: (1) diligent pursuit of their rights, and (2) extraordinary circumstances that stood in their way. *Holland v. Florida*, 560 U.S. 258, 249 (2010).

55.     **March 18, 2021**: Cause of action accrues; ADA Title II statute of limitations begins running.

56.     **May 10, 2021**: Plaintiff successfully obtains a valid EEOC Right-to-Sue letter. **September 21, 2021**: Court enters final judgment for KFH; Defendants argue this judgment legally binds and immunizes all Kaiser entities globally. **December 5, 2022**: Plaintiff files a separate lawsuit against SCPMG (*Pro Per*), well before the March 18, 2023 ADA expiration date. **December 22, 2022**: Defendants obtain a retroactive pre-filing order, placing Plaintiff on the vexatious litigant list and imposing a $10,000 security bond. **December 13, 2023**: Court summarily dismisses the SCPMG case solely for failure to pay the $10,000 bond, bypassing a ruling on the actual merits. **July 7, 2025**: This restriction was heavily compounded on July 7, 2025, after Plaintiff's action against SCPMG was dismissed, and SCPMG successfully obtained an additional, layered prefiling order.

57.     **Exception to Full Faith and Credit (28 U.S.C. § 1738) Phrasing**

58.     Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts generally must give a state court judgment the same preclusive effect it would have in the courts of the rendering State." *Vandegrift v. Pennos*, 2026 WL; *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996).

59.     However, a well-established exception dictates that federal courts will not respect or enforce a state court judgment if the rendering court lacked jurisdiction or completely denied the litigant due process." *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482 (1982) ("A State may not grant preclusive effect

10

**SECOND AMENDED COMPLAINT**

in its own courts to a constitutionally infirm judgment, and federal courts are not required to accord full faith and credit to such a judgment.").

60.     Because Plaintiff has plausibly alleged that the underlying state court lacked completely denied Plaintiff a full and fair opportunity to litigate in violation of Due Process, the state court judgment is constitutionally infirm. Consequently, Section 1738 does not bar Plaintiff's claims.

61.     **Deprivation of Constitutional Rights Due Process Violations (42 U.S.C. Section 1983)**:

62.     The Prior State Court Judgment Does Not Bar Plaintiff's Claims Because It Was Procured Through a Manifest Error of Law and Constitutes a Fraud on the Court That Violated Due Process.

63.     Defendants cannot rely on the prior state court judgment for claim preclusion because that judgment is void as a matter of law. The State Court committed a **manifest error of law and a fraud on the court** by entering a final judgment in favor of the Kaiser entities as Doe defendants.

64.     **Extrinsic Fraud Exception**: res judicata does not apply to judgments obtained by fraud on the court or extrinsic fraud that defiled the judicial machinery. D**enial of Due Process**: a judgment transforming a minor prefiling procedural rule into a summary, unadjudicated dismissal before the statute of limitations expired violates core constitutional due process. Specifically, the State Court fundamentally subverted justice by transforming a restrictive, prefiling procedural mechanism—intended merely as an administrative gatekeeping tool—into a premature summary dismissal of Plaintiff's valid, unadjudicated tort claims.

65.     This dismissal occurred **well before the expiration of the applicable statute of limitations**, effectively suppressing and killing Plaintiff's viable claims without giving Plaintiff a meaningful opportunity to be heard. Because the state court machinery was subverted to achieve an improper summary termination of unadjudicated claims, the resulting judgment lacks any preclusive effect under federal law. Consequently, Plaintiff has pled sufficient facts to state a plausible claim for relief that survives dismissal under Rule 12(b)(6).

11

**SECOND AMENDED COMPLAINT**

## II.    PERSONAL JURISDICTION

**66.    Personal Jurisdiction:** This Court has personal jurisdiction over all Defendants pursuant to California Code of Civil Procedure Section 410.10 and the Due Process Clause of the Fourteenth Amendment.

**67.    Corporate Defendants:** Defendants Kaiser Foundation Hospitals, (KFH), Southern California Permanente Medical Group (SCPMG), and the California Board of Registered Nursing are citizens of California, maintain regular and systematic business operations, and have continuous corporate offices within this judicial district.

**68.    Individual Defendants:** Defendants Gary Carlin and the remaining individual Defendants named herein reside and work within the State of California, maintaining sufficient minimum contacts within this forum.

**69.    Purposeful Availment:** All Defendants have purposefully availed themselves of the benefits, privileges, and protections of California law by conducting business, executing official duties, and operating within the state.

**70.    Specific Jurisdiction:** This Court has specific personal jurisdiction over Defendants because the unlawful conduct giving rise to Plaintiff's claims occurred in substantial part within this judicial district.

**71.    Effects Test:** Defendants intentionally directed their wrongful conduct at Plaintiff, a resident of California. Defendants knew or should have known that their actions would cause severe harm and produce effects within this state, specifically within Los Angeles County.

**72.    Fair Play and Substantial Justice:** The exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

## III.    JURISDICTION

12

**SECOND AMENDED COMPLAINT**

**73.** This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** (federal question) and **28 U.S.C. § 1343(a)(3)** (civil rights), as this action arises under the Constitution and laws of the United States.

**74.** This Court has **personal jurisdiction** over Defendants because Defendants reside in, are incorporated in, maintain their principal place of business in, or systematically conduct substantial continuous business operations within the State of California and this judicial district. Furthermore, a substantial part of the tortious conduct, statutory violations, and omissions giving rise to Plaintiff's claims occurred within this State and judicial district, through which Defendants purposefully availed themselves of the privileges and protections of California law.

## IV. VENUE

**75.** Venue is proper in the United States District Court for the Central District of California pursuant to **28 U.S.C. § 1391(b)(1) and (b)(2)** because a substantial part of the events, actions, and omissions giving rise to the claims occurred within this judicial district, and Defendants reside or conduct systemic business operations within this district.

**76.** Factual bases supporting venue in this district include, but are not limited to, the following:

**77.** **Employment Site**: Plaintiff was employed at the Kaiser West Los Angeles Medical Center, located in Los Angeles County, within this judicial district.

**78.** **Unlawful Conduct**: The alleged retaliation, discriminatory suspension, denial of reasonable accommodations under the Americans with Disabilities Act (ADA), and ultimate termination of Plaintiff's employment all took place within this judicial district.

**79.** **Corroborating Communications**: Key operational communications involving HR, management, and executive officials took place within this district.

13

**SECOND AMENDED COMPLAINT**

**80.     Administrative Actions**: Plaintiff's internal complaints and EEOC filings originated within this district.

**81.     License Revocation Factual Origin**: The administrative complaint and subsequent revocation of Plaintiff's Registered Nurse (RN) license by the California Board of Registered Nursing (BRN)—which relied upon false and misleading representations by Defendants—had its factual origin in this district.

**82.     State Court Nexus**: The related state court proceedings—including the improper designation of Plaintiff as a vexatious litigant, the denial of claims against the Kaiser entity admitting employment, and the procedural consolidations—occurred within the Los Angeles County Superior Court system, deeply anchoring the factual nexus of this matter to this federal district.

**83.     Evidence and Witnesses**: The operational documents, digital records, key witnesses, and sources of evidence relevant to the adjudication of this matter are located within this judicial district.

**84.     Residency**: Plaintiff resides in Gardena, California, which is situated within the Central District of California.

## V.    PARTIES

**PLAINTIFF**

**85.     Esther Tendo Atam** ("Plaintiff") is an individual residing in **Gardena, California**, within the jurisdiction of the United States District Court for the Central District of California. At all times relevant to this Complaint, Plaintiff was a licensed **Registered Nurse (RN)** in the State of California. She was employed at **Kaiser West Los Angeles Medical Center**, where she experienced ongoing workplace harassment, retaliation, denial of accommodations under the **Americans with Disabilities Act (ADA)**, and ultimately wrongful termination.

**86.     Plaintiff** is a Black woman and a member of multiple protected classes under federal law—including race, color, national origin, and disability status. She

14

**SECOND AMENDED COMPLAINT**

brings this action in **pro per** (self-represented), asserting violations of her **civil rights, employment rights, and constitutional guarantees**, as detailed herein.

**DEFENDANTS**

### A.   KAISER FOUNDATION HOSPITALS ("KFH")

87.   Defendant KAISER FOUNDATION HOSPITALS ("KFH") is, and at all times mentioned herein is, a nonprofit public benefit corporation organized and existing under the laws of the State of California. KFH maintains its principal place of business in Oakland, California, and operates healthcare facilities throughout the state, including the Kaiser Permanente West Los Angeles Medical Center.

88.   At all relevant times, Defendant KFH acted as the joint employer of Plaintiff, or otherwise exercised operational control over Plaintiff's employment conditions.

89.   Plaintiff is informed, believes, and thereon alleges that Defendant KFH actively collaborated, conspired, and acted in concert with other Kaiser entities, the California Board of Registered Nursing ("BRN"), and specific actors within the state court system to retaliate against Plaintiff. This coordinated retaliation occurred in response to Plaintiff asserting her protected legal rights, reporting internal misconduct, and requesting reasonable accommodations under the Americans with Disabilities Act ("ADA").

90.   Defendant KFH is sued in its corporate capacity for its direct and vicarious liability regarding the following unlawful conduct:

91.   **Retaliation**: Engaging in adverse employment actions against Plaintiff for protected activities.

92.   **Denial of Court Access**: Engaging in coordinated legal maneuvers designed to obstruct Plaintiff's access to the judicial system.

15

**SECOND AMENDED COMPLAINT**

**93.    Sham Fitness for Duty Process**: Supporting, implementing, and executing a pretextual Fitness for Duty ("FFD") evaluation to justify discriminatory actions

**94.    Malicious Agency Cooperation**: Cooperating with the BRN to submit false or misleading information, intending to fraudulently frame Plaintiff as mentally unfit to practice.

**B.    SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP ("SCPMG")**

**95.**    Defendant Southern California Permanente Medical Group ("SCPMG") is, and at all times mentioned herein was, a for-profit professional corporation organized and existing under the laws of the State of California, with its principal place of business in Pasadena, California.

**96.**    SCPMG is a medical group affiliated with Kaiser Foundation Hospitals and operates healthcare clinics and medical centers throughout Southern California.

**97.**    SCPMG was Plaintiff's direct employer. SCPMG is sued in its corporate capacity for its direct liability and the acts of its agents and employees acting within the scope of their employment. Plaintiff is informed, believes, and thereon alleges that SCPMG is liable for unlawful employment practices and tortious conduct, including but not limited to: employment retaliation, denial of Americans with Disabilities Act (ADA) accommodations, retaliatory termination, initiating a sham Fitness for Duty (FD) process, and maliciously submitting false, defamatory information to the Board of Registered Nursing (BRN).

**C.    KAISER FOUNDATION HEALTH PLAN Inc ("KFHP Inc.")**

**98.**    Defendant Kaiser Foundation Health Plan, Inc. ("KFHP") is a California corporation with its principal place of business in Oakland, California.

**99.**    At all times relevant to this action, KFHP has been an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

16

**SECOND AMENDED COMPLAINT**

2000e(b), and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111(5), employing 15 or more individuals.

**100.** KFHP, acting as a joint employer/integrated enterprise with Defendant Southern California Permanente Medical Group, exercised centralized control over Plaintiff's employment terms, conditions, human resources management, labor relations, and workplace accommodations.

### D.    CALIFORNIA BOARD OF REGISTERED NURSING ("BRN")

**101.** The BRN is a division of the **California Department of Consumer Affairs**, responsible for regulating and disciplining licensed registered nurses. It is a **state agency** and operates under color of state law. The BRN is named as a necessary party for purposes of injunctive relief. Plaintiff does not seek damages against the BRN itself in compliance with the Court's order.

### E.    LORETTA MELBY

**102.** At all relevant times, **Loretta Melby** served as the **Executive Officer** of the **California Board of Registered Nursing (BRN)**, a division of the California Department of Consumer Affairs. She is responsible for the final approval, oversight, and enforcement of disciplinary actions taken against licensed nurses in California.

**103.** Plaintiff alleges that under Ms. Melby's leadership:

**104.** The BRN engaged in retaliatory proceedings based on knowingly false reports submitted by Kaiser,

**105.** The petition against Plaintiff was approved and advanced without investigation or independent verification of facts,

**106.** Cultural and discriminatory language was allowed to stand in official filings, including fabricated references to "voodoo" and "vampires," mischaracterizing Plaintiff's protected expressions,

17

**SECOND AMENDED COMPLAINT**

**107.** The revocation of Plaintiff's license proceeded without procedural due process.

**108.** In her **official capacity**, Melby is sued solely for **prospective injunctive relief**, including reinstatement of Plaintiff's nursing license, correction of false records submitted to the **National Practitioner Data Bank (NPDB)**, and orders preventing future retaliatory actions.

**109.** In her **individual capacity**, Melby is sued under **42 U.S.C. § 1983** for personally approving and authorizing retaliatory and unconstitutional actions, including reliance on false Kaiser submissions, sham administrative proceedings, and revocation of Plaintiff's license without due process.

## F.   GARY CARLIN PRIOR ATTORNEY

**110.** Defendant **Gary Carlin** ("Carlin") is, and at all relevant times was, an attorney licensed to practice law in the State of California. Upon information and belief, Carlin maintains a law office in Los Angeles County, California, and regularly represents clients in employment and civil rights matters.

**111.** Plaintiff retained Carlin for legal representation following workplace harassment, retaliation, and wrongful termination by her employer. Although Carlin filed the initial complaint, they committed legal malpractice by naming only Kaiser Foundation Hospital as a primary defendant. Carlin improperly relegated the direct employer, SCPMG, to a "Doe" defendant status and further committed malpractice by actively concealing evidence of extrinsic fraud.

**112.** Plaintiff further alleges that Carlin's omissions and malpractice enabled Kaiser Foundation entities and the Board of Registered Nursing (BRN) to advance false defenses, secure improper judicial rulings, and pursue sham administrative proceedings that culminated in the revocation of Plaintiff's nursing license.

**113.** Plaintiff sues Defendant Carlin in his **individual capacity**, alleging causes of action including **legal malpractice, breach of fiduciary duty, fraudulent concealment, and conspiracy to violate civil rights.**

18

**SECOND AMENDED COMPLAINT**

## G. DOES 1 THROUGH 50 – UNNAMED DEFENDANTS

**114.** Plaintiff is currently unaware of the true names and identities, whether individual or corporate, of certain entities and individuals who actively participated in, directed, or ratified the events alleged herein. Plaintiff therefore sues said Defendants by such fictitious names (DOE Defendants 1 through 10, inclusive). Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and capacities of such DOE Defendants when they have been ascertained.

**115.** Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants designated herein as a DOE is or was an official, employee, agent, or representative of Defendant Kaiser and was personally involved in the fabrication, initiation, and/or execution of the retaliatory Fitness for Duty process described herein. These **DOE Defendants** include, but are not limited to:

**116.** Kaiser human resource personnel, direct supervisors or administrative staff who supplied false information, initiated the retaliatory process, or enforced the unwarranted leave and demands placed upon Plaintiff,

**117.** BRN disciplinary agents or investigators,

**118.** Legal actors or assistants who coordinated court filings and manipulated procedural outcomes.

**119.** Plaintiff will amend this Complaint to substitute the true names and roles of DOES 1–50 as they become known through discovery.

## VI. STATEMENT OF FACT

## A. FACTUAL ALLEGATIONS ADA RETALIATION AND WRONGFUL TERMINATION

**(Against SCPMG, KFH, KFHP Collectively Kaiser Defendant)**

**a) Preliminary Allegations & Background Hostile Work Environment**

19

**SECOND AMENDED COMPLAINT**

**120.** Plaintiff is a Black individual of [West African originally from Cameroon/Cultural Background] descent, placing her within a protected class under Title VII.

**121.** For approximately three months leading up to August 28, 2020, Plaintiff was subjected to persistent, severe, and pervasive verbal harassment, intimidation, and bullying by a male coworker.

**b)     Protected Activity (The Internal Report)**

**122.** On **August 28, 2020**, Plaintiff engaged in a protected activity under Title VII by submitting a formal internal report regarding the ongoing hostile work environment, to Southern California Permanente Medical Group ("SCPMG") Management, specifically Managers Sarah Poetter and Cheryly Surma.

**123.** During this report, Plaintiff conveyed the extreme severity of the abuse by explaining that the harassment felt like 'voodoo'—a cultural expression intended to communicate the profound, visceral, and paralyzing impact the hostile environment had on her well-being.

**124.** While Defendant was not initially aware of Plaintiff's pre-existing Post-Traumatic Stress Disorder (PTSD), Plaintiff's formal report explicitly put Defendant on actual notice of the severe, escalating nature of the harassment and the acute emotional distress it was causing.

**c)     Adverse Employment Actions & Disparate Treatment**

**125.** Despite this explicit notice and the cultural context provided by Plaintiff, Manager Sarah Poetter bypassed all standard Human Resources disciplinary, investigative, and corrective protocols.

**126.** Instead of investigating the harassment, Defendant swiftly and abruptly dismissed Plaintiff from her active work duties on that same day.

20

**SECOND AMENDED COMPLAINT**

**127.** Defendant targeted Plaintiff's benign cultural expression through the lens of racial animus and cultural stereotypes, weaponizing her words to mischaracterize her as unstable or dangerous.

**128.** On August 28, 2020, Defendant subjected Plaintiff to an unsubstantiated, non-routine psychiatric medical inquiry and evaluation that was entirely untethered from her actual job performance.

**129.** Defendant conditioned Plaintiff's return to active duty upon obtaining a formal "mental clearance," utilizing this arbitrary requirement as a retaliatory barrier to employment.

**130.** Defendant did not require similarly situated non-Black, non-West African National Origin employees to undergo *non-standard psychiatric evaluations* or obtain "*mental clearance*" to maintain active employment.

**131.** Following the forced medical leave demand, Defendants placed Plaintiff on an indefinite, unpaid suspension spanning several months from August 28, 2020, until her formal termination on March 18, 2021.

**132.** This prolonged unpaid suspension effectively stripped Plaintiff of her livelihood and benefits without administrative due process or legitimate business justification.

### d)    Causation, Pretext, and Cover-Up

**133.** A strict temporal proximity exists between Plaintiff's protected activity and Defendant's adverse actions, as the abrupt dismissal, discriminatory medical inquiry, and forced medical clearance all occurred on August 28, 2020— the exact same day Plaintiff reported the harassment.

**134.** The close temporal connection between Plaintiff's protected disclosure and the immediate adverse actions establishes a strong, plausible inference of retaliatory intent.

21

**SECOND AMENDED COMPLAINT**

**135.** Defendant's sudden insistence on a psychiatric evaluation and "mental clearance" was entirely pretextual, designed to mask racial prejudice, punish her cultural expression, and cover up Defendant's failure to address the underlying hostile work environment.

**136.** On November 6, 2020, Plaintiff attended a meeting with Human Resources ("HR") and management, which included Sarah Poetter, Brooke Ball, and Plaintiff's union representatives.

**137.** During this meeting, Sarah Poetter explicitly and falsely denied that Plaintiff had been dismissed from employment on August 28, 2020.

**138.** In truth, on August 28, 2020, Plaintiff was sent home from work, dismissed on the spot without standard HR protocols, and expressly informed that she could not return to work without obtaining a mental health clearance note.

**139.** Despite Plaintiff having already submitted the requested mental health clearance note on September 4, 2020, and presenting it again during the November 6, 2020 meeting, HR and management completely ignored the clearance documentation.

**140.** Instead, during the November 6, 2020 meeting, HR, Sarah Poetter, Brooke Ball, and the union representatives collectively denied that the August 28, 2020 dismissal ever occurred.

**141.** Management and HR instead pressured Plaintiff to sign a backdated suspension slip for August 28, 2020, which falsely cited a purported medication error from August that Plaintiff had no prior knowledge of.

**142.** This coordinated denial of the initial dismissal and the pressure to sign backdated disciplinary forms caused Plaintiff severe emotional distress and mental anguish.

**143.** Sarah Poetter and SCPMG management fabricated this narrative regarding the August 2020 medical error as a pretextual justification to conceal their true retaliatory motive and mask the hostile work environment.

22

**SECOND AMENDED COMPLAINT**

**144.** Plaintiff refused to sign the back-dated suspension slip because it contained false information regarding the nature of her absence.

**145.** In retaliation for Plaintiff's refusal to sign the back-dated suspension slip, Defendant's management immediately escalated Plaintiff's disciplinary status from Level 1 to Level 2.

**146.** Defendant's management further threatened Plaintiff that a failure to cooperate and sign the document would result in her eventual termination.

**147.** Due to the false statements and escalation by Defendant's representatives, Plaintiff openly expressed that she was experiencing extreme emotional distress.

**148.** In response to Plaintiff's visible distress, Defendant's management officially requested yet another mental health clearance note on November 23, 2020.

**149.** Defendant subsequently placed and maintained Plaintiff on an indefinite suspension.

### e)   Protected Activity and Notice of Disability

**150.** On **December 29, 2020,** Plaintiff's healthcare provider, Kang Jiyun PSY, sent a formal written notification via email to Defendants.

**151.** This email explicitly notified Defendants that Plaintiff suffered from a recognized disability, specifically Complex Post-Traumatic Stress Disorder ("C-PTSD").

**152.** The notice stated that Plaintiff's C-PTSD was directly induced by repeated, persistent exposure to a hostile work environment at Kaiser Foundation Hospital West Los Angeles.

**153.** This notification constituted both a formal notice of disability and a protected activity under federal and state enforcement laws

23

**SECOND AMENDED COMPLAINT**

**154.** Approximately one month later, **January 1, 2021**, in direct response to the provider's correspondence, Defendants issued a denial of medical leave—a benefit Plaintiff had never requested.

**155.** Simultaneously, Defendants converted Plaintiff's status from an unpaid, indefinite suspension to an unauthorized and unpaid medical leave

### f)   Damaging Impact and Constructive Discharge

**156.** As a direct and proximate result of Defendants' ongoing retaliatory suspension and institutional denial, Plaintiff's mental health severely deteriorated, requiring intensive clinical intervention.

**157.** On **February 10, 2021**, Plaintiff's clinical provider issued a formal medical restriction advising that returning to the identical toxic work environment would cause catastrophic harm to Plaintiff's mental health.

**158.** Management and HR weaponized mental health procedures against Plaintiff, a racial minority, thereby creating and maintaining an objectively hostile work environment.

**159.** By refusing to remedy the hostile environment or accommodate the restriction, Defendants made Plaintiff's working conditions objectively intolerable.

### g)   <u>The Retaliatory Chronology and Temporal Proximity</u>

**h)** The strict, uninterrupted chronological succession of adverse actions taken against Plaintiff—beginning immediately after her reports of a hostile work environment, followed by her accommodation request, the manufactured fitness-for-duty dispute, her summary termination, and the subsequent Board of Registered Nursing (BRN) report—constitutes compelling circumstantial evidence of Defendants' retaliatory intent.

### i)   Plaintiff's Accommodation Request and Protected Activity

30. Plaintiff previously submitted a valid, professional accommodation request from a licensed psychologist to Defendants on **December 29, 2020**.

24

**SECOND AMENDED COMPLAINT**

**160.** The psychologist's documentation explicitly cleared Plaintiff to work, subject only to the restriction and accommodation of a transfer away from the hostile work environment to mitigate ongoing psychological trauma.

**j)    Defendants' Bad Faith and Failure to Engage in the Interactive Process**

**161.** Defendants' Human Resources (HR) department acting in bad faith, deliberately misconstrued the psychologist's clear transfer recommendation as an absolute medical inability to work.

**162.** By treating a specific department transfer request as a total medical disqualification, HR severely misrepresented Plaintiff's medical restrictions to deny the accommodation entirely and evade its mandatory duty to engage in a good-faith interactive process under the Americans with Disabilities Act (ADA) and the California Fair Employment and Housing Act (FEHA).

**k)    The Weaponization of the Fitness-for-Duty (FFD) Examination as Pretext**

**163.** Defendants utilized Plaintiff's protected request for a transfer as a pretextual basis to mandate an unnecessary Fitness-for-Duty (FFD) examination.

**164.** Mandating an FFD examination when a qualified treating medical professional had already cleared an employee to work under safe conditions constituted an unlawful, unnecessary hurdle designed to penalize Plaintiff for reporting workplace hostility.

**165.** Despite the pretextual nature of the directive, Plaintiff explicitly agreed to comply with the employer's FFD request.

**l)    Protected Objections to the Medical Release and Summary Termination**

**166.** In consenting to the FFD, Plaintiff requested a reasonable modification to Defendants' broad medical release form, asking that inquiries be

25

**SECOND AMENDED COMPLAINT**

conducted in writing rather than orally to ensure they remained strictly job-related, consistent with business necessity, and protective of private health information. Plaintiff's request to limit the scope of the medical release constitutes protected activity under applicable employment laws.

167. Rather than engaging in the mandatory interactive process regarding this request, Defendants abruptly and summarily terminated Plaintiff's employment exactly one day after she requested the modification to the medical release form.

168. Defendants' sudden termination of Plaintiff, occurring a single day after her protected activity, establishes an unassailable causal link driven by temporal proximity.

169. Following this request, Defendants engaged in an immediate, unbroken succession of adverse actions: maintaining the hostile work environment, refusing the accommodation, denying Fitness for Duty ("FFD") clearance, terminating employment, and filing a report with the Board of Registered Nursing ("BRN").

170. The close temporal proximity between Plaintiff's protected activities (reporting harassment and requesting accommodation) and Defendants' adverse actions (termination and the BRN report) establishes strong circumstantial evidence of retaliatory intent.

171. Under 42 U.S.C. § 12112(b)(5)(A), discrimination includes 'not making reasonable accommodations to the known mental limitations of an otherwise qualified individual with a disability.' The ADA regulations explicitly contemplate an 'interactive process' between the employer and employee to identify the precise limitations and potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(3).

172. Plaintiff's Complaint alleges a plausible claim for unlawful discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*Taken as true, the direct medical notices from her provider, the total abandonment of standard HR protocols by the Kaiser

26

**SECOND AMENDED COMPLAINT**

Defendants, the temporal proximity between her work place report and her immediate suspension and subsequent termination, and ongoing psychological harm collectively state a plausible claim for relied under Americans with Disabilities Act (ADA) and Title VII for Discrimination, Retaliation and Hostile Work Environment.

173. Plaintiff has pled sufficient factual matter—accepted as true at this stage—showing that Defendants were fully aware of Plaintiff's disability and that Plaintiff requested a reasonable accommodation. Defendants explicitly violated their statutory duties by failing to engage in a good-faith interactive process to identify and implement an accommodation. Instead of exploring viable options, Defendants abruptly broke off communications, leading directly to an adverse employment action and unlawful discrimination. Because these factual allegations raise Plaintiff's right to relief well above a speculative level, Plaintiff has stated a legally sufficient claim that easily survives dismissal under Rule 12(b)(6).

## B. FACTUAL ALLEGATIONS DEFAMATION

**(Against all Kaiser defendants)**

174. **WEAPONIZING THE THE LICENSING BOARD AND MALICIOUS REPORTING**

175. **The False Statement:** Southern California Permanete Group employee (SCPMG) Sarah Poetter, acting within the course and scope of her employment as an RN Manager for SCPMG at the Kaiser West Los Angeles Emergency Room, made a knowingly false and defamatory statement to the California Board of Registered Nursing ("BRN"). Specifically, Poetter falsely reported that Plaintiff suffered from a permanent, intrinsic mental illness that impaired Plaintiff's professional competency, directly harming Plaintiff's professional standing and nursing license.

176. **The Knowledge of Falsity (Malice):** Despite knowing Plaintiff's distress was environmentally caused by internal harassment rather than a functional cognitive impairment, Defendant intentionally bypassed standard corporate evaluation metrics. Specifically, Defendant refused to administer an

27

**SECOND AMENDED COMPLAINT**

objective Fitness For Duty (FFD) evaluation that would have verified Plaintiff's competency. Instead, Defendant reported Plaintiff to the licensing Board under the false guise of "mental illness." Defendant did so with the specific intent to commit professional character assassination, retaliate against Plaintiff, and create a pretextual basis for adverse employment action.

177. **Publication:** "Defendant published these false statements by filing a formal report with the BRN on or about **May 3, 2021**.

178. **The Shield/Subterfuge:** Defendant utilized the BRN reporting process as a pretextual shield to bypass standard corporate evaluation metrics and intentionally engage in professional character assassination.

179. **The FFD Denial:** As direct evidence of this bad faith, Defendant simultaneously and intentionally refused to administer an objective Fitness For Duty (FFD) evaluation, which Defendant knew would distinguish situational trauma from cognitive impairment.

180. **Damages:** As a direct result of Defendant's false statement to the BRN, Plaintiff suffered severe harm to their professional reputation, emotional distress, *lost wages and employment opportunities.*

181. **Business Expectancy:** Plaintiff had a valid business expectancy and reasonable expectation of continued employment and future economic advantage within the nursing profession.

182. **Defendant's Knowledge:** Defendant was fully aware of Plaintiff's professional reliance on their nursing license to maintain employment and secure future economic opportunities.

183. **Purposeful Interference:** Defendant intentionally and improperly interfered with Plaintiff's business expectancy by submitting a bad-faith report to the BRN under the guise of a 'mental illness' concern.

184. **Improper Means:** This interference was accomplished through improper means, specifically: bypassing standard corporate evaluation metrics,

28

**SECOND AMENDED COMPLAINT**

refusing an objective FFD evaluation, and fabricating a functional cognitive impairment to weaponize a regulatory board against an employee.

**185.  Preventing the Relationship:** Defendant's bad-faith report directly triggered a BRN investigation, thereby disrupting, impairing, or threatening Plaintiff's ability to maintain employment and secure future contracts.

**186. Damages:** As a direct and proximate result of Defendant's interference, Plaintiff has suffered economic harm, including [lost wages, benefits, or specific job opportunities], loss of RN licence and livelihood.

## C.  FACTUAL ALLEGATIONS CONSPIRACY TO INTERFERE WITH RIGHTS

**(Against carlin, Kaiser, Melby/BRN Defendants)**

**a)  Part I: THE SUBSTANTIVE CONSPIRACY ALLEGATION (42 U.S.C. § 1985(3))**

**187.**  Plaintiff is a member of a protected class based on her national origin (born in Cameroon West Africa). At all times relevant, Plaintiff engaged in protected cultural expressions, communication styles, and behavioral norms inherent to her national origin. Defendants exhibited an invidious, class-based animus by weaponizing cultural ignorance and prejudice. Defendants intentionally, and with discriminatory motive, agreed to mischaracterize Plaintiff's deeply rooted, protected cultural expressions as a purported 'mental illness' or psychiatric instability. This pathologizing of Plaintiff's national origin traits was a pretextual, discriminatory mechanism driven by class-based animus to strip Plaintiff of her professional credibility.

**b)  The Coordinated Agreement:**

**188.**  On or about November 23, 2021, Defendant Gary Carlin (Plaintiff's former attorney) and agents/counsel for Defendant Kaiser Foundation Hospitals Health Plan (KFHP Inc.) entered into an agreement—the terms of which are evidenced by non-privileged written email correspondence—to deliberately

29

**SECOND AMENDED COMPLAINT**

insulate Kaiser entities from legal liability. The express purpose of this agreement was to suppress her upcoming Department of Fair Employment and Housing (DFEH/CRD) claims and strip Plaintiff of her professional livelihood.

### c) The Shared Identity (The "Kaiser" Umbrella):

**189.** Kaiser Foundation Hospitals (KFH), Kaiser Foundation Health Plan (KFHP), and the Southern California Permanente Medical Group (SCPMG) operate collectively under the public-facing moniker "Kaiser." Defendants purposely utilized this institutional identity confusion as plausible deniability to evade liability and obstruct justice.

### d) The Retainer Evidence & Meeting of the Minds:

**190.** The attorney's retainer agreement identifying "Kaiser" proves the intent was to sue the total operational employer entity. Despite this explicit knowledge, and despite receiving a direct letter from KFH confirming that SCPMG was the technical employer, counsel failed to name SCPMG as a primary defendant, relegating them strictly to a "Doe" status.

### e) The Overt Act I

**191.** Defendants took overt actions in furtherance of this conspiracy to deny equal protection.

**192.** By relying on an orchestrated web of corporate entities, Defendants and Plaintiff's counsel reached a tacit agreement or meeting of the minds to selectively exempt the medical group (SCPMG) from liability while shielding the broader "Kaiser" enterprise.

### f) Abandonment and Excusable Ignorance:

**193.** Counsel completely abandoned his professional duties by failing to execute or explain a Doe amendment to Plaintiff. As a layperson, Plaintiff lacked the legal sophistication to understand the procedural mechanism or necessity of this amendment. Plaintiff reasonably relied on counsel's representation that the

**SECOND AMENDED COMPLAINT**

correct operational entity (KFH) had been sued, particularly as Plaintiff physically worked at the West Los Angeles Kaiser facility.

### g)    Severance of the Agency Relationship:

**194.**    Counsel's active concealment and failure to act completely severed the agent-principal relationship. Because counsel acted as a hostile adversary in alignment with Defendants rather than an agent, his procedural defaults, omissions, and deliberate failures to amend cannot be equitably or legally imputed to Plaintiff.

### h)    Overt Act II (Exploitation of Omission):

**195.**    In furtherance of this unlawful conspiracy, Defendants KFH and SCPMG committed a series of calculated, deceptive overt acts designed to manipulate judicial processes and globally extinguish Plaintiff's claims without a trial on the merits:

**196.**    Knowing that Carlin omitted SCPMG, Defendant KFH moved for Summary Judgment.

**197.**    KFH falsely and fraudulently asserted a total lack of employer liability based strictly on payroll technicalities, despite possessing complete operational, disciplinary, and managerial authority over Plaintiff.

### i)    Overt Act III (The Sham Litigation Paradox):

**198.**    To execute the conspiracy's objective, KFH asserted a strict, absolute corporate separateness from SCPMG to secure summary judgment on non-employment grounds

### j)    Overt Act IV (Fraudulent Misrepresentation to the Court):

**199.**    upon receiving summary judgment on that narrow technical ground, KFH—in coordination with SCPMG—intentionally misrepresented the scope of the order to the state court.

**200.**    KFH drafted and entered a final judgment on September 21, 2022,

31

**SECOND AMENDED COMPLAINT**

claiming that the lawsuit was dismissed *in its entirety on the merits*, thereby globally extinguishing Plaintiff's valid underlying FEHA employment claims. This was done with full knowledge that the statute of limitations had not expired, yet effectively blocked Plaintiff from correcting the technical omission.

### k) Overt Acts V in Furtherance:

**201.** In absolute furtherance of this illicit agreement, and to seal the collapse of Plaintiff's case, Defendant Gary Carlin took the overt step of filing a formal declaration September 22, 2022, explicitly supporting KFH's entry of judgment. This final act shifted Defendant Carlin from a passive non-advocate to an active agent for the defense, completing the objective of the conspiracy.

### l) Plausibility Under Rule 12(b)(6):

**202.** Taken together, these facts easily clear the plausibility threshold under *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. When an attorney systematically strips away vital components of a client's case, mirrors the exact discriminatory narratives of the opposition via back-channels, and ultimately files evidence aiding the adversary's entry of judgment, the conduct crosses the line from independent negligence into a plausible, actionable civil rights conspiracy. As a direct result, Plaintiff suffered severe injury, economic ruin, and the total deprivation of due process and equal access to the State court judicial system.

### m) The Meeting of the Minds and Explicit Agreement

**203.** On or about **July 14, 2022**—the identical day Defendant Kaiser Foundation Hospitals ("Kaiser") obtained a summary judgment against Plaintiff—Defendant Kaiser and the individual defendants employed by the California Board of Registered Nursing, Loretta Melby ("BRN Defendants") entered into an explicit, coordinated agreement and meeting of the minds. The specific, unlawful objective of this agreement was to destroy Plaintiff's professional standing, manufacture a false appearance of mental incapacity, and permanently discredit Plaintiff to insulate Kaiser from ongoing and future civil liability.

### n) Overt act vi: ultra vires state action

32

**SECOND AMENDED COMPLAINT**

**204.** On or about July 13, 2022, the BRN Defendants, acting in furtherance of the conspiracy and through their subordinate official, Shannon Johnson, executed an ultra vires act entirely outside the scope of their lawful statutory authority. Specifically, Shannon Johnson rubber-stamped a legally invalid examination order pursuant to California Business and Professions Code Section 820.

**205.** Defendant Melby, as Chief Executive, knowingly ratified this legally unenforceable order despite knowing it lacked any objective or independent administrative basis, doing so for the express, coordinated purpose of lending a false veneer of state authority to Kaiser's private retaliatory campaign.

### o)    Resulting constitutional injury and damages

**206. As a direct and proximate result** of the unlawful conspiratorial agreement and overt acts in furtherance thereof by Defendant Gary Carlin, Kaiser, BRN Defendants, Plaintiff suffered severe and irreversible deprivations of rights secured by the Constitution and laws of the United States, including the right to equal protection under the law and freedom from discriminatory retaliation. **Consequently, Plaintiff sustained** concrete, catastrophic, and ongoing injuries, including the loss of their Registered Nurse (RN) license and the absolute deprivation of their right to pursue their chosen profession. **As a further direct result**, Plaintiff has suffered profound economic damages—including past and future lost earnings and benefits—severe and enduring emotional distress, and irreparable harm to their professional standing and reputation.

### D.    FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS

**(Against Kaiser, defendants)**

### a)    THE FACTUAL BACKGROUND AND PROTECTED PROPERTY INTEREST

**207.** Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

33

**SECOND AMENDED COMPLAINT**

**208.** At all times relevant, Defendant SCPMG, though a private entity, acted **under color of state law** by willfully participating in joint activity, conspiracy, and a shared conspiratorial objective with state actors, including the state court judiciary, to deprive Plaintiff of constitutional rights.

**209.** Plaintiff possesses a constitutionally protected property interest under the Fourteenth Amendment in pursuing their timely filed, active cause of action, which constitutes a recognized form of property that cannot be arbitrarily extinguished by the state without due process of law.

**210.** Plaintiff's December 5, 2022, employment lawsuit against Southern California Permanente Medical Group (SCPMG) asserted active, valid statutory claims under the California Fair Employment and Housing Act (FEHA) and related common law torts.

**211.** The Conspiratorial Agreement and "Color of Law" (The Meeting of the Minds)

**212.** On or about December 22, 2022, and continuing through the date of dismissal, Defendant SCPMG, by and through its legal counsel, entered into a coordinated, joint punitive scheme and conspiratorial agreement with state court actors—specifically to intentionally bypass mandatory jurisdiction and evidentiary safeguards, block her fundamental right of access to the courts and isolate Plaintiff.

**213.** Defendant SCPMG willfully participated in joint activity with the state court to apply a pre-existing, legally distinct prefiling order from a completely separate case involving a different corporate entity (Kaiser Foundation Hospitals) to Plaintiff's independent litigation against SCPMG.

**214.** This coordination transformed Defendant SCPMG/Kaiser entities into a state actor for purposes of 42 U.S.C. § 1983, as they actively leveraged state judicial machinery to execute a shared, unlawful objective: to entirely block Plaintiff's access to the courts without an adjudication on the merits.

**215.** The Overt Acts in Furtherance of the Conspiracy

34

**SECOND AMENDED COMPLAINT**

**216.** In execution of this conspiratorial agreement, Defendant SCPMG knowingly presented a legally inapplicable "entry of judgment" order dated September 21, 2022, from a prior case involving Kaiser Foundation Hospitals (KFH), a legally distinct entity.

**217.** Defendant SCPMG intentionally and fraudulently misrepresented to the court that this prior judgment constituted a "global dismissal" of all FEHA claims against all Kaiser-related entities, including SCPMG, despite knowing that SCPMG was not a party bound by that specific prior order.

**218.** The state court, operating in tandem with and adopting the biased, unverified characterizations proffered by Defendant SCPMG, rubber-stamped Defendant's position without independent judicial review, thereby ordering Plaintiff to post an arbitrary, punitive $10,000 security deposit.

·       Simultaneously, the BRN Defendants, acting under color of state law as state regulatory officials, stepped entirely outside their lawful administrative mandate to interfere in Plaintiff's civil lawsuit against SCPMG, a lawsuit to which the BRN Defendants were never a party.

**219.** The BRN Defendants intentionally filed documents in support of an unlawful vexatious litigant bond within the SCPMG litigation to weaponize the judicial process and financially suffocate Plaintiff's access to the court.

·       Concurrently, the BRN Defendants subjected Plaintiff to an administrative disciplinary proceeding that was void *ab initio*, as it was initiated and pursued by a subordinate official who **lacked any statutory authority** or jurisdiction under state law to act.

·       Despite explicitly and in writing confirming timely receipt of Plaintiff's answer and defense to the administrative charges, the BRN Defendants maliciously, arbitrarily, and in bad faith entered a default judgment against Plaintiff.

·       The combined, concerted actions of SCPMG and the BRN Defendants constitute an egregious abuse of power that shocks the conscience, devoid of any

35

**SECOND AMENDED COMPLAINT**

legitimate state interest, and executed with the sole intent to deny Plaintiff a fair hearing.

**b)      The Resulting Deprivation of Due Process**

**220.** The state court subsequently executed the final objective of the conspiracy by issuing a procedural dismissal of Plaintiff's lawsuit against SCPMG on the sole basis of Plaintiff's inability to post the $10,000 deposit.

**221.** This dismissal was intentionally entered without convening a formal evidentiary hearing, without the presentation of witnesses, and without adjudicating the actual factual or legal merits of Plaintiff's underlying employment tort claims.

**222.** By executing this procedural dismissal prior to the expiration of the applicable statutes of limitation, Defendant SCPMG and state court actors permanently extinguished Plaintiff's timely, valid legal claims, directly depriving Plaintiff of their constitutional right to procedural due process and access to the courts under the Fourteenth Amendment.

**c)      Causation of injury (Actual Deprivation)**

**223.** As a direct and proximate result of the coordinated, conspiratorial actions of Defendant SCPMG and the State Actors, Plaintiff was stripped of their RN license without due process of law, denied judicial review of their FEHA and ADA claims, and permanently foreclosed from accessing the judicial machinery of the state.

**E.      FACTUAL ALLEGATIONS DEPRIVATION OF RIGHTS**

**(Against Melby/BRN Defendants)**

**a)      The statutory/regulatory violations establishing the baseline Falsity)**

36

**SECOND AMENDED COMPLAINT**

**224.**   At all relevant times, California Business and Profession Code Section 820 governed the strict procedural and evidentiary requirements necessary to legally issue an order for a mental/physical examination.

**225. Plaintiff holds a constitutionally protected property interest** in their professional license, which cannot be suspended, revoked, or restricted without due process of law.

**226. Defendant Loretta Melby, acting under color of state law**, intentionally and proximately caused the deprivation of Plaintiff's property interest by executing an ultra vires subdelegation of her exclusive statutory authority.

**227. Defendant Melby possessed non-delegable authority** to issue Section 820 orders. **Under 16 CCR § 1405**, this power is explicitly non-delegable and restricted to the Executive Officer.

**228.**   Because Section 820 specifically targets the **quasi-judicial discretion** of the "licensing agency"

**229.**   (the formal Board members collectively and their designated Executive Officer) to compel an invasive medical or psychological intervention, California administrative law treats this as a **non-delegable, discretionary corporate act**. The board members and the Executive Officer cannot hand off or sub-delegate the discretionary evaluation of "whenever it appears" (the initial evidentiary threshold of probable cause) to lower-level investigators or external contractors.

**230.**   Defendant Melby, acting under color of state law, knowingly and with deliberate indifference to Plaintiff's constitutional rights, established an unlawful de facto policy, custom, or practice of sub-delegating non-delegable, discretionary quasi-judicial authority under California Business and Professions Code Section 820.

**231.**   Defendant Melby possesses final policy making authority regarding enforcement procedures for the Board. On or about July 13, 2022, Defendant Melby personally abdicated her statutory duty and deliberately authorized, directed,

37

**SECOND AMENDED COMPLAINT**

or ratified an unlawful sub-delegation to her subordinate, Chief Enforcement Officer Shannon Johnson.

232.  Defendant Johnson, lacking any legal or quasi-judicial authority to make a probable cause determination under Section 820, drafted, finalized, and *approved* both a petition and an order compelling an invasive psychological examination of Plaintiff.

233.  Defendant Melby's intentional sub-delegation and Defendant Johnson's unauthorized execution of the order were the moving forces behind the arbitrary deprivation of Plaintiff's Fourth Amendment right against Fourteenth Amendment substantive and procedural due process liberty interests.

234.  Defendants knew or should have known that bypassing the mandatory, statutory quasi-judicial review process to compel an invasive medical intervention would violate clearly established constitutional protections, thereby stripping Defendants of any entitlement to qualified immunity.

235.  **Defendant Melby acted with deliberate indifference** to Plaintiff's constitutional rights by knowingly bypassing the statutory framework to subdelegate this exclusive discretionary power to an unauthorized subordinate.

236.  **The resulting Section 820 order was issued through an unauthorized, ultra vires regulatory mechanism** completely lacking the structural statutory safeguards established by law, thereby violating Plaintiff's right to procedural due process.

b)  **Defeating Defenses of Plausible Deniability and Qualified Immunity**

237.  **Defendant Melby cannot claim plausible deniability** regarding the deprivation. Defendant Melby executed a sworn declaration explicitly admitting she directed and authorized the specific subdelegation that caused the constitutional injury.

38

**SECOND AMENDED COMPLAINT**

**238. Defendant Melby's sworn admission establishes the requisite personal involvement** and affirmative link under Section 1983, as her direct command set the constitutional deprivation in motion.

**239. Defendant Melby is not entitled to qualified immunity** because her actions violated clearly established statutory and constitutional law.

**240. A reasonable official in Defendant Melby's position** is presumed to know the plain, unambiguous language of her own agency's regulations, specifically 16 CCR § 1405, which explicitly prohibits the subdelegation of ultimate discretionary judgement.

**241. No reasonable official could believe that intentionally violating a mandatory, non-delegable regulatory prohibition** to strip a licensee of their professional property right was lawful or constitute a "good faith" mistake.

**c)      Constructive/Actual Notice**

**242.   August 8, 2022**, Plaintiff served the Board of Registered Nursing with written notice detailing the specific legal deficiency of the order and challenging the jurisdiction.

**243.** Melby and the Board of Registered Nursing through her attorney Gillian Friedman acknowledged written Notice, administrative objection and supporting documentation demonstrating that the section 820 order violated specific statutory defects, including jurisdiction, procedural non compliance (no investigation) and probable cause.

**244.** Despite receiving direct, uncontraindicated notice of these legal and factual defects, Defendant Melby and the Board of Registered Nursing deliberately ignored corrective measures and plaintiff received an *"accusation"* **issued November 16, 2022**, by same unauthorized subordinate, targeting non compliance with the non legally binding section 820 Exam.

**d)      Procedural sham ("The Second Notice")**

39

**SECOND AMENDED COMPLAINT**

**245.** 3. The Board falsely claimed it never received a "second Notice of Defense", acting arbitrarily to bypass an adversarial hearing.

### e)    Procedural Due Process

**246.** Plaintiff was denied meaningful opportunity to be heard before RN license was stripped. State actors cannot intentionally ignore filed notices (like an early Notice of defense) and subsequently enter a "default" as a pretext to deny plaintiff a hearing.

### f)    Substantiative Due Process

**247.** Plaintiff was subjected to government actions that were arbitrary, capricious, or "shock the conscience". Revoking a professional license based on knowingly invalid order and a deliberately ignored defense transcends simple administrative error and constitute a substantive constitutional violation.

**248.** Defendant Melby and the Board of Registered Nursing knew that revoking plaintiff's license on these false pretense would trigger a mandatory requirement to the National Practitioner Data Bank (NPDB).

### g)    Default Decision and Revocation of Plaintiff's Registered Nurse License

**249.** California Business and Professions Code § 2750 establishes the California Board of Registered Nursing ("BRN") and vests disciplinary authority concerning registered nurses in the Board itself. At all relevant times, Plaintiff held a Registered Nurse ("RN") license issued by the BRN. Plaintiff's RN license constituted a valuable professional license and a constitutionally protected property interest under the Fourteenth Amendment to the United States Constitution.

**250.** On or about July 13, 2022, a Petition and Order for Mental and Physical Examination pursuant to California Business and Professions Code § 820 was approved and executed by Chief Enforcement Officer Shannon Johnson. Following the Section 820 proceedings, disciplinary actions were initiated against Plaintiff that ultimately resulted in a default decision and revocation of Plaintiff's

40

**SECOND AMENDED COMPLAINT**

RN license.

251.    On November 5, 2025, Defendant Loretta Melby executed a sworn declaration in Case No. 2:24-cv-05862-KK-AGR concerning the actions taken against Plaintiff and the procedures utilized during the disciplinary process. In that declaration and related filings, Defendant Melby admitted that Chief Enforcement Officer Shannon Johnson exercised authority concerning the approval and issuance of the Section 820 proceedings that ultimately led to the default decision and revocation of Plaintiff's RN license.

252.    The default decision revoking Plaintiff's RN license was approved and executed through the actions of Chief Enforcement Officer Shannon Johnson. Plaintiff is informed and believes, and thereon alleges, that the nine-member Board of Registered Nursing never voted upon, approved, authorized, or ratified the default decision revoking Plaintiff's RN license.

253.    Plaintiff is further informed and believes, and thereon alleges, that no formal vote of the Board was conducted authorizing the revocation of Plaintiff's license and that the revocation decision was instead implemented through administrative actions undertaken by Chief Enforcement Officer Shannon Johnson. Defendant Melby and Chief Enforcement Officer Shannon Johnson caused Plaintiff's RN license to be revoked despite the absence of any Board vote, Board authorization, or Board ratification approving such disciplinary action.

254.    As a direct and proximate result of Defendants' actions, Plaintiff lost her professional nursing license, her ability to practice her profession, her earning capacity, and other significant property and liberty interests protected by the Fourteenth Amendment. By causing the revocation of Plaintiff's RN license through actions allegedly undertaken outside the statutory procedures required by California law, Defendants deprived Plaintiff of constitutionally protected property interests without due process of law in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

255.    The actions of Defendant Melby and Chief Enforcement Officer Shannon Johnson were a substantial factor in causing the injuries, damages, and

41

**SECOND AMENDED COMPLAINT**

constitutional deprivations suffered by Plaintiff.

**h)    Reputational Harm and NPDB**

**256.**    The derogatory report was immediately submitted to the National Practitioner Data Bank (NPDB), severely damaging plaintiffs ability to engage in their chosen profession.

**257.**    At the time of the publication on February 3, 2023, Melby and the Board of Registered Nursing acted with actual malice, corruption, intentional ill-will under the standard set forth in *New York Times Co. V. Sullivan*, in that she had actual knowledge that the statement was false.

**258.**    As a direct and proximal result of the BRN's malicious publication of these false statement to the NPDB, plaintiff has suffered severe operational, professional, and reputaional injury.

**259.**    The defamatory NPDB publication has effectively precluded plaintiff from securing employment as a Registered Nurse, causing ongoing economic damages, loss of earning capacity, mental anguish and emotional distress.

**VII.    CAUSES OF ACTION -**

**COUNT    I:    VIOLATION    OF    THE    AMERICANS    WITH DISABILITIES ACT (ADA), (42 U.S.C & 12112)**

**(Against Kaiser Defendants)**

**260.**    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**261.**    At all times relevant to this action, Plaintiff suffered from Complex Post-Traumatic Stress Disorder ('C-PTSD'), a severe mental health condition characterized by prolonged and repeated trauma, rather than a single event.

**262.**    Plaintiff's C-PTSD constitutes a disability within the meaning of the ADA, 42 U.S.C. § 12102(1), as it substantially limits one or more major life

42

**SECOND AMENDED COMPLAINT**

activities, including but not limited to, interacting with others, sleeping,and regulating emotional functions.

263.    At all times relevant to this action, Plaintiff was a 'qualified individual' within the meaning of the ADA, 42 U.S.C. § 12111(8). Despite the severe symptoms of C-PTSD, Plaintiff was fully capable of performing the essential functions of their position, either with or without a reasonable accommodation.

264.    Plaintiff successfully performed the essential functions of the position, as evidenced by **positive performance reviews, and  lack of disciplinary history prior to the discrimination.**

265.    At all times relevant, Defendants were employers engaged in an industry affecting commerce who employed 15 or more employees, making them covered entities under the ADA.

266.    Defendants knew or had reason to know of Plaintiff's disability because Plaintiff explicitly notified Defendants of their medical limitations on **December 29, 2020** by submitting a written accommodation request and medical documentation to **HR representative Wilbert Jones for Kaiser Weat LA**. Specifically, Plaintiff requested a reasonable accommodation of a transfer to an open **Emergency Room Registered Nurse Position/Clinic/Kaiser West LA** for which Plaintiff was fully qualified.

267. **The specific physical environment** of the Kaiser West LA Emergency Room Department became medically untenable for Plaintiff due to an ongoing hostile work environment perpetrated by Plaintiff's immediate supervisors and Human Resources personnel.

268.    **Defendants' discriminatory actions** and ongoing harassment directly targeted Plaintiff's medical vulnerabilities, creating specific clinical triggers that severely exacerbated Plaintiff's C-PTSD symptoms.

269.    **Rather than mitigating the hostile environment**, Defendants' awareness of Plaintiff's condition resulted in unlawful "regarded-as" discrimination,

43

**SECOND AMENDED COMPLAINT**

wherein supervisors treated Plaintiff with a perceived mental illness stigma, thereby intensifying the hostility of the workplace.

270.    **A lateral transfer away** from the Kaiser West LA Emergency Room Department was a necessary and reasonable accommodation.

271.    **This transfer would have removed** Plaintiff from the specific clinical triggers caused by their supervisors, thereby mitigating their C-PTSD symptoms and allowing Plaintiff to perform all essential functions of their position

272.    An open and available position for a **Registerd Nurse Emergency Room Clinic** existed at the time at the **Kaiser West LA Hospital Location**. Providing this transfer would not have imposed an undue hardship on Defendants' business operations, as Defendants regularly transfer employees between facilities.

273.    As a direct and proximate result of Defendants' affirmative failure to accommodate Plaintiff and their refusal to engage in a good-faith interactive process, Plaintiff suffered severe adverse employment actions. Specifically, Defendants placed Plaintiff on involuntary unpaid leave on January 1, 2021, and ultimately terminated Plaintiff's employment on March 18, 2021

274.    As a direct result of Defendants' discriminatory and unlawful conduct, Plaintiff has suffered, and continues to suffer, severe economic damages, including lost back pay, lost front pay, and a loss of employment benefits. Plaintiff has further suffered severe emotional distress, mental anguish and a permanent exacerbation of their clinical C-PTSD symptoms.

## COUNT 2: WRONGFUL TERMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHT ACT OF 1964

**(Against Kaiser Defendants)**

a)      **Defendants' Scheme to Target Plaintiff**

275.    Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

44

**SECOND AMENDED COMPLAINT**

**276.** On or about March 18, 2021, Defendants Brooke Ball (Chief Executive Officer), Sarah Poetter (Emergency Room Supervisor), Cheryl Surma (Emergency Room Supervisor), Wilbert Jones (HR Disability Case Manager), and Douglas Pruss (HR Director), acting within the course and scope of their employment with <u>Kaiser Permanente</u>, initiated a coordinated campaign against Plaintiff. Specifically, these individuals fabricated disciplinary allegations, mishandled Plaintiff's disability accommodation requests, and generated falsified performance records. The express purpose of this joint conduct was to establish a pretextual justification to terminate Plaintiff's employment and blackball Plaintiff within the medical industry.

**277.** Defendants' assertion that Plaintiff was mentally unfit to perform their duties was entirely fabricated, meritless, and contradicted by Plaintiff's established record of satisfactory performance at the Kaiser West LA Emergency Room Department. Defendants advanced this false narrative as a mere pretext to mask their discriminatory and retaliatory animus against Plaintiff.

**b)    The False Statements and Publication (The BRN Complaint)**

**278.** On or about **May 3, 2021**, Defendants submitted a formal, unprivileged written complaint regarding Plaintiff to the California Board of Registered Nursing ('BRN'). Defendants published these statements to a third party despite knowing the statements were false, or acting with reckless disregard for their truth or falsity."

**279.** The written complaint submitted by Defendants contained the explicit and materially false statement that Plaintiff 'failed to comply with the employer's Fitness For Duty Directive.

**280.** In truth, Plaintiff fully complied with all lawful directives by submitting all requested documentation on **February 10, 2021**. To the extent Defendants contend any directive remained outstanding, Defendants failed to execute the mandatory administrative processes required to enforce such a directive.

45

**SECOND AMENDED COMPLAINT**

**281.** Defendants intended for the BRN to rely on this false report and knew the BRN would be legally mandated to initiate an investigation, thereby directly endangering Plaintiff's professional nursing license and livelihood.

c)    **Specific Facts Demonstrating Actual Malice**

**282.** Defendants engaged in the aforementioned conduct with actual malice, a reckless disregard for the truth, and the specific intent to cause severe harm to Plaintiff.

**283.** Defendants possessed direct knowledge that their accusations against Plaintiff were false.

**284.** Prior to HR issuing the **March 10, 2021** Fitness for Duty (FFD) directive, Plaintiff's healthcare provider emailed a formal accommodation request directly to the Employer.

**285.** HR affirmatively acknowledged receipt of this accommodation request but subsequently ignored it.

**286.** Instead of engaging in the interactive process, HR issued the FFD directive on March 10, 2021, with a response deadline of **March 19, 2021**.

**287.** Plaintiff explicitly agreed to comply with the FFD directive on March 17, 2021.

**288.** Despite Plaintiff's compliance and the pending deadline, the Employer abruptly terminated Plaintiff on March 18, 2021—one day before the response deadline expired.

**289.** Furthermore, the Employer falsely reported to the Board of Registered Nursing (BRN) that Plaintiff had abandoned their position or left work in October 2020, directly contradicting the contemporaneous March 2021 employment records.

d)    **Defamation Per Se and Damages**

46

**SECOND AMENDED COMPLAINT**

**290.** The Defendants' false statements directly impute a lack of integrity, incompetence, and unfitness to practice within the Plaintiff's profession as a Registered Nurse.

**291.** Because these statements directly prejudice the Plaintiff in their professional trade and status as a licensed healthcare provider, they constitute defamation *per se*, and injury to the Plaintiff's professional reputation is presumed as a matter of law.

**292.** As a direct and proximate result of the Defendants' false report, the Plaintiff has suffered severe emotional distress, loss of employment opportunities, significant legal expenses to defend their license, and the catastrophic loss of their nursing career, RN license, and livelihood.

## COUNT 3: TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against Kaiser Defendants)

**293.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**294.** At all relevant times, Plaintiff possessed a concrete and valid prospective economic relationship with Kaiser Permanente, arising from Plaintiff's position as an Emergency Room Registered Nurse. This established employment relationship carried a certain probability of future economic benefit to Plaintiff, specifically yielding a predictable annual salary of $80,000, along with standard employment benefits, which would have been realized but for Defendant's interference.

**295.** Defendant had actual knowledge of Plaintiff's specific employment relationship and prospective economic opportunities with Kaiser Permanente. Defendant possessed this knowledge because Defendant is Plaintiff's former employer.

47

**SECOND AMENDED COMPLAINT**

**296.** Defendants engaged in a targeted effort to disrupt Plaintiff's employment opportunities by weaponizing a false report to the Board of Registered Nursing. Specifically, Defendants reported that Plaintiff was unfit to practice and had refused an order to undergo a Fitness-for-Duty (FFD) examination.

**297.** Defendants knew this statement was false; internal email correspondence explicitly demonstrates that Plaintiff had agreed to comply with the FFD order. Rather than honoring this agreement, Defendants completely misrepresented and denied a prior accommodation request from Plaintiff's medical provider, using the false administrative report as a direct vehicle to sabotage Plaintiff's career.

**298.** Defendants engaged in this conduct with the specific intent to disrupt Plaintiff's professional opportunities and to blackball Plaintiff from the nursing profession. Defendants' intent is evidenced by **the fact that Defendants bypassed internal protocols to follow through with their FFD, but instead plaintiff was terminated and reported to the BRN**.

**299.** As a direct and proximate result of Defendants' intentional and wrongful interference, the prospective economic relationships were actualized into harm. Specifically, on **March 18, 2021**, **Kaiser Permanente** terminated plaintiff's Employment. As a result, Plaintiff has suffered and continues to suffer substantial economic damages, including lost wages, benefits, and severe damage to professional reputation, in an amount to be proven at trial

## COUNT 4: CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (Violation of Civil right Act 42 U.S.C., & 1985)

**(Against ALL Defendants)**

**300.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**301.** Courts have long recognized that simultaneous or sequential acts by multiple individuals toward a shared unlawful objective constitute conspiracy evidence under § 241. See Griffin v. Breckenridge, 403 U.S. 88 (1971).

48

**SECOND AMENDED COMPLAINT**

a)      **Establish the Discriminatory Animus (The Core "Why")**

302.    Plaintiff is a Black woman of Cameroonian national origin and West African ancestry. As such, she belongs to multiple protected classes under Title VII of the Civil Rights Act of 1964, which prohibits discrimination based on race, color, and national origin.

303.    . At all times relevant, Plaintiff engaged in protected cultural expressions, communication styles, and behavioral norms inherent to her national origin. Defendants, specifically management at Southern California Permanente Medical Group (SCPMG), exhibited an invidious, class-based animus by weaponizing cultural ignorance and prejudice. Defendants intentionally and discriminatorily mischaracterized Plaintiff's deeply rooted, protected cultural expressions as a purported 'mental illness' or psychiatric instability. This pathologizing of Plaintiff's national origin traits was not a neutral misunderstanding, but a pretextual, discriminatory mechanism designed to strip Plaintiff of her professional credibility and justify an unlawful termination based purely on class-based animus.

304.    The Defendants—including SCPMG, Kaiser Foundation Hospital/Kaiser Foundation Health Plan Inc. and individual managing agents— entered into an agreement, tacit or explicit, to insulate the corporate entities from liability and permanently strip Plaintiff of her professional livelihood. Defendants' assertions of legitimate, non-discriminatory business reasons for Plaintiff's termination constitute a coordinated system of plausible deniability. In reality, the foundational motivation of this conspiracy was the class-based animus against Plaintiff's national origin. The individual actors operated in concert, sharing falsified internal reporting and aligning their disciplinary timelines across separate Kaiser entities to guarantee Plaintiff's immediate termination and subsequent industry blacklisting.

305.    Following Plaintiff's protected activities—specifically, the filing of a formal lawsuit against Kaiser Foundation Hospital and the submission of a regulatory report against her manager to the California Board of Registered Nursing (BRN)—Defendants escalated their conspiratorial objective. In direct

49

**SECOND AMENDED COMPLAINT**

retaliation, and in furtherance of the conspiracy, Defendants formulated and executed a malicious plan to completely block Plaintiff's access to the courts and permanently revoke her Professional Registered Nurse (RN) license.

**306.** To achieve this, conspirators knowingly disseminated an extremely vile, demonstrably false rumor across corporate and professional networks characterizing Plaintiff as 'psychotic' and 'unfit for duty.' Defendants utilized these fabricated psychiatric allegations to trigger a bad-faith regulatory investigation, intending to leverage the BRN's disciplinary powers as an arm of the conspiracy. This overt act was precisely designed to exhaust Plaintiff's financial resources, destroy her professional standing, and intimidate her into abandoning her federal civil rights litigation.

### b)    Attorney's Betrayal and "Meeting of the Minds"

**307.** To state a viable claim under 42 U.S.C. § 1985(3) against a private attorney, a plaintiff must allege specific facts showing the attorney intentionally joined a unified plan with Kaiser to violate protected rights. Independent legal representation—even if characterized by poor performance or professional negligence—fails to establish the requisite meeting of the minds or shared conspiratorial objective necessary to transform a private actor into a co-conspirator.

### c)    The Retainer Agreement and Scope of Representation

**308.** On or about **March 19, 2021**, Plaintiff and Attorney Defendant entered into a formal, written retainer agreement.

**309.** The express purpose of this agreement was to secure legal representation to file and litigate FEHA employment discrimination claims against all responsible Kaiser entities.

**310.** These entities included Kaiser Foundation Hospitals ("KFH"), Southern California Permanente Medical Group ("SCPMG"), and Kaiser Foundation Health Plan ("KFHP").

### d)    The Integrated Enterprise / Joint Employer Reality

50

**SECOND AMENDED COMPLAINT**

**311.** At all times relevant, Plaintiff performed services at the Kaiser Foundation Hospital West LA facility.

**312.** Plaintiff was completely integrated into KFH's operations, utilized KFH equipment, and was subject to KFH policies, rendering KFH a joint employer or part of an integrated enterprise under FEHA.

**313.** Attorney Defendant knew or should have known that KFH, SCPMG, and KFHP operated as an integrated enterprise, meaning all three entities were jointly liable for the underlying FEHA violations.

### e)      The Conspiratorial Agreement and Overt Acts

**314.** Unbeknownst to Plaintiff, and in direct contradiction to the retainer agreement, Attorney Defendant entered into an implicit or explicit agreement with agents of KFH.

**315.** The objective of this conspiracy was to systematically derail, sabotage, and defeat Plaintiff's upcoming FEHA discrimination claims due to discriminatory animus against Plaintiff's protected class.

### f)      Corporate Shell Game Manipulation:

**316.** Attorney Defendant was fully aware that Plaintiff physically worked at the Kaiser Foundation Hospital West LA facility and that KFH exercised joint operational control. Attorney Defendant was also explicitly aware that Southern California Permanente Medical Group (SCPMG) issued the Fitness for Duty (FFD) directive.

**317.** Despite this knowledge, Attorney Defendant intentionally sued *only* KFH, leaving SCPMG and Kaiser Foundation Health Plan (KFHP) out of the main complaint, and relegating SCPMG to a "Doe" defendant without explaining the corporate significance to the trusting Plaintiff. This omission was a deliberate overt act designed to give KFH an airtight, technical "wrong employer" summary judgment defense using an SCPMG payroll check.

51

**SECOND AMENDED COMPLAINT**

### g)    Discriminatory Animus and Injury

318.    The conspiratorial agreement between Attorney Defendant and KFH was motivated by a shared, class-based, invidiously discriminatory animus against Plaintiff as a member of a protected class.

### h)    Overt Acts to Highlight "Meeting of the Minds":

319.    Plaintiffs' counsel engaged in email correspondence with KFH regarding the plaintiff's alleged mental health condition, effectively mirroring and validating the pretextual framework established by KFH/SCPMG.

320.    The existence of this illicit agreement and shared discriminatory animus is evinced by specific, non-privileged email communications between Attorney Defendant and counsel/agents for KFH dated on or about **November 23, 2021**.

321.    In these communications, Attorney Defendant actively discussed Plaintiff's "purported mental illness." Rather than advocating for Plaintiff, Attorney Defendant adopted, mirrored, and validated KFH and SCPMG's pretextual defense narrative. These communications demonstrate a meeting of the minds to stigmatize Plaintiff, undermine Plaintiff's credibility, and manufacture a record to justify dismissing Plaintiff's civil rights claims.

322.    The alignment of Attorney Defendant's failure to amend the complaint, the strategic exclusion of known employer entities, and the back-channel emails adopting the defense's discriminatory mental health narrative cannot be attributed to mere negligence or coincidence. These coordinated actions plausibly demonstrate a meeting of the minds to intentionally deny Plaintiff equal access to the courts and equal protection of civil rights laws.

323.    As a direct and proximate result of this conspiracy, Plaintiff was deprived of the equal protection of the laws, stripped of a meaningful opportunity to litigate valid FEHA civil rights claims, and suffered severe financial and emotional injury

52

**SECOND AMENDED COMPLAINT**

### i)  **Judicial Deception (KFH's Overt Acts)**

**324.**  At all relevant times, Defendant KFH acted as a joint employer with SCPMG. Plaintiff operated entirely under KFH's direct operational mandates, utilizing KFH equipment, abiding by KFH's HR policies, and answering to a unified Kaiser Permanente chain of command. The physical issuance of paychecks by SCPMG was a mere administrative formality that did not diminish KFH's status as a de facto employer under California's [Fair Employment and Housing Act (FEHA)].

**325.**  Defendants KFH and SCPMG engaged in a conscious meeting of the minds to defeat Plaintiff's civil rights claims through corporate shell manipulation. Defendant KFH knowingly weaponized an operational omission in Plaintiff's state FEHA complaint—specifically, the technical omission of SCPMG as a named party—by moving for Summary Judgment. KFH knew that it exercised comprehensive employer authority over Plaintiff, yet it fraudulently asserted it lacked employer liability solely because it did not cut Plaintiff's paychecks. This motion was not a good-faith defense, but an overt act in furtherance of a civil rights conspiracy designed to leave Plaintiff without an active employer-target to hold accountable.

**326.**  In furtherance of this conspiracy, Defendant KFH executed a contradictory litigation maneuver designed to extinguish Plaintiff's claims globally while evading liability on the merits. On one hand, KFH moved for Summary Judgment by asserting strict **entity separateness**, arguing it was not technically the entity that processed Plaintiff's paychecks.

**327.**  Concurrently, however, KFH abandoned this entity separateness by moving for a final judgment on September 21, 2022, encompassing all unserved 'Doe' defendants and unserved Kaiser affiliates. KFH deceptively argued that a summary judgment granted solely as to KFH extinguished the entirety of Plaintiff's FEHA employment claims against *all* Kaiser entities and unnamed defendants, despite those entities never appearing, never answering, and never moving for summary judgment.

53

**SECOND AMENDED COMPLAINT**

**328.** This contradictory whipsaw maneuver was not an independent defense strategy, but a coordinated effort to run down the clock on the statute of limitations. By deploying entity separateness as a shield against individual liability, and entity unity as a sword to secure a global dismissal, Defendants successfully barred Plaintiff from substituting other Kaiser entities. This operational and legal shell game constitutes an overt act that successfully deprived Plaintiff of their **constitutional right to meaningful access to the courts** and equal protection under the law.

**329.** Executing the final stage of the illicit agreement, Co-Conspirator Gary Carlin directly followed through on the conspiratorial plan by drafting and filing a false or bad-faith declaration on September 22, 2022 in support of Defendant KFH's Entry of Judgment, effectively ensuring the dismissal of Plaintiff's valid FEHA employment claims.

**330.** As a direct and proximate result of Defendants' coordinated conspiracy and overt acts, Plaintiff suffered severe, irreversible injury. Plaintiff was completely deprived of the constitutional right to have a fair, uncompromised day in court, suffered the total destruction of valuable legal claims (property interests), and sustained severe economic and emotional damages due to the targeted denial of equal protection under civil rights laws.

### j)    State-Actor Involvement Overt Acts (The BRN Connection):

**331.** In parallel furtherance of this unlawful conspiracy to destroy Plaintiff's professional standing and shield co-conspirators from liability, Defendant ('Kaiser') knowingly dispatched a false, malicious, and defamatory report to the California Board of Registered Nursing ('BRN'). Kaiser possessed actual knowledge of the report's absolute falsity via Plaintiff's authentic medical records, which were under Kaiser's exclusive control.

**332.** To execute the objectives of the conspiracy, a subordinate official at the BRN, acting completely outside the scope of lawful statutory authority (*ultra vires*), rubber-stamped a legally invalid examination order pursuant to California Business and Professions Code Section 820. This rubber-stamped order lacked any

**SECOND AMENDED COMPLAINT**

legitimate, independent administrative basis and was issued solely to give a veneer of state authority to Kaiser's retaliatory campaign.

333.    Defendant Melby Chief Executive Officer of the Board of Registered Nursing ("BRN") possessed actual, subjective knowledge that the BRN rubber-stamped order was legally void and unenforceable. Despite this knowledge, Defendants intentionally subjected Plaintiff to this invalid order on July 14, 2022—the exact same day that Kaiser Foundation Hospitals obtained summary judgment in the parallel litigation. The precise temporal alignment of these severe adverse actions constitutes circumstantial evidence of a concrete 'meeting of the minds' and a highly coordinated plan, entirely discarding any plausible deniability of independent, non-conspiratorial behavior.

334.    The systematic alignment of Kaiser's knowingly false reporting, the BRN official's extra-legal issuance of the Section 820 order, and Defendant Melby's enforcement of a known void order on the day of summary judgment establishes a plausible inference of a conspiracy under 42 U.S.C. § 1985(3). These actions directly resulted in the deprivation of Plaintiff's protected civil and professional rights, causing concrete and severe damages.

### k)    **Improper Prefiling Orders**

335.    To insulate their coordinated conspiracy from federal and state judicial scrutiny and ensure their respective actions maintained a veneer of "plausible deniability," Defendants executed a sequence of highly synchronized, fraudulent overt acts:

### l)    **The Kaiser Entities' Improper Judicial Blocking:**

336.    In or around **September 2021**, while Plaintiff's FEHA statutory filing clock (triggered by her **March 18, 2021** termination) was actively running, Defendant KFH knowingly misrepresented to the court that an entry of judgment constituted a global dismissal of all Kaiser entities. To completely seal Plaintiff's physical and procedural access to state courts, Kaiser entities immediately sought and obtained highly restrictive, legally unsupported pre-filing vexatious litigant

55

**SECOND AMENDED COMPLAINT**

orders. These orders were procured intentionally to destroy Plaintiff's ability to remedy her FEHA employment claims.

### m) The BRN Subordinates' Ultra Vires Enforcement:

**337.** On or about **November 16, 2022**, while Kaiser entities successfully blocked Plaintiff from state courts, BRN subordinate Shannon Johnson acted *ultra vires* to issue a follow-up administrative Accusation based entirely on a legally void and unenforceable California Business and Professions Code § 820 order.

### n) The Falsification of Administrative Records:

**338.** On or about **January 1, 2023** despite the Plaintiff having served a pre-accusation defense that explicitly put the Board of Registered Nursing (BRN) on notice that its pending order lacked both jurisdiction and probable cause, BRN co-conspirator Shannon Johnson intentionally falsified official administrative records to untruthfully state that "no Notice of Defense" had been filed, and independently approved a default decision and order revoking the Plaintiff's RN license.

### o) The Fraudulent Default and License Revocation:

**339.** Defendants weaponized this manufactured record omission to secure a fraudulent default license revocation against Plaintiff, effectively neutralizing her Registered Nurse license via a void administrative mechanism.

**340.** **The Default and NPDB Blacklist:**

**341.** In final execution of the conspiracy, Defendants immediately transmitted a fraudulent "refusal to comply" report to the National Practitioner Data Bank (NPDB). This orchestrated transmission was designed to extend the deprivation of rights beyond state lines, completely freezing Plaintiff's legal ability to secure employment nationwide.

### p) Class-Based Animus:

**SECOND AMENDED COMPLAINT**

**342.** The actions of the corporate and state-actor co-conspirators were motivated by an invidious, class-based discriminatory animus against Plaintiff due to her protected class status and her protected whistleblowing activities.

### q) Damages:

**343.** As a direct and proximate result of the conspiratorial actions of the Defendants, Plaintiff has suffered extreme economic damages, complete deprivation of her professional livelihood, and severe emotional distress

## COUNT 5: CONSPIRACY TO DEPRIVE CIVIL RIGHTS (VIOLATION OF CIVIL RIGHT ACT 42 U.S.C., & 1983)

### (Against KFH and BRN Defendants)

**344.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

### a) Color of State Law & Joint Action (Defeating Private Deniability)

**345.** At all times relevant, the BRN Defendants acted under color of state law. Defendant Kaiser, though a private entity, acted as a state actor for purposes of 42 U.S.C. § 1983 because it engaged in joint action, willful concert, and a conspiracy with the BRN Defendants. Kaiser's actions were so intertwined with the state's regulatory mechanism that its conduct is fairly attributable to the State.

**346.** The Conspiracy Agreement (Defeating Rule 12(b)(6) Parallel Conduct Objections)

**347.** Defendants entered into an agreement and reached a shared "meeting of the minds" to deprive Plaintiff of their clearly established Fourteenth Amendment due process rights. This agreement went beyond routine, independent administrative reporting. Defendants knowingly acted in coordination toward a common, unlawful objective: to strip Plaintiff of their professional license and employment remedies using fabricated evidence, ensuring the BRN would bypass an independent, objective investigation.

**SECOND AMENDED COMPLAINT**

**348.**    The BRN Defendants knowingly accepted, relied upon, and advanced Kaiser's knowingly false report. Rather than conducting an objective evaluation, the BRN Defendants utilized the false report as an instrument to execute the conspiratorial objective.

b)    **Overt Act  (The Ultra Vires Order):**

**349.**    In direct furtherance of the conspiracy, a subordinate BRN Defendant, lacking independent statutory authority to act on behalf of the Board, issued a legally unenforceable order compelling a physical/mental evaluation under California Business and Professions Code § 820.

c)    **Knowledge and Intent (Defeating Plausible Deniability)**

**350.**    Prior to the issuance of the Section 820 order, Plaintiff provided the BRN Defendants with a comprehensive medical release allowing them to directly obtain medical records from Plaintiff's treating healthcare provider.

**351.**    These medical records, possessed by or immediately available to the BRN Defendants, explicitly documented that:

**352.**    Plaintiff was fully mentally competent and suffered from no severe or debilitating mental illness.

**353.**    Plaintiff's requested workplace accommodation to Kaiser was specifically tailored to prevent situational, temporary complex PTSD exacerbations triggered by documented workplace harassment, rather than any functional cognitive impairment or professional incompetence.

**354.**    Discriminatory Animus & Due Process Vilation:

**355.**    Armed with actual knowledge of Plaintiff's medical competency and accommodation requests, the subordinate BRN Defendant bypassed standard statutory protections and issued an ultra vires, discriminatory petition and order.

58

**SECOND AMENDED COMPLAINT**

**356.** This petition falsely, maliciously, and discriminatorily labeled Plaintiff as "psychotic" and "incompetent," entirely disregarding the medical documentation to accomplish the conspiratorial goal shared with Defendant Kaiser.

### d)    Overt Act 2: Fraud on the Court & Extinguishing Rights

**357.** Further advancing the conspiracy and seeking to immunize themselves from liability, Defendant KFH misrepresented the scope of a state court summary judgment order. KFH falsely stated to the court that a limited summary judgment operated as a global, total dismissal of all Kaiser entities and fully extinguished Plaintiff's Fair Employment and Housing Act (FEHA) claims. This misrepresentation was designed to manufacture a false defense of res judicata or collateral estoppel, leveraging state judicial machinery to finalize the deprivation of Plaintiff's constitutional and statutory rights.

**358.** Defendant Kaiser intentionally and deceptively used the improper state court judgment to secure an unlawful vexatious litigant prefiling order on **December 22, 2022**. This prefiling order was the direct product of a conspiratorial agreement and shared unlawful objective between Kaiser and the BRN Defendants. Specifically, the defendants coordinated their efforts to insulate the BRN Defendants from liability and prevent state court litigation concerning their issuance of a legally void Section 820 order.

**359.** In furtherance of this joint venture, the BRN Defendants leveraged Kaiser's misrepresentations to unconstitutionally revoke Plaintiff's RN license. They issued a groundless non-compliance accusation on **November 16, 2022**, and a fraudulent default decision on **January 6, 2023**, falsely claiming Plaintiff failed to enter a Notice of Defense. This joint action between private and state defendants under color of law directly deprived Plaintiff of livelihood and due process under 42 U.S.C. § 1983.

## COUNT 6: STRUCTURAL DENIAL OF DUE PROCESS (FOURTEENTH AMENDMENT VIA 42 U.S.C. § 1983)

**(Against SCPMG Defendant acting under color of law)**

59

**SECOND AMENDED COMPLAINT**

**360.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**361.** This claim does not seek federal appellate review of any specific state court judgment, nor does it ask this Court to overturn a state court order. Rather, Plaintiff asserts a **direct, independent federal challenge** under 42 U.S.C. § 1983 to a systemic, structural defect in the state's procedural mechanisms that completely foreclosed adversarial testing.

**362.** At all times relevant, Defendant SCPMG acted **under color of law** by willfully engaging in joint activity with the state judicial machinery. SCPMG did not merely utilize standard court processes; it actively subverted state procedural rules to insulate third-party fraud from judicial scrutiny, transforming a private dispute into a state-enforced deprivation of statutory remedies.

### a)      Protected Property and Liberty Interests:

**363.** Plaintiff possesses a constitutionally protected property and liberty interest in their professional nursing license, their fundamental right to pursue a chosen livelihood, and their right to a fair, impartial judicial process free from arbitrary deprivation.

**364.** The Retroactive and Fraudulent Application of Prefiling Orders:

**365.** On **December 5, 2022**, Plaintiff commenced a separate, distinct action against Southern California Permanente Medical Group (SCPMG) alleging fraud and distinct FEHA violations. SCPMG was never a party to, nor named in, the prior litigation involving Kaiser Foundation Hospitals (KFH) which concluded on **September 21, 2021.**

**366.** To escape liability, Defendant SCPMG intentionally made material misrepresentations to the state court, falsely asserting that the KFH judgment extinguished all claims against SCPMG. By actively misleading the tribunal, SCPMG induced the court to retroactively and unconstitutionally *subject Plaintiff's pre-existing December 5, 2022 case* to a restrictive prefiling order that was not entered until December 22, 2022.

**SECOND AMENDED COMPLAINT**

### b)      Conspiracy and Joint Action to Deprive Procedural Safeguards:

**367.**  Defendant SCPMG willfully participated in joint action and conspired with state actors under color of law to bypass mandatory procedural safeguards. Specifically, SCPMG and the state court deprived Plaintiff of a mandatory evidentiary hearing prior to subjecting Plaintiff to an oppressive and prohibitive $10,000 vexatious litigant bond. This bond was weaponized to suppress a legitimate lawsuit detailing how SCPMG was legally distinct from KFH and completely absent from the KFH summary judgment record.

### c)      Preclusion of Merits and Arbitrary Dismissal:

**368.**  Despite the complete absence of an evidentiary record or due process protections, Defendant SCPMG and the court proceeded to enforce the unconstitutional security deposit mandate, resulting in the summary dismissal of Plaintiff's valid fraud and employment claims solely for failure to post the unconstitutional bond.

### d)      Retaliatory and Bad-Faith State Action:

**369.**  Defendant SCPMG, acting under color of state law, intentionally manipulated the state court system to obtain a second, layered prefiling order on **July 7, 2025**. This action was taken in direct retaliation for Plaintiff's exercise of their First Amendment right to petition the government by filing a federal civil rights action on **June 10, 2024**. The subsequent state order served no legitimate judicial purpose and was procured in bad faith.

**370.**  Defendant's conduct constitutes a structural denial of due process, as it was designed exclusively to insulate Kaiser entities and third parties from accountability and punish Plaintiff for protected litigation activities, thereby depriving Plaintiff of their constitutionally protected right of access to the courts.

### e)      Structural Error and Systemic Bias:

**371.**  The successive prefiling orders entered on December 22, 2022, and July 7, 2025, by the Stanley Mosk Courthouse—procured through the deceptive

61

**SECOND AMENDED COMPLAINT**

joint actions of KFH and SCPMG—go beyond mere procedural errors. By acting as a sweeping, prospective shield to protect selected third parties (including the Board of Registered Nursing and Kaiser entities) from ever facing civil liability, the court's mechanism became infected with systemic bias.

**372.** This institutional breakdown constitutes a **structural defect** in the constitution of the trial mechanism, rendering the state court proceedings fundamentally unfair and amounting to a structural denial of Due Process under the Fourteenth Amendment.

### f)   The Defendant Insulating Scheme:

**373.** On May 26, 2026, the Stanley Mosk Courthouse issued an order denying the vacatur of prefiling orders. While the court characterized Plaintiff's petition using pejorative language—calling Plaintiff "obsessed, abusive, and lacking insight"—the core operational effect of the order went far beyond the narrow, permissible bounds of regulating a vexatious litigant.

### g)   Impermissible Broadening as a Structural Defect:

**374.** Rather than acting as a targeted administrative screening device, the state court's prefiling mechanism has been structurally corrupted and impermissibly expanded. The operational reality of the May 26, 2026 order is the creation of a prospective, absolute immunity blanket covering separate administrative and private third parties—specifically, the **California Board of Registered Nursing**, **Loretta Melby**, and **Gillian Friedman**.

### h)   Denial of Access to Courts for Independent Claims:

**375.** By utilizing the prefiling order to completely block judicial evaluation of unadjudicated, fraudulent California Business and Professions Code § 820 orders, the judicial mechanism has been structurally altered. It no longer acts as a neutral arbiter. Instead, it operates as an insuperable barrier that completely eliminates the basic constitutional requirement of judicial scrutiny over separate administrative actions.

**SECOND AMENDED COMPLAINT**

### i)  Stripping Defendants of Plausible Deniability:

**376.**  Defendants Board of Registered Nursing, Loretta Melby, cannot claim plausible deniability or good-faith reliance on the May 26, 2026 order. Defendants had actual, documented knowledge that the underlying § 820 orders were procured through fraud, lacked an adjudicative basis, and violated clearly established law.

### j)  Active Conspiratorial Exploitation:

**377.**  Defendants intentionally and actively exploited the state court's overbroad prefiling mechanism as a liability shield. They did so with the specific intent to block the adjudication of their own independent fraudulent conduct. Where state actors and private parties intentionally weaponize an overbroad judicial administrative order to insulate unadjudicated fraudulent acts from ever being reviewed by a court, the adversarial framework is destroyed, constituting a structural denial of due process.

**378.**  The prefiling restriction, as applied, completely bars Plaintiff from accessing judicial remedies for separate, unlitigated wrongs without a prior, individualized, and meaningful hearing on the merits of those specific claims. By expanding the scope of a prefiling restriction to shield third parties from liability for underlying fraudulent reporting that was never factually tested or judicially determined, the state mechanism creates an unconstitutional, absolute immunity blanket.

**379.**  The state procedural rule, as applied to these unique facts, is not narrowly tailored to achieve any compelling state interest. Instead, the rule was weaponized to completely bypass necessary procedural safeguards, permanently blocking Plaintiff's access to federal and state statutory remedies.

**380.**  The deployment of state judicial machinery to immunize extrinsic fraud from adversarial testing constitutes a structural breakdown of the forum. This structural defect renders the state court forum incapable of providing a fair and impartial adjudication.

**SECOND AMENDED COMPLAINT**

**381.** The wholesale foreclosure of a meaningful opportunity to be heard **shocks the conscience** and violates the standard of fundamental fairness guaranteed by the Due Process Clause of the Fourteenth Amendment

## COUNT 7: REVOCATION OF RN LICENSE WITHOUT DUE PROCESS (VIOLATION OF THE 14th AMENDMENT (42 U.S.C., & 1983):)

### (Against BRN Defendants)

**382.** Plaintiff re alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**383.** At all times relevant to this Complaint, Defendant Loretta Melby acted under color of state law in her official capacity as the, Executive Officer for the California Board of Registered Nursing ("BRN"). In doing so, her actions were performed within the scope of her official duties and employment with the State of California.

**384.** To state a claim under 42 U.S.C. § 1983 for due process violations, a plaintiff must allege:

(1) the deprivation of a constitutionally protected interest in life, liberty, or property; and

(2) that the deprivation was organic to state action or committed by a person acting under color of state law without constitutional safeguards

**385. Protected Property Interest:** At all times relevant, Plaintiff held a valid professional license issued by the State of California, which constitutes a constitutionally protected property interest under the Fourteenth Amendment. This interest cannot be suspended, revoked, or burdened without robust procedural due process.

**386.** Plaintiff possessed a constitutionally protected property interest in their Registered Nurse (RN) License No. **[761179] a**nd a legitimate claim of entitlement to pursue their profession, deeply rooted in the California **Nursing**

64

**SECOND AMENDED COMPLAINT**

Practice Act (NPA) under California Business and Professions Code (BPC) § 2700 et seq.

387.   This statutory framework codifies the rules, licensing requirements, and scope of the nursing profession, transforming a standard job into a legally recognized property right protected by due process.

388.   Because the State of California explicitly regulates and grants this professional license under the Business and Professions Code, the plaintiff possesses a vested right that cannot be arbitrarily revoked or diminished without formal administrative due process. Consequently, the NPA serves as the independent statutory source creating and defining the plaintiff's secure legal entitlement to practice nursing within the state.

389.   Plaintiff possesses a constitutionally protected liberty interest in their professional reputation and the freedom to practice their chosen profession as a Registered Nurse.

390.   Defendants, and each of them, were at all relevant times officials, employees, or agents of the State nursing board, acting under color of state law in their official and individual capacities.

391.   Defendants, acting under color of state law, intentionally, recklessly, or with deliberate indifference deprived Plaintiff of these protected property and liberty interests without due process of law.

a)    **Deprivation of Procedural Due Process (42 U.S.C. § 1983)**

392.   **Lack of Lawful Authority and Jurisdiction:**

393.   Defendant Melby, acting under color of state law, acted completely outside her lawful jurisdiction and statutory authority under 16 CCR § 1405 and California Business and Professions Code § 820.

394.   **Ultra Vires Acts:** Defendant Melby unlawfully delegated mandatory, non-delegable statutory authority to an unauthorized subordinate staff member to

65

**SECOND AMENDED COMPLAINT**

independently petition for and independently approve a mental or physical health examination order.

**395.   Void Ab Initio Order:** Because the subordinate lacked the legal jurisdiction to issue the § 820 order, the resulting order was void *ab initio*.

**396. Deprivation of Safeguards:** By bypassing the mandatory discretionary review and or group discretion of the Board, Defendant Melby intentionally stripped Plaintiff of the structural, statutory, and procedural safeguards designed to prevent arbitrary, single-person administrative overreach.

**397.   No Adequate Remedy:** Defendant Melby then restricted or revoked Plaintiff's professional license based entirely on non-compliance with this void and unauthorized order, failing to provide a pre-deprivation hearing or lawful process.

**b)      Defeating "Plausible Deniability" & Qualified Immunity**

**398.**  Defendant Melby had fair warning that her conduct was unlawful.

**399.   No Discretionary Immunity for Ultra Vires Acts:** Qualified immunity only protects officials performing discretionary functions. Defendant Melby acted completely outside her statutory authority under 16 CCR § 1405. An official cannot claim qualified immunity for *ultra vires* actions that they had no legal jurisdiction to perform.

**400.   Clearly Established Law:** It is clearly established under the Fourteenth Amendment that a state official may not deprive a licensee of their livelihood based on a void order issued without legal jurisdiction. No reasonable official in Defendant Melby's position could have believed she possessed the authority to allow a subordinate to bypass mandatory Board safeguards.

**401.   Waiver and Concession:** By failing to respond to Plaintiff's Objections, Defendant Melby waived any opposition and conceded the central legal and factual errors. She cannot now invent a plausible deniability defense when the factual record of her unauthorized directive stands unrefuted.

66

**SECOND AMENDED COMPLAINT**

**402.** By utilizing a "rubber stamp" process devoid of statutory authority, Defendants failed to provide minimum constitutional safeguards, thereby depriving Plaintiff of a fair hearing before an impartial tribunal.

**c)    Deprivation of Substantive Due Process (42 U.S.C. § 1983)**

**403.** Descendant Loretta Melby had direct, personal, and affirmative involvement in the constitutional deprivation by executing a sworn declaration wherein she admitted to bypassing mandatory statutory frameworks.

**404. Arbitrary and Capricious Action:** Defendant Melby's actions were arbitrary, capricious, and a pretextual abuse of administrative power.

**405. Shocks the Conscience:** Forcing a licensed professional to submit to an intrusive, compelled medical or psychological evaluation via an unauthorized, invalid command—and subsequently stripping them of their livelihood for allegedly resisting that unlawful command—constitutes egregious official misconduct that shocks the conscience.

**406. No Legitimate State Interest:** There is no legitimate, rational state interest in enforcing an administrative order issued by an unauthorized employee in direct violation of state regulations.

**407. Color of Law / Personal Involvement (For § 1983 Claims):** Melby was acting in her official capacity (under color of state law) and was *personally involved* in the deprivation of plaintiff's rights.

**408. Qualified Immunity: Defendant Melby** violated Plaintiff's clearly established **Fourteenth Amendment due process rights** by failing to ensure compliance with mandatory statutory protocols before revoking Plaintiff's Registered Nurse license.

**409.** Under **California Code of Regulations (CCR) Title 16, § 1405**, Defendant Melby holds exclusive, non-delegable authority to direct staff work and bears strict responsibility for actions taken by subordinates on her behalf. By permitting the revocation to proceed without her independent, discretionary review

67

**SECOND AMENDED COMPLAINT**

process, Defendant Melby acted with deliberate indifference to Plaintiff's protected property interest in their professional license.

**410.** **Deprivation of a Protected Interest**: Plaintiff's RN license constitutes a constitutionally protected property and liberty interest under the Fourteenth Amendment, which cannot be stripped or revoked without robust Procedural Due Process. Defendant Melby knew, or objectively should have known, that failing to maintain strict statutory and regulatory protocols before revoking said license would directly violate Plaintiff's clearly established constitutional right to a fair, compliant, and independent review process.

**411.** **Causation and Damages**: Defendant Melby's affirmative actions, material omissions, and failure to supervise directly and proximately caused the unlawful deprivation of Plaintiff's constitutional rights. As a direct and proximate result of Defendants' unconstitutional conduct under color of state law, Plaintiff suffered an immediate loss of their livelihood, catastrophic financial ruin, severe emotional distress, mental anguish, and permanent damage to their professional reputation.

**412.** Defendants' actions shock the conscience and lack any rational relationship to any legitimate government or public safety interest.

## COUNT 8: DEFAMATION / INJURIOUS FALSEHOOD

**(Against Melby/BRN Defendants)**

a)    **The False NPDB Report Submission:**

**413.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

**414.** On or about February 3, 2023, Defendants, acting under color of state law, drafted, authorized, and electronically submitted an Adverse Action Report to the National Practitioner Data Bank ("NPDB") regarding Plaintiff Esther Atam Specifically, Defendants published the following false statement of fact: *"[Plaintiff]*

68

**SECOND AMENDED COMPLAINT**

*failed to comply with boards section 820 Exam order."* This statement was disseminated nationwide to hospitals, licensing boards, and professional entities.

**b)     Defeating Plausible Deniability & Establishing Knowledge (Rule 9(b))**

415.   Particularity of Falsity and Actual Knowledge:

416.   Defendants made an objectively false statement of fact when they published that Plaintiff failed to comply with a *valid* Section 820 Examination order. In truth, no legally binding or enforceable Section 820 order existed at the time of the statement.

417.   The purported order was a 'rubber-stamped' document issued by a subordinate official who lacked the statutory authority to issue such orders. Because the underlying order was legally void *ab initio* for lack of jurisdiction and absence of probable cause, Plaintiff could not, as a matter of law, fail to comply with it. Defendants' statement asserting non-compliance was therefore objectively false.

418.   Defendants did not make an innocent mistake or a negligent administrative error; they acted with actual knowledge of falsity and a reckless disregard for the truth. Defendants possessed subjective, actual knowledge that the order was void and unenforceable through multiple distinct channels:

419.   **Internal Knowledge:** Defendants knew that the individual who issued the rubber-stamped order lacked the statutory and jurisdictional authority to do so.

420.   **Express Notice:** Prior to manufacturing the default revocation, Defendants received and reviewed Plaintiff's *Preaccusation Notice of Defense.* This explicit legal notice explicitly informed Defendants that the order lacked jurisdiction, was issued without probable cause, and was legally unenforceable.

421.   Despite having this direct knowledge in their immediate possession, Defendants intentionally ignored these facts. They proceeded to manufacture and

69

**SECOND AMENDED COMPLAINT**

publish a default Registered Nurse (RN) license revocation based entirely on Plaintiff's non-compliance with an order they knew to be a nullity.

422. Defendants acted with calculated malice, fully aware that Chief Enforcement Officer Shannon Johnson lacked the inherent authority to unilaterally approve or execute a default decision. By intentionally bypassing mandatory Board review, Defendants manufactured an administrative process and subsequent registered nurse (RN) revocation that lacked all legal authority. Consequently, the entire administrative proceeding is void *ab initio*, rendering the disciplinary action an actionable, unlawful overreach.

c) **Elimination of Plausible Deniability via "Rubber Stamp" / Cat's Paw Liability:**

423. Defendants cannot claim plausible deniability or lack of knowledge based on corporate or administrative insulation. The final decision-makers acted as a mere "rubber stamp," blindly and automatically ratifying the unauthorized, vindictive, and false allegations manufactured by subordinate officials. Defendants knowingly abdicated their statutory duty of independent verification.

424. By intentionally bypassing all investigative checklists and regulatory review mechanisms, Defendants deliberately insulated themselves from the truth, establishing a conscious avoidance of facts that constitutes actual knowledge under Federal Rule of Civil Procedure 9(b).

d) **Stripping HCQIA Immunity (42 U.S.C. §§ 11111–11112)**

425. Exclusion of HCQIA Immunity Under § 11111:

426. Defendants are completely excluded from qualified immunity under 42 U.S.C. § 11111(a)(2) because they provided information to the NPDB that they knew to be false at the time of submission.

427. Failure to Meet Objective Standards Under § 11112(a):

70

**SECOND AMENDED COMPLAINT**

**428.** Defendants fail to meet the objective standards required for immunity under 42 U.S.C. § 11112(a). The reporting action was a bad-faith sham motivated entirely by personal animus and retaliatory persecution. It was not undertaken in the reasonable belief that the action was in furtherance of quality healthcare.

e)    **Denial of Due Process and Fair Hearing Under § 11112(b):**

**429.** Defendants further forfeited HCQIA immunity by failing to afford Plaintiff adequate notice and fair hearing procedures under 42 U.S.C. § 11112(b). Specifically, Defendants utilized a summary, non-adversarial "rubber stamp" process completely devoid of statutory authority.

**430.** Defendants failed to provide minimum constitutional safeguards, actively denied Plaintiff the right to present evidence or confront accusers, and deprived Plaintiff of a fair hearing before an impartial tribunal.

f)    **Causation and Damages**

**431.** Severe and Irreparable Harm:

**432.** As a direct and proximate result of Defendants' false, bad-faith report to the NPDB, Plaintiff has suffered and continues to suffer severe, permanent, and irreparable harm. This includes the immediate destruction of her professional reputation, disqualification from employment opportunities, lost wages, emotional distress, and a nationwide blacklisting within the healthcare industry.

## COUNT 9: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

**(Against Kaiser and BRN Defendants)**

**433.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

a)    **Intent and Recklessness (Defeating Plausible Deniability):**

71

**SECOND AMENDED COMPLAINT**

**434.** Defendants acted intentionally, or with reckless disregard of a high probability that their actions would cause Plaintiff severe emotional distress. Defendants possessed specific knowledge of Plaintiff's pre-existing vulnerability—specifically, a work-induced mental injury previously caused by Defendants.

**435.** Despite this knowledge, Defendants intentionally weaponized this specific vulnerability against Plaintiff. **Defendants coordinated an ongoing, six-year campaign of targeted civil harassment specifically designed to induce a complete psychological breakdown.**

**436.** To circumvent direct detection and maintain a veneer of plausible deniability, Defendants operated through intermediaries, utilizing administrative influence within the Board of Nursing and utilizing third parties within the court system to execute an uninterrupted pattern of civil harassment and systemic intimidation.

**b)** **Extreme and Outrageous Conduct:**

**437.** Defendants' conduct was extreme, outrageous, and went completely beyond all possible bounds of decency, rendering it utterly intolerable in a civilized community. This continuous course of conduct included, but was not limited to, the following specific, overt acts.

**i.** **Fact 1**:

**438.** On **March 17, 2021**, Plaintiff affirmatively agreed to comply with Defendant's directives to engage in the interactive process regarding Plaintiff's accommodation needs, specifically consenting to participate in a Fitness for Duty ("FFD") evaluation order.

**439.** On **March 18, 2021**—less than 24 hours after Plaintiff agreed to comply—Plaintiff made a protected, good-faith request for a minor, reasonable procedural accommodation: adjusting the medical release authorization from *oral communication* to *written communication* to protect Plaintiff's medical privacy and ensure an accurate record.

72

**SECOND AMENDED COMPLAINT**

440.    Immediately upon receiving this reasonable accommodation request, and without executing any analytical review or engaging in discussion, Defendant **abruptly and punitively terminated** Plaintiff's employment.

441.    Defendant completely failed and refused to engage in a good-faith interactive process regarding Plaintiff's known workplace restrictions or accommodations prior to termination. Instead, Defendant utilized the FFD directive as a bad-faith pretextual trap, executing an immediate termination to maximize financial and emotional vulnerability.

### c)    Defendant's Actual Knowledge and Exploitation of Vulnerability

442.    Defendants possessed direct, actual, and written knowledge of Plaintiff's severe psychological injury and vulnerability, derived explicitly from medical documentation submitted by Plaintiff's treating healthcare provider.

443.    The medical documentation explicitly put Defendants on notice that Plaintiff suffered a severe psychological injury caused directly by the workplace environment, which was actively exacerbated by a toxic, hostile work environment characterized by persistent harassment and psychological gaslighting.

444.    Despite this explicit medical notice, Defendants intentionally engaged in a calculated campaign of psychological violence designed to distort Plaintiff's reality, gaslight her into believing a wrongful suspension on August 28, 2022, never occurred, and falsely fabricate a narrative that Plaintiff abandoned her position.

445.    With full, actual knowledge of Plaintiff's medical status, Defendants maliciously fabricated and submitted a false report to the Board of Registered Nursing (BRN) with the specific intent to defame Plaintiff, jeopardize her professional license, and destroy her livelihood.

446.    Defendants' BRN report contained knowingly false statements, asserting that Plaintiff 'refused to comply with a Fitness for Duty (FFD) directive' and 'abandoned her position' in October 2020.

73

**SECOND AMENDED COMPLAINT**

447.  In truth, and as documented by Defendants' own internal records, Plaintiff never abandoned her position. Rather, Defendants placed Plaintiff on an unpaid, unrequested medical leave and terminated her employment exactly one day after she agreed to the FFD evaluation.

448.  Defendants' targeted conduct in manufacturing and submitting a knowingly false report to a licensing board—specifically weaponized against a vulnerable employee whom Defendants knew to be experiencing severe, employer-induced psychological distress—exceeds all possible bounds of decent human behavior, is utterly intolerable in a civilized community, and constitutes extreme and outrageous conduct as a matter of law.

449.  Defendants acted intentionally and recklessly, with full awareness that targeting a nurse's professional license while she was suffering from a documented psychological injury would cause severe, debilitating emotional distress.

450.  As a direct and proximate result of Defendants' outrageous conduct, harassment, gaslighting, and malicious BRN reporting, Plaintiff suffered and continues to suffer severe emotional distress, profound anxiety and a catastrophic impact on her professional standing, necessitating ongoing therapy.

ii.    **Fact 2**:

d)    **Extreme and Outrageous Conduct:**

451.  Defendants, and each of them, engaged in a continuous, coordinated, and calculated pattern of extreme and outrageous conduct directed at Plaintiff. This conduct went far beyond the boundaries of standard administrative error or employment disputes and was entirely intolerable in a civilized community.

e)    **The Coordinated Conspiracy to Harass:**

452.  Specifically, Defendants Kaiser and the BRN Defendants actively conspired, agreed, and acted in concert with agents of the Board of Registered Nursing ("BRN")to subject Plaintiff to severe harassment. This joint enterprise strips away any defense of plausible deniability by orchestrating private employer

74

**SECOND AMENDED COMPLAINT**

actions in direct reliance upon state-agency power, thereby merging public regulatory authority with private retaliation to deprive Plaintiff of constitutional rights.

### f)    The Ultra Vires and Unauthorized Mechanism:

**453.** In furtherance of this conspiracy, on or about **July 13, 2022**, Defendants utilized a subordinate employee of the BRN to independently approve and issue a petition and order compelling Plaintiff to undergo an unauthorized *second mental examination* under California Business and Professions Code Section 820. This subordinate entirely lacked the statutory authority to independently issue such an order, making the action strictly *ultra vires*. Defendants knew or recklessly disregarded that this order was unlawful, yet weaponized it as a tool of psychological and professional coercion.

### g)    Weaponization of Discriminatory Pretext:

**454.** The *ultra vires* petition and order were not legitimate administrative actions, but were deeply rooted in racial and national origin discrimination. Defendants maliciously fabricated and weaponized offensive, discriminatory tropes against Plaintiff by falsely alleging in public or official records that Plaintiff "spoke to vampires and voodoo spirits," suffered from severe mental illness, abandoned her nursing duties and was unfit for duty. Defendants utilized these specific, highly offensive fabrications with the express intent to humiliate Plaintiff, degrade their cultural background, and destroy their professional reputation.

### h)    The Fraudulent Default Scheme:

**455.** To finalize their scheme and maximize the emotional and professional distress inflicted upon Plaintiff, Defendants manufactured a fraudulent default decision. The BRN Defendants issued this default on the explicitly false and fraudulent premise that Plaintiff failed to comply with the unauthorized Section 820 orders, and falsely asserted that no Notice of Defense had been received, despite knowing that Plaintiff had validly defended themselves.

### i)    Intent and Recklessness:

75

**SECOND AMENDED COMPLAINT**

**456.** Defendants acted with the specific intent to cause Plaintiff severe emotional distress, or acted with absolute and reckless disregard of the high probability that their discriminatory tropes, unauthorized orders, and fraudulent default would cause such distress.

**j)** **Causation and Severe Emotional Distress:**

**457.** As a direct and proximate result of Defendants' extreme, outrageous, and conspiratorial conduct, Plaintiff suffered and continues to suffer severe and debilitating emotional distress, mental anguish, humiliation, and professional ruin, in an amount to be proven at trial.

**iii.** **Fact 3**:

**458.** Defendants cannot claim plausible deniability or independent parallel action. The actions of the BRN and the Kaiser entities directly intersected in an unbroken, continuous pattern of retaliatory conduct from **July 14, 2022**, through the present.

**459.** The temporal proximity and perfect operational coordination between the BRN revoking Plaintiff's livelihood and the concurrent erection of an insurmountable $10,000 financial barrier to court access demonstrate an integrated, overlapping conspiracy. This coordinated effort was explicitly confirmed by the Court's **May 26, 2026**, minute order, which overtly linked prefiling restrictions to the protection of 'BRN third parties,' establishing a clear intent to insulate one another from liability and strip Plaintiff of their civil rights.

**460.** Defendants acted intentionally, oppressively, and with a calculated purpose to inflict severe psychological and financial ruin upon Plaintiff.

**461. Causation**

**462.** As a direct and proximate result of Defendants' coordinated, systemic campaign to completely *erase* Plaintiff's professional identity and block all avenues of legal redress, Plaintiff has suffered and continues to suffer severe, unyielding emotional distress, profound helplessness, clinical anxiety, and ongoing

76

**SECOND AMENDED COMPLAINT**

psychological trauma of a nature that no reasonable person should be expected to endure.

## VIII.   RELIEF SOUGHT

463.   WHEREFORE, Plaintiff **ESTHER TENDO ATAM** respectfully requests that judgment be entered in her favor and against Defendants **KAISER FOUNDATION HEALTH PLAN, INC.; KAISER FOUNDATION HOSPITALS; SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP; BOARD OF REGISTERED NURSING; LORETTA MELBY; GARY CARLIN; and DOES 1–100**, and that this Court grant the following relief:

### A.   DECLARATORY RELIEF

464.   A declaration that Defendants' acts, omissions, policies, customs, practices, and conduct described herein violated Plaintiff's rights under the United States Constitution, including the First and Fourteenth Amendments, 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act, and the California Fair Employment and Housing Act.

### B.   INJUNCTIVE RELIEF

465.   Preliminary and permanent injunctive relief prohibiting Defendants from continuing the unlawful conduct complained of herein and requiring Defendants to take all necessary corrective actions to remedy the constitutional and statutory violations suffered by Plaintiff.

### C.   ECONOMIC DAMAGES

466.   An award of all past and future economic damages according to proof at trial, including but not limited to:

467.   Lost wages;

468.   Lost earnings capacity;

469.   Lost employment opportunities;

77

**SECOND AMENDED COMPLAINT**

**470.**   Lost retirement benefits;

**471.**   Lost employment benefits;

**472.**   Loss of professional opportunities; and

**473.**   Other consequential economic losses.

**D.    NON-ECONOMIC DAMAGES**

**474.**   An award of compensatory damages for:

**475.**   Emotional distress;

**476.**   Mental anguish;

**477.**   Anxiety;

**478.**   Humiliation;

**479.**   Pain and suffering;

**480.**   Reputational harm;

**481.**   Loss of enjoyment of life; and

**482.**   Other non-economic injuries according to proof.

**E.    PUNITIVE DAMAGES**

**483.**   Punitive and exemplary damages against all Defendants whose conduct was malicious, oppressive, fraudulent, reckless, or in conscious disregard of Plaintiff's federally protected rights, in an amount sufficient to punish and deter similar misconduct.

**F.    CIVIL RIGHTS REMEDIES**

78

**SECOND AMENDED COMPLAINT**

**484.**   All remedies available under 42 U.S.C. §§ 1983 and 1985, including such equitable and legal relief as may be necessary to fully redress the deprivation of Plaintiff's constitutional rights.

### G.   ADA AND FEHA REMEDIES

**485.**   All relief authorized under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the California Fair Employment and Housing Act, Government Code § 12940 et seq., including equitable, compensatory, and statutory remedies.

### H.   COSTS AND FEES

**486.**   An award of costs of suit, litigation expenses, expert witness fees where authorized by law, and reasonable attorney's fees to the fullest extent permitted by applicable statutes.

### I.   PREJUDGMENT AND POST-JUDGMENT INTEREST

**487.**   Prejudgment and post-judgment interest at the maximum rate permitted by law.

### J.   DECLARATORY RELIEF CONCERNING LICENSE REVOCATION AND NPDB REPORTING

**488.**   A declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Defendants, acting under color of state law, violated Plaintiff's Fourteenth Amendment Due Process rights by unlawfully revoking their Registered Nurse license. This constitutionally deficient administrative process directly deprived Plaintiff of a protected liberty and property interests without due process of law. Specifically, the revocation relied upon an invalid Business and Professions Code § 820 order, denied Plaintiff a meaningful opportunity to be heard, and culminated in a default decision approved by an unauthorized subordinate who completely lacked the statutory authority to strip Plaintiff of their professional license.

79

**SECOND AMENDED COMPLAINT**

**489.** A declaration that the publication and reporting of the disciplinary action to the National Practitioner Data Bank ("NPDB") were unconstitutional and unlawful because the underlying disciplinary proceedings were void, conducted in violation of procedural and substantive due process, and resulted in a deprivation of Plaintiff's protected liberty and property interests.

## K.    INJUNCTIVE RELIEF REGARDING RN LICENSE

**490.** A preliminary and permanent injunction directing the California Board of Registered Nursing and its officers, successors, agents, employees, and persons acting in concert with them to:

**491.** Vacate and set aside the Default Decision and Order entered against Plaintiff;

**492.** Vacate all disciplinary findings arising from the unlawful administrative proceedings;

**493.** Reinstate Plaintiff's Registered Nurse license to active and unrestricted status;

**494.** Restore all rights, privileges, and benefits associated with Plaintiff's professional nursing license; and

**495.** Cease enforcement of any disciplinary restrictions arising from the challenged proceedings.

## L.    REMOVAL OF NPDB REPORTING

**496.** An Order directing Defendants to immediately withdraw, retract, correct, and permanently remove any adverse report, notation, disciplinary action, or derogatory entry submitted to the National Practitioner Data Bank ("NPDB") arising from the unlawful disciplinary proceedings challenged herein.

**497.** An Order requiring Defendants to notify all agencies, employers, licensing entities, credentialing organizations, and governmental bodies that

80

**SECOND AMENDED COMPLAINT**

received such information that the disciplinary action has been vacated and is no longer valid.

## M.    PUNITIVE AND EXEMPLARY DAMAGES AGAINST KAISER DEFENDANTS

498.    An award of punitive and exemplary damages against the Kaiser Defendants in an amount sufficient to punish and deter future misconduct because their actions were intentional, malicious, oppressive, fraudulent, retaliatory, and carried out with conscious disregard for Plaintiff's federally protected rights.

499.    Plaintiff alleges that the Kaiser Defendants knowingly engaged in discriminatory and retaliatory conduct, intentionally submitted false and defamatory reports concerning Plaintiff's mental fitness and professional competence, interfered with Plaintiff's professional licensing status, and participated in a coordinated effort to destroy Plaintiff's career and livelihood. Accordingly, punitive damages are warranted under applicable federal and California law, including 42 U.S.C. § 1983 and California Civil Code § 3294.

## N.    SUCH OTHER RELIEF

500.    For such other and further legal, equitable, declaratory, injunctive, compensatory, punitive, and special relief as the Court deems just, proper, and necessary to fully remedy the violations alleged herein.

## IX.    DEMAND FOR JURY TRIAL

501.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Esther Tendo Atam hereby demands a trial by jury on all issues so triable, including all claims for compensatory and punitive damages arising under Title VII, the ADA, 42 U.S.C. §§ 1983, 1985, and related statutes.

502.    A jury is especially appropriate here given the fact-intensive disputes over retaliation, discrimination, fabrication of evidence, and conspiracy. Determining credibility, motive, and damages requires a jury's judgment, not summary adjudication by state actors who previously disregarded Plaintiff's rights.

81

**SECOND AMENDED COMPLAINT**

## X.    CERTIFICATE OF SERVICE

**503.  I** hereby certify that on June 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the registered participants. I further certify that I simultaneously served a true and correct copy of the foregoing document via email to the following counsel of record at the email addresses listed below notification of such filing to the following:

**Christian J Rowley**, crowley@seyfarth.com,
5266201420@filings.docketbird.com,
jblackwell@seyfarth.com,
ktruesdale@seyfarth.com,
ndavilla@seyfarth.com,
sfocalendar@seyfarth.com,
shobrien@seyfarth.com
**Brandon Keith Franklin** , brandon.franklin@clydeco.us,
lisa.vera@clydeco.us,
patricia.inabnet@clydeco.us
**Gary R Carlin**, gary@garycarlinlaw.com,
andrewj@garycarlinlaw.com,
bill@garycarlinlaw.com,
daniel.e@garycarlinlaw.com,
jahaira@garycarlinlaw.com,
kathy@garycarlinlaw.com,
marisol@garycarlinlaw.com,
vincent@garycarlinlaw.com
**Jamil R Ghannamjamil**, ghannam@doj.ca.gov,
Bruce.McGagin@doj.ca.gov,
Carrie.Vue@doj.ca.gov,
TORT-ECF@doj.ca.gov

_____
Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

82

**SECOND AMENDED COMPLAINT**

## XI.    VERIFICATION

504.   I, Esther Tendo Atam, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 06/22/2025 at 13621 Arcturus Ave. Gardena CA 90249.

Respectfully submitted,

_____
Esther Tendo Atam
13621 Arcturus Ave.
Gardena, CA 9024
Natashchan1@yahoo.com
Plaintiff in Pro Per

DATED: June 22, 2026

Respectfully submitted,
**/s/ Esther Tendo Atam**

Plaintiff, In Pro Per
13621 Arcturus Ave.
Gardena, CA 90249
Natashchan1@yahoo.com

83

**SECOND AMENDED COMPLAINT**